UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SITEONE LANDSCAPE SUPPLY, LLC,

    Plaintiff,

v.

NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; NARROW WAY REALTY, LTD.; NARROW WAY 2 LLC; THE GARDEN DEPT. CORP.; GROUP 5 ASSOCIATES, LTD.; 3670 ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND NEWAY TRUCKING;

    Defendants.

REPLY IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE TISCIONE'S REPORT AND RECOMMENDATION

ORAL ARGUMENT REQUESTED

Civil Action No.: 2:23-CV-02084-GRB-ST

---

## INTRODUCTION

This is a simple case: SiteOne purchased Garden Department for $30+ million and asked only that Defendants act in good faith and honor the deal they made, including not competing with SiteOne. This Court was appropriately concerned at the March 2023 hearing in this case that the optics of this case "do[n't] look great," anticipating that Defendants may have engaged in a "thinly veiled attempt to end run [the] agreement." This Court's suspicions were entirely accurate.

To that end, Defendants make two disingenuous arguments in response to SiteOne's Objections to Magistrate Judge Tiscione's Report and Recommendation—neither of which are addressed in the R&R or in SiteOne's objections.

First, Defendants contend that the geographic scope and duration of the non-compete at issue are overbroad, rendering it unenforceable. Defendants cite no authority—not a single case—to support their position with respect to the geographic reasonableness, and the case they cite regarding duration was decided in the context of a decade-long restriction in an employment agreement. Defendants ignore

New York case law directly on point in which non-competes in lease agreements, far broader than the one at issue here, were held valid and enforceable.

Second, Defendants incorrectly contend the stricter standard for evaluating the enforceability of a non-compete in the context of an employment agreement should apply here—as opposed to the more lenient reasonableness test used in the context of the sale of a business. The problem with Defendants' position is that the non-compete here is entirely unrelated to Vic's past, present, or future employment—the non-compete is contained in a commercial lease agreement for real property executed as part of an asset purchase agreement. Nothing in the Coram Lease mentions Vic being employed by SiteOne or restricts Vic in his employment or from working for a competitor. Although Vic became a SiteOne employee sometime after the purchase of Garden Department by SiteOne (Vic was hired by his son, Don), nothing in the Coram Lease suggests that it was connected in any way to employment by SiteOne to warrant applying the stricter standards applicable to non-competes in the employment context.

Both of Defendants' new arguments fail and should not be adopted by this Court.

## **ARGUMENT**

### I. The Geographic Scope and Duration of the Non-Compete Are Reasonable.

Defendants incorrectly contend that the non-compete in the Coram Lease is unenforceable because the geographic scope and duration are unreasonable. (ECF Doc. No. 98 p. 20.) This argument is meritless and must be rejected.

The Coram Lease prohibits—as relevant here—leasing or making available any land or building to any person or business entity engaging in a business activity that competes with SiteOne within 10 miles of SiteOne's Coram location during the lease and for 12 months thereafter. (Am. Compl. ¶ 36; Ex. 2.) It is undisputed by all parties here that Vic is both leasing and making available land (and a building) to Defendant Scapes Supply well within the restricted 10-mile radius.

A case directly on point and addressing both the geographic and durational components of a lease agreement non-compete is *Evans Prod. Co. v. Decker*, 52 A.D.2d 991 (3d Dep't 1976). In *Evans*, the parties entered into an asset purchase agreement for the plaintiffs' building supply business. *Id.* at 991. The parties also entered into a lease agreement in conjunction with the purchase agreement for the premises on which the plaintiff would operate the business. *Id.* The lease contained a non-compete which prohibited the defendants from competing **within the entire State of New York for a period of 15 years**. *Id.* The lease contained an option for the plaintiff to purchase the land, and, if exercised, the non-compete would apply for 15 years from the exercising of the option but only within the counties of Essex and Franklin. *Id.* The defendants subsequently opened a competing business in Saranac Lake. *Id.* at 992. The Supreme Court and the Third Department both found in the plaintiff's favor, holding that the statewide, 15-year non-compete was valid and enforceable. *Id.* at 993.

New York law is clear that in the context of a restrictive covenant in a lease agreement, the restriction must be enforced "when the intention of the parties is clear and the limitation is reasonable." *Deer Cross Shopping LLC v. Stop & Shop Supermarket Co.*, 2 Misc. 3d 401, 405 (Sup. Ct., N.Y. Cnty., 2003). It is beyond dispute that SiteOne's $30+ million decision to acquire Garden Department was based on the **location** of the business's existing stores and the business's relationships with its **local customers**. The Coram Lease, a critical part of SiteOne's purchase, governs the land on which Garden Department's flagship store sits. The non-compete in the lease is a reasonable and essential means to ensure SiteOne's investment by protecting the value of the Coram property, which is geographically proximate to Garden Department's customer base.

