# EXHIBIT D

## LEASE AGREEMENT
(Single Tenant)

**THIS LEASE AGREEMENT** ("**Lease**") dated January 14, 2020 (the "**Effective Date**") by and between **NARROW WAY REALTY LTD.**, a New York corporation ("**Landlord**") and **SITEONE LANDSCAPE SUPPLY, LLC**, a Delaware limited liability company ("**Tenant**").

### W I T N E S S E T H:

**THAT FOR AND IN CONSIDERATION** of the mutual covenants and agreements herein contained, the parties hereto do hereby covenant and agree as follows:

**1.**   **BASIC TERMS**. This **Section 1** contains the Basic Terms of this Lease between Landlord and Tenant. Other Sections of this Lease may further explain the Basic Terms and are to be read in conjunction with the Basic Terms. Unless separately defined elsewhere in this Lease, the Basic Terms shall have throughout this Lease the meanings set forth below.

**1.1.**   **Land**. That certain tract or parcel of real property consisting of approximately 8.62 acres and those certain tax parcels described on **Exhibit A** hereto attached and herein incorporated, but excluding the areas shaded in yellow on **Exhibit B** (the "**Excluded Parcels**").

**1.2.**   **Premises**. The Land together with all improvements thereon located, including, but not limited to, the Building (as defined below), the Outside Storage (as defined below) and all parking areas, together with all easements, rights and appurtenances thereto.

**1.3.**   **Building**. The buildings located on the Land and having a primary street address of 3672 New York State Route 112, Medford, New York 11763 (the "**Building**"), a site plan of which is attached hereto as **Exhibit B**.

**1.4.**   **Outside Storage**. The fenced outside storage area located on the Land (the "**Outside Storage**"), as depicted on the site plan attached hereto as **Exhibit B**.

**1.5.**   **Lease Term**. Subject to **Section 2.2** herein, the period, commencing on the Effective Date ("**Lease Term Commencement Date**") and expiring at 11:59 p.m. on December 31, 2024 ("**Expiration Date**"), as may be extended pursuant to any Options to Renew herein provided ("**Term**").

**1.6.**   **Permitted Uses**. Warehousing, distribution, office, wholesale related to nursery sales, horticultural supplies distribution, landscaping, hardscaping, and irrigation products, including, without limitation, exterior/outside storage (See **Section 6.1**). Landlord acknowledges that some of the products to be stored and sold at the Premises by Tenant are classified as Hazardous Materials (as defined in **Section 6.3**), and Landlord consents to the foregoing use of the Premises by Tenant and agrees that such use shall not constitute a violation of any of Tenant's covenants set forth in this Lease, provided that Tenant complies with all Environmental Laws (as defined in **Section 6.3**).

**1.7.**   **Brokers**. (See **Section 22**)

(a)     Tenant's Broker: N/A
(b)     Landlord's Broker: N/A

**1.8.    Rent**.

(a)     Base Rent. Base Rent payable by Tenant is as follows:

| Rent Period | Monthly Base Rental | Period Base Rental |
|---|---|---|
| Lease Term Commencement Date – December 31, 2020 | REDACTED | |
| January 1, 2021 – December 31, 2021 | | |
| January 1, 2022 – December 31, 2022 | | |
| January 1, 2023 – December 31, 2023 | | |
| January 1, 2024 – December 31, 2024 | | |

(b)     Landlord's ACH Account Information.

Bank Name:     Sterling National Bank
                       2775 Route 112
                       Medford, NY 11763
ABA Routing No.: REDACTED
Bank Account No.:
Landlord Entity Name for Payment: Dominick Caroleo
Landlord Reference Contact (Name and Email): Dominick Caroleo
(doncaroleo5484@gmail.com).

**1.9.    Option(s) to Renew**. Tenant shall have three (3) consecutive Option(s) to Renew the Lease, subject to the limitations set forth in **Section 2.2**, for three (3) years each (any such option period (a "**Renewal Term**"), if exercised, shall then be deemed part of the Term, and the Expiration Date automatically shall be adjusted to be the last day of any exercised option period), provided that the Base Rent shall be increased by five percent (5%) as of the first day of each Renewal Team.

**1.10.    Exhibits to Lease**. The following exhibits are attached to and made a part of this Lease.

1.     **Exhibit A:**     Legal Description of Land
2.     **Exhibit B:**     Site Plan
3.     **Exhibit C:**     Memorandum of Lease Form

**2.     LEASE OF PREMISES; RENT**.

**2.1.    Lease of Premises for Term**. Landlord hereby grants a leasehold estate in, and leases the Premises solely and exclusively to Tenant, and Tenant hereby leases the Premises from Landlord, together with the right to use the easements appurtenant to the Premises, for the Term and subject to the conditions of this Lease, in their present AS-IS condition with no representation or warranty by the Landlord as to the condition of the Premises or their suitability or fitness for any particular use or purpose, except as specifically set forth herein. This Lease shall become effective upon the Effective Date

2

and shall expire on the Expiration Date, unless otherwise terminated or extended.  This is a triple net lease.

**2.2.** **Option(s) to Renew**. Landlord hereby grants to Tenant the Option(s) to Renew the Term described in **Section 1.9**, for the periods and at the Base Rent therein described. Tenant may exercise an Option to Renew only by delivering written notice of its election to so exercise to Landlord not less than one hundred eighty (180) days prior to the expiration of the then existing Term, and provided that Tenant is not in default of this Lease beyond any applicable notice and cure period. The leasehold estate during any exercised Option to Renew shall be subject to all of the terms and provisions of this Lease.

**3.** **RENT AND OTHER CHARGES PAYABLE TO LANDLORD.**

**3.1.** **Types of Rental Payments**. Tenant shall (a) pay Base Rent in advance on the first (1st) day of each and every calendar month during the Term of this Lease, unless otherwise specifically noted herein, and (b) reimburse Landlord for Taxes (herein defined) and any other amounts herein identified as Additional Rent ("**Additional Rent**") in accordance with the provisions of this Lease (Base Rent and Additional Rent shall collectively be referred to as "**Rent**").

**3.2.** **Covenants Concerning Rental Payments**. Tenant shall pay Rent promptly when due, beginning on the Effective Date, without notice or demand and without any abatement, deduction, or setoff, except as may otherwise be expressly and specifically provided in this Lease. Tenant shall pay Rent at the location identified herein for notices to Landlord, or at or to such other place as Landlord shall give notice to Tenant in writing, except for those amounts of Additional Rent which Tenant shall pay directly to third parties as herein described. If the Effective Date and/or Expiration Date or date of prior termination of this Lease occurs on a day other than the first or last day of a calendar month, respectively, the Rent due for such partial month shall be prorated on a per diem basis based on the actual number of days in such month occurring during the Term.

**3.3.** **Taxes**.

**3.3.1.** **Tenant's Obligation to Pay Taxes**.  Subject to Tenant's obligation to reimburse Landlord as set forth in **Section 3.3.2** below, Landlord shall promptly pay all real estate taxes, assessments, and charges due and payable relating to the Premises ("**Taxes**") throughout the Term, subject to the respective rights to challenge Taxes as herein provided. "Taxes" shall be defined as real estate taxes, assessments, sewer rents, rates and charges, transit taxes, taxes based upon receipt of rent, and any other federal, state or local government charge, general, special, ordinary or extraordinary, which are levied or assessed during the Term against the Premises or any portion thereof, and are payable in any calendar year during the Term and any tax in substitution of any of the foregoing. With respect to real estate taxes, "Taxes" shall be defined as those real estate taxes that are assessed against the Premises, or any portion thereof, for the calendar year to which they are applicable without regards to when they are due and payable. Notwithstanding anything herein to the contrary, Taxes shall not include any franchise, margin, capital, stock, transfer, inheritance or income tax, late payment charges, interest and penalties imposed on Landlord. In no event shall Tenant be responsible or be required to pay or contribute to the payment of any Taxes applicable to the period prior to the Effective Date or after the Expiration Date. The parties acknowledge and agree that Tenant is not liable hereunder for the portion of any Taxes attributable to the Excluded Parcels, or for any improvements or other fixtures thereon. The parties agree that, as of the date hereof, 80% of any Taxes with respect to the tax parcel with Tax ID 0200476000200028001 will be deemed to be attributable to the Premises and 60% of any Taxes with respect to the tax parcel with Tax ID 0200476000200023000 will be deemed to be attributable to the Premises. In the event of any future alterations or improvements (whether affecting the Premises or the

3

Excluded Parcels), the parties agree to equitably adjust the Tenant's portion of such Taxes to reflect the fair value of the Premises relative to the fair value of the entire parcel and improvements.

   **3.3.2.   Tenant's Obligation to Reimburse for Taxes**. Tenant shall reimburse to Landlord as Additional Rent, Tenant's share of the Taxes, as set forth below. On or about January 1 of each year of the Term, Landlord will provide Tenant with an estimate of the Taxes for the Premises for the upcoming year. Tenant will pay Landlord, $1/12^{th}$ of the such estimated Taxes on or before the first day of each calendar month during such year, commencing on January 1, in the same manner as Base Rent is payable hereunder. On or before April 1, of each calendar year, or within ninety days of the expiration or termination of the Lease, Landlord will provide Tenant with a reconciliation showing the Taxes paid by Tenant, and the actual Taxes due and owing and attributable to the prior calendar year. Tenant will promptly pay to Landlord any under payment of Taxes by Tenant for such prior calendar year. Any overpayment of Taxes by Tenant will either be applied to the next ensuing payment(s) of estimated Taxes, or refunded to Tenant at the end of the Term. In the event that the Premises incur any Taxes during the Term, whether special assessments or otherwise, which are payable in installments, calculation of Tenant's liability for such Taxes shall be calculated by treating such Taxes as due and payable over the longest period of installments allowable, regardless of when Landlord actually pays such Taxes. Tenant's obligations to pay Taxes will survive expiration or termination of this Lease.

