# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SITEONE LANDSCAPE SUPPLY, LLC,

      Plaintiff,

v.

NICHOLAS GIORDANO; DOMINICK
CAROLEO; VICTOR CAROLEO; NARROW
WAY REALTY, LTD.; NARROW WAY 2
LLC; THE GARDEN DEPT. CORP.; GROUP
5 ASSOCIATES, LTD.; 3670 ROUTE 112
LLC; 9 4TH ST. LLC; SCAPES SUPPLY,
LLC; NEWAY MANAGEMENT, LLC; AND
NEWAY TRUCKING,

      Defendants.

Civil Action No.: 23-CV-02084-GRB-SL

**NOTICE OF SERVICE OF
SUBPOENA**

---

Pursuant to Fed. R. Civ. P. 45(a)(4), please take notice that Plaintiff SiteOne Landscape

Supply, LLC will serve the attached Subpoena Duces Tecum on Rose Casper on August 13,

2024.

Dated:  August 9, 2024

TROUTMAN PEPPER HAMILTON
SANDERS LLP

By: */s/ John S. Gibbs III*

John S. Gibbs III (admitted *pro hac vice*)
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308
Phone: (404) 885-3000
Email: evan.gibbs@troutman.com

Daniel E. Gorman
875 Third Avenue
New York, New York 10022
Phone: (212) 604-6000
Email: daniel.gorman@troutman.com

FARRELL FRITZ, P.C.

By: */s/ Kevin P. Mulry*

Kevin P. Mulry
400 RXR Plaza
Uniondale, New York 11556
Phone: (516) 227-0620
Email: kmulry@farrellfritz.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing Notice of Service of Subpoena was served on all counsel of record via email on August 9, 2024.

*/s/ John S. Gibbs III*
Counsel for Plaintiff

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York ▾

| | |
|---|---|
| SITEONE LANDSCAPE SUPPLY, LLC, | ) |
| _Plaintiff_ | ) |
| v. | ) |
| NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; et al. | ) |
| _Defendant_ | ) |

Civil Action No. 2:23-CV-02084-GRB-SL

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Rose Casper, 3 Quincy Street, Port Jefferson Station, New York 11776-3430

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Exhibit A attached hereto.

| Place: Attn: Daniel E. Gorman, Troutman Pepper Hamilton Sanders LLP, 875 Third Avenue, New York, NY 10022 | Date and Time: 08/30/2024 9:00 am |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/09/2024

| _CLERK OF COURT_ | | |
|---|---|---|
| _____ | OR | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
SiteOne Landscape Supply, LLC _____, who issues or requests this subpoena, are:
John S. Gibbs III, Troutman Pepper Hamilton Sanders LLP, 600 Peachtree St., Ste. 3000, Atlanta, GA 30308,
evan.gibbs@troutman.com, (404)885-3000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:23-CV-02084-GRB-SL

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

Produce all documents containing any Garden Department financial or customer data or information.

Produce all documents containing any SiteOne financial or customer data or information.

Produce all documents relating to commercial properties owned by Dominick "Don" Caroleo, Victor "Vic" Caroleo, or Nicholas "Nick" Giordano, or any entity owned or controlled by those individuals, and the leases thereto.

To the extent not produced in response to the above requests, produce all files, documents, and communications (whether physical or electronically stored) relating to the following topics:

1.      This lawsuit or the allegations in the Amended Complaint (a copy of which being enclosed with this subpoena).

2.      All work you performed for The Garden Department from January 1, 2020 to the present.

3.      All work you performed for SiteOne from January 1, 2020 to the present.

4.      All work you performed for Dominick "Don" Caroleo from January 1, 2020 to the present.

5.      All work you performed for Victor "Vic" Caroleo from January 1, 2020 to the present.

6.      All work you performed for Nicholas "Nick" Giordano from January 1, 2020 to the present.

7.      All work you performed for Scapes Supply from January 1, 2023 to the present.

8.      All work you performed for every other named Defendant in this lawsuit.

9.      All work you performed relating to any property located on Horseblock Road.

10.     All work you performed for Don Caroleo Ventures, LLC.

11.     All work you performed for any other corporate entity owned or controlled by Vic or Don Caroleo or Nick Giordano not otherwise named herein.

12.     The make, model, and location of all computers used by you to perform work on behalf of The Garden Department and SiteOne, specifically including all computers used by you for such work during the time period of October 1, 2022 to April 1, 2023.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————

SITEONE LANDSCAPE SUPPLY, LLC,

     Plaintiff,

v.

NICHOLAS GIORDANO; DOMINICK
CAROLEO; VICTOR CAROLEO; NARROW
WAY REALTY, LTD.; NARROW WAY 2
LLC; THE GARDEN DEPT. CORP.; GROUP
5 ASSOCIATES, LTD.; 3670 ROUTE 112
LLC; 9 4TH ST. LLC; SCAPES SUPPLY,
LLC; 99 LONG ISLAND AVENUE SOUTH,
LLC; 99 LONG ISLAND AVENUE NORTH,
LLC; NEWAY MANAGEMENT, LLC; AND
NEWAY TRUCKING;

     Defendants.

———————————————————————

AMENDED COMPLAINT

Civil Action No.: 2:23-CV-02084

Plaintiff SiteOne Landscape Supply, LLC ("SiteOne"), by and through its undersigned

counsel, files this Amended Complaint against Defendants Nicholas Giordano; Dominick Caroleo;

Victor Caroleo; Narrow Way Realty, Ltd.; Narrow Way 2 LLC; The Garden Dept. Corp.; Group

5 Associates, Ltd.; 3670 Route 112 LLC; 9 4th St. LLC; Scapes Supply, LLC; 99 Long Island

Avenue South, LLC; 99 Long Island Avenue North, LLC; Neway Management, LLC; and Neway

Trucking, alleging as follows:

### INTRODUCTION

1.     Defendants have engaged in a course of conduct that is shocking to the conscience

in a coordinated and clandestine effort to maliciously harm SiteOne's business.

2.     Defendants, acting in concert:

      a.     Stole multiple SiteOne computers containing extensive confidential and

trade secret data and information;

b.      Stole thousands of pages of physical documents from a SiteOne file cabinet containing extensive confidential and trade secret data and information;

c.      Stole a monitor and DVR recorder, which hosts SiteOne's security camera system at SiteOne's Coram, New York location, to conceal their theft of SiteOne's tangible assets, while also maintaining the ability to remotely access the security camera system (which also permitted the continued monitoring of activity of SiteOne employees on SiteOne's premises);

d.      Transferred Verizon wireless phone numbers (that were acquired by Site-One as part of the assets in the purchase of Garden Department), for their own benefit and without authorization, to a Verizon wireless account that is not affiliated with SiteOne (which Verizon wireless phone numbers were used by customers to contact Garden Department);

e.      Covertly installed an app on a personally-owned smartphone that permits Defendants to receive, in real-time, certain of SiteOne's current and historic financial data;

f.      Directed multiple SiteOne employees to prepare this new location for a competing business, even though those employees were still employed by SiteOne at that time (i.e., clocked in and being paid by SiteOne);

g.      Solicited or attempted to divert multiple SiteOne employees away from SiteOne and to the new competing business they have started;

h.      Solicited multiple SiteOne employees to quit working with SiteOne, to instead work for the Defendants' new competing business; and

i.      Opened and continue to brazenly operate a directly competing business just a few miles from SiteOne's Coram, New York location, in direct contravention of numerous agreements not to compete with SiteOne.

3.      Defendants' activities are not only in violation of both federal and state law, but they are also in direct violation of no fewer than four binding and enforceable contracts containing non-competition, non-solicitation, and confidentiality provisions, which agreements were specifically designed to prevent precisely this type of behavior.

4.      Defendants must be stopped from continuing their blatant and unlawful conduct, including such actions taken through the guise of various corporate entities, which actions are taken in an attempt to hide their activities from SiteOne and others.

5.      Nothing short of preliminary and permanent injunctions from this Court will deter Defendants' flagrant unlawful attempts to destroy SiteOne's business. SiteOne has and will continue to suffer irreparable harm without this relief.

### THE PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff SiteOne Landscape Supply, LLC ("SiteOne") is a Delaware limited liability company and its sole member is SiteOne Landscape Supply Holding, LLC ("SiteOne Holding"), a Delaware limited liability company. SiteOne's ultimate parent company is SiteOne Landscape Supply, Inc., which is a publicly held corporation. SiteOne is the sole member of SiteOne Holding is SiteOne Landscape Supply Bidco, Inc., which is a corporation organized under the laws of the State of Delaware with its principal place of business in Roswell, Georgia.

7.      Nicholas Giordano, Dominick "Don" Caroleo, and Victor "Vic" Caroleo are all residents of the State of New York.

8.      Narrow Way Realty, Ltd. is a New York corporation. Vic Caroleo is its CEO.

9.      Narrow Way 2 LLC is a New York limited liability company. Vic Caroleo is a member of Narrow Way 2, LLC. On December 6, 2022, Don and/or Vic Caroleo registered the company with the New York Department of State.

10.     The Garden Dept. Corp. is a New York corporation. Its sole shareholder is Don Caroleo.

11.     Group 5 Associates, Ltd. is a New York corporation. Vic Caroleo is its Chief Executive Officer.

12.     3670 Route 112 LLC is a New York limited liability company. Don Caroleo is its sole member.

13.     9 4th St. LLC is a New York limited liability company. Don Caroleo is its sole member.

