Hon. Steven I. Locke (*Via ECF*)                                                                  January 28, 2025

Re:     *SiteOne Landscape Supply, LLC v. Giordano, et al.* Case No.: 2:23-cv-2084-GRB-SIL

Dear Judge Locke,

On behalf of Defendants, we write in opposition to Plaintiff SiteOne Landscape Supply, LLC's ("SiteOne") January 17, 2025 letter motion [ECF No. 185], in which, true to form, SiteOne does nothing more than hurl conclusory accusations, unsupported by any facts, and then, in turn, demands extreme remedies from the Court. Meanwhile SiteOne refuses to search for, much less produce, responsive discovery Defendants have sought for months.[1] It is the height of hypocrisy.

To put SiteOne's instant motion in its proper context, it is important to note that after two years of leveling scathing, non-stop accusations against the Defendants, SiteOne has produced zero evidence to support any of its claims, because its claims are false. This is a vendetta lawsuit, pure and simple.[2] Now, two years in, SiteOne continues to employ its no holds barred litigation strategy, and continues to engage in a fishing expedition, harassing Defendants (and their associates) and exposing them to punishing, costly litigation, along the way. This needs to stop.

Against this backdrop, SiteOne's conclusory accusations regarding some cognitive, intentional destruction of evidence are false. In early January, Defendants voluntarily disclosed an issue they encountered while in the process of collecting and reviewing text messages for production. Without bothering to meet and confer with Defendants to resolve the issue, as required, SiteOne ran straight to the Court with its typical self-serving conclusory accusations, that in no way reflect reality.[3] SiteOne's motion should be denied.

The Missing Text Messages

In July 2023, shortly after commencement of this action, Don voluntarily commissioned WeRecoverData ("WRD") to generate a forensic copy of his phone as a "belt and suspenders," if ever called to produce text messages in this action. At Don's request, WRD prepared a hard drive of Don's phone and a Cellebrite Extraction Report ("CER"), both of which, thereafter, were forwarded to this firm where they were briefly reviewed and then put in the file for later, if needed.

In late August/early September 2024, the parties began negotiating the parameters for their respective text message productions.[4] Around this time, this firm had NextPoint ("NP"), its e-

---

[1] Defendants intend to move to compel shortly if SiteOne continues to refuse to conduct searches. [*See* ECF. No. 184]
[2] A description of SiteOne's motivation for terminating Don and commencing this action, can be found at ECF No. 168 at fn 2. In this context, it is worth noting that, SiteOne has not reviewed a single text message for relevance and production, despite Defendants' months old demand, because it knows that those text messages will confirm that the commencement of this lawsuit, as well as Don's termination, were in bad faith.
[3] Tellingly, though Defendants offered SiteOne the hard drive of Don's phone for its own review [ECF 184-2, at 4], SiteOne never bothered to respond.
[4] During the same time, this firm, which until then had only been representing the Don Defendants, transitioned to take over as counsel for the Vic Defendants. as well. As to SiteOne's demands, SiteOne originally sought every text message between and among Don, Nick, and Vick from October 2022 to present, even though Don and Vic are father

Hon. Steven I. Locke, U.S.M.J.
Page 2 of 4

discovery vendor, upload WRD's file to its platform so that review of Don's text messages could begin. However, once uploaded, NP saw no UFDR file and thus no human-readable data. NP worked to obtain the UFDR file from WRD but, after many weeks of back and forth, NP learned that WRD had not retained the UFDR file. Thus, the WRD data was unavailable. Around this time, SiteOne served seven motions to compel on Defendants, which, among other things, sought to compel text messages. As attention turned to drafting responses to this flurry of motions, Defendants began to explore various alternative ways to review Don's text messages in light of the unusable WRD file.[5]

