Troutman Pepper Locke LLP
Bank of America Plaza, 600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308

March 12, 2025

Magistrate Judge Steven Locke
Eastern District Court New York

Re:   *SiteOne Landscape Supply, LLC v. Giordano, et al.*
      Civil Action No. 2:23-cv-02084-GRB-SL

Dear Judge Locke:

SiteOne has spent almost an entire year and hundreds of thousands of dollars searching high and low for documents responsive to Defendants' 180 RFPs and endlessly meeting and conferring with Defendants' attorneys to try and satisfy their bottomless demands. But as the facts outlined below show, Defendants will **never** be satisfied with SiteOne's productions.

The reason is that Defendants' discovery requests have nothing to do with the merits of this action. Rather, the demands in question are directed exclusively to SiteOne's alleged inappropriate motive for pursuing its claims. Leaving aside that SiteOne's motive does not matter as to the elements of any of its claims, SiteOne nevertheless has indulged Defendants for almost a year, expansively searching for and producing documents from its CEO down to its lowest level employees. While motive evidence may be admissible at trial, a search for such evidence does not justify Defendants' demands that SiteOne now comb through an additional 200,000 documents and search the text messages of 10 additional people to see if perhaps such evidence exists. The proportionality of their demands has become untethered from relevance.

And let us not forget the context in which Defendants' demands are made: Vic intentionally destroyed his text messages. Don intentionally destroyed his text messages. Vic has produced zero emails. Nick has produced zero emails. Neither Scapes nor any of the other corporate Defendants have produced a single email. Nick produced fewer than ten text messages—all but one being entirely irrelevant, and Don produced a few emails—mostly ads from LinkedIn and Breathalyzer.

Even though Defendants have effectively produced nothing and are the ones who stole SiteOne's property and customers; are unlawfully operating a competing business; and have admitted to intentionally destroying evidence, Defendants demand that SiteOne review hundreds of thousands more documents in discovery to see if perhaps there is evidence of bad motive. The truth is that Defendants view discovery as an offensive tool to drive up the cost of litigation and distract from their own conduct. As described below, however, SiteOne has fully met its production obligations. This Court should deny Defendants' Motion to Compel in all respects.

## SITEONE'S EMAIL AND DOCUMENT SEARCHING EFFORTS

### I.   Defendants' Material Misrepresentations

Defendants' Motion to Compel makes material misrepresentations about SiteOne's email searching. Defendants claim SiteOne has "picked and chosen what email searches it would run" for "16 custodians." [Dkt. 189 p. 3.] This is a misrepresentation because: (1) SiteOne collected email data for 24 individuals and ran 23 separate searches within same; and (2) **most importantly,**

**SiteOne developed its list of custodians and search parameters jointly with the Defendants in July—and Defendants agreed with SiteOne's custodians and search parameters.**

Defendants thus materially misrepresent the state of affairs by omission because they make absolutely no mention of the fact that SiteOne already negotiated email searching with Defendants almost eight months ago and completed its rolling email productions more than six months ago. Defendants have also provided no explanation as to why they believe the searching that **they agreed to** last summer is now insufficient months after SiteOne's productions were completed.

## II. SiteOne's Extensive Efforts Toward Email Production and Transparency

Defendants issued a total of 180 separate RFPs to SiteOne on April 19, and SiteOne responded with its objections and responses on June 10. To provide Defendants with full transparency into SiteOne's document production efforts,[1] on July 25 the undersigned sent a letter to Defendants which included a chart identifying the custodians for whom SiteOne had collected and searched email data; the applicable date ranges for each search; the RFPs to which the searches were responsive; the number of hits for each search; and the number of documents produced to date responsive to each search. A copy of the letter and chart are attached as Exhibit 1.

The parties met and conferred on July 25 and 26 specifically regarding SiteOne's search parameters provided to Defendants. Defendants proposed 15 additional searches to be run across specific custodians. SiteOne agreed to run the search parameters and provide hit counts for those searches to Defendants. Based on the number of hits, SiteOne agreed to then consider whether it was agreeable to reviewing the documents hitting on the searches.

On August 2, SiteOne sent a letter to Defendants' counsel confirming the above facts and attaching to it the hit count report. That letter (at page 5) summarized the above details and conveyed SiteOne's agreement to review the 4,300 additional documents that hit on 12 of Defendants' proposed search parameters. A copy of that letter is attached as Exhibit 2. SiteOne told Defendants it did not agree to review the 57,733 documents that hit on the three other terms proposed by Defendants. **Defendants never objected to this and did not propose different or additional search parameters in response.**

In sum, SiteOne collected millions of emails other documents from 24 custodians and had attorneys individually review in excess of 35,000 documents that hit on the search parameters negotiated by the parties, producing more than 1,000 documents. SiteOne began its rolling productions on June 10, completed production of its emails on September 6, and completed the remainder of its non-email document production on October 18.

