# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-   -   -

SITEONE LANDSCAPE SUPPLY, LLC,

      Plaintiff,     Civil Action No.

v.                          2:23-CV-2084(GRB)(SL)

NICHOLAS GIORDANO; DOMINICK CAROLEO;

VICTOR CAROLEO; NARROW WAY REALTY, LTD.;

NARROW WAY 2 LLC; THE GARDEN DEPARTMENT

CORP.; GROUP 5 ASSOCIATES, LTD.; 3670

ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES

SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND

NEWAY TRUCKING,

        Defendants.

-   -   -

March 13, 2025

-   -   -

Videotaped deposition of
VICTOR CAROLEO, conducted at Farrell
Fritz, P.C., 400 RXR Plaza, Uniondale, New
York, commencing at 10:00 a.m. EDT, on the
above date.

Magna Legal Services

866-624-6221

www.MagnaLS.com

Marie Foley

RMR, CRR



```
 1
 2    APPEARANCES:
 3
 4    ON BEHALF OF PLAINTIFF:
 5    TROUTMAN PEPPER HAMILTON SANDERS, LLP
 6    BY: EVAN GIBBS, ESQUIRE
 7        600 Peachtree Street, NE
 8        Suite 3000
 9        Atlanta, Georgia  30308
10        PHONE: 470.885.3093
11        EMAIL: evan.gibbs@troutman.com
12                -and-
13    FARRELL FRITZ, P.C.
14    BY: KEVIN P. MULRY, ESQUIRE
15        400 RXR Plaza
16        Uniondale, New York  11556
17        PHONE: 516.227.0620
18        EMAIL: kmulry@farrellfritz.com
19
20
21
22
23
24
25
```



1

2    APPEARANCES:

3

4    ON BEHALF OF DEFENDANTS:

5    MILMAN LABUDA LAW GROUP PLLC

6    BY: JOSEPH M. LABUDA, ESQUIRE

7        MICHAEL C. MULE, ESQUIRE

8        3000 Marcus Avenue

9        Suite 3W3

10       Lake Success, New York  11042

11       PHONE: 516.328.8899

12       EMAIL: josephlabuda@mllaborlaw.com

13

14

15

16   ALSO PRESENT:

17       Don Caroleo

18

19   VIDEOGRAPHER:

20       Alejandro Gomez

21

22

23

24

25



```
 1

 2                         -   -   -

 3                  TRANSCRIPT INDEX

 4                                      PAGE

 5   APPEARANCES....................... 2 - 3

 6   INDEX OF EXHIBITS................. 6

 7   EXAMINATION OF VICTOR CAROLEO:

 8   BY:  MR. GIBBS.................... 10

 9   SIGNATURE PAGE................... 83

10   ERRATA.......................... 84

11   REPORTER'S CERTIFICATE........... 85

12

13   EXHIBITS WITH ORIGINAL TRANSCRIPT

14

15                     -   -   -

16

17

18

19

20

21

22

23

24

25
```



1

2                    FEDERAL STIPULATIONS

3

4          IT IS HEREBY STIPULATED AND

5    AGREED by and between the parties hereto,

6    through their respective counsel, that the

7    certification, sealing and filing of the

8    within examination will be and the same

9    are hereby waived;

10         IT IS FURTHER STIPULATED AND

11   AGREED that all objections, except as to

12   the form of the question, will be reserved

13   to the time of the trial;

14         IT IS FURTHER STIPULATED AND

15   AGREED that the within examination may be

16   signed before any Notary Public with the

17   same force and effect as if signed and

18   sworn to before this Court.

19

20

21

22

23

24

25



Page 6

1

2                         -   -   -

3                    E X H I B I T S

4                         -   -   -

5   PLAINTIFF'S     DESCRIPTION                    PAGE

6    1          Email thread March 21, 2023        15

7

8    2          Email thread March 21, 2023        17

9

10   3          Email 15 Jul 2023,                 49

11              Bates DonCaroleo_000456-457

12

13

14      (REPORTER'S NOTE:  All quotations from
         exhibits are reflected in the manner
15       in which they were read into the
         record and do not necessarily denote
16       an exact quote from the document.)