Defendants contend that the geographic scope of the non-compete in the Coram Lease is unreasonable "due to its combination with the other leases." (ECF Doc. No. 98 p. 20.) Defendants provide **no legal authority** for this novel argument which appears to suggest that the Court should

3

aggregate the geographic scopes of legally separate and distinct lease agreements (the other two of which are not currently at issue in this case and are between different contracting parties which are not currently defendants in this case[1]) to determine the reasonableness of the Coram Lease's non-compete. Doing so would effectively ignore the intent of each lease agreement—protecting SiteOne's investment in the specific locations—and undermine and negate the protections afforded those assets specifically bargained for in each contract. There is no rational or logical basis to adopt such a radical approach.

As to duration, the non-compete runs during the term of the lease and for one year thereafter. (Am. Compl. ¶ 36; Ex. 2.) The Coram Lease is for an initial four-year term (January 1, 2020 to December 31, 2024), with SiteOne having the option to renew for three additional three-year terms. (*Id.*) Defendants argue that the resulting "up-to 14-year time restriction, which is left at the mercy of SiteOne, is unreasonable in duration." (ECF Doc. No. 98 p. 20.) This argument should be rejected, as New York courts have **routinely** enforced non-competes in lease agreements of much longer durations.

In addition to *Decker*, *supra*, *In re Hirschhorn*, 156 B.R. 379 (Bankr. E.D.N.Y. 1993), addresses a non-compete restriction lasting 14 years. In that case, a physician, via his company, leased office space from a property owner for his practice. The lease contained a non-compete restricting the lessee and its "officers, directors and shareholders" from opening another practice within six blocks during the term of the lease and for two years after its expiration. *Id.* at 382. The lease—together with the incorporated non-compete—began in 1983 and was renewed for a second seven-year term in 1990. *Id.* at 384. Then, in 1993 during bankruptcy proceedings, the physician left the space and started a practice across the street under a different entity. *Id.* at 382. The landlord sought a preliminary injunction to enforce the non-compete. *Id.* The Court granted the injunction request despite the physician's claims that this would

---

[1] The other two lease agreements referenced by Defendants are for Garden Department's Speonk and Dix Hills locations. The Speonk lease agreement is between SiteOne and 3 Girls 1 Boy LLC—which is not a party to this case. The Dix Hills lease agreement is between SiteOne and Don Caroleo Ventures LLC—also not a party to this case.

4

significantly impact his ability to earn a living. *Id.* at 385. The Court stated: "[I]t is abundantly clear that the restrictive covenant at issue is reasonable in duration and geographic scope." *Id.* That 14-year period is the identical to the non-compete in the Coram Lease.

Similarly, in *Deer Cross Shopping LLC v. Stop & Shop Supermarket Co.*, 2 Misc. 3d 401, 402 (Sup. Ct. N.Y. Cnty. 2003), the parties entered a 25-year commercial property lease with options to renew for three consecutive 10-year terms. The lease contained a covenant preventing the landlord from leasing any space to a supermarket. *Id.* The provision was found to be fully enforceable. *Id.* at 406. Other courts take a similar approach and routinely enforce non-competes in leases. In *Acme Markets, Inc. v. Wharton Hardware & Supply Corp.*, 890 F. Supp. 1230 (D.N.J. 1995), the District Court considered on summary judgment whether an indefinite noncompetition covenant originally contained in a deed executed in 1957 was enforceable 37 years later. *Id.* The original owners of a 111-acre farm sold a 12-acre parcel to a supermarket chain. *Id.* at 1235. The sale was conditioned on the original owners, "[their] heirs, and assigns" entering a non-compete prohibiting the remaining land from being leased or used for a supermarket. *Id.* The Court held: "[T]he covenant at issue was designed to last as long as the dominant estate operates a food market, we hold that the covenant was reasonable as to duration at the time the covenant was drafted." *Id.*; *Texhoma PEG Bandwidth TX, LLC v. Texhoma Fiber, LLC*, 299 F. Supp. 3d 836, 839 (E.D. Tex. 2018) (enforcing 30 year non-compete in lease agreement). The non-compete in the Coram Lease is reasonable as a matter of law.

The two cases Defendants cite in support of their argument regarding the duration of the non-compete do not involve lease agreements and, for that reason and others, fail to support their argument. Defendants first curiously cite *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 235 (S.D.N.Y. 2014), in which the court actually found the non-compete reasonable and enforceable.