   **3.4.   Notification of Increase; Right to Challenge**. Landlord or Tenant may elect, upon reasonable grounds and at such party's sole cost and expense, to contest the amount or validity of any Taxes assessed, and the other party shall cooperate in good faith with the efforts to this end, provided that the party initiating the challenge shall pay all out-of-pocket expenses of the non-initiating party.

   **3.5   ACH Payments**. Notwithstanding anything contained in this Lease to the contrary, Tenant shall have the right, in its sole discretion, to pay Base Rent, Additional Rent, and/or any other charges due hereunder by electronic transfer as an Automated Clearing House ("**ACH**") transaction. Landlord shall, upon Landlord's execution of this Lease, promptly execute and deliver to Tenant any documents, instruments, authorizations, or certificates required by Tenant to effectuate ACH transfers pursuant to which Tenant shall be authorized and enabled to make all payments owed by Tenant of whatsoever nature required or contemplated by this Lease. Any such ACH transfers shall be paid by Tenant from Tenant's account in a bank or financial institution designated by Tenant and credited to Landlord's bank account as Landlord shall have designated in Landlord's ACH Account Information in **Section 1.8(b)** herein. If Tenant shall so choose to pay Base Rent, Additional Rent, and/or any other charges due hereunder by ACH transfer, then Tenant shall not be in default of Tenant's obligation to pay Rent if and for so long as Tenant shall timely comply with ACH transfer requirements. Accordingly, if Tenant shall have timely complied with ACH transfer requirements, but the applicable funds shall thereafter have been misdirected or not accounted for properly by the recipient bank designated by Landlord, then the same shall not relieve Tenant's obligation to make the payment so transferred, but shall toll the due date for such payment until the applicable funds shall have been located and deposited in Landlord's bank account. In the event that Landlord elects to designate a different bank or financial institution into which any ACH transfer is to be deposited, notification of such change and the required documents, instruments, authorizations, and any modified Landlord's ACH Account Information specified in **Section 1.8(b)** herein must be received by Tenant no later than thirty (30) days prior to the date such change is to become effective.

   **4.   UTILITIES AND ADDITIONAL SERVICES**.

   **4.1.   Utilities**. Tenant shall contract for utility service in its own name and shall be solely responsible for paying for such utility service. Tenant shall have no obligation to pay for any utility service to the Premises other than that for which Tenant itself contracts. If any utilities are not separately

metered for Tenant's sole use, and utility usage by any other tenant or utility user is not consistent with practices prevailing prior to the date of this Lease, Landlord shall cause such utilities to be separately metered or submetered, at Landlord's cost.

**4.2.   Minimum Bandwidth**. Landlord shall cause the Premises to include the infrastructure needed to support a broadband Internet access connection with a minimum bandwidth of 50 mpbs download x 10mpbs upload or greater (the "**Required Bandwidth Infrastructure**"). If the Required Bandwidth Infrastructure does not currently exist for the Premises, then Landlord, at Landlord's sole cost and expense, shall construct, install and otherwise improve the Premises with the wires, cables, and associated equipment necessary to provide the Premises with the Required Bandwidth Infrastructure. If Landlord fails to complete such improvements needed to provide the Premises with the Required Bandwidth Infrastructure promptly after the Effective Date, then Tenant may complete such improvements and deduct the costs thereof from sums due Landlord hereunder.

**5.   WARRANTIES AS TO THE LAND, BUILDING AND PREMISES**. Landlord and each Property Owner, as applicable, covenants and warrants that: (a) it has not received notice from any governmental entity of a violation of zoning regulations or restrictive covenants affecting the Land; (b) the Premises and the Building are in good condition; (c) the Premises are currently serviced by (and separately metered from any other property for) basic utilities including water, sewer, electricity, gas and telephone service, and the conduits and wiring for the provision of electricity provide a minimum current that is customary for the Permitted Uses; (d) all utilities serving the Premises are separately metered and invoiced from any utilities serving the Excluded Parcels (e) to the best of Landlord's knowledge, the mechanical, electrical, sanitary, HVAC, plumbing, lighting or other systems of the Premises (collectively, the "Mechanical Systems") are fully operational and in good working order; (e) to the best of Landlord's or such Property Owner's knowledge, all prior owners, occupants, and users of the Premises and any portion thereof have operated the Premises and all portions thereof in strict compliance with all Environmental Laws (herein defined); to the best of Landlord's or such Property Owner's knowledge, there are no existing, pending, or threatened claims or actions by any governmental entity affecting the Premises or any portion thereof; and, to the best of Landlord's or such Property Owner's knowledge, no Hazardous Materials (herein defined) have been generated, transported, stored, used, treated, released, or disposed of at, to, from, on or in the Premises except in strict compliance with all Environmental Laws; (g) Landlord and each Property Owner, as applicable, has good and lawful title to the Land, has the power and authority to enter into this Lease, and has not entered into any other lease, occupancy agreement, license, or other agreement which would undermine Tenant's rights under this Lease; (e) it is not aware that any action for condemnation or eminent domain has been instituted that would materially affect the Premises; and (f) neither Landlord nor any Property Owner is not in default under any mortgage lien on the Premises or any portion thereof.

**6.   USE OF PREMISES; COMPLIANCE WITH LAWS**.

Case 2:23-cv-02084-GRB-SIL   Document 125-4   Filed 05/09/24   Page 6 of 32 PageID #: 1277

**6.1   Use of Premises**. Tenant may only use the Premises for any purpose(s) set forth in **Section 1.6** above, subject to those restrictions, liens and easements, if any, disclosed to Tenant in writing prior to the Effective Date of this Lease or which are on the public records. Tenant may use and shall have access to the Premises twenty-four (24) hours a day, seven (7) days a week. Tenant shall not at any time use or occupy the Premises, or do anything in or on the Premises that (a) violates any Certificate of Occupancy for the Premises; (b) causes material waste to all or any portion of the Premises or any equipment, facilities or systems therein; or (c) constitutes a violation of any Laws applicable to the Premises, subject to Landlord's obligations for ensuring compliance with Laws set forth in **Section 6.2**. In no event shall Tenant be required to continuously operate its business in the Premises. Tenant shall have the right to remove Tenant's Property (as defined herein) from the Premises and cease operations in the Premises at any time and in Tenant's sole discretion. However, the right to cease to operate its business in

the Premises shall not affect Tenant's obligation to pay Rent and to perform all obligations and covenants of Tenant set forth in this Lease.  Landlord hereby grants to Tenant, at no additional cost to Tenant, an exclusive license to store equipment, materials, inventory, and other personal property in the basement of the building located on that certain Excluded Parcel identified by Tax ID 0200476000200028001 (the "Storage Space") consistent with past practices.  The term of such license shall be coterminous with the Term of this Lease. Tenant may use and shall have access to the Storage Space twenty-four (24) hours a day, seven (7) days a week.  Tenant shall use the Storage Space in a manner which does not unreasonably interfere with tenants in such building.

**6.2.   Compliance with Laws**. Landlord shall, at its expense, ensure that the Premises at all times comply with all local, state and federal laws (including, but not limited to, the Americans with Disabilities Act), rules, regulations and requirements now or hereafter in force and all judicial and administrative decisions pertaining thereto (collectively, "**Laws**"), relating to the Premises. Without limiting the generality of the foregoing, Landlord shall, at its expense, cure any existing violations of the applicable fire and safety code promptly upon the request of Tenant.  Notwithstanding the foregoing, if (i) Tenant makes alterations or improvements to the Premises that are not necessary for the continued operation of the Premises as a nursery sales center and such alterations or improvements cause the Premises to lose any non-compliant but "grandfathered" status under any Laws, or (ii) Tenant's unique use of the Premises invokes the applicability of any Laws that otherwise would not relate to the Premises, then, in either case, Tenant shall, at its expense, ensure that the Premises at all times comply with such Laws; provided, however, that to the extent Tenant's unique use has not varied from practices prevailing prior to the date of this Lease and such compliance requires Tenant to make Alterations (herein defined) or other expenditures on the Premises in excess of a sum equal to three (3) months' Base Rent, then Tenant shall have the right to terminate this Lease upon thirty (30) days' prior written notice to Landlord unless Landlord elects to pay the cost of compliance in excess of a sum equal to three (3) months' Base Rent by written notice to Tenant within such thirty (30) day period and such compliance does not unreasonably interfere with Tenant's use and occupancy of the Premises.

**6.3.   Hazardous Materials**. If during the Term any Hazardous Material (defined below) is generated, transported, stored, used, treated, released, or disposed of at, to, from, on or in the Premises by or as a result of any act or omission of Tenant, then Tenant shall, at its expense, at all times comply with all Environmental Laws, and Tenant shall further, at its expense, obtain and maintain in full force and effect at all times all permits and other approvals required in connection therewith. Tenant covenants to investigate, clean up and otherwise remediate to the extent required by any Environmental Laws, at Tenant's expense, any release of Hazardous Materials caused or created during the Term by Tenant and/or any or all of Tenant's officers, directors, agents, or employees. Such investigation and remediation shall be performed only after Tenant has obtained Landlord's prior written consent; provided, however, that Tenant shall be entitled to respond immediately to an emergency without first obtaining such consent. Tenant shall not enter into any settlement agreement, consent decree or other compromise with respect to any claims relating to any Hazardous Materials in any way connected to the Premises without first obtaining Landlord's written consent (which consent Landlord shall not unreasonably withhold, condition, or delay) and affording Landlord the reasonable opportunity to participate in any such proceedings.  As used herein, the term "**Environmental Laws**" shall mean any and all applicable laws, regulations, and judicial opinions (federal, state, and local) pertaining to Hazardous Materials or that otherwise deal with, or relate to, air or water quality, air emissions, soil or ground conditions or other environmental matters of any kind; and "**Hazardous Materials**" shall mean any waste, material or substance (whether in the form of liquids, solids or gases, and regardless of whether air-borne) that is or may be deemed to be or include a pesticide, petroleum, asbestos, polychlorinated biphenyl, radioactive material, urea formaldehyde or any other pollutant or contaminant that is or may be deemed to be hazardous, toxic, ignitable, reactive, corrosive, dangerous, harmful or injurious, or that presents a risk to public health or to the environment, and that is or becomes regulated by any Environmental Law.