14.     Scapes Supply, LLC is a New York limited liability company. Upon information and belief, it is owned and/or controlled by Defendants Giordano, Vic Caroleo, and Don Caroleo.

15.     99 Long Island Avenue South, LLC is a New York limited liability company. Upon information and belief, it is owned and/or controlled by Defendants Giordano, Vic Caroleo, and Don Caroleo.

16.     99 Long Island Avenue North, LLC is a New York limited liability company. Upon information and belief, it is owned and/or controlled by Defendants Giordano, Vic Caroleo, and Don Caroleo.

17.     Neway Management, LLC is a New York limited liability company. Upon information and belief, it is owned and/or controlled by Defendants Giordano, Vic Caroleo, and Don Caroleo.

18.     Neway Trucking is a New York company but is not registered with the New York Secretary of State. Upon information and belief, it is owned and/or controlled by Defendants Giordano, Vic Caroleo, and Don Caroleo.

19.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, because Plaintiffs assert claims against some of the Defendants for violations of federal law under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), because they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

20.     Venue is proper in the Eastern District of New York, Central Islip Division, pursuant to 28 U.S.C. § 1391(b) because all Defendants are residents of New York, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**FACTS**

## I.     SiteOne.

21.     SiteOne is the largest full product line supplier of wholesale goods for landscaping industry professionals in the United States and Canada. SiteOne's customers are primarily residential and commercial landscape professionals who specialize in the design, installation and maintenance of lawns, gardens, golf courses, and other outdoor spaces. SiteOne's North American network consists of over 630 store locations in 45 U.S. states and six Canadian provinces, and SiteOne employs approximately 6,000 employees.

## II.     Garden Department.

22.     Garden Department was a nursery and landscape supply company initially founded by Defendant Vic Caroleo in or about 1976 on Long Island. Garden Department grew into a full-service commercial wholesale and retail nursery business with three locations in Coram, Dix Hills, and Speonk, New York.

23.     Don Caroleo is Vic Caroleo's son. Don Caroleo took over Garden Department from his father in or about 2005. At some point, Don Caroleo became the sole shareholder of The Garden Dept. Corp., the entity which owned all Garden Department assets.

## III.     SiteOne Acquires Garden Department.

24.     On January 14, 2020, SiteOne purchased the assets of The Garden Dept. Corp. from its sole shareholder, Don Caroleo, by way of an Asset Purchase Agreement (the "APA"), the relevant portions of which are attached here as Exhibit 1.[1]

25.     The assets purchased included all "Equipment," "Records," "Confidential Information," "Intellectual Property," goodwill and going concern rights associated with Garden Department. (Ex. 1 §§ 1.01(a)(viii), (xi), (xii).)

26.     The term "Equipment" is defined by the APA (under the "Definitions" attached as Exhibit 1 to the APA) as:

> all vehicles, machinery, office equipment, furniture, fixtures, trade fixtures, fixed assets, and all related parts, tools, supplies and any available manufacturer warranties.

27.     The term "Records" is defined by the APA (under the "Definitions" attached as Exhibit 1 to the APA) as:

> all records, files, books and operating data, maintenance records, books of account, correspondence, financial, sales, market and credit information and reports, drawings, patterns, slogans, market research and other research materials, license documents, customer lists and Confidential Information, in each case whether in print, electronic or other media.

28.     The term "Confidential Information" is defined by the APA in Section 4.01(b) as:

> any and all technical, business and other information of or relating to the Business or the Purchased Assets that derives value, actual, potential, economic or otherwise, from not being generally known to other Persons, whether or not constituting a trade secret, including technical or non-technical data, compositions, devices,

---

[1] All Exhibits referenced in this Amended Complaint refer to those Exhibits filed with SiteOne's initial Complaint in this case. Those Exhibits are incorporated herein by reference.

methods, techniques, drawings, inventions, know-how, processes, financial data, financial plans, audit plans, lists of actual potential customers or suppliers, information regarding acquisition and investment plans and strategies, business plans or operations. Confidential Information includes any such information of third parties that Company is obligated to or does keep or treat as confidential.

29.   The term "Intellectual Property" is defined by the APA (under the "Definitions"

attached as Exhibit 1 to the APA) as:

> all patents, patent applications, docketed inventions, trademarks, trade names, service marks, copyrights, computer programs and other software, domain names, URLs, websites, trade secrets, confidential and proprietary business information, processes, know how, engineering, drawings, plans and product specifications, all other intellectual property, including all promotional displays and materials, price lists, bid and quote information, literature, catalogs, brochures, advertising material and the like, all telephone numbers, telephone and advertising listings, customer, supplier and distributor lists and all other information and data relating to the customers or suppliers, all product development, packaging development, and any licenses, license agreements and applications related to any of the foregoing.

## IV.   **The APA's Restrictive Covenants.**

30.   The APA contains a five-year non-competition covenant under which Don Caroleo

agreed to not, directly or indirectly:

> engage in, own, control, manage, or participate in the ownership, control or management of, or render services or advice to, or lend its or his name to, any business engaged, or undertaking to become engaged, in whole or in part, in the sale or distribution of nursery or landscape products, including annuals, perennials, bulbs, gloves, rain gear, shoes, aquatic supplies, chemicals, fertilizers, mulch, sand, soil, stone, snow shovels, hoses, hose reels, anchor kits, rakes, trowels, wheelbarrows, spreaders or ball carts within a 75-mile radius of the Coram, Dix Hills, or Speonk Garden Department locations.

(*Id.* § 4.02(a)(i).)

31.   The APA also contains a five-year employee non-solicitation covenant under which

Don Caroleo agreed to not, directly or indirectly:

> solicit or assist in the solicitation of, any Person employed or engaged by [SiteOne] in the Business in any capacity (as an employee, independent contractor or otherwise) during the two year period ending on the Closing Date to terminate his or her employment or other engagement, whether or not such employment or engagement

is pursuant to a Contract and whether or not such employment or engagement is at will.

(*Id.* § 4.02(a)(iii).)

32.     Don Caroleo further agreed under the APA that he would not "knowingly or intentionally damage or destroy in any material respect the goodwill of the Business with suppliers, employees, patrons, and customers of the Business." (*Id.* § 4.02(a)(iv).)

## V.     The Coram Lease Agreement and Its Non-Compete Restriction.

33.     SiteOne did not purchase the real property on which Garden Department stores operated. Instead, in conjunction with the execution of the APA, SiteOne entered into lease agreements with the real property owners of Garden Department sites. Relevant here is the lease agreement for SiteOne's Coram, New York location, which is the largest of the three Garden Department stores purchased by SiteOne. A copy of the relevant portions of the Coram lease agreement are attached as Exhibit 2.

34.     The leased property on which the Coram location sits is subdivided into five separate parcels. (Ex. 3 § 1.1, 1.2, Ex. B.) Those parcels are owned by three separate entities, named Defendants: (a) Group 5 Associates, Ltd.; (b) 3670 Route 112 LLC; and (c) 9 4th St. LLC. (*Id.* § 23.) The property owners appointed Defendant Narrow Way Realty Ltd. as the landlord for the entire leased property. (*Id.*) Vic Caroleo is CEO of Narrow Way Realty Ltd. (*Id.* at signature page.)

35.     Vic Caroleo is also the Chief Executive Officer of Group 5 Associates, Ltd. (*Id.* at "Joinder by Property Owners" signature page.) Don Caroleo is the sole member of both 9 4th St. LLC and 3670 Route 112 LLC. (*Id.*)

36.     The Coram lease expires on December 31, 2024. Section 6.5 of the Coram lease contains a non-competition covenant that runs during the term of the lease and for 12 months after the lease is terminated. That covenant provides:

During the Term of this Lease, Landlord shall not buy, sell, lease, license or other-
wise make available any land or building either now controlled by Landlord or
which becomes subject to Landlord's control after the Effective Date of this Lease
within ten (10) miles of the Premises, as measured from the closest property line of
the Premises to the closest property line of the competing property (the "Competing
Property"), to any person or business entity that engages in a business activity that
includes the sale of landscapes, pavers, stone, concrete, or other landscape materials
(including rock, gravel, mulch, bark, topsoil, compost and sand, irrigation/drainage
products, turf care products (i.e. fertilizers and control products), grass seed, and/or
turf care equipment (i.e. mowers, sprayers, spreaders, turf renovators, hand-held
power equipment, etc.)). This covenant shall be binding upon Landlord and Land-
lord's successors, assigns, or beneficiaries...

## VI.  <u>Don Caroleo.</u>

37.    In conjunction with the APA, SiteOne hired Don Caroleo as an employee.

38.    Don Caroleo was tasked with running the legacy Garden Department operations
SiteOne purchased. The decision to hire Don Caroleo was specifically premised on his intimate
knowledge of the business he sold to SiteOne.

39.    Don Caroleo executed an employment agreement on January 14, 2020 in connec-
tion with his hiring by SiteOne (the "Employment Agreement"). A copy of the relevant portions
is attached as Exhibit 3.

40.    The Employment Agreement contains a one-year non-competition covenant pro-
hibiting Don Caroleo from directly or indirectly providing "Services" to anyone engaged in the
"Business" within a 75-mile radius of the Coram, Dix Hills, or Speonk Garden Department loca-
tions or the Dix Hills or Holtsville nurseries. (Ex. 3 § 8(a), Ex. A to Emp. Agr.) "Services" is
defined in the Employment Agreement as the duties and responsibilities assigned to Don Caroleo
during his employment with SiteOne, and "Business" is defined to include the products and ser-
vices SiteOne sells to contractors, home builders, and others. (*Id.* p. 1, Ex. B to Emp. Agr.)