On October 15, 2024, the Court ordered Defendants to produce, among other things, certain of Don, Nick, and Vic's text message communications by November 26, 2024.[6] After consulting with NP about alternative ways to perform the required review of text messages, a decision was made to collect Don's phone to have his data re-extracted and uploaded to NP's platform.[7] In late October/early November, the data was extracted and uploaded. Then, this firm began its review of Don's text messages,[8] along with its review of Nick and Vic's text messages.[9] In anticipation of needing to provide SiteOne with data regarding its review, sometime in or around early December, this firm requested a statistical summary of Don's data from NP, which NP provided on December 10, 2024.[10] Upon review of the report, it appeared that the quantity of Don's data was much less than anticipated, and it also looked like the data only covered approximately the past 60 days. It was not clear why this was, but with the deadline for production fast approaching, this firm began to investigate possible ways to recapture the missing data. After consulting with NP, this firm reached out to MRD Services ("MRD"), a forensic data recovery specialist with expertise in the extraction of I-phone data from the I-cloud, in the hopes that some or all of the missing data could be extracted from the I-cloud. Thereafter, on December 17, 2024, Don provided his Apple ID and password to MRD so MRD could connect to his phone remotely and perform the extraction. MRD performed the extraction successfully but was only able to extract minimal data from the cloud, as with the previous extraction from Don's phone. After consulting with MRD and NP, it appeared that Don's phone was likely preset to autodelete messages after a certain number of days. Upon inspection of his phone, Don discovered that, in fact, unbeknownst to him, his phone had been pre-set to autodelete messages after 60 days. He has since disabled this setting on his phone.

---

and son, Don and Nick are close friends, and Vic and Nick openly concede they have been competing with SiteOne since April 2023. Defendants originally demanded text messages addressing specific topics from 24 SiteOne employees, because the text messages are relevant to their defense.

[5] Also, during this time, among other things, this firm transitioned the Vic Defendants' files from former counsel's e-discovery platform to NP's platform and rushed to get up to speed with those files. Based on conversations with former counsel, this firm understood that former counsel had collected phone data for Vic and Nick, which would be in the files being transitioned.

[6] The Court later granted an extension of the deadline to December 17, 2024.

[7] Shortly after the Court issued its October 15, 2024 order, NP informed this firm that the Nick and Vic data from former counsel was in a format that was incompatible with NP's platform and therefore could not be uploaded. Therefore, along with Don's phone, this firm also collected Nick and Vic's phones, had their data extracted, and eventually uploaded to NP's system for review also.

[8] In total, Defendants have spent more than a thousand hours, costing more than a quarter million dollars, reviewing over 150,000 text messages for relevancy and production (what SiteOne calls "ferociously resist[ing] producing documents at every turn").

[9] At the same, this firm was also reviewing e-mails for each Defendant, as well as gathering multiple other kinds of documents in order to comply with the October 15th Order.

[10] On December 13, 2024, NP also provided statistical summaries of Nick and Vic's data.

Hon. Steven I. Locke, U.S.M.J.
Page 3 of 4

This is not a situation where Don used auto delete with the intent to destroy evidence or with any culpable state of mind. Not only did he not have knowledge that the phone was pre-set to auto delete his messages, he also took multiple voluntary affirmative steps to preserve his data and to recover his data once he learned some was missing. Plus, as soon as Don became aware of the auto delete setting, he disabled it. These are simply not the acts of an individual who is trying to destroy evidence. *See, e.g., Traverse Therapy Servs. V. Sadler-Bridges Wellness Grp.*, 2024 U.S. Dist. LEXIS 36429, at *5-*6 (W.D.Wa. March 1, 2024)(holding there was no spoliation where auto delete was unknowingly activated because there was no willful intent or culpable state of mind).

With Vic, all we can say is that Vic is a septuagenarian gentleman, with compulsive tendencies, who is set in his ways. It appears Vic's normal routine is to compulsively and indiscriminately delete texts after they are read. In this context, its worth noting that, prior to SiteOne's intrusion into his world, Vic had spent the better part of his life owning and operating a relatively small, family-owned landscape supply business that catered primarily to locals. In this capacity, Vic's experience with the law was, at most, in connection with matters along the lines of zoning disputes or workers' comp cases and, until this case, Vic had never been involved in major civil litigation. Given such, it would be patently unfair to hold Vic to the same standards as a large corporation with greater resources. *See, e.g. Capricorn Mgmt. Sys. V. GEICO*, 2019 U.S. Dist. LEXIS 123723, at *34-35 (E.D.N.Y. 2019). The missing texts from Vic's phone also need to be viewed within the backdrop that SiteOne's claims against Vic as a supposed "beneficiary" or "co-conspirator" are specious at best, as a matter of law.