## III. Defendants' November 27 Demands

After it became clear that Defendants destroyed evidence, on November 27 Defendants emailed SiteOne complaining that SiteOne's email search parameters "applied limited search terms to a limited number of custodians." A copy of that email is attached as Exhibit 3. Defendants' email fails to mention the parties' prior agreement on email searching. Defendants' November 27

---

[1] Defendants did not reciprocate—in any way—the transparency SiteOne provided. Even after the October 15 hearing before this Court, Defendants have never identified what email accounts they searched; what specific search parameters they applied; or how many responsive emails they reviewed.

email demanded that SiteOne run 15 specific search terms over period of more than two years across 13 custodians.[2] Defendants provided no explanation as to how these additional searches were tailored to any claim or defense or otherwise proportional considering the searching already performed by SiteOne—which, again, SiteOne did with Defendants' blessing.

As set forth in two letters to Defendants dated January 3 and 17 (attached as Exhibit 4 and 5), SiteOne explained, in great detail, why Defendants' requested searches were unreasonable and explained that SiteOne had already run several of the newly-proposed search terms in July. Nevertheless, SiteOne ran Defendants' November 27 search terms and provided the results to Defendants in SiteOne's January 3 letter. SiteOne explained that Defendants' searches hit on a total of 17,705 documents, and that reviewing these documents would require approximately 250 hours of review and more than $100,000 in fees and costs.

SiteOne invited Defendants to provide an explanation or justification for its proposed search parameters and why the three additional individuals were relevant to the case (especially considering SiteOne already searched the emails of 24 people). Defendants never responded. Rather, the night of February 7—the Friday night before the Monday, February 10 hearing on SiteOne's Motion for Sanctions with respect to Defendants' evidence spoliation—Defendants filed their Motion to Compel. [Dkt. 189.] They ask for **significantly** broader searches in their Motion.

### IV. Defendants' Vastly Expanded February 7 Demands

Defendants demand in their Motion to Compel that SiteOne conduct the additional email searching identified in Exhibit H to their Motion [Dkt. 189-8] **and** collect email data for three additional individuals for searching.[3] The proposed searches are patently ludicrous. Exhibit H is a 25-page chart containing 39 separate, detailed searches—far beyond what Defendants demanded on November 27. But, consistent with the parties' discussions at the February 10 hearing, SiteOne ran the searches and gave Defendants hit counts and costs on February 24:

- The number of documents hitting on the searches is **203,704**.
- The estimated costs to process, host, review, and produce the materials are:
    - Promotion to review database: $41,500
    - Hosting per month: $2,130/month
    - Review of 204,000 docs (including all phases): $342,000
    - Production: $2,000
    - **Total Cost: $394,020** (including four months of hosting)
- With respect to the three additional email custodians demanded by Defendants, the cost to collect, process, host, review, and produce three additional custodians for the original search terms plus the new searches would cost an estimated **$76,000**.

SiteOne explained to Defendants in its February 24 email (Exhibit 6) that the demands they are making are not proportional to the needs of the case, especially considering the amount of searching SiteOne has already performed to date (which, again, was done through a process agreed with by Defendants). Defendants responded via email on February 27, asking SiteOne to remove

---

[2] Three of the 13 individuals' email data has never been collected by SiteOne because SiteOne did not identify them as relevant witnesses when SiteOne initially collected email data. These three individuals—and why they are irrelevant—are discussed below.

[3] Defendants never provided their February 7 search terms to SiteOne before filing their Motion.

SiteOne's counsel's email domain from the search results because Defendants believed "the quantity of hits will be greatly reduced" by doing so. SiteOne did that, and responding on March 5 that there were only 854 hits on "Troutman," and 439 hits on "Troutman.com." SiteOne invited Defendants to offer other modifiers to their searches. Defendants did not respond.

As to the three additional custodians Defendants demand be collected and searched, SiteOne explained to Defendants on multiple occasions (*see* Ex. 5 p. 2) why doing so would not be proportional to the needs of the case considering what SiteOne has already done for its email searching. Defendants never provided any facts or other bases to dispute SiteOne's position:

- Lynn Francassi: She is SiteOne's CEO's Executive Assistant.[4] SiteOne's investigation and the documents produced to date reveal no basis for collecting and searching her data.
- Brian Hoffman: He previously worked with Don years ago but was transferred and ceased working with Don in January 2021 (well before the relevant time periods in this case). SiteOne's investigation and the documents produced to date reveal no basis for collecting and searching his data.
- Anthony Ferrante: He worked at SiteOne's Dix Hills and Coram locations during portions of the relevant time period. However, SiteOne's investigation has not revealed any basis for adding Ferrante to its email searching efforts given his lack of involvement with the substantive issues in the case, especially considering SiteOne has already searched the emails for several other employees who worked for SiteOne at these locations.