17

18

19

20

21

22

23

24

25



Page 7

1

2   DEPOSITION SUPPORT INDEX

3

4   DIRECTION TO WITNESS NOT TO ANSWER

5       Page    Line    Page    Line    Page    Line

6       20      14      28      17      57      12

7       23       2      28      23      71       4

8       24       7      29       6      71      16

9       24      21      29      20      71      21

10      25       4      29      25      72       2

11      25       9      30       5      72       9

12      25      15      30      10      72      15

13      25      22      30      16      72      20

14      27      21      30      25      73       3

15      28      13      53       9

16

17

18   REQUEST FOR PRODUCTION OF DOCUMENTS

19      Page    Line

20      - -none- -

21

22   STIPULATIONS

23      Page    Line

24       5       4

25



Page 8

1

2                        -   -   -

3               10:13 a.m. EDT

4                        -   -   -

5          THE VIDEOGRAPHER:  We are now on

6      the record.  This begins videotape

7      number 1 in the deposition of Victor

8      Caroleo in the matter of SiteOne

9      Landscape Supply, LLC versus Nicholas

10     George, et al., in the United States

11     District Court, Eastern District of

12     New York, Case No. CV-02084.

13          Today is March 13, 2025, and the

14     time on the monitor is 10:13 a.m.

15          This deposition is being taken

16     at Farrell Fritz, P.C., Uniondale, New

17     York.

18          The videographer today is

19     Alejandro Gomez of Magna Legal

20     Services, and the court reporter today

21     is Marie Foley of Magna Legal

22     Services.

23          Will counsel and all parties

24     present state their appearances and

25     whom they represent.



1

2          MR. GIBBS:  Good morning.  This

3     is Evan Gibbs on behalf of SiteOne

4     Landscape Supply, LLC.

5          MR. MULRY:  Kevin Mulry from

6     Farrell Fritz also for plaintiff

7     SiteOne.

8          MR. LABUDA:  Good morning.  Joe

9     Labuda, Milman Labuda Law Group.

10          MR. MULE:  Michael Mule, Milman

11     Labuda Law Group.

12          And with us our client Don

13     Caroleo.

14          THE VIDEOGRAPHER:  Okay.  Thank

15     you.

16          Will the court reporter please

17     swear in the witness.

18          THE STENOGRAPHER:  If I could

19     ask you to raise your right hand,

20     please.

21          Do you swear or affirm the

22     testimony you give will be the truth,

23     the whole truth, and nothing but the

24     truth today?

25          THE WITNESS:  Yes, I do.



Page 23

```
 1
 2            So I'm just going to instruct
 3       you not to answer the question.
 4            THE WITNESS:  Okay.
 5            MR. GIBBS:  And I'll ask one
 6       other question about this email so
 7       it's in the record.
 8  BY MR. GIBBS:
 9       Q.    My other question is would you
10  have used your phone to send this
11  particular email?
12       A.    I don't remember if I sent it at
13  all.
14       Q.    You were initially represented
15  in this case by Mr. Saul Zabell; is that
16  right?
17       A.    Mm-hm, yes.
18       Q.    Do you remember approximately
19  the date that you hired or retained Mr.
20  Zabell?
21       A.    I don't.
22       Q.    And I'm not asking for the
23  substance of any communications, but did
24  Mr. Zabell ever tell you that you needed
25  to preserve documents and communications
```



```
                                                    Page 24
 1
 2    for purposes of this case?
 3         A.     Not that I --
 4                MR. LABUDA:  I'm going to
 5         object.  We object, attorney/client
 6         privileged communications.
 7                So we're directing you not to
 8         answer the question.
 9    BY MR. GIBBS:
10         Q.     And my follow-up questions to
11    that.
12                MR. GIBBS:  And again give you
13         time to make your objections.
14                MR. LABUDA:  Sure.
15         Q.     But, was did you receive
16    instructions in writing from Mr. Zabell to
17    that effect; in other words, to preserve
18    and not destroy any documents or
19    communications?
20                MR. LABUDA:  Same objection.
21                We're going to direct you not to
22         answer; attorney/client privileged
23         communications.
24    BY MR. GIBBS:
25         Q.     Did Mr. Zabell ever tell you to
```