In *Uni-World*, the defendant and his fellow stockholders sold their imitation-fragrance business to plaintiff. *Id.* at 211. In connection with that sale of business, defendant became the president and CEO of the new company and signed three-year and five-year non-compete agreements. *Id.* The defendant was subsequently fired from the new business. *Id.* Plaintiffs brought an action against defendant alleging fraud in connection with the sale of the business and for breach of contract for violating the non-compete agreements by working with two entities that competed with plaintiffs' business. *Id.* The plaintiffs filed a motion for a preliminary injunction to prevent defendant from competing with the business they acquired from him. *Id.* The defendant challenged the five-year non-compete as being excessive because the duration was equal to nearly one-third of his 15-year experience in the industry. *Id.* at 235. The Court rejected the defendant's argument and found that, "New York courts have found three to five year restrictions reasonable in the context of the sale of a business." *Id.* (citation omitted). While *Uni-World* involved a non-compete executed in connection with a sale of business, it was not in connection with a lease agreement. Further, the Court found the non-competes at issue to be enforceable. It is thus entirely unclear how a Court's finding that a five-year employment non-compete agreement executed in connection with the sale of a business supports Defendants' argument.

Defendants also cite *Martarello v. TLM Cover All Feed Supply*, 2020 N.Y. Misc. LEXIS 6382, at *8 (Sup. Ct., Suffolk Cnty. Feb. 4, 2020) for the same proposition as *Uni-World*. (ECF Doc. 98 p. 20.) In *Martarello*, the defendant executed a restrictive covenant in connection with her employment with plaintiffs. *Id.* at *2–3. The non-compete at issue in *Martarello* was for a ten-year term and did not include a geographic restriction. *Id.* The defendant was later terminated from her employment and formed a competing business. *Id.* at *3. The plaintiffs sought to enforce the non-compete agreement included in the defendant's employment agreement. *Id.* at *4. The Court in *Martarello* found that "[t]he ten year time restriction and the absence of a geographic restriction causes this covenant to be overly

broad and unreasonably burdensome to the employee without any justification by plaintiffs." *Id.* at *7. The problem with *Martarello* is that it involved a non-compete executed in the employment context and not within the context of a lease agreement. This is a material difference because, as fully briefed *infra*, in Section II, the standard applicable to employment non-competes is much different than the standard applied to other non-competes, particularly those in the sale of business and lease agreement contexts. Moreover, in *Martarello*, the non-compete at issue lacked any geographic scope whatsoever which is a significant and meaningful difference from the non-compete included in the Coram Lease, which is narrowly tailored to the specific geographic area around SiteOne's Coram location.

Defendants' position with respect to the reasonableness of the non-competes are thus non-starters and should be given short shrift by this Court.

## II. The "Reasonableness" Standard Applies to the Coram Lease Non-Compete.

Defendants argue that, despite the non-compete agreement at issue in the Coram Lease being executed as part of the sale of Garden Department to SiteOne, it should be subject the heightened judicial scrutiny applicable to non-compete provisions in employment agreements because at some point after the Coram Lease was signed Vic was hired by his son, Don, as an employee of SiteOne. (ECF Doc. No. 98 p. 12, n. 12.) This argument is not only illogical, but it is neither legally nor factually supported.

There is no dispute that New York courts apply a stricter standard to covenants between employees and employers as compared to those in the sale-of-business context. *See e.g.*, *Juniper Ent., Inc. v. Calderhead*, 2007 WL 9723385, at *6 (E.D.N.Y. Aug. 17, 2007) ("Covenants not to compete usually arise in two different contexts: in connection with the sale of a business and as adjunct to an employer-employee relationship. Each is given a different analysis."). Here, however, no facts in this case—and no language in the Coram Lease—suggest that the Coram Lease and its non-compete were made or entered into in connection with Vic's future employment by SiteOne. Nothing in Coram Lease

7

mentions Vic being employed by SiteOne. Nothing in the Coram Lease restricts Vic in his employment or from working for a competitor.[2] The Coram Lease was and is not connected to Vic's past, present, or future employment. Thus, there is no basis for this Court to apply to the stricter standards applicable to non-competes in the employment context to the Coram Lease.

Rather, the Coram Lease was executed and became effective simultaneously with the asset purchase agreement. (ECF Doc. Nos. 1-1, 1-2.) There is no reasonable doubt that the Coram Lease was entered into in connection with the sale of Garden Department to SiteOne. Any argument by Vic that the Coram Lease and its non-compete provision were not ancillary to the asset purchase is disingenuous. The Coram Lease specifically references and discusses its connection with the asset purchase agreement (Coram Lease §§ 9.1, 9.2, 24.1) and incorporates several definitions and other components from the asset purchase agreement into the Coram Lease. (Coram Lease § 24.9.) And Vic is a direct beneficiary of the sale which afforded him the opportunity to lease his property to SiteOne, a necessary element of the sale, and collect hundreds of thousands of dollars in rent payments.