6

6.4    <u>Intentionally Omitted</u>

6.5    **<u>Non-Competition Covenant</u>**. During the Term of this Lease, Landlord shall not buy, sell, lease, license or otherwise make available any land or building either now controlled by Landlord or which becomes subject to Landlord's control after the Effective Date of this Lease within ten (10) miles of the Premises, as measured from the closest property line of the Premises to the closest property line of the competing property (the "**Competing Property**"), to any person or business entity that engages in a business activity that includes the sale of landscapes, pavers, stone, concrete, or other landscape materials (including rock, gravel, mulch, bark, topsoil, compost and sand, irrigation/drainage products, turf care products (i.e. fertilizers and control products), grass seed, and/or turf care equipment (i.e. mowers, sprayers, spreaders, turf renovators, hand-held power equipment, etc.)). This covenant shall be binding upon Landlord and Landlord's successors, assigns, or beneficiaries during the Term of this Lease and shall survive any expiration or termination of this Lease for a period of twelve (12) months. If Landlord is found to be in default of this **Section 6.5**, Tenant shall immediately notify Landlord in writing of said default and shall identify the Competing Property by name in the written notice. If Landlord does not cure the breach of this covenant within thirty (30) days after receipt of the written notice, then Tenant shall be entitled to exercise and pursue all rights and remedies available at law or in equity (including, but not limited to, an action for injunctive relief). In addition, Tenant shall have the right to elect to pay, in lieu of Base Rent, substitute rent equal to fifty percent (50%) of the Base Rent payment per month until the violation of the foregoing restriction is satisfied, at which time Tenant shall again pay to Landlord Base Rent and all other rents and charges provided under this Lease. All rights and remedies of Tenant created herein or otherwise existing at law or in equity are separate, distinct and cumulative rights and remedies and the exercise of one or more rights or remedies shall not be taken to exclude or waive the right to exercise any other. **IF LANDLORD BREACHES THE COVENANT SET FORTH IN THIS SECTION 6.5 DURING THE TWELVE (12) MONTH PERIOD FOLLOWING THE TERMINATION OR EARLIER EXPIRATION OF THIS LEASE, LANDLORD SHALL PAY TO TENANT TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) WITHIN TEN (10) DAYS AFTER TENANT PROVIDES WRITTEN NOTICE OF THE BREACH TO LANDLORD. LANDLORD AND TENANT AGREE THAT THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT IF LANDLORD BREACHES THE COVENANT SET FORTH IN THIS SECTION 6.5 DURING THE TWELVE (12) MONTH PERIOD FOLLOWING THE TERMINATION OR EARLIER EXPIRATION OF THIS LEASE WOULD BE EXTREMELY DIFFICULT IF NOT IMPOSSIBLE TO ASCERTAIN AND THAT THE AMOUNT OF TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) IS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT AND THAT SUCH SUM REPRESENTS LIQUIDATED DAMAGES AND NOT A PENALTY.**

**7.    REPAIRS AND MAINTENANCE; ENCROACHMENTS**.

**7.1.    Tenant Repairs and Maintenance**. Except for the repair and maintenance obligations of Landlord set forth in **Section 7.2** herein, and subject to **Sections 13** and **14** herein, Tenant shall, at its own cost and expense, (a) maintain in good condition and repair the interior of the Premises, including, but not limited to, the mechanical, electrical, sanitary, HVAC, plumbing, lighting or other systems of the Premises (collectively, the "**Mechanical Systems**"), fixtures, non load-bearing interior walls, wall finishes, floor coverings (but not floors), ceilings, non load-bearing columns, truck docks and doors, dock bumpers, dock plates, levelers, entrance doors, door jams, lighting fixtures, lamps, fans and any exhaust equipment and systems, electrical motors, and all other appliances and equipment and systems (including, without limitation, dock levers, dock shelters, dock seals and dock lighting) of every kind and nature located in, upon or about the Premises; (b) keep the Premises in a clean, safe and sanitary condition, including, but not limited to, providing its own janitorial service and garbage collection and including keeping the Premises free from any garbage and refuse; (c) be responsible for keeping the

grounds of the Premises reasonably mowed, trimmed and free from overgrowth of vegetation; (d) perform any reasonably necessary snow and ice removal; and (e) keep all gravel areas reasonably well graded and, as needed, replace the same to their condition as of the Effective Date. Landlord shall not be responsible for the expense of any repairs, claims for which Tenant has waived pursuant to **Section 10.3** hereof. Notwithstanding anything to the contrary in the Lease, Tenant shall have no obligation to improve the Premises or Mechanical Systems beyond the condition in which they existed as of the Lease Term Commencement Date.

**7.2.   Landlord Repairs and Maintenance**. Landlord shall, at its expense throughout the Term, (a) maintain, repair, replace and restore the foundation, flooring (but excluding floor covering), exterior and interior load-bearing walls, and roof and roof structure of the Building and all other structural elements of the Building; and   (b) repair, replace, and maintain the fire suppression system in the Building, if any; (c) complete replacement of any of the Mechanical Systems (including, without limitation, the HVAC system) if and to the extent required if the applicable Mechanical System has outlived its useful life (as determined by generally accepted accounting principles) or if Tenant's HVAC vendor reasonably recommends replacement of the HVAC. Landlord agrees both to commence the maintenance, repairs, replacements or restoration described in this **Section 7.2** with reasonable promptness and to diligently pursue same and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises. Notwithstanding the foregoing, Tenant shall be responsible for the expense of any repairs to the Premises (or to any items of personal property owned by Landlord and located on the Premises) if the need for such repairs results from Tenant's negligence; provided, however, that Tenant shall not be responsible for the expense of any repairs, claims for which Landlord has waived pursuant to **Section 10.3** hereof.  Tenant will promptly reimburse Landlord for the cost of any maintenance, repairs or replacements which are Landlord's responsibility pursuant to this **Section 7.2**, the cost of which is amortized on a straight line basis over a period equal to the useful life thereof under generally accepted accounting principles. Such reimbursement will be made by Tenant in equal monthly payments over the remaining balance of the Term (including any renewals) upon invoice from Landlord. By way of example only, if Landlord spends $120,000 to replace the roof at the Premises, which cost can be amortized under generally accepted accounting principles over twenty years, then Tenant will reimburse Landlord for $6,000 of such cost for each year remaining in the Term, payable $500 per calendar month.

**7.3.   Encroachments**. If any of the improvements located on the Premises shall, at any time, encroach upon any property, street or right-of-way adjacent to the Premises, or shall impair the rights of others under any easement or right-of-way to which the Premises is subject, and objections are raised by any person affected by any such encroachment or impairment, then Landlord shall, at its expense, subject to its right to contest the existence of any encroachment or impairment and in such case, in the event of any adverse final determination, either (i) obtain valid and effective waivers or settlements of all claims, liabilities and damages resulting from each such encroachment or impairment or (ii) make such changes in such improvements, and take such other actions, as Landlord in good faith exercise of its judgment deems reasonably practicable, to remove such encroachment, and to end such impairment, including, if necessary, the alteration of any of the improvements, and take all such actions as may be necessary in order to be able to permit the continued operation by Tenant of such improvements for the Permitted Uses substantially in the manner and to the extent such improvements were operated prior to the assertion of such violation or encroachment.

**8.   ALTERATIONS; SIGNAGE**.

**8.1.   Procedural Requirements**. Tenant may, from time to time, at its expense, make alterations or improvements in and to the Premises (hereinafter collectively referred to as "**Alterations**") without acquiring the prior written consent of Landlord in each instance, provided that: (a) the Alterations

are non-structural and the structural integrity of the Building shall not be affected; (b) the Alterations are to the interior of the Premises or to any exterior storage area; or (c) the proper functioning of the Mechanical Systems is not impaired. For any other Alterations, Tenant shall be required to obtain the prior written consent of Landlord, which consent Landlord shall not unreasonably withhold, condition, or delay. If Tenant makes written request for any Alterations requiring Landlord's prior written consent, such request must be accompanied by a description of the proposed Alterations. If Landlord fails to deny consent to the proposed Alterations in writing accompanied by reasons for such denial within ten (10) days of Tenant's request, then Landlord shall be deemed to have denied consent to the Alterations described. After obtaining Landlord's consent for any Alterations (either expressly or by inference), Tenant shall give Landlord at least five (5) days' prior written notice of the commencement of any Alterations at the Premises, and Landlord may elect to record and post notices of non-responsibility at the Premises. Landlord hereby consents and agrees that Tenant shall have the right to use the existing security system in the Premises.

**8.2.   Performance of Alterations**. Tenant shall cause all Alterations to be performed in compliance with all applicable permits, Laws, building codes, and requirements of public authorities. Tenant shall cause all Alterations to be diligently performed in a good and workmanlike manner, using materials and equipment at least equal in quality and class to the materials and equipment existing on the Premises at the time the Alterations are commenced. Tenant shall obtain all necessary permits and certificates necessary for constructing any Alterations and shall provide Landlord with copies of all "as built" plans (if any), construction contracts, governmental permits and certificates, and proof of payment for all labor and materials, including, without limitation, copies of paid invoices and final lien waivers.

**8.3.   Lien Prohibition**. Tenant shall pay when due all claims for labor and material furnished to the Premises in connection with any Alterations by Tenant. Tenant, at its expense, shall procure the satisfaction or discharge of record of any material liens and encumbrances filed in connection with any Alterations by Tenant within fifteen (15) days after the filing thereof or, in the alternative, Tenant may procure (for Landlord's benefit) a bond or other protection against any such lien or encumbrance.