41.     The Employment Agreement also contains a one-year employee non-solicitation provision prohibiting him from inducing or soliciting any employee to leave SiteOne's employment or otherwise interfere with any SiteOne's employee's employment relationship with the company. (*Id.* § 8(c).)

42.     Don Caroleo expressly acknowledged in the Employment Agreement "that [SiteOne] shall be entitled to obtain an immediate injunction from any arbitral tribunal or court of competent jurisdiction if any such breach, or a threat thereof, occurs which Company in good faith believes will or is likely to result in irreparable harm to [SiteOne]." (*Id.* § 11.)

43.     Don Caroleo also agreed the restrictive covenants would survive the termination of his employment with SiteOne. (*Id.* § 13.)

44.     Don Caroleo's employment with SiteOne ended effective October 19, 2022. (Thistle ¶ 4.)

45.     The non-competition and non-solicitation provisions of the Employment Agreement remain in effect until, at the earliest, October 19, 2023.

46.     Don Caroleo also received a grant of restricted stock units from SiteOne during his employment. To be eligible for the grant, he was required to enter into an Employee Restricted Stock Unit Agreement with SiteOne which contains non-competition, non-solicitation (of employees and customers), and confidentiality provisions. Copies of the relevant portions of the Stock Unit Agreement are attached as Exhibit 4.

47.     The duration of the non-compete and non-solicitation provisions is 18 months following the date Don Caroleo's employment terminated with SiteOne. (*Id.* § 3.) The covenants run until, at the earliest, April 19, 2024.

48.     The restricted area for the non-compete provision is the geographic region over which Don Caroleo had responsibility while employed by SiteOne, and it prohibits him from engaging in the sale or distribution of landscaping or irrigation products or supplies in that area. (*Id.*)

49.     The non-solicitation provision prohibits him from recruiting, soliciting, or inducing SiteOne employees or customers to leave SiteOne for a competing business, and from interfering with SiteOne's relationship with any of its employees, customers, or suppliers. (*Id.*)

## VII.     **Nicholas "Nick" Giordano.**

50.     Giordano began working for Garden Department in approximately the mid-2000s. (Catalano ¶ 5.) At some point, Giordano began effectively running Garden Department's day-to-day operations and served as the Branch Manager for Garden Department's Coram, Dix Hills, and Speonk locations from the time SiteOne acquired Garden Department until his termination. (*Id.*)

## VIII.     **Vic Caroleo.**

51.     Vic Caroleo was employed by Garden Department and SiteOne at various points in time after Don Caroleo took over the business. Vic Caroleo's employment with SiteOne ended on October 21, 2022.

## IX.     **Giordano's Duplicity.**

52.     It was well known that Don Caroleo and Giordano were good friends and had worked together for approximately 20 years prior to Don Caroleo's departure from SiteOne. (Trauma ¶ 3.) At the time of Don Caroleo's departure from Garden Department, it was immediately apparent to the legacy Garden Department employees that Giordano was upset about Don Caroleo leaving the company. (*Id.* ¶¶ 3, 4.)

53.     At that time, SiteOne management had no reason to believe Giordano was anything other than a loyal and committed employee. Thus, to entice Giordano to stay with SiteOne, SiteOne offered him an equity grant in October 2022. (Catalano ¶ 6.) To be eligible for the equity award,

Giordano was required to sign an agreement governing the terms of the grant and which contained a non-compete provision. (*Id.*) This equity grant agreement is a standard company document required of all employees who become eligible for equity awards. (*Id.*)

54.     After receiving a copy of the agreement, Giordano told his boss, Area Manager Anthony Catalano, that he would have his attorney review the agreement and would follow up with Catalano as to whether Giordano was agreeable to signing it. (*Id.*) Catalano followed up with Giordano at least five separate times about the agreement, but Giordano continued to tell Catalano he needed his attorney to review it. (*Id.*) Giordano never signed the agreement (*id.*) and it is now clear the reason he would not sign it is because he fully intended to begin competing directly with SiteOne jointly with Don and Vic Caroleo in the coming months.

## X.     Defendants Undertake a Scheme to Steal SiteOne's Business and Employees.

55.     On October 20, 2022 — the day after Don Caroleo's employment ended — Giordano called a computer repair technician from an outside vendor to visit the Coram location to work on the computer of Rose Casper, a part-time SiteOne bookkeeper. (Passaro ¶ 16; Catalano ¶ 7.) Catalano happened to be present at the Coram location that day. (Catalano ¶ 7.) At one point the repairman came out of the office where Casper's computer was located and stated something to the effect of, "the problem with this computer is that someone was trying to get information off of it with a flash drive and that messed it up." (Passaro ¶ 16; Catalano ¶ 7.)

56.     Although no one identified this as a risk to SiteOne at the time, with the benefit of hindsight, this was clearly Giordano's first attempt to steal information from SiteOne using an external drive plugged into Casper's computer (which computer was used for bookkeeping).

57.     Around the same time Don Caroleo left the company, Giordano also began regularly making comments and insinuations to the legacy Garden Department employees that he would not remain with SiteOne for very long after Don Caroleo's departure, such as, "I don't know

how much longer I'll be here." (Trauma ¶ 3.) Giordano also began speaking negatively about Site-One to his fellow employees, doing his best to portray the company in a bad light. (Trauma ¶ 4.) Giordano told SiteOne employees that SiteOne would "get rid of" them, that the company would not pay them as promised, and other things of that nature. (*Id.*)

58.     In November 2022, SiteOne first began suspecting Don Caroleo was planning to open a competing business. (Catalano ¶ 8.) This suspicion was based on a report SiteOne received that Don Caroleo purchased a parcel of land suitable for a landscaping supply operation just four miles from SiteOne's Coram location. It has now been determined that the property Don Caroleo purchased is located at 38 Yaphank Middle Island Road, Middle Island, New York (the "Middle Island Road" property). (*Id.*) This information came to SiteOne by way of a customer who informed SiteOne that he had been outbid by Don Caroleo on the parcel of land in question. (*Id.*)

59.     This information was consistent with what Don Caroleo once told one of his former SiteOne co-workers. Sometime in 2022, Don Caroleo mentioned purchasing land near SiteOne's Coram, New York location and that he had decided to open a nursery business after his contract with SiteOne "expired." (Kersnowski ¶ 4.)

60.     Don Caroleo even told this co-worker something to effect of, **"I can even put the business in my sister's name,"** which the co-worker took to mean that Don Caroleo was contemplating possibly establishing a competing business in his sister's name to avoid directly violating the contractual non-compete restrictions he was subject to with SiteOne. (*Id.*) Don Caroleo also alluded to his former co-worker that employees at Garden Department locations SiteOne acquired from Don Caroleo would "follow him" if and when he left the company and started a competing business. (*Id.*)

61.     However, with no additional information other than the purchase of a piece of land and vague statements about potential future plans made months earlier, there was nothing SiteOne could do at the time.

62.     On January 16, 2023, two SiteOne employees who had worked closely with Giordano at the Coram location for more than 15 years — Alex Trauma and Gerard Passaro — came into work one morning and noticed Giordano's desktop computer missing from his desk. (Passaro ¶ 7; Trauma ¶ 7.)

63.     When questioned about the missing computer, Giordano told them his computer had "crapped out" and that he had thrown it into the dumpster located onsite at the Coram store. (*Id.*) Passaro found this extremely odd; he therefore went and looked in the dumpster and the computer was not there — and the dumpster had not been emptied. (Passaro ¶ 7.) Following this incident, Giordano began using a different desktop computer from another sales desk. (Passaro ¶ 8; Trauma ¶ 7.)

64.     It is now clear Giordano took, without authority, the desktop computer to use in the setting up and running of the new competing business he was in the process of starting with Don and Vic Caroleo. There is no other explanation for this behavior.

65.     The desktop computer Giordano misappropriated, destroyed and/or converted had access to the point-of-sale system for all Garden Department operations going back approximately eight years. (Passaro ¶ 5.) The computer had the ability to generate reports and download and save information (sales, financial, and customer data) locally from the point-of-sale system. (*Id.*) This means Giordano's desktop computer could contain a record of every single sale made by Garden Department going back to the implementation of the current point-of-sale system. (*Id.*) This would

include all associated customer information and purchase information; customer contact infor-

mation; customer order histories; pricing; and sales volume, among other important data. (Passaro

¶ 5; Trauma ¶ 8.)

66.     This computer also housed countless Word documents and spreadsheets used to

track other key business and financial information. (Passaro ¶ 6.) For example, the computer con-

tained detailed bidding and pricing information the company used in bidding for commercial pro-

jects as well as copies of the actual bids. (*Id.*) Further, Giordano was the buyer for the Coram, Dix

Hills, and Speonk locations. As such, Garden Department's vendor, pricing, and other associated

information was stored on this computer. (*Id.*) The computer was password-protected. (*Id.*)

67.     The company took reasonable measures to keep the information and data on the

computer safe. The computer was stored in the main building at SiteOne's Coram location which

was locked, monitored by security cameras and by company employees during working hours and

was password-protected. (Passaro ¶ 4, 6, 17.). Upon information and belief, Giordano also trans-

ferred certain Verizon wireless phone numbers (that were acquired by SiteOne as part of the assets

in the purchase of Garden Department), for his own benefit and without authorization, to a Verizon

account that was unaffiliated with SiteOne. The converted Verizon wireless phone numbers were

used by customers to contact Garden Department.