Discussion

Site One should not be granted supplemental depositions or forensic discovery. As an initial matter, SiteOne claims it is not yet seeking a finding of spoliation, yet it is demanding what amounts to spoliation sanctions (*see Lokai Holdings LLC v. Twin Tiger USA LLC*, 2018 U.S. Dist. LEXIS 46578, at *12 (S.D.N.Y. May 12, 2018)(setting forth available sanctions for spoliation from least to most harsh as further discovery, cost-shifting sanctions, fines, special jury instructions, preclusion and the entry of default judgment or dismissal). SiteOne is seeking spoliation sanctions without seeking a finding of spoliation, because it knows it cannot prove spoliation. SiteOne should not be permitted to make this end run around the requirement that it prove spoliation.

In addition, depositions in this case have not even begun. There is no reason SiteOne can't ask any question it wants about missing texts during regular party deposition.[11] What is more, the facts in this case do not come close warranting forensic discovery, and the cases SiteOne relies on to

---

[11] SiteOne is out over its skis seeking supplemental depositions when regular party depositions have not yet occurred. Indeed, none of the cases SiteOne to support supplemental depositions, grant supplemental discovery when regular discovery has yet to occur. *See Pirrello v. Gateway Marina*, 2010 U.S. Dist. LEXIS 145505 (E.D.N.Y. August 23, 2010)(denying motion to quash a third-party witness subpoena); *Hawley v. Mphasis Corp*, 302 F.R.D. 37 (S.D.N.Y. 2014)(granting supplemental deposition of third-party witness where arose after a third-party witness had already appeared for his subpoenaed deposition, discovery had already closed, and it was likely third-party witness had information relevant to the spoliation issue); *United States CFTC v. Gramalequi*, 2016 U.S. LEXIS 115791 (D. Colo. 2016)(granting supplemental deposition where spoliation arose after witness had already been deposed).

support its argument for such, are inapposite in that in both cases, not only were the actions of target egregious, but in both cases, the movant, had strong evidence supporting its allegations.[12]

What is more, any prejudice SiteOne might suffer as a result of Don or Vic's missing text message data – to the extent it suffers any prejudice at all – is de minimis, and in no way justifies the extraordinarily intrusive forensic discovery that SiteOne seeks. First, the data extracted from Nick's phone was comprehensive, dating back to 2020, years before this suit commenced. <u>Over 150,000 text messages from Nick's phone were extracted and reviewed, including all text message exchanges between Nick and Don and between Nick and Vic during the relevant time.</u> Certainly, if SiteOne's conspiracy allegations were true, there would be text messages in Nick's production reflecting such conspiracy. There were none. Nick's production compensates almost entirely for the missing texts. Second, even if Nick's production did not compensate for the missing texts – which it does – it is non-sensical that any of the Defendants would be texting with each other about the supposed "conspiracy," especially after the Complaint was filed in March 2023, and SiteOne's counsel has admitted as much [Oct. 15, 2024 Tr. 38:4-13]. Third, after two years, SiteOne has produced zero evidence supporting any of its allegations.

Finally, SiteOne also cannot demonstrate that the missing data would be assistive to its case. That SiteOne believes there is a "smoking gun" is not enough. *See Williams v. Geraci*, 2020 U.S. Dist. LEXIS 181705, at *43-*44 (E.D.N.Y Sept. 30, 2020)(denying motion for discovery sanctions where movant failed to produce extrinsic evidence to corroborate its belief that the missing video footage would have been assistive to its case).

Accordingly, SiteOne's motion should be denied in its entirety and this case should proceed to depositions. Thank you for your attention to this matter.

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

*/s/ Colleen O'Neil*

cc: All counsel of record via ECF

---

[12] For instance, in *Chevron Corp. v. Donzinger*, 425 F.Supp.3d 297 (S.D.N.Y. 2019), forensic discovery was granted where, in a post-judgment discovery case where the Defendant was a disbarred attorney who had already been found liable for fraud who not only refused to provide any discovery at all, but who put in an email to opposing counsel that he was intentionally refusing to cooperate in discovery so "that he would go into contempt in an effort to obtain a ruling on his contention, previously rejected by the Court." Similarly, in *Genworth Fin. Wealth Mgmt v. McMullan*, 267 F.R.D. 443 (D. Ct. 2010), the Court granted plaintiff's motion for forensic discovery where the defendant <u>admitted</u> that he had "accessed and transmitted Genworth's proprietary information" on a personal computer that he testified "he discarded" but was then impeached by the introduction into evidence of emails sent from "his personal email account and the personal computer after the date that he testified having discarded the computer."