Defendants also demand in their Motion that SiteOne explain what efforts it has made to locate and produce documents beyond email searching. Defendants have provided no basis for this demand. Nevertheless, because SiteOne has nothing to hide, SiteOne's process beyond email searching was simple: review Defendants' RFPs, interview SiteOne employees most familiar with the documents and issues, and then work with those employees and others to locate responsive documents. All responsive documents located have been produced. Documents found in this way include, among other things, detailed financial reports; investigative reports; customer lists; copies of trade secrets from a retired software program; copies of contracts and agreements; and board meeting minutes. It is entirely unclear what more Defendants want from SiteOne in this respect.

As noted above, Defendants did not respond to SiteOne's March 5 email providing an updated hit count and cost estimates, instead filing yet another Friday evening motion, stating that "practically no progress has been made" by the parties with respect to the issues raised by Defendants' Motion to Compel, asking the Court to take up their Motion. Defendants provided **none** of the above background and context with any of their filings.

### SITEONE'S TEXT MESSAGE SEARCHING EFFORTS

SiteOne explained to Defendants in July during their conferrals over email searching that SiteOne had collected email data for 24 individuals and not texts. The undersigned further explained that SiteOne might agree to limited text message searches of a reasonable scope and invited Defendants' counsel to identify the individuals they believed were appropriate. Defendants provided on September 13 a list of 24 individuals whose text messages they demanded be searched. SiteOne responded in a September 23 letter, explaining that doing so would cost between $150,000

---

[4] SiteOne already searched its CEO's emails and produced responsive documents.

and $320,000,[5] which was unduly burdensome and not proportional to the needs of the case. SiteOne requested that Defendants provide a proportional list of individuals and explain the relevance of the persons identified. Almost three months later, on November 27, Defendants finally responded and reduced the number of individuals from 24 to 13—still a disproportional number of people- particularly given there are no claims asserted against SiteOne's employees, and SiteOne only requested the production of texts from 3 named Defendants (two of which have entirely destroyed that data).

SiteOne thus objected to collecting and searching texts for 13 people in its January 3 and 17 letters to Defendants due to the extensive costs associated with doing so for so many people in different locations. SiteOne, however, agreed to collect and search the text messages of the three individuals most closely associated and involved with the events giving rise to this case:

- Joe Ketter: He is SiteOne's Executive Vice President, Human Resources. He heads the SiteOne human resources organization. He was aware of the complaint and investigation into the complaint levied against Don which led to his termination; he was involved in the discussions surrounding the decision to terminate Don; and he was involved in the company's negotiating of Don's severance agreement. He was also involved with the decisions to terminate Nick and Vic, and he was present at Nick's termination meeting.
- Greg Thistle: He has been SiteOne's Regional Vice President over the region which includes the SiteOne locations at issue in this case during the relevant time periods. He was personally involved in managing Don and Nick while they were employed by SiteOne and with managing their store locations. He was involved in the investigation into Defendants' unlawful activities at and after their terminations from SiteOne. He was present during Nick's termination meeting. He has been involved in the running of the SiteOne locations at issue in this case through the present.
- Anthony Catalano: He has been an Area Manager for SiteOne over the Long Island region during the relevant time periods of this case. Like Mr. Thistle, he was involved in managing Don and Nick while they were employed by SiteOne and with managing their store locations. He was involved in the investigation into Defendants' unlawful activities at and after their terminations from SiteOne. He has been involved in the running of the SiteOne locations at issue in this case through the present.

SiteOne provided to Defendants on February 28 extensive, detailed information about the text message data extracted from these individuals' phones and SiteOne's searching of same (attached as Exhibit 7), including date ranges, the number of total messages, etc. SiteOne explained it would have the messages ready for production by the week of March 10. SiteOne will have the messages produced to Defendants by no later than March 18.

## CONCLUSION

SiteOne's email and text message searching and productions are more than proportional to the needs of this case. Defendants' ever-expanding demands for more, more, more from SiteOne and its Motion to Compel should be denied.

J. Evan Gibbs III

---

[5] Given the number of variables in collecting and searching texts, SiteOne could not provide a more accurate estimate.