Page 25

```
 1
 2   save emails?
 3            MR. LABUDA:  Same objection.
 4            Don't answer.
 5   BY MR. GIBBS:
 6       Q.    Did he ever tell you to save
 7   text messages?
 8            MR. LABUDA:  Same objection.
 9            Don't answer.
10   BY MR. GIBBS:
11       Q.    Did he ever tell you to save any
12   other types of documents or communications
13   for purposes of this case?
14            MR. LABUDA:  Same objection.
15            Don't answer.
16   BY MR. GIBBS:
17       Q.    And do you ever re -- do you
18   recall receiving a document from Mr.
19   Zabell titled or referred to as a
20   "Litigation Hold"?
21            MR. LABUDA:  Same objection.
22            Don't answer.
23   BY MR. GIBBS:
24       Q.    And whether or not it came from
25   Mr. Zabell or from some other source, did
```



```
 1
 2    you understand at the beginning of this
 3    lawsuit that you had an obligation to
 4    preserve documents and communications that
 5    are related to the case?
 6              MR. LABUDA:  I'm going to
 7         instruct the witness not to answer
 8         with respect to any attorney/client
 9         communications.
10              And I got to -- we got to take a
11         break for a quick second just to deal
12         with the -- the privilege issue 'cause
13         you're, kind of, expanding it outside
14         of Zabell, I think, and any attorney,
15         right?
16              MR. GIBBS:  Well, I can rephrase
17         the question.
18              MR. LABUDA:  Okay.
19              MR. GIBBS:  It will probably
20         make this easier.
21              MR. LABUDA:  All right.
22    BY MR. GIBBS:
23         Q.   Did anyone who's not an attorney
24    ever instruct or tell you that you should
25    or needed to preserve documents or
```



Page 27

```
 1
 2    communications that are related to this
 3    lawsuit?
 4              MR. LABUDA:  You can answer
 5       that.
 6       A.    No.
 7       Q.    You later became represented by
 8    the Rivkin Radler firm.  Is that correct?
 9       A.    Yes.
10       Q.    Do you remember, just
11    approximately, the date that you retained
12    them to represent you in this case?
13       A.    I don't recall.
14       Q.    Did any attorney at the Rivkin
15    firm tell you that you needed to preserve
16    documents or communications for purposes
17    of this lawsuit?
18              MR. LABUDA:  Objection.  Same
19       objection; attorney/client privileged
20       communication.
21              Don't answer the question.
22              MR. GIBBS:  And if you won't --
23       if you want to say "same objection,"
24       totally fine.
25              MR. LABUDA:  I'll just say "same
```



Page 28

```
 1

 2      objection."

 3             MR. GIBBS:  And we'll consider

 4      it preserved.

 5             MR. LABUDA:  That's fine.  I

 6      figured it was a new firm, let me get

 7      the whole thing in.

 8             MR. GIBBS:  Got it.

 9  BY MR. GIBBS:

10      Q.    Did any attorneys from that firm

11  ever tell you to save emails?

12             MR. LABUDA:  Objection.

13             Don't answer.

14  BY MR. GIBBS:

15      Q.    Text messages?

16             MR. LABUDA:  Same objection.

17             Don't answer.

18  BY MR. GIBBS:

19      Q.    Or did any lawyer at that firm

20  tell you to save any other documents or

21  communications for purposes of the case?

22             MR. LABUDA:  Same objection.

23             Don't answer.

24  BY MR. GIBBS:

25      Q.    And do you recall ever receiving
```



Page 29

 1

 2   a document from anyone at the Rivkin firm

 3   titled or referred to as a "Litigation

 4   Hold"?

 5            MR. LABUDA:  Same objection.

 6            Don't answer.

 7   BY MR. GIBBS:

 8       Q.   And you later became represented

 9   by the Milman Labuda firm?