Restrictive covenants are ancillary to the sale of a business when they are executed contemporaneously with the sale. *See e.g.*, *Weiser LLP v. Coppersmith*, 859 N.Y.S.2d 634, 635 (1st Dep't 2008) (finding restrictive covenant ancillary to a merger agreement where the partnership agreement including the covenant referenced the merger agreement and was signed simultaneously with it). **Non-competes executed in the sale-of-business context "will be enforced if the covenant is 'reasonable,' that is, not more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought."** *Intertek Testing*, 443 F. Supp. 3d at 336–37; *see also DAR & Assocs., Inc. v. Uniforce Servs., Inc.*, 37

---

[2] Vic is instead restricted from leasing or making available any land or building to any person or business entity engaging in a business activity that competes with SiteOne within 10 miles of SiteOne's Coram location during the lease and for 12 months thereafter. (Am. Compl. ¶ 36; Ex. 2.)

F. Supp. 2d 192, 197 (E.D.N.Y. 1999) ("[r]easonable restrictive covenants ancillary to the sale of a business are routinely enforced to protect the goodwill paid for by the purchaser."). This is the appropriate standard for this Court to apply.

New York courts routinely enforce non-compete agreements in connection with the sale of a business involving "the transfer of its good will as a going concern." *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 336–37 (E.D.N.Y. 2020) (entering preliminary injunction for breaching non-compete in connection with the sale of a business). This is because a buyer of a business should be permitted to restrict the sellers to prevent the latter from recapturing and utilizing the good will of the business which was sold for value. *Id.* (internal citation omitted).

Defendants cite a single but easily distinguishable case, *Herndon v. Waller*, 525 S.E.2d 159 (Ga. Ct. App. 1999), in support of applying the heightened standard. In *Waller*, a lessee signed a lease with a non-compete restricting his ability to operate as a veterinarian within 15 miles for two years after the lease ended. *Id.* at 160. The Court acknowledged the differing standards applied to non-competes in employment agreements versus sales of business but found that the covenant "did not fit neatly into either category." *Id.* The Court explained that "the rationale behind the distinction in analyzing" non-competes in employment contracts and those in contracts stems from the parties' bargaining power. *Id.* The Court in *Waller* applied the heightened standard because the unusual non-compete restricted the lessee and not the lessor, and because the lessee received no consideration for his covenant not to compete. *Id.* at 160–61. The Court held "[t]hese distinctions justify the application of a higher level of scrutiny." *Id.* No such justifications exist to apply a heightened level of scrutiny here, since (1) the Coram Lease was executed in conjunction with SiteOne's $30+ million purchase of Garden Department between sophisticated business parties, and (2) the non-compete restricts the seller-side parties who are receiving $15,000 per month in rent from SiteOne.

The terms of the Coram Lease are entirely reasonable and are narrowly tailored to protect SiteOne's interests. Vic's status as an employee of SiteOne following the asset purchase is irrelevant, as the restrictive covenant contained in the Coram Lease would apply to, and be enforced equally against, any other individual or entity serving as the Landlord under the Coram Lease or deemed to be the Landlord's beneficiary in similar circumstances—regardless of their employment (or lack thereof) with SiteOne. As such, Defendants' argument to the contrary is meritless.[3]

## CONCLUSION

SiteOne has established a likelihood of success on the merits of its claim, and this Court should grant SiteOne's request for a preliminary injunction.

Dated:  December 7, 2023

                                                           TROUTMAN PEPPER
                                                         HAMILTON SANDERS LLP

                                                         By: *John S. Gibbs III*

                                                         John S. Gibbs III (admitted *pro hac vice*)
                                                         600 Peachtree Street, NE, Suite 3000
                                                         Atlanta, Georgia 30308
                                                         Phone: (404) 885-3000
                                                         email: evan.gibbs@troutman.com

                                                         Daniel E. Gorman
                                                         875 Third Avenue
                                                         New York, New York 10022
                                                         Phone: (212) 704-6000
                                                         email: daniel.gorman@troutman.com

                                                         *Attorneys for SiteOne Landscape Supply, LLC*

---

[3] In an apparent effort to gain sympathy from this Court, Defendants' briefing to date disingenuously refers to Vic's right to "earn a livelihood," using that phrase and other descriptors to paint Vic as a blue-collar worker trying to put food on the table who is being pushed around by a sinister corporate bully. This could not be further from the truth. A cursory Google search for Vic Caroleo and his public social media profiles evidence Vic's over-the-top, opulent lifestyle, complete with lavish homes in New York and Florida, high-end luxury cars, frequent air and other travel, along with other extravagances. Vic—again, who's company is receiving $15,000/month in rent from SiteOne—is far from the put upon worker deserving of sympathy as "the little guy" he paints himself to be.