**8.4.   Signage**. Tenant may affix any sign of any size or character to any portion of the Premises, without prior written consent of Landlord, provided said sign shall be in compliance with all applicable laws and ordinances; provided, however, that Tenant shall remove all signs of Tenant's upon the expiration or earlier termination of this Lease. Upon Tenant's removal of signage, Tenant shall repair any damage to the Premises caused by, or resulting from, such removal.

**9.   LANDLORD'S AND TENANT'S PROPERTY**.

**9.1.   Landlord's Property**. Upon the expiration or prior termination of this Lease, any Alterations to the Premises, other than business and trade fixtures, machinery and equipment, communications and computer equipment and office equipment which Tenant may remove in accordance with this Lease, shall remain and be deemed part of the Premises and the property of Landlord ("**Landlord's Property**"), without compensation or credit to Tenant, and Tenant shall not be required by Landlord to remove same from the Premises except Landlord can require removal. Further, any personal property in the Premises on the Effective Date, movable or otherwise, unless installed and paid for by Tenant or included in the Purchased Assets (as defined in the Purchase Agreement), shall be and shall remain the property of Landlord and Tenant shall not be required to remove the same from the Premises. Notwithstanding anything herein to the contrary, Tenant, at Tenant's election, may remove Tenant's Property from the Premises without the prior written consent of Landlord.

      **9.2.**    **Tenant's Property**. All moveable, non-structural partitions, business and trade fixtures, machinery and equipment, communications equipment and office equipment that are installed in the Premises by, or for the account of, Tenant and without expense to Landlord and that can be removed without structural damage to the Premises, and all furniture, furnishings and other articles of movable personal property owned by Tenant and located in the Premises, including without limitation, all of the Purchased Assets (collectively, the "**Tenant's Property**") shall be and shall remain the property of Tenant and may be removed by Tenant at any time during the Term, provided Tenant repairs or pays the cost of repairing any damage to the Premises resulting from the installation and/or removal thereof. Any other items of Tenant's Property that shall remain in the Premises after the Expiration Date, or following an earlier termination date, may, at the option of Landlord, be deemed to have been abandoned, and in such case, such items may be retained by Landlord as its property or after notice to Tenant be disposed of by Landlord, in Landlord's sole and absolute discretion.

      **10.**    **INSURANCE**.

      **10.1.**    **Insurance to be Maintained by Landlord**. Landlord shall maintain, at its expense, throughout the Term commercial general public liability insurance covering Landlord for claims arising out of liability for bodily injury, death, personal injury, and property damage occurring in and about the Premises and otherwise resulting from any acts and operations of Landlord, its other tenants or their respective agents and employees, with limits not less than One Million and no/100 Dollars ($1,000,000.00) per occurrence and Three Million and no/100 Dollars ($3,000,000.00) in the aggregate (collectively the "**Landlord's Policies**"). Deductibles under the Landlord's Policies shall not exceed Twenty-Five Thousand Dollars ($25,000.00). The insurance policies to be maintained by Landlord herein shall (a) be issued by insurance companies authorized to do business in the state in which the Land is located with an A.M. Best's rating of A-VII or better; (b) provide that the insurer will endeavor to provide Tenant with thirty days' notice prior to cancellation or material modification; and (c) in the case of commercial general public liability insurance, name Tenant as an additional insured.  Landlord shall provide Tenant with certificates of such insurance prior to the Effective Date.

      **10.2.**    **Insurance to be Maintained by Tenant**. Tenant shall maintain, at its expense, throughout the Term (a) "all-risk" property insurance covering the full replacement cost of the Building and all other improvements on the Land and all of Tenant's Property against loss or damage upon casualty (including structural, fire, boiler and machinery, liability, earthquake, terrorism, and code upgrade coverage) and providing coverage for rent abatement in such event and (b) commercial general public liability insurance covering Tenant for claims arising out of liability for bodily injury, death, personal injury, and property damage occurring in and about the Premises and otherwise resulting from any acts and operations of Tenant, its agents and employees, in the amounts of not less than One Million and no/100 Dollars ($1,000,000.00) per occurrence for injury to person, not less than Five Hundred Thousand and no/100 Dollars ($500,000.00) for damage to property, and not less than Three Million and no/100 Dollars ($3,000,000.00) annual general aggregate per location. The insurance policies to be maintained by Tenant shall (a) be issued by insurance companies authorized to do business in the state in which the Land is located; (b) endeavor to provide that said insurance shall not be canceled or materially modified without first providing thirty (30) days' prior written notice to Landlord; and (c) in the case of commercial general public liability insurance, name Landlord as an additional insured. Tenant shall provide Landlord with certificates of such insurance within thirty (30) days of the Effective Date.

      **10.3.**    **Waiver of Subrogation**. Landlord and Tenant each waive any right to recover against the other for damage to or loss of property, real or personal, to the extent that the type of damage or loss, but without regard to the monetary amount of such damage or loss, is actually insured against or is required to be insured against (whichever is greater) by Landlord or Tenant under this Lease. This provision is intended to waive, fully and for the benefit of each party, any rights and/or claims which

might give rise to a right of subrogation by any insurance carrier. The coverage obtained by each party pursuant to this Lease shall include, without limitation, a waiver of subrogation by the carrier which conforms to the provisions of this Section. The waiver contained in this Section is mutual, and in the event that either party maintains insurance coverage that, at the time of a loss that would be covered by this waiver of subrogation, does not contain a waiver of subrogation by the carrier in accordance with this Section, then the waiver contained in this Section shall be void and of no further effect as to the other party.

**11.    RELEASE AND INDEMNIFICATION**.

**11.1.    Tenant Release and Indemnification**. Landlord shall not be liable and Tenant hereby waives all claims against Landlord for any damage to any property or any injury to any person in or about the Premises by or from any cause whatsoever, except to the extent caused by or arising from the negligence or willful misconduct of Landlord, its other tenants or their respective agents, employees or contractors. Except for such claims as are waived in **Section 10.3**, Tenant hereby indemnifies, defends, and holds harmless Landlord and its respective affiliates, owners, partners, directors, officers, agents, and employees ("**Landlord Indemnified Parties**") from and against any and all Losses (defined below) to the extent same arise from or in connection with (a) any act, omission or negligence of any or all of Tenant or Tenant Indemnified Parties; (b) any breach by Tenant of any of its warranties and representations under this Lease or any breach or default on the part of Tenant in the performance of any covenant contained in this Lease, including, but not limited to, covenants pertaining to compliance with Laws; and (c) claims for work or labor performed or materials supplies furnished to or at the request of any or all of Tenant or Tenant Indemnified Parties. The term "**Losses**" shall mean all claims, demands, expenses, actions, judgments, damages (whether direct or indirect, known or unknown, foreseen or unforeseen), penalties, fines, liabilities, suits, administrative proceedings, costs and fees, including, without limitation, reasonable attorneys' and consultants' fees and expenses, and the costs of cleanup, remediation, removal and restoration, that are in any way related to any matter covered by the foregoing indemnity. The provisions of this **Section 11.1** shall survive the expiration or termination of this Lease.

**11.2.    Landlord Indemnification**.  Except for such claims as are waived in Section 10.3, Landlord hereby indemnifies, defends and holds harmless Tenant and its respective affiliates, owners, partners, directors, officers, agents and employees (collectively "**Tenant Indemnified Parties**") from and against any and all Losses to the extent arising from or in connection with (a) any gross negligence of any or all of Landlord or Landlord Indemnified Parities; (b) any breach by Landlord of any of its warranties and representations under this Lease or any breach or default on the part of Landlord in the performance of any covenant contained in this Lease, including, but not limited to, covenants pertaining to compliance with Laws; (c) any liability for contamination or non-compliance with Environmental Laws pertaining to the Land which exists as of the Commencement Date or is caused by or contributed to by Landlord or its officers, directors, agents or employees.  The provisions of this Section 11.2 shall survive the expiration or termination of this Lease.

**11.3.    Notice of Claim**. Landlord and Tenant each mutually agree to promptly notify the other of any claim, demand, or cause of action instituted or threatened to be instituted against the other to the extent same relates to the Premises and may trigger indemnification obligations as set forth above.

**12.    FORCE MAJEURE**. Except as otherwise herein provided, the obligations of Landlord and Tenant hereunder shall not be affected, impaired, or excused, and Landlord and Tenant shall have no liability whatsoever to each other, with respect to any act, event or circumstance arising out of a failure to fulfill, or delay in fulfilling, any obligations under this Lease by reason of labor dispute, governmental preemption of property in connection with a public emergency or shortages of fuel, supplies, or labor, or any other cause, to the extent same is beyond the reasonable control of the defaulting party; provided,

however, in no event shall such delay be excused beyond sixty (60) days of the date such labor dispute, public emergency, or other cause occurs.

**13.     DAMAGE OR DESTRUCTION**.

      **13.1.     Notification and Repair**. Tenant shall give notice to Landlord of any fire or other casualty causing material damage to the Premises or any portion thereof. Subject to the provisions of **Section 13.3** below, if the Premises are damaged by fire or other casualty, Tenant shall promptly and diligently (but in any event within one hundred eighty (180) days), with respect to damage to the Premises, repair the damage and restore and rebuild the Premises with reasonable dispatch to substantially the same condition as immediately prior to such casualty after notice to it of the damage or destruction. Tenant shall use its diligent, good faith efforts to make such repair or restoration promptly.

      **13.2.     Rental Abatement**. Tenant shall not be entitled to any rent abatement in the event of a casualty.

      **13.3.     Lease Termination Upon Substantial Destruction**. If the Premises are damaged or destroyed by fire or other casualty such that restoration requires more than one hundred eighty (180) days, and (a) at least twenty percent (20%) of the Premises is reasonably deemed to be unusable by Tenant in the ordinary course of Tenant's business or (b) the damage occurs during the last twelve (12) months of the Term, Landlord and Tenant shall each have the option to terminate this Lease (by so advising the other, in writing) within thirty (30) days after said damage or destruction; provided, however, that if Landlord elects to terminate this Lease pursuant to this Section, Tenant may void such termination by exercising any then available Option to Renew this Lease by giving Landlord written notice thereof within thirty (30) days of Tenant's receipt of Landlord's termination notice, whereupon such termination notice shall be void and Landlord will promptly and diligently repair the damage and restore and rebuild the Building with reasonable dispatch to substantially the same condition as immediately prior to such casualty. In the event this Lease is terminated pursuant to this Section, the termination shall be effective as of the date of the casualty. If neither Landlord nor Tenant timely delivers a termination notice, this Lease shall remain in full force and effect and Tenant shall use its diligent, good faith efforts to make such repair or restoration promptly and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises.