68.     During the winter's off-season months, the Coram location closes at 4:00 p.m.

(Trauma ¶ 6.) In the weeks leading up to Giordano's departure from SiteOne in January and Feb-

ruary 2023, Trauma happened to drive by the Coram location on multiple occasions after hours

and after dark (approximately 6:30 p.m.) and saw Giordano's vehicle parked at the store. (*Id.*)

Although Trauma does not know what Giordano was doing at the store after hours, this struck

Trauma as somewhat odd for Giordano to be there that late in the day during the off-season. (*Id.*)

## XI.    <u>Giordano and Other SiteOne Employees Prepare the Site for the New Business.</u>

69.    On or about January 23, 2023, 20-year legacy Garden Department employee Phil Sausto was approached outside of work (at the gym) by a former Garden Department employee. (Sausto ¶ 3.) This individual told Sausto he spoke with Giordano at the property located on Middle Island Road, and that Giordano told him "we" are opening a nursery business on that property. (*Id.*) This is the same property identified to SiteOne in November 2022 as having been purchased by Don Caroleo.

70.    The next day, Sausto drove by the location identified to him by the former employee and saw multiple individuals working on the property wearing orange Garden Department jackets. (Sausto ¶ 4.) This was during normal SiteOne business hours. (*Id.*) It was clear Defendants were in the early stages of site preparation work for a commercial activity of some kind. (*Id.*) Sausto also discovered a picture posted on Facebook by then-current SiteOne employee David Gomez - of Gomez working at the site; a copy is attached to Sausto's Declaration. (*Id.*)

71.    Sausto heard from other SiteOne employees that Giordano was assisting these other SiteOne employees in preparing the property located on Middle Island Road for a nursery business. (*Id.*) Sausto reported this issue to SiteOne via SiteOne's Ethics Hotline on January 24, 2023; a copy of his report is attached to Sausto's Declaration. (*Id.*)

72.    Sausto then told his long-time co-worker, Gerard Passaro, about what he had been told and what he had personally seen at the Middle Island Road property. (Sausto ¶ 5.) Passaro then drove by the site and confirmed to Sausto that he also saw individuals working on the site wearing Garden Department jackets. (Sausto ¶ 5; Passaro ¶ 11.)

73.    Passaro saw Gomez and then-current SiteOne employee Juan Flores-Suarez working at the site. (Passaro ¶ 11.) Passaro also saw a vehicle bearing to logo of a SiteOne customer, Veridian Group, parked at the site. (*Id.*) Passaro took photos of the site while he was there, which

are attached to his Declaration. (*Id.*) This was during normal SiteOne business hours. (*Id.*) Passaro reported this information to SiteOne via the company's Ethics Hotline on January 25, 2023; a copy of his report is attached to his Declaration. (*Id.*)

74.     SiteOne never authorized any of its employees — including Giordano — to work at this location. (Catalano ¶ 10.)

75.     Shortly after this, two other SiteOne customers with whom Sausto works regularly told him that Don Caroleo and Giordano were starting a new nursery. (Sausto ¶ 6.) Additionally, one of the employees Sausto supervises relayed to him that at least three SiteOne employees (Juan and Jorge Suarez-Flores, who are brothers, and Antonio Rio-Garcia) were going to work for Don Caroleo at his new nursery. (*Id.*) Those three individuals left SiteOne within a day or so of Giordano's termination (which is discussed below). (*Id.*)

## XII.   <u>SiteOne Hires a Private Investigator.</u>

76.     At this point, in late January 2023, SiteOne's outside counsel retained a private investigator (John Hopkins) to surveil the property located on Middle Island Road. (Hopkins ¶ 3.) Hopkins confirmed that Don and/or Vic Caroleo purchased the property. (Hopkins ¶ 4.) Hopkins began monitoring the Middle Island Road property on January 30, 2023. (Hopkins ¶ 5.) He monitored the site on January 30 and 31, and February 1–4, 6–8, 10–11, and 13–19, 2023, documenting the activity on the property and taking photographs[2] and videos. (*Id.*)

77.     The evidence Hopkins obtained is indisputable that the site was being prepared for commercial activity; the location was visited and serviced by no fewer than six contractors (electrical, plumbing, fencing, sprinkler systems, etc.) and numerous individuals. (Hopkins ¶ 6.)

---

[2] Hopkins' photos are attached to his Declaration.

78.     Giordano was observed on the property and his presence was photographed as follows:

     a.    February 2, 2023 (Thursday) at 10:20 a.m.: Giordano drove onto the property and parked in the middle of the lot for three to four minutes and then exited the property (Hopkins followed Giordano when he left the property and Giordano drove straight to SiteOne's Coram location);

     b.    February 4, 2023 (Saturday) at 10:34 a.m. to 10:42 a.m.: Giordano parked at the site but remained in his vehicle the entire time;

     c.    February 7, 2023 (Tuesday) at 4:40 p.m.: Giordano entered the site and drove around the property but never exited his vehicle, leaving shortly after he arrived; and

     d.    February 18, 2023 (Saturday) at 12:18 p.m. to 12:40 p.m.: Giordano was photographed installing chains and locks on the Middle Island Road property. (Hopkins ¶ 7.)

## XIII.   The Town of Brookhaven's Lawsuit Confirms Defendants' Activities.

79.     On February 1, 2023, the Town of Brookhaven filed an Amended Complaint against The Garden Dept. Corp., Narrow Way 2 LLC, Don Caroleo, Vic Caroleo, and other unknown but affiliated entities and persons in the Suffolk County Supreme Court. A copy of the Amended Complaint is attached as Exhibit 5.

80.     The Town of Brookhaven alleges that the defendants in that action illegally cleared, regraded, and otherwise prepared the Middle Island Road property for the operation of a nursery business in violation of various civil and criminal New York state statutes and Brookhaven Town Codes, including, but not limited to:

 a.  The "Tree Preservation" provisions of Chapter 70 of the Brookhaven Town Code;

 b.  Brookhaven Town Code §§ 70-9 and 10 (both the civil and criminal components of those provisions);

 c.  The Long Island Pine Barrens Protections Act (ECL § 57); and

 d.  The New York State Wild, Scenic, and Recreational Rivers Act (ECL §§ 15-2701, et seq.).

(Ex. 5, p. 2.)

 81. In support of its Amended Complaint, the Town of Brookhaven submitted an affidavit from the Town's Senior Environmental Analyst, Luke Ormand, who testified (under oath) that he stopped at the Middle Island Road property on January 9, 2023 and spoke with an unnamed individual "wearing a Garden Dept. shirt," expressly noting "[t]he work shirt had a clearly visible orange 'The Garden Dept.' logo on it." (Ormand ¶5.) Ormand further testified that:

> **I asked the man what the plan for the property was and he stated they would be "operating a nursery" and I asked if it was for the Garden Dept. to which he replied "yes."**

*(Id.)*

 82. Based on these violations, and discussions with individuals at the Middle Island Road property, the Town of Brookhaven posted two Stop Work Orders on January 9, 2023, and again on January 25, 2023, and also served copies of those Orders on the defendants in that action on or around those same dates. (Ex. 5, p. 8–9.) The Amended Complaint states that the defendants in that action completely "ignored" the Stop Work Orders.[3] *(Id.)*

---

[3] Hopkins' surveillance of the Middle Island Road property further confirms that work continued to be performed in violation of the Town of Brookhaven's two Stop Work Orders. (Compare Hopkins ¶ 5-7 with Ex. 5, p. 8–9 and Ex. 6.)

83.     Based on their refusal to stop work on the Middle Island Road property in violation of the Stop Work Orders, the Town applied on February 7, 2023 on an emergency basis to the Suffolk County Supreme Court for an injunction to immediately halt work on the site. A copy of the Town's application is attached as Exhibit 6.

84.     On February 10, 2023, the Suffolk County Supreme Court entered a preliminary injunction as to continuing work on the property against the defendants after a hearing on the Town's injunction application. A copy of the preliminary injunction order is attached as Exhibit 7.

85.     Notably, Vic Caroleo filed an affidavit with the Suffolk County Supreme Court on March 1, 2023. A copy is attached as Exhibit 8. **In his affidavit, Vic Caroleo confirms that the Middle Island Road site will be used "as a nursery, selling flowers and other plants."** (Ex. 8 ¶ 2.) The Town also confirmed that on or about January 6, 2023, Don and/or Vic Caroleo used Narrow Way 2 LLC to purchase the Middle Island Road property. A copy of the deed filed by the Town is attached as Exhibit 9.

86.     Just like here, the Town of Brookhaven contends that Don and Vic Caroleo are attempting to "hide behind a corporate veil" to avoid accountability for violating multiple civil and criminal laws. (Town of Brookhaven's March 13, 2023 Resp. to Mtn. to Dis., attached as Exhibit 10, pp. 10–11.)

87.     Although the Town of Brookhaven filed an Amended Complaint to add Vic Caroleo and Narrow Way 2 LLC, they refused to dismiss Don Caroleo or any other defendants, at the time of amending, presumably because they believed they had the right defendants that owned and operated the Middle Island Road property.

## XIV. **Giordano Is Fired.**

88.     The decision was reached to terminate Giordano based on his conduct, and a meeting was scheduled with him for February 20, 2023. (Thistle ¶ 6.)

89.     Apparently sensing his termination was imminent, on February 15 or 16, 2023, Giordano told SiteOne employee Alex Trauma not to come into work on February 20. (Trauma ¶ 5.) He did not give Trauma a specific reason; since Trauma reported to Giordano at the time, Trauma did not go into work February 20. (*Id.*) Upon information and belief, Giordano also told other SiteOne employees not to come to work in or around this time, for no reason whatsoever.