10       A.   That's correct.

11       Q.   Do you remember approximately

12   what date they became your attorneys of

13   record?

14       A.   I don't.

15       Q.   Did any attorney at the Milman

16   Labuda firm ever tell you that you needed

17   to preserve documents or communications

18   for purposes of the case?

19            MR. LABUDA:  Same objection.

20            Don't answer.

21   BY MR. GIBBS:

22       Q.   Did anyone at the Milman Labuda

23   firm ever tell you to save emails?

24            MR. LABUDA:  Same objection.

25            Don't answer.



Page 30

```
 1
 2   BY MR. GIBBS:
 3       Q.    Or text messages?
 4             MR. LABUDA:  Same objection.
 5             Don't answer.
 6   BY MR. GIBBS:
 7       Q.    Or any other documents or
 8   communications for purposes of the case?
 9             MR. LABUDA:  Same objection.
10             Don't answer.
11   BY MR. GIBBS:
12       Q.    Did you ever receive a document
13   from the Milman Labuda firm titled or
14   referred to as a "Litigation Hold"?
15             MR. LABUDA:  Same objection.
16             Don't answer.
17   BY MR. GIBBS:
18       Q.    And we've gone through three
19   specific law firms, but I'll ask a more
20   general question now.
21             Since March 21st, 2023, has any
22   other attorney ever instructed you not to
23   delete emails or text messages?
24             MR. LABUDA:  Same objection.
25             Don't answer.
```



```
                                            Page 34
 1

 2       A.     I'm good with ten years.

 3       Q.     Okay.

 4              What -- what brand of phone do

 5   you have?  What -- what make is the phone?

 6       A.     It's an Apple.

 7       Q.     iPhone?

 8       A.     Yes.

 9       Q.     Do you know the model of the

10   phone, like iPhone 14?

11       A.     No.

12       Q.     Who is your wireless carrier for

13   that phone?

14       A.     Verizon.

15       Q.     How long have you used that

16   particular carrier?

17       A.     Ten years.

18       Q.     Other than this current cell

19   phone, and begin focusing on the time

20   period of October 1st, 2022 through today,

21   have you had any other phones either

22   issued to you or that -- that you've had

23   that you've used personally?  For example,

24   a company-issued device, have you had

25   anything like that?
```



```
 1
 2      A.    I don't know if I understand
 3   your question, but I think I could answer
 4   it by saying this.
 5           This phone broke somewhere along
 6   the line, I don't remember what year, and
 7   I got it replaced.  Maybe that happened in
 8   the last two years.
 9      Q.    Was the phone replaced through
10   Verizon?
11      A.    Yes.
12      Q.    Was the phone replaced after
13   this lawsuit was filed, so after March
14   21st of 2023?
15      A.    Yes.
16      Q.    Did they transfer the data from
17   your old phone to the new phone when you
18   got the new one?
19      A.    You know, I'm not too technical,
20   but I gave it to the guy at Verizon, I
21   says, you know, make sure this is the same
22   phone as I have now.  So he did whatever
23   he had to do.
24      Q.    When you turned on, if you
25   recall, when you turned on the new phone
```



Page 36

1

2    that you got, did you see your old

3    messages and contacts and things like that

4    on the new phone?

5        A.    I never went and observed that.

6    I was just interested that I had my apps.

7        Q.    What happened to your old phone

8    that caused it to break?  Was it a drop?

9        A.    You know, I -- I suffer with

10   memory problems.  That's why I'm on that

11   heavy medication, so I can't remember

12   exactly.  But if I took a guess, I think I

13   got water in it, as I remember.

14       Q.    And the old phone, do you still

15   have that phone, or did you trade it in to

16   Verizon?

17       A.    You know, again with the memory

18   problems I'm going to say I traded it in,

19   but I don't recall.

20       Q.    Do you have an iCloud account?

21       A.    I've never used it, to my

22   recollection.