      **13.4     Loss Proceeds**.  If the Lease terminates pursuant to this **Section 13**, Tenant will, upon termination, provide all insurance proceeds or claims to insurance proceeds, to Landlord and will leave the Premises in a safe condition, including demolishing any unsafe or unsound structures or improvements.  Tenant may utilize a reasonable portion of the insurance proceeds to put the Premises in the condition required by this **Section 13.4**.

      **14.     EMINENT DOMAIN**. If all or any portion of the Premises is taken or condemned for any public use under any law, or by right of eminent domain, or by private purchase in lieu thereof, and Tenant reasonably determines that such taking materially impairs Tenant's use of or access to the Premises, then Tenant may terminate this Lease upon written notice to Landlord and such termination shall be deemed effective when the physical taking of said Premises occurs. If only a portion of Premises is so taken or condemned and Tenant elects not to terminate the Lease pursuant to the foregoing sentence, the Lease shall continue in full force and effect as to the remainder of the Premises. Landlord shall, within a reasonable time after physical possession is delivered to the appropriating authority, restore the Premises to substantially the same condition as it was prior to such taking or condemnation, subject to any reduction in size thereof. A just proportion of the Rent and all other amounts payable by Tenant pursuant to this Lease shall be suspended or abated during the period of restoration until the Premises have been restored. Upon completion of the restoration, the Base Rent shall be abated and reduced in

proportion to the reduction in the square footage of the Premises as a result of the taking or condemnation. Landlord shall be entitled to any and all payment, income, rent or award, or any interest therein whatsoever, which may be paid or made in connection with such a taking or conveyance, and Tenant shall have no claim against Landlord for the value of any unexpired portion of this Lease. Notwithstanding the foregoing, any compensation specifically awarded for Tenant's moving expenses, Tenant's loss of business or goodwill, the value of property installed by Tenant, or for Tenant's Property, shall be the property of Tenant.

## 15.    SUBORDINATION AND ESTOPPEL CERTIFICATES; EXISTING LENDER.

**15.1.    Subordination**. This Lease shall be subject and subordinate at all times to (a) all ground leases or underlying leases that may now exist or hereafter be executed affecting the Land of which the Premises are a part, and (b) any mortgage, deed to secure debt, or deed of trust that may now exist or hereafter be placed upon, and encumber, any or all of the Premises, any ground leases or underlying leases for the benefit of the Land, or all or any portion of Landlord's interest or estate in any of said items. Subject to the foregoing, Tenant shall execute and deliver within ten (10) days after written request by Landlord, any additional documents evidencing the subordination of this Lease with respect to any such ground leases or underlying leases for the benefit of the Premises or any such mortgage, deed to secure debt, or deed of trust.  Upon the occurrence of a default by Landlord under any such ground lease or underlying lease for the benefit of the Premises or any such mortgage, deed to secure debt, or deed of trust, Landlord shall immediately notify Tenant of any such default and Tenant shall have the right to incur any reasonable expense necessary to cure such default and offset such costs from the next due installments of Base Rent until such costs are recouped by Tenant.

**15.2.    Estoppel Certificates**. Each of Landlord and Tenant agrees, from time to time but not more than three (3) times in any twelve (12) month period and within ten (10) days after request by the other, to deliver to the other, or the other's designee, an estoppel certificate stating such factual matters pertaining to this Lease as may be reasonably requested by Landlord. Landlord and Tenant intend that any statement delivered pursuant to this Section may be relied upon by any prospective purchaser or mortgagee of the Property or of any interest therein or any other Landlord or Tenant designee.

**15.3.    New Lender**. If in the future the Premises are used to secure any promissory note or any other obligation of Landlord or any Property Owner to pay sums or perform obligations, then, as a condition of subordination of this Lease, Landlord and each Property Owner, as applicable, shall, simultaneously upon encumbering the Premises, provide Tenant with a commercially reasonable non disturbance agreement from Landlord's or such Property Owner's secured party.

## 16.    ASSIGNMENT, SUBLETTING AND MORTGAGING. Tenant may not assign its interest in, permit any assignment of, encumbrance or lien upon this Lease or Tenant's interest hereby by operation of law or otherwise, or sublet the Premises in whole or in part ("**Transfer**") except as set forth herein. Tenant shall may (a) Transfer to an Affiliate (as defined below) or (b) at any time following December 31, 2022, Tenant may Transfer to (x) any corporation into or with which Tenant may be merged or consolidated or (y) any entity which acquires all the assets of Tenant as a going concern of the business being conducted on the Premises (each of (a) and (b) are deemed a "**Permitted Assignment**"), provided that Tenant notifies Landlord within ten (10) days following the effective date of any Permitted Assignment.  So long as the Affiliate has a net worth at least equal to the net worth of Tenant on the date hereof or the date of the Transfer (whichever is greater), and if the transferee assumes in full the obligations of Tenant under this Lease in a writing delivered to Landlord, Tenant shall be relieved of all liability hereunder. Any assignee under a Permitted Assignment shall be entitled to all of Tenant's right, title and interest under this Lease, including, but not limited to, all rights to exercise any options to renew or extend the term of this Lease as provided herein. An "**Affiliate**" shall mean a wholly owned subsidiary

of Tenant or the sole parent of Tenant.  Tenant will be required to obtain Landlord's consent prior to any other Transfer, which Landlord will not unreasonably withhold, delay or condition, provided (i) the transferee has a net worth sufficient to perform all of its obligations under this Lease, (ii) the transferee has an upstanding business reputation, (iii) the transferee will use the Premises only for the Permitted Uses, and (iii) Tenant will pay to Landlord, any profit or excess payments received by Tenant on account of such Transfer, less Tenant's reasonable costs customarily related to the Transfer (such as legal fees, brokerage costs and the like).

**17.   LANDLORD'S ACCESS TO PREMISES**. Landlord shall have the right to enter and/or pass through the Premises at any time or times upon not less than forty-eight (48) hours prior notice to Tenant, which may be by email, during normal business hours, (except in the event of emergency): (a) to examine and inspect the Premises and to show them to actual and prospective lenders and prospective purchasers of the Premises; and (b) to make such repairs, alterations, additions and improvements in or to all or any portion of the Premises, or the Mechanical Systems, facilities, and equipment, as Landlord is required to make hereunder. In Landlord's notice to Tenant, Landlord shall identify the individuals who will be visiting the Premises and the purpose of the visit. Landlord shall be allowed to take all materials into and upon the Premises that may be required in connection with any repairs, alterations, additions or improvements, without any reduction or modification of Tenant's covenants and obligations hereunder; provided, however, that Landlord shall use reasonable efforts to minimize interference with Tenant's business operations and Tenant's occupancy and use of the Premises. During the period of six (6) months prior to the Expiration Date, Landlord and its agents may exhibit the Premises to prospective tenants. Additionally, Landlord shall have the following rights with respect to the Premises, exercisable without notice to Tenant, and without being deemed an eviction or disturbance of Tenant's use or possession of the Premises or giving rise to any claim for setoff or abatement of Rent: (a) to have pass keys, access cards, or both, to the Premises, provided that (i) Landlord supply Tenant with a sufficient number of same to allow Tenant's intended use and enjoyment of the Premises, and (ii) Tenant may secure certain areas of the Premises without allowing Landlord access; and (b) to decorate, remodel, repair, alter or otherwise prepare the Premises for reoccupancy at any time after Tenant abandons the Premises for more than thirty (30) consecutive days and ceases paying Rent.

**18.   QUIET ENJOYMENT; ACQUIRING LAND**.

**18.1.   Quiet Enjoyment**. Subject to the provisions of this Lease, so long as Tenant pays all of the Rent and performs all of its other obligations hereunder without default beyond any applicable cure period, Landlord and each Property Owner covenants that Tenant shall not be disturbed in its possession, use, and occupancy of the Premises and shall have the right provided herein to use the Premises for the Permitted Use without hindrance, interruption or ejection.  This covenant shall be construed as a covenant running with the Land and the owner of the Premises shall be obligated to ensure the enforcement of same.

Case 2:23-cv-02084-GRB-SIL   Document 125-4   Filed 05/09/24   Page 15 of 32 PageID #: 1286 **18.2.   Acquiring Land**. Landlord warrants and agrees that Landlord owns or legally controls that certain parcel of the Land identified by Tax ID 0200476000200022000 ("**Parcel 6**") and is currently possessing, using and occupying Parcel 6 without disturbance by the record owner.  Landlord shall use commercially reasonable efforts to secure fee simple ownership rights of record to Parcel 6 as soon as reasonably possible.  Without limiting the foregoing, Landlord's offer of the greater of (a) fair market value compensation or (b) $50,000 to the record owner to acquire such rights shall be deemed commercially reasonable efforts.  In the event that Landlord successfully acquires fee simple ownership rights of record to Parcel 6, all terms and conditions of this Lease shall remain unchanged and in full force and effect, including, without limitation, Base Rent.  In the event that Tenant's possession, use or occupancy of Parcel 6 is disturbed as a result of the record owner or other party asserting its rights as superior to Landlord's, (i) Parcel 6 shall be excluded from the Premises for all purposes under this Lease

from and after the date of such disturbance and Base Rent shall be adjusted to deduct the fair rental value of Parcel 6 as such value is mutually agreed to by Landlord and Tenant or as determined by an independent real estate appraiser if the parties are unable to so agree, (ii) Landlord shall modify, alter, or relocate any and all improvements located on Parcel 6, at Landlord's sole cost, so as to allow Tenant to continue operating its business at the Premises with minimal interference (e.g. replacing fencing along the remaining Premises boundary, relocating bins onto the remaining Premises, etc.), (iii) Landlord shall promptly reimburse Tenant for all reasonable labor and equipment costs and expenses incurred by Tenant in relocating inventory, equipment, and other personal property from Parcel 6 to the remaining Premises, and (iv) the Lease shall otherwise continue in full force and effect as to the remaining Premises.  Landlord hereby indemnifies, defends and holds harmless the Tenant Indemnified Parties from and against any and all Losses to the extent arising from or in connection with any trespass or other claims brought by any party asserting its rights to Parcel 6 as superior to Landlord's, except to the extent arising out of any breach or default on the part of Tenant in the performance of any of its obligations under this Lease. The provisions of this Section 18.2 shall survive the expiration or termination of this Lease.