90.     Further, shortly before Giordano's last day with SiteOne, he also asked Trauma whether Trauma would "follow him" when Giordano left. (Trauma ¶ 5.) Based on the context of the discussion, Trauma assumed Giordano was going to work for or start a business to compete with SiteOne and wanted Trauma to come work with him. (*Id.*)

91.     Catalano, along with Joe Ketter (SiteOne's Executive Vice President of Human Resources) and Greg Thistle (a SiteOne Regional Vice President), met with Giordano on February 20. (Catalano ¶ 13; Thistle ¶ 6.)

92.     At the start of the meeting, Giordano at first stated he was loyal to SiteOne and fully intended to stay with SiteOne long-term but stated he did not want to sign the equity grant agreement containing the non-compete provision. (*Id.*) Catalano, Ketter, and Thistle then confronted him with the fact the SiteOne was aware he was actively preparing to open a competing business with Don Caroleo at the Middle Island Road site, and that SiteOne knew he had been doing so during SiteOne working hours. (Catalano ¶ 14; Thistle ¶ 6)

93.     In response, Giordano acknowledged only that he was doing work "at Vic's house" and nothing more. (*Id.*) Giordano was then told he was fired, he was given his termination letter,

and was asked to hand over his company cell phone and laptop, which he did. (*Id.*) The meeting ended and Mr. Giordano exited the property. (*Id.*)

**XV.    Giordano, in Concert with Don and Vic Caroleo, Raid SiteOne's Coram Location.**

94.    At SiteOne's Coram location there is a physical file cabinet located in the sales area. (Passaro ¶ 12.) The top drawer of this file cabinet contained hard copies of extensive bidding and contract information for dozens of customers and projects going back approximately three years (if not longer). (*Id.*) These documents contained pricing, contract expiration dates, detailed project information, and other sensitive business information. (*Id.*) There were hundreds if not thousands of pages of documents in the top drawer of the cabinet. (*Id.*) Although SiteOne has additional copies of some of these documents elsewhere, there is no list of what was stored in the file cabinet and thus no way to inventory or otherwise specifically identify the documents it contained. (*Id.*)

95.    The morning after Giordano was fired — February 21, 2023 — Passaro came into work and found that **all** the file cabinet's documents had been removed. (Passaro ¶ 13.) Additionally, Passaro's company-issued iPhone was at the Coram location the night Giordano was terminated, as was Passaro's regular practice. (Passaro ¶ 20.) The morning after Giordano's termination, customer contact information had been deleted and modified in the phone, and important business information Passaro stored in the "Notes" app on the phone had been deleted. (*Id.*) Giordano had the passcode to Passaro's company-issued phone. (*Id.*)

96.    SiteOne's Coram location has a security camera system installed. (Passaro ¶ 17; Thistle ¶ 7.) Approximately one week after Giordano was fired, Passaro checked the closet where the monitor and DVR recording system for the security camera system was located. (*Id.*) It was discovered that both the monitor and DVR recorder were missing. (*Id.*) These items have not found. (*Id.*)

97.     Worse yet, the security camera system was set up to be remotely monitored by Giordano and Don Caroleo on their personal smartphones. (Passaro ¶ 18; Thistle ¶ 7.) The vendor who installed the security camera system was called to the property and explained that the only way to recover footage from the system is to locate the missing DVR recorder. (Thistle ¶ 7.) The vendor further explained that it was entirely possible that someone (i.e., Giordano and Don Caroleo) were still monitoring and/or recording the cameras remotely. (*Id.*)

98.     After his conversation with the security camera vendor, Thistle walked the Coram property and identified approximately 60 to 70 cameras installed throughout the property, both inside and outside of the main building. (Thistle ¶ 7.) While employees reported that some of the cameras were fake, there is no way to identify which ones are/were currently functioning and/or are continuing to provide a live feed to Don Caroleo and Giordano. (Thistle ¶ 7.)

99.     Thistle walked the Coram property and unplugged as many cameras as possible. (*Id.*) However, most of the cameras are either mounted flush into the wall with no external wiring, or are in extremely difficult locations to reach, such as on top of tall poles outside the building. (*Id.*) At least one camera remains pointed directly into the area where the sales team works. (*Id.*)

100.    To the extent Don Caroleo and/or Giordano is attempting to and/or currently accessing or recording the footage from these video cameras, they do not have authority from Site-One to do so. (*Id.*)

101.    On March 6, 2023, it was discovered that the computer used by bookkeeper Rose Casper was missing. (Passaro ¶ 15.) Casper was last seen in the Coram office in early February 2023. (*Id.*) When she came into the office, Casper would work in a small office at the Coram location. (*Id.*) That office was typically locked when not in use. (*Id.*) On March 6, 2023, a new employee began working for SiteOne, and SiteOne planned to repurpose Casper's computer for

the new employee. (*Id.*) However, SiteOne discovered that the computer was not in the office where it was last seen, and it has not since been recovered. (*Id.*) Although it is unknown what information was stored on this device, the timing suggests this was another item stolen by Giordano in concert with Don and Vic Caroleo.

102.     All told, the data, documents, and information contained on Giordano's desktop computer he took from SiteOne, along with the materials in the file cabinet, constitute the "keys to the kingdom" for SiteOne's Garden Department business.[4] (Passaro ¶ 14.) The collective information from those two locations includes practically everything there is to know about the business. (*Id.*) A competitor could use the information to understand the company's pricing and bidding strategies, who its customers are, what SiteOne sells to those customers (and for how much), what SiteOne pays its vendors for supplies and products SiteOne resells, and all other competitive information. (*Id.*) This information is priceless in the hands of a competitor. (*Id.*)

103.     In conjunction with Giordano's termination, the following employees left SiteOne and each told Passaro they were going to work for Don Caroleo and Giordano: David Gomez, Juan Flores-Suarez, and Dale Nash. (Passaro ¶ 21.) Four other former employees have also not returned to work and are believed to be working with Don Caroleo and Giordano: Martin Rojas, Antonio Rios Garcia, Jorge Suarez-Flores, and Jose Rubi. (Catalano ¶ 16.)

## XVI.     Don Caroleo Covertly Steals Company Financial Performance Data.

104.     On March 9, 2023, SiteOne's outside counsel discovered that, at some point prior to his departure from SiteOne, Don Caroleo had an app installed on his personal smartphone which received financial performance data directly from the point-of-sale system for the Coram, Dix Hills, and Speonk locations via the network's server. (Schlagheck ¶ 6.) The outside IT vendor

---

[4] It is unknown what materials were stored on Casper's computer, so SiteOne cannot say at this juncture what type of confidential or trade secret information may have been contained on it.

hired by Don Caroleo to secure the data feed confirmed that the network's firewall was still permitting the app access to the financial performance data as of March 9, 2023 — almost six months after his termination (although access has since been shut off). (*Id.* ¶¶ 6–7.)

105.    Don Caroleo was not authorized to have this data fed to the app on his smartphone and certainly was not permitted to continue receiving that data after his termination. (Thistle ¶ 9.)

## XVII.   **Defendants Brazenly Defy a Court Order.**

106.    As noted above, the Suffolk County Supreme Court entered on February 10, 2023, a preliminary injunction as to continuing work on the Middle Island Road property against the defendants. (Ex. 7.)

107.    SiteOne's private investigator returned to the property on the afternoon of March 15, 2023. (Hopkins ¶ 8.) He observed the presence of an electrical contractor performing electrical installation work and a well digging company performing some type of work. (*Id.*) He also observed a work trailer parked on the property of the type that can be used for operating a business. (*Id.*)

## XVIII.   **Defendants Open Another Competing Business Within the Restricted Area.**

108.    Based on Defendants' conduct outlined above, SiteOne filed the instant lawsuit and its request for a preliminary injunction on March 17, 2023.

109.    When the lawsuit was served on the individual Defendants personally via e-mail on March 21, 2023, Vic Caroleo responded to the undersigned counsel via e-mail that same evening, stating: "Crazy. So they are trying to make it so we miss the spring[.] Fuck[.] We did nothing wrong[.]" The spring season is the busiest time of the year in the landscape supply and nursery business. Vic Caroleo's e-mail demonstrates Defendants' intent to open and operate a directly competing business in violation of the various restrictive covenants identified above, specifically during the spring 2023 busy season to harm SiteOne's business in the area.

110.    The Court held a hearing on SiteOne's preliminary injunction request on March 22, 2023. Although the Court did not rule on SiteOne's preliminary injunction request, the Court made several important observations and statements during the hearing:

    a.    "And it strikes me that, viewed at the 50,000 foot mark, these folks spent $30 million on a business from a small group of individuals and companies and said, please, you are not going to compete with us and they agreed on some level to that in certain respects and there is a lot of technicalities to be addressed. But it strikes me that there may be a thinly veiled attempt to try to end run an agreement and if I find that that happens that's not going to go well." (Trans. 73:17–25);

    b.    "The e-mail [from Vic Caroleo] from last night makes it clear to me what his intent is." (*Id.* 73:10–11);

    c.    "And I will put on the record at this point, to the extent the defendants do anything [to operate a competing business], they do so at their own peril, meaning I have to figure this all out." (*Id.* 73:13–16); and

    d.    "But from the surface, it doesn't look great. If they open a nursery next week, it doesn't look great." (*Id.* 74:8–9.)

111.    Despite the Court's statements above and despite this ongoing litigation, Defendants have been operating a landscape supply and nursery business directly competitive with SiteOne.