23       Q.    Does your iPhone back up to your

24   iCloud account?

25       A.    I have no idea.



Page 39

```
 1
 2             MR. MULE:  Can we take a
 3      five-minute break?
 4             MR. LABUDA:  Sure.
 5             MR. GIBBS:  Sure.
 6             THE VIDEOGRAPHER:  We are going
 7      off the record.
 8             The time is 10:40.
 9             (Recess taken.)
10             THE VIDEOGRAPHER:  We are going
11      back on the record.
12             The time is 10:53.
13             MR. LABUDA:  All right.
14             The witness -- if we could, the
15      witness wanted to clarify a couple
16      answers that he gave to a few
17      questions.
18             MR. GIBBS:  Certainly.
19             MR. LABUDA:  Okay.
20             Mr. Caroleo, with respect to the
21      timing of the replacement, of the
22      timing of when your old phone broke,
23      do you have a -- do you have a
24      recollection of when that was?
25             THE WITNESS:  I don't have a
```



MAGNA

LEGAL SERVICES

Page 40

```
 1
 2      recollection.
 3           MR. LABUDA:  Do you know whether
 4      or not it was before or after the
 5      litigation here began?
 6           THE WITNESS:  I don't have a
 7      recollection.
 8           MR. LABUDA:  Okay.
 9           Second one, with respect to
10      the -- you were asked questions about
11      reviewing text messages, and I think
12      your answer was that you reviewed text
13      messages.
14           Do you know whether or not your
15      lawyers reviewed your text messages in
16      relation to this litigation?
17           THE WITNESS:  My lawyers did
18      review those text messages.
19           MR. LABUDA:  Okay.
20   BY MR. GIBBS:
21      Q.   Did not?
22      A.   They did.
23      Q.   Did review text messages.
24           And which attorneys are you
25   referring to --
```



Page 43

1

2                Before our break, we were

3    talking about your personal email account

4    which is the victorcaroleo@aol.com.    I

5    want to ask you a few more questions about

6    that.

7                Have you communicated with Nick

8    Giordano via that email account at any

9    point?

10       A.    No.

11       Q.    Was that particular email

12   account searched as part of the discovery

13   process in this case?

14       A.    I don't know.

15       Q.    Do you recall turning over

16   access of the account to any of your

17   attorneys?

18       A.    I don't recall.

19       Q.    Since this case was filed, have

20   you deleted any emails from that

21   particular email account?

22       A.    I'm sure I deleted stuff.    It's

23   my common practice.

24       Q.    And talking just about emails,

25   you mean it's a common practice for you to



Page 44

1

2    delete emails --

3        A.     Correct.

4        Q.     -- in that account?

5               How often do you delete emails?

6        A.     Basically every time I get

7    something it gets deleted, and the reason

8    for that is I'm having this memory problem

9    and it -- I get overwhelmed when I have a

10   lot of emails to go through.  So I -- once

11   I go through them, I delete them.

12       Q.     Do you know if your email

13   account retains deleted emails for any

14   period of time?

15       A.     You know, if the -- if it does,

16   they get deleted too.

17       Q.     So you double delete?  You do

18   a --

19       A.     Correct.

20       Q.     You delete the deleted?

21       A.     And this is a practice I've been

22   dealing with for years, but as the memory

23   problem became worse, like the memory

24   doctor said do whatever you can do to keep

25   your memory sharp as you can, and I do



```
 1
 2   everything I could do to keep it as sharp
 3   as I can.
 4        Q.    And on the AOL email account, do
 5   you check that email account from your
 6   phone?
 7        A.    Yes.
 8        Q.    And turning to the Scapes Supply
 9   email account, do you know what platform
10   that account uses?  Is it a Gmail or an
11   Outlook type account?
12        A.    I have no idea.
13              Like I said, I don't use it.
14        Q.    Do you know if a litigation hold
15   was turned on for that particular email
16   account?
17              MR. MULE:  I'm going to object.
18   BY MR. GIBBS:
19        Q.    And the -- the question is just
20   do you know, not did an attorney instruct
21   you to do so.  It's just do you know if a
22   litigation hold was placed on that
23   account?
24              MR. LABUDA:  Yeah, I mean, I
25         think we're objecting.
```