## 19.    EVENTS OF DEFAULT.

### 19.1.    Tenant Breach Provisions. An "Event of Default" will be deemed to have occurred if (a) Tenant fails to pay Rent or any other payment due hereunder within five (5) days after notice from Landlord of such failure to pay; (b) Tenant fails, whether by action or inaction, to timely comply with or satisfy any or all of the obligations imposed on Tenant under this Lease (other than the obligation to pay Rent or other amounts due hereunder) for a period of thirty (30) days after Landlord's delivery to Tenant of written notice of such default; provided, however, that if the default cannot, by its nature, be cured within such thirty (30) day period, but Tenant commences and diligently pursues a cure of such default promptly within the initial thirty (30) day cure period, then Tenant shall not be in default under this Lease; or (c) Tenant makes an assignment for the benefit of creditors, or files a voluntary petition under any state or federal bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency is filed against Tenant under any state or federal bankruptcy or insolvency law that is not dismissed within ninety (90) days, or whenever a petition is filed by or against (to the extent not dismissed within ninety (90) days) Tenant under the reorganization provisions of the United States Bankruptcy Code or under the provisions of any law or like import, or whenever a petition shall be filed by Tenant under the arrangement provisions of the United States Bankruptcy Code or similar law, or whenever a receiver of Tenant, or of, or for, the property of Tenant shall be appointed, or Tenant admits it is insolvent or is not able to pay its debts as they mature. Notwithstanding any other provision of this Agreement, Tenant shall have no liability to Landlord (hereunder or otherwise) in respect of (nor shall Landlord be entitled to exercise any remedy against Tenant hereunder or otherwise in respect of) any condition or state of facts relating to the Premises and existing as of the Effective Date.

### 19.2.    Intentionally Omitted.

Case 2:23-cv-02084-GRB-SIL   Document 125-4   Filed 05/09/24   Page 16 of 32 PageID #: 134
## 20.    RIGHTS AND REMEDIES.

### 20.1.    Cure Remedies Upon Breach. If Tenant is in breach of this Lease, Landlord may (but shall not be obligated) to cure such breach at the expense of Tenant, upon compliance with any notice requirements and cure periods set forth in **Section 19.1**, and such expense incurred shall be deemed Additional Rent.

### 20.2.    Landlord's Remedies Upon Tenant Breach. Following the occurrence of an Event of Default (and in addition to any other remedies provided elsewhere in this Lease), Landlord, at its option, may give Tenant three (3) days' written notice of the expiration of the Term and upon the giving of such notice and the expiration of such three (3) day period, Tenant's right to possession of the Premises

will cease and this Lease will be terminated, except as to Tenant's liability, as if the expiration of the term fixed in such notice were the end of the Term.. Without further demand or notice, Landlord may then reenter and take possession of the Premises or any part of the Premises, repossess the same, expel Tenant and those claiming through or under Tenant, and remove the effects of both or either, using such force for such purposes as may be necessary, without being liable for prosecution, without being deemed guilty of any manner of trespass, and without prejudice to any remedies for arrears of Rent or other amounts payable under this Lease or as a result of any preceding breach of covenants or conditions and (a) to terminate this Lease and Tenant's right of possession of the Premises; or (b) to terminate Tenant's right of possession of the Premises without terminating this Lease. Landlord shall be entitled to recover from Tenant such sums as have accrued under this Lease and remain outstanding and unpaid along with such other amounts and damages as may be available at law or in equity. In the event Landlord elects, pursuant to clause (b) of this Section, to terminate Tenant's right of possession only without terminating this Lease, Landlord may, at Landlord's option, enter the Premises, remove Tenant's Property, Tenant's signs and other evidences of tenancy, and take and hold possession thereof. In no event shall Tenant be responsible for incidental, indirect, special or consequential damages in connection with this Lease.

   **20.3**  <u>**Tenant's Remedies Upon Landlord Breach**</u>. In the event Landlord is in breach of this Lease, after being afforded a reasonable time to cure such breaches (and in addition to any other remedies provided elsewhere in this Lease), Tenant shall be entitled to exercise and pursue all rights and remedies available at law or in equity.

   **21.**  <u>**SURRENDER AND HOLDOVER**</u>. On the last day of the Term, upon any earlier termination of this Lease, or upon Landlord's re-entry of the Premises after a breach of this Lease by Tenant, (a) Tenant shall quit and surrender the Premises to Landlord in the same condition as it existed on the Lease Term Commencement Date, except for ordinary wear and tear and damage by fire or casualty, and (b) Tenant shall remove all of Tenant's Property therefrom, except as otherwise expressly provided in this Lease. Nothing herein shall be deemed to require Tenant to surrender the Premises in any better condition than the condition existing as of the Effective Date. The obligations imposed under the preceding sentence shall survive the termination or expiration of this Lease. If Tenant remains in possession after the Expiration Date hereof or after any earlier termination date of this Lease or of Tenant's right to possession, Tenant shall be deemed a month-to-month tenant, subject to all other terms and provisions of this Lease, and either party may terminate such tenancy upon thirty (30) days' prior written notice to the other. If Tenant remains in possession of only a portion of the Premises after the Expiration Date hereof or after any earlier termination date of this Lease or of Tenant's right to possession, Tenant shall be deemed a month-to-month tenant only with respect to the portion of the Premises Tenant continues to occupy, and the Rent applicable during such month-to-month tenancy shall abate in proportion to the amount of the Premises actually occupied by Tenant.

   **22.**  <u>**BROKERS**</u>. Landlord and Tenant hereby covenant, warrant and represent that the brokers set forth in **Section 1.9,** if any, were the only brokers to represent the respective parties in the negotiation of this Lease. Landlord shall be solely responsible for paying the commission of Landlord's Broker and Tenant's Broker pursuant to the terms of a separate agreement between Landlord and Landlord's Broker, which is herein incorporated. Landlord and Tenant agree to and hereby do defend, indemnify and hold the other harmless against and from any brokerage commissions or finder's fees or claims therefor by a party claiming to have dealt with the indemnifying party and all costs, expenses and liabilities in connection therewith, including, without limitation, reasonable attorneys' fees and expenses, for any breach of the foregoing. The foregoing indemnification shall survive the termination of this Lease for any reason.

   **23.**  <u>**AGENCY APPOINTMENT**</u>.  Certain parcels of the Land are owned in fee simple by GROUP 5 ASSOCIATES, LTD., a New York corporation, 9 4TH ST. LLC, a New York limited liability

company, and 3670 ROUTE 112 LLC, a New York limited liability company (collectively, the "**Property Owners**"). Property Owners each hereby irrevocably appoint, designate and make Landlord such Property Owner's authorized agent and attorney-in-fact for the limited purpose of taking action on its behalf under the provisions of this Lease as Landlord with respect to the Land owned by such Property Owner. That authority includes, without limitation, receiving payments, performing such duties, fulfilling such obligations, providing such consent and exercising any and all rights on the part of Landlord as set forth in this Lease, together with such powers as are reasonably incidental thereto. Such irrevocable appointment of Landlord as Property Owners' authorized agent shall be binding upon Property Owners' successors and assigns. Any decision, act, consent or instruction of Landlord relating to this Lease shall constitute a decision of each Property Owner, and shall be final, binding and conclusive upon each Property Owner, and Tenant may rely upon any such written decision, consent or instruction of Landlord as being the decision, consent or instruction of each and every Property Owner. Tenant and the Tenant Indemnified Parties are hereby relieved from any liability to any person for any acts done by them in accordance with such decision, consent or instruction of Landlord.

24. **MISCELLANEOUS**.

24.1. **Merger; Amendment**. All prior understandings and agreements between the parties are merged in this Lease, which alone fully and completely expresses the agreement of the parties. This Lease may not be amended or modified, in whole or in part, except by a writing signed by both parties. Notwithstanding anything herein to the contrary, this Agreement shall not affect, supersede or otherwise modify that certain Asset Purchase Agreement, dated of even date herewith, by and among Tenant, The Garden Dept. Corp., The Garden Dept. West Corp., and Dominick Caroleo (the "**Purchase Agreement**").

24.2. **Notices**. Any notice required to be given in writing by either party pursuant to this Lease shall be deemed to have been properly given only if (a) sent by the United States Postal Service, certified mail, postage prepaid, or (b) sent by FedEx or other comparable commercial overnight delivery service, and, in the case of any of the foregoing, addressed to the other party at the addresses set forth below or to such other address as Landlord or Tenant may designate to each other from time to time by written notice. Notices shall be deemed to have been given on the day sent or deposited; provided, however, that any time period for a response or responsive action to such notice shall be measured from the date such notice is actually received (any notice actually received after 5:00 PM at the site of receipt shall be deemed received on the following business day).