112.    Defendants seemingly abandoned their efforts to develop the Middle Island Road property into the site for their new business at some point after the March 22, 2023 preliminary

injunction hearing. This was ostensibly due to the preliminary injunction entered by the Suffolk County Supreme Court as to the Middle Island Road property.

113.    Defendants, however, operated a landscape supply and nursery business using SiteOne's former employees and rented trucks and vans. Defendants seemed to have temporarily based their operations on the site of another business, Premium Mulch & Materials, located approximately five miles from SiteOne's Coram location.

    a.    The picture below was taken of Giordano in his vehicle at the Premium Mulch & Materials site on May 10, 2023:



    b.    The pictures below were taken of one of SiteOne's former employees delivering nursery plants to a customer in Island Park, New York on April 24, 2023 on Defendants' behalf using a rented U-Haul van:





114.    Following the March 22, 2023 hearing, while already operating their competing business from a temporary location using rented trucks and vans, Defendants began forming new shell companies to conceal their activities and they began seeking out a different property to purchase on which to operate their competing business.

115.    On April 6, 2023, just 15 days after the preliminary injunction hearing before the Court, Defendants Giordano and the Caroleos, in concert with one another, formed Defendant Scapes Supply LLC. The Department of State website identifies a P.O. Box in Holbrook, New York as the address for service of process. Giordano lives in Holbrook, New York.

116.    One week later, on April 13, 2023, Defendants Giordano and the Caroleos, in concert with one another, formed Defendants 99 Long Island Avenue South, LLC and 99 Long Island Avenue North, LLC. Both entities have the same registered agents as Defendant Narrow Way 2 LLC.

117.    On April 19, 2023, Defendants Giordano and the Caroleos, in concert with one another, purchased properties located on Long Island Avenue using Defendant entities 99 Long Island Avenue South, LLC and 99 Long Island Avenue North, LLC. These properties are located at 99 Long Island Avenue, Yaphank, New York 11980 (the "Long Island Avenue" property). This location is less than five miles from SiteOne's Coram location, i.e., well within the restricted areas set forth in the applicable restrictive covenants discussed above.

118.    Defendants are actively operating a business offering the same products and services as SiteOne in direct competition with SiteOne. The business is doing business as "Scapes Supply" (https://scapessupply.com/). The photographs below are of the new business operating at the Long Island Avenue property:









119. On May 11, 2023, Giordano moved the trailer which is used to physically house Defendants' operations from the Middle Island Road property to the Long Island Avenue property:

      a.    The picture below shows the trailer sitting at the Middle Island Road property on April 25, 2023:



b.     The picture below shows the trailer being moved by Giordano to the Long Island Avenue property on May 11, 2023:



c.     The picture below shows the trailer at the Long Island Avenue property on June 16, 2023 with a sign on the side of the trailer which says, "Sales Office":



120.   Defendants are also using at least two trucks for their operations, a dump truck and a flatbed semi-truck. Both trucks have the name "Neway Trucking" on their doors. The below photographs are of the flatbed semi-truck parked on the Long Island Avenue property being loaded with nursery materials:





121.    Defendant Neway Management, LLC was formed by Vic Caroleo (and/or in concert with the other Defendants in this case) on February 16, 2001. Upon information and belief, Defendants own and/or lease various vehicles for use in and by their competing landscape supply and nursery business through Neway Management, LLC (and/or through other corporate Defendants or unknown corporate entities) doing business as Defendant "Neway Trucking."

122.    Defendants, through their competing business, have harmed SiteOne by taking SiteOne's customers and by causing SiteOne's ongoing customers to reduce their business with SiteOne. As of the date of filing this Amended Complaint, SiteOne's estimated lost business totals in the millions of dollars.

123.    Additionally, SiteOne employees that were previously unlawfully solicited by Defendants to work for their competing business at the Middle Island Road property are now working for Defendants at the Long Island Avenue location.

124.    Finally, Don Caroleo and possibly Giordano continue to have access to some of the cameras within SiteOne's security camera system and are actively monitoring the cameras as of the date of filing this Amended Complaint.

## CAUSES OF ACTION

## COUNT I

### Breach of Contract
### (Against All Defendants Except Giordano)

125.     SiteOne realleges and incorporates by reference the allegations contained in para-graphs 1 through 124, as if fully set forth herein.

126.     SiteOne entered into valid and binding contracts with Don Caroleo (party to the Asset Purchase Agreement, the Employment Agreement, the Equity Grant Agreement, and the Coram Lease Agreement); Vic Caroleo (party to the Coram Lease Agreement); Narrow Way Re-alty, Ltd. (party to the Coram Lease Agreement); The Garden Dept. Corp. (party to the Asset Purchase Agreement); Group 5 Associates, Ltd. (party to the Coram Lease Agreement); 3670 Route 12 LLC (party to the Coram Lease Agreement); and 9 4th St. LLC (party to the Coram Lease Agreement) (collectively, the "Agreements").

127.     Each of the Agreements are binding on the respective Defendant parties and contain valid and enforceable non-competition provisions prohibiting the respective Defendant party to those Agreements from opening a competing business within a specific geographic area proximate to SiteOne's Coram, New York location.

128.     Each of these Defendants have breached those non-competition provisions by open-ing or beginning to open a business that competes directly with SiteOne within the restricted geo-graphic area, namely at the properties located on Middle Island Road and Long Island Avenue. Defendants have done so themselves and by operating and/or acting through the other corporate Defendants, Scapes Supply LLC; 99 Long Island Avenue South, LLC; 99 Long Island Avenue North, LLC; Neway Management, LLC; and Neway Trucking (the "Corporate Shell Defendants").

The Corporate Shell Defendants are thus also liable for the breaches of the Agreements identified above in Paragraph 127.

129. The Asset Purchase Agreement, the Employment Agreement, and the Equity Grant Agreement also contain valid and enforceable customer and employee non-solicitation and non-interference provisions prohibiting Don Caroleo from, *inter alia*, soliciting SiteOne's customers or employees, whether directly or indirectly.

130. Don Caroleo, on his own and/or through his agents, has solicited SiteOne's customers and employees in violation of these provisions.

131. The Asset Purchase Agreement, the Employment Agreement, and the Equity Grant Agreement also contain valid and enforceable confidentiality, non-disclosure, and return of company property provisions. Those provisions prohibit Don Caroleo from retaining, disclosing, or using SiteOne's trade secret or confidential information, and require him to return all company property (including physical property and electronic data and assets) on the termination of his employment with SiteOne.

132. Don Caroleo has retained, obtained, used, and disclosed (and has not returned) SiteOne's trade secrets and confidential information in violation of these provisions.

133. The non-competition, non-solicitation, confidentiality/non-disclosure, and return of company property provisions are reasonable in time and geographic area.

134. SiteOne has legitimate business interests justifying the non-competition, non-solicitation, confidentiality/non-disclosure, and return of company property provisions contained in the Agreements, which include, but are not limited to, the protection of SiteOne's business goodwill and trade secrets and other valuable confidential business information.

135.     The provisions are reasonably necessary to protect SiteOne's legitimate business interests since SiteOne's confidential and trade secret information is not available to the public or generally known in the industry.

136.     The provisions are not harmful to the general public and are not unreasonably burdensome to the Defendants who are parties to the Agreements.

137.     As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

138.     Unless enjoined by this Court, the Defendants will continue breaching the Agreements.

## COUNT II

### Misappropriation of Trade Secrets in
### Violation of the Defend Trade Secrets Act
### (Against All Defendants)

139.     SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

140.     The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), creates a private right of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."

141.     The DTSA defines "Trade Secret" as "information that derives economic value from not being generally known to or readily ascertainable through proper means by another person, and that is subject to reasonable efforts to maintain its secrecy." *Id*. § 1839(3).

142.     SiteOne possesses highly confidential trade secrets, protected under the DTSA including, but are not limited to, SiteOne's financial information; bidding information; customer lists; sales lists; vendor and supplies lists; and other competitive data.

143.    SiteOne uses these trade secrets in both interstate and foreign commerce; SiteOne has taken and continues to take reasonable steps to maintain the secrecy of these trade secrets; and these trade secrets are not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

144.    SiteOne is the owner of these trade secrets because it had the rightful title to the trade secrets, having developed and protected them as described above.

145.    The DTSA defines "Misappropriation" to include the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. *Id.* § 1839(5).

146.    Giordano and Don Caroleo had access to and regularly used SiteOne's most highly confidential data and materials during their employment with SiteOne.

147.    Based on information available to date, Giordano acquired further trade secrets by improper means through the taking of a SiteOne computer, SiteOne laptop (that was being used by Rose Casper, a bookkeeper for SiteOne), and SiteOne's file cabinet materials that contain SiteOne's trade secrets, without SiteOne's authorization. Further, based on information available to date, Giordano has retained an unknown volume of SiteOne's confidential data and other materials, by failing to return the desktop computer, Casper's laptop, and/or the file cabinet materials.

148.    Don Caroleo has also acquired trade secrets by improper means by having contin-ued access, through an app, to SiteOne's computers for real time data feeds of information relating to SiteOne's highly sensitive pricing and customer information.

149.    Giordano has failed to return, and instead, has destroyed key evidence (i.e., as Giordano claims he "threw out" SiteOne's primary desktop computer) that would enable SiteOne to identify such information, understand how it has been used, and allow SiteOne to secure the return of its data. The same is true with respect to the video recording devices missing from the Coram location.

150.    By unlawfully taking, accessing, downloading, and/or destroying SiteOne's confidential and proprietary information, Giordano and Don Caroleo have improperly obtained SiteOne's trade secrets, thus misappropriating such information in violation of the DTSA.