Page 59

```
 1
 2      Q.    Sure.
 3            Since the lawsuit has been
 4   filed, have you ever emailed anyone about
 5   the Long Island Avenue property?
 6      A.    No.
 7      Q.    What about the Horseblock Road
 8   property?
 9      A.    No.
10      Q.    And your attorneys represented
11   in this case that you have a practice of
12   regularly deleting text messages, and you
13   talked about that earlier.
14            And with respect to deleting
15   emails, have you stopped the practice of
16   deleting emails?
17      A.    Yes, in the last few weeks.
18      Q.    Approximately when would you say
19   you started that?
20      A.    Maybe in the last four weeks.
21      Q.    Do you communicate using text
22   messages on a regular basis?
23      A.    Well, I'd rather call people
24   than use a text message.
25      Q.    Do you use text messages
```



Page 64

```
 1
 2      Q.     Same question with respect to
 3  the Long Island Avenue property.
 4      A.     I don't recall.
 5      Q.     And same question with respect
 6  to the Horseblock Road property.
 7      A.     I don't recall.
 8      Q.     Do you send and receive text
 9  messages with your son Don?
10      A.     I do.
11      Q.     And just talking about from the
12  beginning of the lawsuit to currently,
13  just in general how frequently would you
14  say that you text with your son Don?
15      A.     Once a week, twice a week.
16      Q.     And just generally speaking, I'm
17  not trying to get into your personal
18  private business, but generally what do
19  you guys talk about in text messages?
20      A.     You know, my grandson's becoming
21  a baseball -- pretty good at it, and I'll
22  ask him how he's doing.  So let's call
23  these things that we have on the phone
24  family-related questions: when's the
25  birthday party, what time.
```



Page 65

 1

 2          Q.    And any of those text messages,

 3    do you save those, or do you delete those

 4    as well?

 5          A.    I delete them.

 6          Q.    Since October of 2024, have you

 7    deleted any text messages from Don, to or

 8    from Don?

 9          A.    Yes, I'm sure 'cause that's my

10    practice.

11          Q.    And since the beginning of the

12    lawsuit to the present, have you ever sent

13    or received any texts from Nick Giordano?

14          A.    I might have received some texts

15    from Nick.

16          Q.    How frequently would you say

17    that you exchange text messages with Nick?

18          A.    Three times a week.

19          Q.    And what types of things do you

20    typically discuss in text messages?

21          A.    What was the years you said?

22          Q.    From the beginning of the

23    lawsuit to the present.  So that would be

24    March 21st, 2023 through today.

25                THE WITNESS:  So I have a



Page 66

```
 1
 2      question for you.
 3           MR. LABUDA:  Well, there's a
 4      question pending.  You can answer the
 5      question and then we'd have to take a
 6      break unless -- unless your -- there's
 7      an issue about --
 8           MR. MULE:  Do you have a
 9      question about privilege?
10           MR. LABUDA:  -- communication
11      that we've had.
12           But you can -- I think the
13      question was whether or not you've had
14      conversations --
15           MR. GIBBS:  Texts.
16           MR. LABUDA:  What are the
17      substance of the conversations.
18  BY MR. GIBBS:
19      Q.   What are the substances of the
20  text messages between you and Nick,
21  generally?
22           MR. MULE:  From March of '23,
23      right?
24           MR. GIBBS:  Correct.
25           THE WITNESS:  My problem is the
```



1

2      dates that he's using.

3           MR. LABUDA:  Well, he's saying

4      March of, so it's for the last two

5      years.

6  BY MR. GIBBS:

7      Q.    Since Scapes Supply has been in

8  operation.  Maybe that makes it easier.

9  Since Scapes Supply has been operating,

10  what are the topics of the text messages

11  between you and Nick?