If to Landlord:      Don Caroleo Ventures LLC
                     13 Hunting Hollow Court
                     Dix Hills, New York 11746
                     Attn: Don Caroleo

With a copy to:      Hodgson Russ LLP
                     605 Third Avenue, Suite 2300
                     New York, New York 10158
                     Attn: Gary M. Schober

If to Tenant:        SiteOne Landscape Supply, LLC
                     300 Colonial Center Parkway, Suite 600
                     Roswell, Georgia 30076
                     Attn: Joe Cassick, Senior Director Real Estate

With a copy to:        SiteOne Landscape Supply, LLC
                                       300 Colonial Center Parkway, Suite 600
                                       Roswell, Georgia 30076
                                       Attn: Briley Brisendine, Executive Vice President and General Counsel

      **24.3.**   **Non-Waiver**. The failure of either party to insist, in any one or more instances, upon the strict performance of any one or more of the obligations of this Lease or to exercise any election herein contained shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this Lease or of the right to exercise such election, but this Lease shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. Neither the receipt and acceptance by Landlord, nor the payment by Tenant, of Base Rent or Additional Rent with knowledge of a default in any obligation under this Lease to be performed by the other party shall be deemed a waiver of such breach.

      **24.4.**   **Attorneys' Fees**. Any party in breach of this Lease (the "**Breaching Party**") shall reimburse the other party (the "**Nonbreaching Party**") upon demand for any legal fees and court (or other administrative proceeding) costs and related expenses that the Nonbreaching Party incurs in connection with the breach, regardless whether suit is commenced or judgment entered. Such costs shall include legal fees and costs incurred for the negotiation of a settlement, enforcement of rights or otherwise. Furthermore, in the event of litigation, the court in such action shall award to the party most substantially obtaining the relief sought a reasonable sum as attorneys' fees and costs, which sum shall be paid by the losing party.

      **24.5.**   **Parties Bound**. Except as otherwise expressly provided for in this Lease, this Lease shall be binding upon and inure to the benefit of the successors and assignees of Landlord, Tenant and the Property Owners. No obligation of Landlord or Tenant shall arise under this Lease until the instrument is signed by, and delivered to, both Landlord and Tenant. In the event Landlord or any Property Owner grants, transfers or conveys fee simple title to the Premises to another party, whether related or not, Landlord and each Property Owner, as applicable, agrees to provide Tenant with written notice thereof and a copy of the transfer deed evidencing the same within thirty (30) days of the conveyance.

      **24.6.**   **Survival of Obligations**. Upon the expiration or other termination of this Lease, neither party shall have any further obligation or liability to the other except as otherwise expressly provided in this Lease and except for such obligations as, by their nature or under the circumstances, can only be, or by the provisions of this Lease, may be performed after such expiration or other termination.

      **24.7.**   **Governing Law; Severability; Construction; Counterparts**. This Lease shall be governed by and construed in accordance with the laws of the state in which the Land is located. Any and all claims arising under or related to this Agreement shall be resolved by binding arbitration in accordance with Section 23 of the Purchase Agreement, which is incorporated herein by reference mutatis mutandis. Each provision of this Lease shall be severable from all other provisions, and if any provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected but shall be enforced to the extent permitted by law. The captions, headings and titles in this Lease are solely for convenience of reference and shall not affect its interpretation. Both Landlord and Tenant have had the opportunity to be represented by legal counsel in negotiating this Lease, and this Lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this Lease to be drafted. All terms and words used in this Lease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. This Lease may be executed in counterpart and, when all counterpart documents are executed, the counterparts shall constitute a single binding instrument.

24.8.  **Time**. Time is of the essence of this Lease. If the time for performance hereunder falls on a Saturday, Sunday or a day that is recognized as a holiday in the state, county, city, or town in which the Land is located, then such time shall be deemed extended to the next day that is not a Saturday, Sunday or holiday.

24.9.  **Right of Setoff**. Capitalized terms used but not otherwise defined in this Section **Error! Reference source not found.** shall have the respective meanings set forth in the Purchase Agreement. Notwithstanding any other provision of this Lease, to the extent any Indemnitee seeks to recover Losses subject to indemnity under Article V of the Purchase Agreement, then upon notice to Landlord, Tenant shall have the right, but shall not be obligated, to setoff any amount of Losses to which it believes in good faith it is entitled under Section 5.01 of the Purchase Agreement against its payment of any Rent under this Lease. The exercise of such right of setoff by Tenant in good faith, whether or not ultimately determined to be justified, will not constitute a breach of Tenant's obligation to pay such Rent when due under this Lease. Neither the exercise of nor the failure to exercise such right of setoff will constitute an election of remedies or limit any Indemnitee in any manner in the enforcement of any other remedies that may be available to it under the Purchase Agreement or otherwise, including the Indemnitee's right to recover the amount by which any amount due to any Indemnitee exceeds the available Rent. To the extent that Liability for or the amount of indemnifiable Losses in respect of a claim asserted by Tenant under Section 5.01 of the Purchase Agreement, has not yet been determined, Tenant shall be entitled to withhold payment of all Rent up to the amount of indemnifiable Losses Tenant reasonably estimates it or the other Indemnitees are likely to incur, until such Liability or the amount of indemnifiable Losses has been finally determined in accordance with the applicable provisions of the Purchase Agreement. Landlord agrees that the rights of setoff as provided herein shall be exercisable notwithstanding any subsequent assignment or transfer of Landlord's rights hereunder, and any assignee or transferee of such rights shall in all events take subject to Tenant's rights under this Section 24.9.

24.10.  **Consent**. Intentionally Omitted.

24.11.  **Corporate or Other Authority**. In the event Landlord or Tenant shall be a corporation, partnership or limited liability company, Landlord or Tenant hereby, as applicable, covenants and warrants that (i) Landlord or Tenant is a duly organized, validly existing and qualified (including, without limitation, qualified to do business in the State in which the Land is located) corporation (or partnership or limited liability company), (ii) Tenant, as applicable, has all requisite power and authority to enter into and perform its obligations under this Lease and (iii) the individual(s) executing this Lease on behalf of Landlord or Tenant, as applicable, are authorized to do so.

24.12.  **Mutual Execution**. Neither Landlord nor Tenant shall have any obligation or liability to the other whatsoever under this Lease until such time as Landlord and Tenant shall have each executed this Lease and delivered a copy of such executed Lease to the other party.

24.13.  **Covenants**. All of the provisions of this Lease are to be construed as covenants and agreements as though words importing such covenants and agreements were used in each provision of this Lease.

24.14.  **No Exculpation for Negligence**. Notwithstanding anything in this Lease to the contrary, to the extent that any provision of this Lease is deemed to require either Landlord or Tenant to exculpate the other for the negligence of the other party or the negligent acts of those claiming by, through or under the other party, in a manner that violates any Laws, then such provision will be deemed to be amended so that negligent acts of the party being exculpated are excluded from the other party's obligation to exculpate.

**24.15.** **Independent Obligations**. Except for any right of offset or abatement that may be expressly and specifically set forth in this Lease, Tenant's covenants and obligations to pay Rent are independent from any of Landlord's covenants, obligations, warranties or representations in this Lease.

**24.16.** **Riders**. All Riders and Exhibits attached hereto shall be deemed to be a part hereof and herein incorporated.

**24.17.** **Memorandum of Lease**. This Lease shall not be recorded but a Memorandum of Lease describing the Premises, giving the Term of this Lease, may be recorded in the appropriate land records. Landlord and Tenant hereby agree to execute such a Memorandum of Lease in substantially the same form and substance as that attached hereto as **Exhibit C**.

**24.18.** **Landlord Lien Subordination**. Notwithstanding anything to the contrary set forth in this Lease, Landlord will subordinate to any lender of Tenant, any lien or right of lien upon the inventory, merchandise, equipment and other property of Tenant located on the Premises or elsewhere to secure the payment of Rent by Tenant or the performance by Tenant of any obligations or covenants set forth in this Lease, whether such lien or right of lien shall be created by statute, court decision, common law, custom or otherwise. Landlord shall execute, acknowledge and deliver to Tenant a written agreement subordinating any rights in Tenant's inventory and other collateral in which any of Tenant's creditors hold a lien or security interest on such creditors' reasonable landlord waiver form within ten (10) days after written request therefor from Tenant.

**24.19.** **Cross Default**. Simultaneously with the execution hereof, Tenant and landlord entities under common control with Landlord have executed and delivered leases of even date for certain space located in Dix Hills, NY and Speonk, NY (the "**Related Leases**"). Landlord and Tenant agree that an uncured "Event of Default" by Tenant under the Related Leases (as defined therein) shall be an Event of Default by Tenant hereunder and that an uncured Event of Default by Tenant hereunder shall be an Event of Default by Tenant under the Related Leases.

**24.20.** **Acquired Property**. Landlord intends to acquire Parcels 2 and 3 as depicted on the Site Plan attached hereto as Exhibit B (the "**Acquired Property**") and develop the same consistent with Tenant's operations at the Premises. In the event that (i) Landlord acquires all of the Acquired Property, (ii) Landlord provides a commercially reasonable non-disturbance agreement from each and every secured party encumbering the Acquired Property, (iii) Tenant is provided the opportunity to perform due diligence on the Acquired Property including, but not limited to, title searches, surveys, and environmental assessments, and such due diligence is satisfactory to Tenant in its reasonable discretion, and (iv) Landlord develops the Acquired Property for Tenant's use in accordance with a development plan to be mutually agreed to by the parties at the time of such development, then Tenant shall lease the Acquired Property under the terms and conditions of this Lease except that the Base Rent shall be REDACTED per month in the aggregate for the Acquired Property.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

<u>**LANDLORD:**</u>

**NARROW WAY REALTY LTD.,** a New York corporation

By: _____

Name: Vic Careiro

Title: CEO

<u>**TENANT:**</u>

**SITEONE LANDSCAPE SUPPLY, LLC**, a Delaware limited liability company

By: _____

Name: Briley Brisendine

Title: Executive Vice President and General Counsel

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

**LANDLORD:**

**NARROW WAY REALTY LTD.,** a New York corporation

By: _____
Name:
Title:

**TENANT:**

**SITEONE LANDSCAPE SUPPLY, LLC**, a Delaware limited liability company

By: _____
Name: Briley Brisendine
Title: Executive Vice President and General Counsel

*[Signature Page to Lease Agreement – Coram Facility]*

## JOINDER BY PROPERTY OWNERS

Property Owners execute this Lease for the purpose of acknowledging and agreeing to the terms and provisions set forth in Section 24.9 of the Lease appointing Landlord as agent and attorney-in-fact of each Property Owner in accordance with the terms and conditions of this Lease, making those covenants and warrants set forth in Section 5 and 18.1 of the Lease, and accepting those obligations set forth in Section 15.3 of the Lease. Further, Property Owners each covenant not to take any action or fail to take any action that, when taken or failed to be taken by Landlord, would cause or constitute a default by Landlord under the Lease.