151.    These actions, taken together, at a minimum, demonstrate a "threat of misappropriation" by Giordano and Don Caroleo.

152.    The acts and threatened acts of misappropriation or misuse by Giordano and Don Caroleo have directly and proximately caused and will continue to cause substantial damage to SiteOne.

153.    The non-competition and/or non-solicitation provisions in the Asset Purchase Agreement, Employment Agreement, Coram Lease, and Employee Restricted Stock Unit Agreement further reinforce Don Caroleo's obligations not to use SiteOne, his former employer's trade secrets, against it, and his use further establishes a misappropriation.

154.    Giordano and Don Caroleo have been unjustly enriched by the information wrongfully obtained from SiteOne.

155.    Giordano and Don Caroleo, in concert with Vic Caroleo, have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. The misappropriated trade secrets identified herein have been used by and for the benefit of the corporate Defendants in this

case. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo

156.    Disclosure or use of SiteOne's trade secrets will result and has resulted in immediate and irreparable harm to SiteOne for which there is no adequate remedy at law.

157.    As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

158.    Giordano's and Don Caroleo's conduct was wanton, willful, and malicious.

### COUNT III

**Misappropriation of Trade Secrets**
**(Against All Defendants)**

159.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

160.    SiteOne possesses highly confidential trade secrets, including, but are not limited to, SiteOne's financial information; bidding information; customer lists; sales lists; vendor and supplies lists; and other competitive data.

161.    SiteOne has taken and continues to take reasonable steps to maintain the secrecy of these trade secrets. These trade secrets are not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

162.    SiteOne is the owner of these trade secrets because it had the rightful title to the trade secrets, having developed and protected them as described above.

163.    Giordano and Don Caroleo had access to and regularly used SiteOne's most highly confidential data and materials during their employment with SiteOne.

164.    Based on information available to date, Giordano acquired further trade by improper means through the taking of a SiteOne computer, SiteOne laptop (that was being used by Rose Casper, a bookkeeper for SiteOne), and SiteOne's file cabinet that contain SiteOne's trade secrets, without SiteOne's authorization.

165.    Further, based on information available to date, Giordano has retained an unknown volume of SiteOne's confidential data and other materials, by failing to return the desktop computer, Casper's laptop, and/or the file cabinet materials. Separately, Don Caroleo has also acquired trade secrets by improper means by having continued access, through an app, to SiteOne's computers for real time data feeds of information relating to SiteOne's highly sensitive pricing and customer information.

166.    Giordano has failed to return, and instead, has destroyed key evidence (i.e., allegedly tossing in a dumpster SiteOne's computer) that would enable SiteOne to identify such information, understand how it has been used, and allow SiteOne to secure the return of its data.

167.    By unlawfully taking, accessing, downloading, and destroying SiteOne's confidential and proprietary information, Giordano and Don Caroleo have improperly obtained SiteOne's trade secrets, thus misappropriating such information in violation of the DTSA.

168.    These actions, taken together, at a minimum, demonstrate that Giordano and Don Caroleo used the trade secrets as a result of discovery by improper means.

169.    Giordano and Don Caroleo, in concert with Vic Caroleo, have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. The misappropriated trade secrets identified herein have been used by and for the benefit of the corporate Defendants in this

case. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

170.     The acts and threatened acts of misappropriation or misuse have directly and proximately caused and continue to cause substantial damage to SiteOne.

171.     The non-competition and/or non-solicitation provisions in the Asset Purchase Agreement, Employment Agreement, Coram Lease, and Employee Restricted Stock Unit Agreement further reinforce Don Caroleo's obligations not to use SiteOne, his former employer's trade secrets, against it, and his use further establishes a misappropriation.

172.     Giordano and Don Caroleo have been unjustly enriched by the information wrongfully obtained from SiteOne.

173.     As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

174.     Giordano's and Don Caroleo's conduct was wanton, willful, and malicious.

## COUNT IV

### Violation of the Computer Fraud and Abuse Act
### (Against All Defendants)

175.     SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

176.     The Computer Fraud and Abuse Act ("CFAA") provides a private federal cause of action against whoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any

10 year period (18 U.S.C. § 1030(a)(5)(B)-(C)) and whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer (18 U.S.C. § 1030(a)(4)).

177.   SiteOne's computers, security cameras, laptops, and associated systems are "protected computers" under the CFAA, 18 U.S.C. § 1030(e)(2).

178.   By their wrongful actions, Giordano and Don Caroleo (and others working under their direction and at their express instruction) intentionally accessed SiteOne's protected computer and security camera systems, without authorization and/or in excess of authorized access, and thereby obtained information from SiteOne's protected computer and security camera system.

179.   Such wrongful conduct includes, but is not limited to, access to SiteOne's laptop that was being used by SiteOne's bookkeeper, Casper, and/or the SiteOne desktop computer that was either stolen or destroyed by Giordano, and Don Caroleo's unauthorized access to a live data stream of Garden Department confidential financial information after leaving the company. Additionally, Don Caroleo is believed to have continuing remote access to certain of SiteOne's security cameras and is reported to be actively monitoring SiteOne's property via that remote access.

180.   By their wrongful actions, Giordano and Don Caroleo knowingly and with intent to defraud, accessed SiteOne's protected computer, security camera systems, and Verizon wireless numbers, without authorization and/or in excess of authorized access.

181.   By their wrongful actions, Giordano and Don Caroleo furthered the intended fraud, obtained unauthorized use of SiteOne's protected computer system, and obtained SiteOne's trade secrets and proprietary information, the value of such exceeding $5,000 in value in any one year period.

182.    The wrongful conduct of Giordano and Don Caroleo was done with inducement from and with the knowledge and participation of Vic Caroleo, or for the benefit of Vic Caroleo, such that Vic Caroleo is equally responsible for the wrongful conduct of Giordano and Don Caroleo, including because Vic Caroleo is an owner of the competing properties at Middle Island Road and Long Island Avenue.

183.    Additionally, Giordano and Don Caroleo, in concert with Vic Caroleo, have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. The unlawful computer access identified herein has been by and for the benefit of the corporate Defendants in this case. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

184.    By their wrongful actions, Giordano and Don Caroleo intentionally accessed SiteOne's protected computer system without authorization, and as a result of such conduct, caused SiteOne damage and loss.

185.    The wrongful actions of Giordano, Vic Caroleo, and Don Caroleo have caused loss to SiteOne that exceeds $5,000 in value during any one year period, in that SiteOne has spent far in excess of $5,000 in responding to the offense and conducting a damage assessment.

186.    The activity of Giordano, Vic Caroleo, and Don Caroleo constitutes a violation of the CFAA, 18 U.S.C.A. §1030(a)(2)C), (a)(4), (a)(5)C), and SiteOne is entitled to an immediate injunction under the Act.

# COUNT V

## Conversion
## (Against Giordano)

187.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

188.    SiteOne had possessory rights over the computer, individual laptops, Verizon wireless numbers, security cameras, and file cabinet, along with their contents.

189.    Giordano has intentionally and unlawfully converted SiteOne's computer, laptop, Verizon wireless numbers, security cameras, and file cabinet (including the files and data contained therein which have SiteOne's confidential and trade secret information), for his own use, including, but not limited to, for the purpose of obstructing, impeding, or hindering SiteOne's ability to seek and obtain a legal remedy.

190.    SiteOne has an immediate right to possess their computer, individual laptops, Verizon wireless numbers, security cameras, and file cabinet, as well as confidential and trade secret information, and Giordano has no ownership right in any of these items or SiteOne's confidential and trade secret information.

191.    Giordano has obtained such information without SiteOne's permission or authority.

192.    As a result of Giordano's wrongful conversion of SiteOne's laptop, desktop computer, security cameras, Verizon Wireless numbers and/or confidential and trade secret information, some of which can no longer be recovered, SiteOne has been deprived of its use of such information for a permanent or indefinite period of time.

193.    Thus, SiteOne has incurred substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

194.    Giordano's conduct was wanton, willful, and malicious.

## COUNT VI

### Unfair Competition
### (Against All Defendants)

195.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

196.    Giordano, Don Caroleo, and Vic Caroleo have opened and are operating a landscape supply and nursery business in direct competition with SiteOne.

197.    Giordano, Don Caroleo, and Vic Caroleo's competition with SiteOne is being done through improper means, including, but not limited to, the misappropriation of confidential customer lists, pricing, cost, and contract information that was obtained without authorization.

198.    Giordano is also improperly contacting SiteOne's employees and customers to destroy SiteOne's business and did so before and after leaving SiteOne.

199.    Based on information available to date, Giordano, Vic Caroleo and Don Caroleo solicited SiteOne's employees to work in direct competition with SiteOne at the Middle Island Road property and the Long Island Avenue property, despite the fact that some of these employees were still being paid by SiteOne (and the work being performed at the Middle Island Road property was while those individuals were still on the clock with SiteOne).

200.    As a result of Giordano, Don Caroleo, and Vic Caroleo's actions SiteOne has incurred substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

201.    Giordano, Don Caroleo, and Vic Caroleo have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. Each of those shell companies, including each of

the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

202.    As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## COUNT VII

**Tortious Interference with Business Relationships**
**(Against All Defendants)**

203.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

204.    SiteOne has business relationships with its customers.

205.    Giordano, Don Caroleo and Vic Caroleo seek to destroy SiteOne's relationships with its customers – there is no legitimate purpose for doing so.