12     A.    It would be business related.

13     Q.    Have you saved any of those text

14  messages?

15     A.    No.

16     Q.    When was the last time that you

17  exchanged text messages with Nick?

18     A.    I'm sure yesterday.

19     Q.    Have you retained those text

20  messages?

21     A.    I'm sure I did.

22     Q.    Since October of 2024, have you

23  deleted any text messages between you and

24  Nick?

25     A.    October what?



Page 68

```
 1

 2      Q.     2024.

 3      A.     October '24.

 4             Yes.

 5      Q.     Do you have an estimate of how

 6   many messages you deleted between you and

 7   Nick?

 8      A.     I don't.

 9      Q.     When was the last time that you

10   deleted a text message to or from Nick?

11      A.     I don't recall.

12      Q.     Since this lawsuit was filed, or

13   to make it easier, since Scapes Supply was

14   opened for business in 2023, have you ever

15   backed up your cell phone?

16      A.     No.

17      Q.     And a slightly different way of

18   asking the question.

19             During that same time period,

20   since Scapes Supply opened, have you ever

21   had a third party back up your cell phone?

22      A.     No.

23      Q.     Have you personally made any

24   efforts to recover any deleted text

25   messages as part of this case?
```



Page 76

1

2    documents as part of this lawsuit?

3        A.    Can you repeat that?

4        Q.    Do you have an understanding as

5    we sit here today that you have an

6    obligation to preserve documents and

7    communications as part of this lawsuit?

8        A.    As we sit here today I do have

9    that knowledge.

10       Q.    And when did you first come to

11   that understanding or first gain that

12   knowledge?

13       A.    I believe it was my attorney

14   that told me --

15            MR. MULE:  Objection.

16            MR. LABUDA:  Objection.

17            We'd move to strike that.

18            Just you can answer the

19       question.  The question was a specific

20       one which is when, when did you get

21       that knowledge about retaining, not

22       any --

23            MR. GIBBS:  That's right.

24            MR. LABUDA:  Yeah, so.

25       A.    I couldn't -- I couldn't answer



MAGNA
LEGAL SERVICES

1

2    when.

3         MR. GIBBS:  No further

4    questions.

5         MR. LABUDA:  Okay.  Let's just

6    take a break for a second.

7         MR. GIBBS:  Sure.

8         MR. LABUDA:  Keep the record on.

9         THE WITNESS:  I got one thing.

10   It'll be good.

11        MR. GIBBS:  Are you sure?

12        MR. LABUDA:  Exactly.

13        THE VIDEOGRAPHER:  We are going

14   off the record.

15        The time is 11:59.

16        (Recess taken.)

17        THE VIDEOGRAPHER:  We are going

18   back on the record.

19        The time is 12:09.

20   BY MR. GIBBS:

21   Q.    And I've had further discussions

22   off the record about questions surrounding

23   the document marked as Exhibit 3, so I'm

24   revisiting that document to ask a few

25   particular questions.



Page 85

```
 1
 2                 C E R T I F I C A T E
 3            I, MARIE FOLEY, Registered Merit
 4    Reporter, Certified Realtime Reporter, and
 5    Notary Public for the State of New York,
 6    do hereby certify that prior to the
 7    commencement of the examination,
 8    VICTOR CAROLEO, was duly sworn by me to
 9    testify to the truth, the whole truth and
10    nothing but the truth.
11        I DO FURTHER CERTIFY that the foregoing
12    is a verbatim transcript of the testimony
13    as taken stenographically by me at the time,
14    place and on the date hereinbefore set forth,
15    to the best of my ability.
16        I DO FURTHER CERTIFY that I am neither
17    a relative nor employee nor attorney nor
18    counsel of any of the parties to this action,
19    and that I am neither a relative nor employee
20    of such attorney or counsel, and that I am
21    not financially interested in the action.
22    _Marie Foley_____
      COURT REPORTER
23    Registered Merit Reporter
      Certified Realtime Reporter
24    Notary Public
      Dated: March 18, 2025
25
```


MAGNA
LEGAL SERVICES