### PROPERTY OWNERS:

**GROUP 5 ASSOCIATES, LTD.,** a New York corporation

By: _____

Name: V I C Caroleo

Title: CFO

**9 4TH ST. LLC**, a New York limited liability company

By: _____

Name:

Title: Dominick Caroleo
SoLE Member

**3670 ROUTE 112 LLC**, a New York limited liability company

By: _____

Name:

Title: Dominick Caroleo
SoLE MEMBER

## EXHIBIT A

### Description of Land

The Land consists of those tax parcels located in the unincorporated area of Coram, Town of Brookhaven, County of Suffolk, State of New York and described as follows:

District: 0200    Section: 476.00    Block: 02.00    Lot: 028.001    Item: 82-04183

District: 0200    Section: 476.00    Block: 02.00    Lot: 023.000    Item: 82-00550

District: 0200    Section: 476.00    Block: 02.00    Lot: 027.000    Item: 82-00380

District: 0200    Section: 476.00    Block: 02.00    Lot: 022.000    Item: 82-03110

District: 0200    Section: 476.00    Block: 02.00    Lot: 019.001    Item: 82-00561

District: 0200    Section: 476.00    Block: 02.00    Lot: 019.002    Item: 82-00563

District: 0200    Section: 476.00    Block: 02.00    Lot: 019.003    Item: 82-00562

## EXHIBIT B

### Site Plan

The Premises consists of Parcels 1, 5, 6, 7, and 8 as shown on the below site plan.  Excluded Parcels are shaded in yellow.



<u>EXHIBIT C</u>

**Memorandum of Lease Form**

**MEMORANDUM OF LEASE**

   **THIS MEMORANDUM OF LEASE** (this "Memorandum"), dated as of the _____ day of January, 2020, is made by and between **NARROW WAY REALTY LTD.,** a New York corporation ("Landlord"), **SITEONE LANDSCAPE SUPPLY, LLC**, a Delaware limited liability company ("Tenant"), and **GROUP 5 ASSOCIATES, LTD.,** a New York corporation, **9 4TH ST. LLC,** a New York limited liability company, and **3670 ROUTE 112 LLC,** a New York limited liability company (collectively, the "Property Owners").

**W I T N E S S E T H :**

   **WHEREAS,** Landlord and Tenant entered into that certain Lease Agreement with an Effective Date of _____ (the "Lease") for certain real property more particularly described on <u>Exhibit A</u> attached hereto and made a part hereof (the "Leased Premises"); and

   **WHEREAS,** certain parcels of the Leased Premises are owned in fee simple by the Property Owners, who desire to appoint Landlord as their authorized agent and attorney-in-fact for the purposes set forth herein;

   **WHEREAS,** Landlord and Tenant desire to record this Memorandum in order to provide record notice to third parties of the existence of the Lease and Tenant's leasehold interest in the Leased Premises created thereby.

   **NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

   1.  The Lease (a) is effective as of _____ (the "Effective Date"), (b) has an initial term continuing through December 31, 2024; (c) has three (3) extension options for an additional three (3) years each; and (d) permits the use of the Leased Premises for the purposes set forth in the Lease.

   2.  <u>**Agency Appointment**</u>.  Certain parcels of the Leased Premises are owned in fee simple by GROUP 5 ASSOCIATES, LTD., a New York corporation, 9 4TH ST. LLC, a New York limited liability company, and 3670 ROUTE 112 LLC, a New York limited liability company (collectively, the **"Property Owners"**).  Property Owners each hereby irrevocably appoint, designate and make Landlord such Property Owner's authorized agent for the limited purpose of taking action on its behalf under the provisions of the Lease as Landlord with respect to the Leased Premises owned by such Property Owner.  That authority includes, without limitation, performing such duties, fulfilling such obligations, providing such consent and exercising any and all rights on the part of Landlord as set forth in the Lease, together with such powers as are reasonably incidental thereto.  Such irrevocable appointment of Landlord as Property Owners' authorized agent shall be binding upon Property Owners' successors and assigns.  Any decision, act, consent or instruction of Landlord relating to the Lease shall constitute a decision of each Property Owner, and shall be final, binding and conclusive upon each Property Owner, and Tenant may rely upon any such written decision, consent or instruction of Landlord as being the decision, consent or instruction of each and every Property Owner.  Tenant and the Tenant

Indemnified Parties are hereby relieved from any liability to any person for any acts done by them in accordance with such decision, consent or instruction of Landlord

3. **Non-Competition Covenant**. During the term of the Lease, Landlord shall not buy, sell, lease, license or otherwise make available any land or building either now controlled by Landlord or which becomes subject to Landlord's control after the Effective Date of the Lease within ten (10) miles of the Premises, as measured from the closest property line of the Premises to the closest property line of the competing property (the "**Competing Property**"), to any person or business entity that engages in a business activity that includes the sale of bulk landscape materials, irrigation/drainage products, turf care products (i.e. fertilizers and control products), grass seed, and/or turf care equipment (i.e. mowers, sprayers, spreaders, turf renovators, hand-held power equipment, etc.). This covenant shall be binding upon Landlord and Landlord's successors, assigns, or beneficiaries during the term of the Lease and shall survive any expiration or termination of the Lease for a period of twelve (12) months. If Landlord is found to be in default of this **Section 2**, Tenant shall immediately notify Landlord in writing of said default and shall identify the Competing Property by name in the written notice. If Landlord does not cure the breach of this covenant within thirty (30) days after receipt of the written notice, then Tenant shall be entitled to exercise and pursue all rights and remedies available at law or in equity (including, but not limited to, an action for injunctive relief). In addition, Tenant shall have the right to elect to pay, in lieu of Base Rent, substitute rent equal to fifty percent (50%) of the Base Rent payment per month until the violation of the foregoing restriction is satisfied, at which time Tenant shall again pay to Landlord Base Rent and all other rents and charges provided under this Lease. All rights and remedies of Tenant created herein or otherwise existing at law or in equity are separate, distinct and cumulative rights and remedies and the exercise of one or more rights or remedies shall not be taken to exclude or waive the right to exercise any other. **IF LANDLORD BREACHES THE COVENANT SET FORTH IN THIS SECTION 2 DURING THE TWELVE (12) MONTH PERIOD FOLLOWING THE TERMINATION OR EARLIER EXPIRATION OF THE LEASE, LANDLORD SHALL PAY TO TENANT TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) WITHIN TEN (10) DAYS AFTER TENANT PROVIDES WRITTEN NOTICE OF THE BREACH TO LANDLORD. LANDLORD AND TENANT AGREE THAT THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT IF LANDLORD BREACHES THE COVENANT SET FORTH IN THIS SECTION 2 DURING THE TWELVE (12) MONTH PERIOD FOLLOWING THE TERMINATION OR EARLIER EXPIRATION OF THIS LEASE WOULD BE EXTREMELY DIFFICULT IF NOT IMPOSSIBLE TO ASCERTAIN AND THAT THE AMOUNT OF TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) IS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES TO BE SUFFERED BY TENANT AND THAT SUCH SUM REPRESENTS LIQUIDATED DAMAGES AND NOT A PENALTY.**

3. All of the other terms and conditions of the Lease are more fully set forth in the Lease and are incorporated herein by this reference.

4. This Memorandum is executed for recording purposes only and is not intended to alter or amend the terms of the Lease. In the event of a conflict between this Memorandum and the Lease, the Lease shall control.

5. This Memorandum shall run with title to the Leased Premises and inure to the benefit of and be binding upon Landlord and Tenant and their respective representatives, successors and assigns.

6. This Memorandum may be executed in several counterparts, each of which when so executed and delivered shall constitute an original, fully enforceable counterpart for all purposes.

[*Signatures on Next Page*]

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Memorandum as of the date first written above.

**LANDLORD:**

**NARROW WAY REALTY LTD.,** a New York corporation

By: _____
Name:
Title:


**TENANT:**

**SITEONE LANDSCAPE SUPPLY, LLC**, a Delaware limited liability company

By: _____
Name:
Title:


[INSERT APPROPRIATE ACKNOWLEDGEMENTS]

## JOINDER BY PROPERTY OWNERS

Property Owners execute this Lease for the purpose of acknowledging and agreeing to the terms and provisions set forth in Section 24.9 of the Lease appointing Landlord as agent and attorney-in-fact of each Property Owner in accordance with the terms and conditions of this Lease, making those covenants and warrants set forth in Section 5 and 18.1 of the Lease, and accepting those obligations set forth in Section 15.3 of the Lease.  Further, Property Owners each covenant not to take any action or fail to take any action that, when taken or failed to be taken by Landlord, would cause or constitute a default by Landlord under the Lease.

**PROPERTY OWNERS:**

**GROUP 5 ASSOCIATES, LTD.,** a New York corporation

By: _____
Name:
Title:

**9 4TH ST. LLC**, a New York limited liability company

By: _____
Name:
Title:

**3670 ROUTE 112 LLC**, a New York limited liability company

By: _____
Name:
Title:

Case 2:23-cv-02084-GRB-SIL   Document 36-2   Filed 03/12/23   Page 31 of 32 PageID #: 447

**EXHIBIT A to Memorandum of Lease**

**LEASED PREMISES**

Case 2:23-cv-02084-GRB-SIL   Document 36-2   Filed 03/24/23   Page 32 of 32 PageID #: 442

16410012V.4