206.    Giordano, Don Caroleo and Vic Caroleo's sole goal is to inflict harm on SiteOne and destroy SiteOne's business for their own benefit of establishing a competing business.

207.    Moreover, Giordano, Don Caroleo and Vic Caroleo are wrongfully using SiteOne's confidential and proprietary customer lists to contact SiteOne's customers in an attempt to induce them to end their business relationship with SiteOne.

208.    Likewise, Defendants are improperly informing SiteOne's customers that SiteOne's business is in jeopardy and unable to perform.

209.    Based on information available to date, Giordano, Vic Caroleo and Don Caroleo have been soliciting SiteOne's employees to work in direct competition with SiteOne at the Middle Island Road property and the Long Island Avenue property, despite the fact that some of these

employees were still being paid by SiteOne (and the work being performed at the Middle Island Road property was while those individuals were still on the clock with SiteOne).

210.    These actions are not mere competition; they are unlawful acts meant solely to harm SiteOne.

211.    Giordano, Don Caroleo, and Vic Caroleo have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

212.    As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## COUNT VIII

### Tortious Interference with Contractual Relationships
### (Against All Defendants)

213.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

214.    Valid and enforceable agreements exist between Vic Caroleo and SiteOne and, separately Don Caroleo and SiteOne, and each of such agreements have provisions not to compete with SiteOne.

215.    Valid and enforceable agreements also exist between SiteOne and its customers, which contracts were, upon information known to date, absconded by Giordano.

216.    Vic Caroleo and Don Caroleo were aware of, at a minimum, the non-competition provisions in the Coram Lease as they were both signatories to that agreement. As such, they were both aware of the others obligation not to compete with SiteOne.

217.    Giordano was also aware of the non-competition provisions to which Vic Caroleo and Don Caroleo were obligated, as Giordano refused an offer to have equity at SiteOne specifically to try and avoid such non-competition language.

218.    Vic Caroleo, Don Caroleo, and Giordano were well-aware of employment agreements SiteOne had with other employees at SiteOne which employees were then used to improperly work at the competing properties, and that SiteOne had customer contracts (which they were responsible for prior to termination).

219.    Giordano, Don Caroleo and Vic Caroleo induced one another to breach their non-competes in colluding to operate a competing business, induced SiteOne's customers to breach their contracts with SiteOne to instead work with them, and induced SiteOne employees to breach their agreements by working at the competing properties instead of for SiteOne.

220.    SiteOne was damaged as many of SiteOne employees actually ceased working for SiteOne as a result of these actions, and, upon information and belief, Giordano, Don Caroleo and Vic Caroleo are actively diverting SiteOne's customers for their own benefit.

221.    Giordano, Don Caroleo, and Vic Caroleo have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

222.     As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## COUNT IX

**Fraud
(Against Giordano)**

223.     SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

224.     Based on information available to date, Giordano misrepresented the status of the desktop computer, and Rose Casper's laptop, both of which contained sensitive proprietary information, and neither of which have been located.

225.     Giordano's motive to commit this misrepresentation and misappropriation was to gain a financial benefit of millions of dollars by directly competing with SiteOne during the spring season.

226.     Giordano's conscious misbehavior includes, but is not limited to, his knowing use of SiteOne employees to work on the competing sites and Giordano's taking of critical security cameras, documents, and computers from SiteOne.

227.     SiteOne reasonably relied upon Giordano's misrepresentations, including that he destroyed and/or lost the computers, and, as a result, SiteOne suffered damages.

228.     SiteOne also reasonably relied on Giordano's representations that he was going to continue working with SiteOne, after Don Caroleo left working with SiteOne, while clandestinely taking critical information from SiteOne without authority.

229.     As a result of Giordano's actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

### COUNT X

**Unjust Enrichment**
**(Against Giordano)**

230.     SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

231.     Based on the information available to date, Giordano misappropriated a desktop computer, laptop (from SiteOne's bookkeeper, Rose Casper), Verizon wireless numbers (used by SiteOne customers to order products), security cameras, and a file cabinet with files.

232.     SiteOne did not receive adequate consideration for the desktop computer, laptop (from SiteOne's bookkeeper, Rose Casper), Verizon wireless numbers (used by SiteOne customers to order products), security cameras, and a file cabinet with files.

233.     Giordano should be barred from continuing to profit from the unauthorized use of each.

234.     It would be against equity and good conscience for Giordano to retain the benefit of these goods without paying SiteOne for them and/or continuing to use the misappropriated trade secrets available from each.

235.     As a result of Giordano's actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## COUNT XI

### Breach of Fiduciary Duty
### (Against Giordano)

236.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

237.    Giordano, while an employee of SiteOne, had an obligation not to exploit SiteOne's confidential information for the benefit of himself or others.

238.    Giordano, as an employee, had an implicit obligation of good faith and fair dealing to his employer, SiteOne.

239.    Giordano breached that duty by misappropriating SiteOne's confidential customer and billing information, for the benefit of a competing business, and working at the competing Middle Island Road property while still on company time at SiteOne.

240.    SiteOne has been damaged not only from the missing computers, files, and information, but also the loss of goodwill.

241.    SiteOne has also been damaged as a result of paying Giordano for his work at SiteOne, yet, while on SiteOne time, working on setting up a direct competitor.

242.    SiteOne has also been damages as result of any diverted sales and loss of customers.

243.    As a result of Giordano's actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## COUNT XII

### Aiding and Abetting Breach of Fiduciary Duty
### (Against All Defendants Except Giordano)

244.    SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

245.     As set forth in Count XI, Giordano owed SiteOne fiduciary duties as an employee and breached his fiduciary duties to SiteOne.

246.     Vic Caroleo and Don Caroleo aided and abetted Giordano's breaches, as evidenced by photographs taken at the Middle Island Road property, as Giordano was working at the competing property even though he was still employed by SiteOne.

247.     Don Caroleo and Vic Caroleo substantially assisted Giordano in doing so, as the competing property was owned and operated by them at the time Giordano was working for SiteOne.

248.     Giordano, Don Caroleo, and Vic Caroleo have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

249.     As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

<u>**COUNT XIII**</u>

**Civil Conspiracy**
**(All Defendants)**

250.     SiteOne realleges and incorporates by reference the allegations contained in Paragraphs 1 through 124, as if fully set forth herein.

251.     As set forth herein, Defendants are liable for a plethora of colorable underlying torts in relation to their direct competition with SiteOne and misappropriation of trade secrets.

252.     Defendants colluded to compete with SiteOne, and such collusion was undertaken to interfere with SiteOne's contractual and business rights and convert its goodwill and property.

253.     Defendants overtly participated in the conspiracy, including but not limited to, communicating, diverting, and/or soliciting SiteOne's customers and employees, and working collectively at the competing properties.

254.     Defendants' activities were concealed from SiteOne to further the purpose of their agreement to directly compete with and/or misappropriate SiteOne's trade secrets.

255.     Giordano, Don Caroleo, and Vic Caroleo have used and are actively using a number of shell companies, including (but not necessarily limited to) the corporate Defendants herein, in an attempt to conceal their unlawful activities. Each of those shell companies, including each of the corporate Defendants to this action, is therefore liable for the acts of Giordano, Don Caroleo, and Vic Caroleo.

256.     As a result of Defendants' actions, SiteOne has incurred monetary damages as well as other substantial damages that are irreparable and cannot be fully or adequately measured or compensated by monetary relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, SiteOne respectfully requests that this Court an Order:

i.       Temporarily, and on an *ex parte* and preliminary basis until a final hearing, and permanently thereafter, restrain and enjoin Defendants from, directly or indirectly:

    a.     Operating a competing business in violation of the non-competition provisions of the contracts identified in this Amended Complaint;

    b.     Disclosing, conveying, accessing, or using for theirs or another's benefit SiteOne's trade secrets and confidential information;

    c.    Soliciting SiteOne's customers in violation of the contracts identified in this Amended Complaint; and

    d.    Soliciting SiteOne's employees in violation of the contracts identified in this Amended Complaint;

ii.    Granting SiteOne the right to forensically inspect Defendants' relevant e-mail accounts, electronic storage devices and locations (including all smartphones, laptop and desktop computers, cloud-based storage platforms, external hard drives, thumb drives etc.) to determine whether and to what extent Defendants have SiteOne's trade secrets or confidential information in their possession, custody, or control and/or to identify Defendants' ongoing access to SiteOne's systems, including its security camera system;

iii.    Requiring Defendants to return all property of SiteOne that has been stolen, misappropriated, and/or converted;

iv.    Award appropriate compensatory and other damages, including attorneys' fees and costs, punitive damages, and double damages under the DTSA, together with all prejudgment interest against Defendants' and in favor of SiteOne, as a consequence of Defendants' willful, wanton, reckless, and malicious conduct; and

v.    Granting all other relief, including equitable and injunctive relief, to which the Court finds SiteOne is entitled.

## JURY TRIAL DEMAND

SiteOne hereby demands a trial by jury on all issues so triable as set forth herein.

Dated: July 7, 2023

TROUTMAN PEPPER
HAMILTON SANDERS LLP

By:  */s/ John S. Gibbs III*

Daniel E. Gorman
875 Third Avenue
New York, New York 10022
Phone: (212) 704.6000
email: daniel.gorman@troutman.com

John S. Gibbs III (Admitted *Pro Hac Vice*)
600 Peachtree Street, NE
Suite 3000
Atlanta, Georgia 30308
Phone: (404) 885-3000
email: evan.gibbs@troutman.com

*Attorneys for Plaintiff*
*SiteOne Landscape Supply, LLC*