# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

- - -

SITEONE LANDSCAPE SUPPLY, LLC,

                          Civil Action No.

        Plaintiff,     2:23-CV-2084(GRB)(SL)

v.

NICHOLAS GIORDANO; DOMINICK CAROLEO;

VICTOR CAROLEO; NARROW WAY REALTY, LTD.;

NARROW WAY 2 LLC; THE GARDEN DEPARTMENT

CORP.; GROUP 5 ASSOCIATES, LTD.; 3670

ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES

SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND

NEWAY TRUCKING,

              Defendants.

- - -

March 14, 2025

- - -

     Videotaped deposition of

DOMINICK CAROLEO, conducted at 400 RXR

Plaza, Uniondale, New York, commencing at

10:00 a.m. EDT, on the above date.

       Magna Legal Services

         866-624-6221

        www.MagnaLS.com

              Marie Foley



```
 1
 2   APPEARANCES:
 3
 4   ON BEHALF OF PLAINTIFF:
 5   TROUTMAN PEPPER HAMILTON SANDERS, LLP
 6   BY: EVAN GIBBS, ESQUIRE
 7       600 Peachtree Street, NE
 8       Suite 3000
 9       Atlanta, Georgia  30308
10       PHONE: 470.885.3093
11       EMAIL: evan.gibbs@troutman.com
12               -and-
13   FARRELL FRITZ, P.C.
14   BY: KEVIN P. MULRY, ESQUIRE
15       400 RXR Plaza
16       Uniondale, New York  11556
17       PHONE: 516.227.0620
18       EMAIL: kmulry@farrellfritz.com
19
20
21
22
23
24
25
```



Page 3

```
 1
 2   APPEARANCES:
 3
 4   ON BEHALF OF DEFENDANTS:
 5   MILMAN LABUDA LAW GROUP PLLC
 6   BY: JOSEPH M. LABUDA, ESQUIRE
 7       MICHAEL MULE, ESQUIRE
 8       3000 Marcus Avenue
 9       Suite 3W8
10       Lake Success, New York  11042
11       PHONE: 516.328.8899
12       EMAIL: josephlabuda@mllaborlaw.com
13
14
15   VIDEOGRAPHER:
16       Alejandro Gomez
17
18
19
20
21
22
23
24
25
```



Page 4

1

2                              -   -   -

3                      TRANSCRIPT INDEX

4                                          PAGE

5    APPEARANCES....................... 2 - 3

6    INDEX OF EXHIBITS................. 6

7    EXAMINATION OF DOMINICK CAROLEO:

8    BY:  MR. GIBBS.................... 10

9    SIGNATURE PAGE................... 94

10   ERRATA........................... 95

11   REPORTER'S CERTIFICATE........... 96

12

13   EXHIBITS WITH ORIGINAL TRANSCRIPT

14

15                        -   -   -

16

17

18

19

20

21

22

23

24

25



Page 5

```
 1
 2                    FEDERAL STIPULATIONS
 3
 4           IT IS HEREBY STIPULATED AND
 5    AGREED by and between the parties hereto,
 6    through their respective counsel, that the
 7    certification, sealing and filing of the
 8    within examination will be and the same
 9    are hereby waived;
10           IT IS FURTHER STIPULATED AND
11    AGREED that all objections, except as to
12    the form of the question, will be reserved
13    to the time of the trial;
14           IT IS FURTHER STIPULATED AND
15    AGREED that the within examination may be
16    signed before any Notary Public with the
17    same force and effect as if signed and
18    sworn to before this Court.
19
20
21
22
23
24
25
```



```
                                                    Page 6

 1

 2                             -   -   -

 3                       E X H I B I T S

 4                           -   -   -

 5    PLAINTIFF'S   DESCRIPTION                      PAGE

 6    1       Email thread March 21, 2023            15

 7

 8    2       Email 15 Jul 2023,                     47

 9            Bates DonCaroleo_000456-457

10

      (REPORTER'S NOTE:  All quotations from
11    exhibits are reflected in the manner
      in which they were read into the
12    record and do not necessarily denote
      an exact quote from the document.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1
 2   DEPOSITION SUPPORT INDEX
 3
 4   DIRECTION TO WITNESS NOT TO ANSWER
 5      Page    Line         Page    Line
 6      26      11           87       9
 7      49       4           88      11
 8      51       6           88      18
 9      53      23           89       4
10      54      15           89      11
11      54      23           90       7
12      87       3
13
14
15   REQUEST FOR PRODUCTION OF DOCUMENTS
16      Page    Line
17      - -none- -
18
19
20   STIPULATIONS
21      Page    Line
22       5       4
23
24
25
```



Page 8

```
 1
 2                    -   -   -
 3              10:12 a.m. EDT
 4                    -   -   -
 5         THE VIDEOGRAPHER:  We are now on
 6    the record.  This begins videotape
 7    number 1 in the deposition of Dominick
 8    Caroleo in the matter of SiteOne
 9    Landscape Supply, LLC versus Nicholas
10    Giordano, et al., in the United States
11    District Court, Eastern District of
12    New York, Case No. CV-02084.
13         Today is March 14th, 2025.  The
14    time on the monitor is 10:12 a.m.
15         This deposition is being taken
16    at Farrell Fritz PC, Uniondale, New
17    York.
18         The videographer is Alejandro
19    Gomez of Magna Legal Services, and the
20    court reporter today is Marie Foley of
21    Magna Legal Services.
22         Will counsel and all parties
23    present state their appearances and
24    whom they represent.
25         MR. GIBBS:  This is Evan Gibbs
```



1

2        on behalf of SiteOne Landscape, LLC.

3             MR. MULRY:  Kevin Mulry from

4        Farrell Fritz, also on behalf of

5        plaintiff SiteOne Landscape, LLC.

6             MR. LABUDA:  Good morning.  Joe

7        Labuda for the defendants.

8             MR. MULE:  Michael Mule for the

9        defendants.

10            THE VIDEOGRAPHER:  Will the

11       court reporter please swear in the

12       witness.

13            THE STENOGRAPHER:  If I could

14       ask you to raise your right hand,

15       please.

16            Do you swear or affirm the

17       testimony you give will be the truth,

18       the whole truth, and nothing but the

19       truth today?

20            THE WITNESS:  I do.

21            THE STENOGRAPHER:  Thank you.

22                  -    -    -

23

24

25



```
 1
 2    thinking at that point.
 3        Q.    Are you aware currently as we
 4    sit here today that you have an obligation
 5    to preserve documents and communications
 6    for purposes of the lawsuit?
 7        A.    Repeat that.
 8        Q.    Sure.
 9              As you sit here today, are you
10    currently aware that you have an
11    obligation to -- to preserve and retain
12    documents and communications for purposes
13    of the lawsuit?
14        A.    Yes.
15        Q.    When did you first become aware
16    of that obligation?
17        A.    I don't remember.
18        Q.    How did you first become aware
19    of that obligation?
20              MR. LABUDA:  I'm just going to
21         instruct the witness not to disclose
22         any attorney/client privileged
23         communication, any attorney/client
24         communications you had.  So exclude
25         that from your answer.  But you can
```



```
 1
 2      answer the question.
 3      A.    Repeat the question.
 4      Q.    How did you become aware that
 5  you had an obligation or that you have an
 6  obligation to preserve and retain
 7  documents for this case?
 8            MR. LABUDA:  Same objection, but
 9      you can answer.
10      A.    I was told.
11      Q.    And who was it that told you
12  that?
13            MR. LABUDA:  We're going to
14      object.
15            Do we need to discuss whether or
16      not this requires a -- a privileged
17      communication?  I'm asking you --
18      A.    It would be a privileged
19  communication.
20      Q.    My -- so, my only question is
21  who told you.  That's the -- that's the
22  limit of the question.
23            MR. LABUDA:  I think we got
24      to -- we got to take a break for a
25      second 'cause I'm not sure he's
```



```
 1
 2      understanding my instructions.
 3           MR. GIBBS:  Let's see.  Let me
 4      see if there may be -- give me one
 5      second.
 6           MR. LABUDA:  So just -- just to
 7      be clear, you know, when I'm saying
 8      exclude any conversations, so that
 9      let's say you did have a conversation
10      with an attorney about disclosing this
11      and that was the only conversation
12      that you had, you would exclude that
13      conversation from your answer.
14           If anyone else in the universe
15      other than your attorneys disclosed or
16      discussed that with you that was a
17      non-attorney, then you would answer
18      that question.  But I don't want you
19      to disclose any conversations that you
20      had with any attorneys.
21      A.    What was the question again?
22      Q.    Sure.
23           My question's limited to the
24   identity, so just a name, I'm only asking
25   for a name of the person who first made
```



1

2    you aware of your obligation to retain

3    documents and communications in this case.

4              MR. LABUDA:  But I think it's

5         the -- the earlier question is the one

6         that I want to make sure that there's

7         clarity on.  I don't want to be

8         difficult, but I don't know if

9         that's -- if his answer subjected that

10        to attorney/client privileged

11        communications.  It seems like from

12        what he said it does, so.

13             MR. GIBBS:  Well, my only -- my

14        only -- I am only asking for a name.

15        So if your position is that him

16        disclosing the name is privileged,

17        then, you know, you can instruct him

18        not to answer.  But to be clear, I'm

19        only asking for a name.

20   A.   I don't --

21             MR. LABUDA:  No, I understand

22        that.  My -- my issue is not

23        necessarily with that particular

24        question.  It's the question before

25        that --



```
 1
 2          MR. GIBBS:  Okay.
 3          MR. LABUDA:  -- that is the
 4      follow-up to this question.
 5  BY MR. GIBBS:
 6      Q.   Well, I will -- I will limit my
 7  question.  The question I'm posing to you,
 8  I'm limiting it now to what is the
 9  identity of the person who first told you
10  that you have an obligation to preserve
11  documents and communications in this case?
12          MR. LABUDA:  Okay.  And so then
13      what I'm going to instruct the witness
14      is -- let's -- you know, let's --
15      because I think, again, I think we're
16      putting the cart before the horse.
17          If you don't mind, you know,
18      what I would prefer is to ask the
19      question as to whether or not, you
20      know -- you know, ask the initial
21      question about the -- who -- if he was
22      told by somebody, and then I'm going
23      to just raise that same objection
24      again 'cause I think it's -- it's an
25      issue that he's -- like, I don't think
```


MAGNA
LEGAL SERVICES

```
 1

 2        he necessarily was understanding my

 3        instruction in terms of limiting it.

 4        I -- I mean, I guess I -- we can ask

 5        it a different way which is --

 6             MR. GIBBS:  I'm going to -- I'm

 7        going to keep the question exactly as

 8        I had it.

 9             MR. LABUDA:  Okay.

10             MR. GIBBS:  I don't think that

11        the identity in any way discloses a

12        privilege.  I don't know how that

13        would.

14             MR. LABUDA:  No, I'm not --

15             MR. GIBBS:  If he tells me the

16        name of somebody, I don't know how

17        that discloses a privilege.  So I'll

18        ask my question --

19             MR. LABUDA:  Yes, but the

20        point -- so let's just take a break

21        for a second because I got to just --

22        I got to make sure that I'm on the

23        same page because I think there's

24        privileged communications that he's

25        discussing that I want to just
```



 1

 2          preserve.  So let's just take a break

 3          for a second 'cause I want to just

 4          make sure that I have it.

 5                MR. GIBBS:  All right.

 6                THE VIDEOGRAPHER:  Okay.  We are

 7          going off the record.

 8                The time is 10:22.

 9                (Recess taken.)

10                THE VIDEOGRAPHER:  We are going

11          back on the record.

12                The time is 10:26.

13                MR. LABUDA:  So, the witness --

14          I think this will be helpful.  The

15          witness wanted to clarify an earlier

16          answer to a question that you had

17          raised about if he was aware of his

18          obligation --

19                MR. MULE:  No, how he became

20          aware.

21                MR. LABUDA:  How he became aware

22          of his obligation to preserve

23          documents.  I had --

24                MR. GIBBS:  Well, let's -- well,

25          I'll go through my questions, and he's



```
 1
 2      free to, you know, answer however he
 3      would like, but...
 4            MR. MULE:  Well, first he wants
 5      to clarify.
 6            MR. LABUDA:  Yeah, he just wants
 7      to clarify it.
 8            So, with respect to that
 9      question, Mr. Caroleo.
10            THE WITNESS:  Yeah.
11            So, you asked me a question --
12            MR. LABUDA:  And I had -- I had
13      an objection and instruction for you
14      not to disclose any attorney/client
15      privileged communications, and you had
16      answered --
17            THE WITNESS:  Yeah, excluding --
18            (Stenographer admonition on
19      crosstalk.)
20            MR. LABUDA:  You had answered "I
21      was told."  And what I want to ask is
22      I want you to clarify your answer in
23      terms of excluding any attorney/client
24      privileged communications.
25            THE WITNESS:  No -- no one -- no
```



```
 1
 2      one told me excluding my attorney
 3      conversations.
 4  BY MR. GIBBS:
 5      Q.   So, I'm going to re-ask the
 6  question to make sure that we have a clear
 7  record.
 8      A.   Okay.
 9      Q.   My -- I believe the question you
10  were answering is did anyone other than
11  your lawyers instruct you for purposes of
12  this case that you had an obligation to
13  retain and preserve documents and
14  communications?
15      A.   No.
16      Q.   No one other than attorneys gave
17  you that instruction?
18      A.   No.
19           MR. LABUDA:  Objection, but you
20      can answer.
21      A.   No.
22      Q.   What is the name of the first
23  person who instructed you that you have an
24  obligation to retain or preserve documents
25  and communications for this case?
```



Page 26

```
 1
 2              MR. LABUDA:  And same objection.
 3              Just don't disclose any
 4         conversations.  Excluding any attorney
 5         conversations.
 6         A.    I really don't remember.
 7         Q.    Did an attorney at the Milman
 8    Labuda firm ever tell you that you need to
 9    preserve documents and communications for
10    purposes of this lawsuit?
11              MR. LABUDA:  Object and direct
12         him not to answer that;
13         attorney/client privilege.
14    BY MR. GIBBS:
15         Q.    Did you receive a document from
16    the Milman firm called or referred to as a
17    "Litigation Hold" letter or memo?
18              MR. LABUDA:  You can answer the
19         question.
20         A.    No.
21         Q.    At some point in this case, you
22    became aware that you have an obligation
23    to preserve documents and communications,
24    correct?
25         A.    Yeah, I think we did this
```


MAGNA
LEGAL SERVICES

1

2    question already, right?

3        Q.    We did.  I'm just re-asking it

4    because I had some follow-up questions to

5    it, and it was earlier in the questioning.

6        A.    So, I think my answer was yes if

7    I was to -- repeat the question.  I just

8    want to make sure.

9        Q.    Sure.

10           So, you came to understand at

11   some point during this litigation that you

12   had an obligation to preserve and retain

13   documents and communications for the case,

14   correct?

15       A.    Yes.

16       Q.    Were you -- was it -- was it

17   your understanding that you had to

18   preserve emails?

19       A.    I don't remember.

20       Q.    Was it your understanding that

21   you had to preserve text messages?

22       A.    I don't remember the exact

23   conversation and what was told.

24       Q.    Do you remember --

25           MR. LABUDA:  I'll object to



```
 1
 2        anything to do with a conversation.
 3              Exclude those.
 4              THE WITNESS:  Okay.
 5   BY MR. GIBBS:
 6        Q.    Do you remember if you were --
 7   if you understood that you had an
 8   obligation to preserve any other types of
 9   documents for purposes of the case?
10        A.    I don't remember.
11        Q.    Do you remember approximately
12   when you became aware of your preservation
13   obligations?
14        A.    No, I don't.
15        Q.    Have you ever discussed the
16   preservation of communications or
17   documents with Vic Caroleo?
18        A.    I don't recall.
19        Q.    And same question but with
20   respect to Nick Giordano.
21        A.    I don't believe so.
22        Q.    Was your current cell phone
23   searched for text messages and other
24   relevant communications as part of
25   discovery in this case?
```



```
 1
 2   October of 2022?
 3       A.    Yes.
 4       Q.    And what's the make and model of
 5   your current phone?
 6       A.    It's a Apple phone.
 7       Q.    So it's an iPhone?
 8       A.    An iPhone.
 9       Q.    Do you know is it like an
10   iPhone 15?
11       A.    I don't -- I don't know that
12   without looking --
13       Q.    That's fine.
14       A.    -- in the settings.
15       Q.    I couldn't answer that question
16   either.
17       A.    Yeah.
18       Q.    Who is your mobile carrier?
19       A.    Verizon.
20       Q.    How long have you had Verizon?
21       A.    I don't recall.
22       Q.    Your current phone, when did you
23   purchase that device?
24       A.    You're asking me about the
25   current phone, correct?
```



Page 34

```
 1
 2       Q.      Correct.
 3       A.      I don't recall exactly, but it
 4   was in the last four months.
 5       Q.      Would you say approximately
 6   December 2024?
 7       A.      Approximately.
 8       Q.      Where did you purchase the
 9   phone?
10       A.      At a Verizon store.
11       Q.      Was there any particular reason
12   that you got a new phone?
13       A.      My phone, my previous phone from
14   this one was broken.  The screen was
15   broken; the glass was broken.  I broke it
16   at a Yankee game.  And my finger was
17   starting to become -- my thumb was
18   starting to get cut from the glass, so
19   I -- I got a new phone.
20       Q.      Did you transfer the data from
21   your old phone to your current phone?
22       A.      I told the technician what I
23   wanted done, and that was what I told him.
24       Q.      To transfer all the data?
25       A.      To transfer all the data I
```



Page 35

1
2   didn't want.

3        Q.     And as far as you know, that was

4   done?

5        A.     Yes, as far as I know.

6        Q.     What did you do with your old

7   phone when you got your new one?

8        A.     I gave it to Verizon.

9        Q.     At the time when you turned in

10  your old phone, did you know at that time

11  that you were -- you had an obligation in

12  the case to preserve data and

13  communications in connection with the

14  data?

15       A.     I don't recall what I remember

16  at that point about the case.

17       Q.     Do you have an iCloud account?

18       A.     I'm not positive.

19       Q.     On your current phone, how long

20  is it set to store text messages?

21       A.     I have no idea.

22       Q.     And on your prior phone, do you

23  know what that setting was on that device?

24       A.     No, I don't.

25              I'm sorry, can -- I might need



```
 1
 2    a lot, and there was times where we're in
 3    litigation together so we would discuss
 4    the litigation.
 5            I'm not sure if that was
 6    overelaborating your question if you asked
 7    me about texts, but I think it was more on
 8    the phone at that point.
 9        Q.    And just to make sure we're
10    clear, so your answer when you said that
11    you would talk about the litigation and
12    things of that, you meant those were phone
13    conversations you mean?
14        A.    I don't recall exactly how we
15    communicated every time.  All I know is
16    that I've spoken to Nick in the last, you
17    know, two years.
18        Q.    Since the beginning of the
19    lawsuit in March of 2023, have you deleted
20    any text messages with Nick, either on
21    your current phone or on your prior phone?
22            MR. LABUDA:  Objection.
23            But you can answer.
24        A.    It's come to my attention on my
25    past phone that it had a setting that was
```



Page 64

```
 1
 2   removing text messages every 30 days.
 3       Q.    I'll ask -- so, I appreciate
 4   that.  I'll ask a slightly different
 5   question.
 6            With respect to deleting
 7   messages from Mr. Nick Giordano, did you
 8   manually delete any messages?  In other
 9   words, did you, you know, look at a
10   specific message and delete that message
11   or that conversation?
12       A.    No.
13       Q.    At what point did you become
14   aware that your prior phone had an auto
15   delete setting turned on?
16       A.    I would say toward the end of
17   2024.
18       Q.    And so you learned that before
19   you turned that phone in?
20            MR. MULE:  Objection.  I -- I --
21       go ahead.
22       A.    It -- just repeat that.  I
23   didn't follow.
24       Q.    Sure.
25            You said you became aware that
```



Page 65

```
 1
 2   there was an auto delete feature on your
 3   prior phone.
 4       A.    Yes.
 5       Q.    And so my question is did you
 6   figure that out before you turned that
 7   phone in to Verizon?
 8       A.    No.
 9       Q.    How did you learn, and again I'm
10   not asking for any discussions that you
11   had with your lawyers, but how had you
12   come to find out that your prior phone had
13   an auto delete feature turned on?
14           MR. MULE:  I'm just going to --
15           MR. LABUDA:  Yeah, instruct the
16       witness not to answer the question if,
17       you know, inasmuch as you're
18       disclosing any attorney/client
19       privileged communications.
20           If you can answer the question,
21       you can answer the question.  If you
22       can't --
23       A.    I can't answer the question
24   'cause the conversation was with my
25   attorneys.
```



Page 66

```
 1
 2          MR. LABUDA:  We'll move to
 3      strike, but -- but -- and object, but,
 4      you know, okay.
 5  BY MR. GIBBS:
 6      Q.      For your prior phone, did you
 7  provide your old phone to your attorneys
 8  at some point so that it could be searched
 9  for relevant documents or communications?
10      A.      Repeat that again.
11      Q.      Sure.
12              Did you provide your old phone
13  to your attorneys at some point so that it
14  could be searched for relevant
15  communications or documents?
16      A.      I did.
17      Q.      Do you recall approximately when
18  you provided the old phone to your
19  lawyers?
20      A.      Approximately a little bit
21  before I got a new phone, and I would say,
22  you know, some -- somewhere toward the end
23  of 2024.
24      Q.      Have you heard of a company
25  called We Recover Data?
```



```
 1
 2        A.      Yes.
 3        Q.      How had you learned about that
 4   company?
 5        A.      I don't recall.
 6        Q.      When did you first learn about
 7   We Recover Data?
 8        A.      I don't -- I don't recall.  I
 9   feel like it was the same question as the
10   one before that.
11        Q.      So, the first one was how did
12   you learn about them.
13        A.      Okay.  I don't remember and I
14   don't remember when.
15              Exact -- I don't remember
16   exactly when, but I know it was somewhere
17   in mid, early 2023.
18        Q.      Did you personally initiate
19   communications with We Recover Data?
20        A.      I don't remember.  I don't
21   believe so.
22        Q.      Do you remember why you became
23   involved with We Recover Data?
24        A.      What do you mean by that?
25        Q.      I'll ask the question a
```



Page 68

```
 1
 2    different way.
 3            Did We Recover Data provide any
 4    services to you?
 5        A.    Yes.
 6        Q.    And what were those services?
 7        A.    I don't know if they provided
 8    the services.  We'll go back to the first
 9    question.  I don't know if they provided
10    the service to me directly.  I think they
11    provided it to my attorneys.
12            THE WITNESS:  Is that okay?  Is
13        that -- did I answer that correctly?
14            MR. LABUDA:  Yeah.  I mean,
15        you're asking about services with
16        respect to his old phone regardless of
17        who it was.
18            MR. GIBBS:  Presumably, yes.
19            Yes, we're just asking about We
20        Recover Data and what services they
21        provided.  So I think that's -- I
22        think that's -- I think you answered
23        the question.
24            MR. LABUDA:  Yeah, that's fine.
25            THE WITNESS:  Okay.
```



Page 69

1
2    BY MR. GIBBS:
3         Q.    Did you personally have contact
4    with We Recover Data?
5         A.    I don't recall.
6         Q.    Did you provide your old phone
7    to We Recover Data?
8         A.    Yes.
9         Q.    And do you recall what was done
10   with your old phone?
11        A.    I don't know the exact
12   terminology, but they took a -- an image
13   of, you know, the hard drive, if you will.
14   I'm not sure if that's the -- the correct
15   terminology for the phone.
16        Q.    Did you personally get a copy of
17   the hard drive from the phone?
18        A.    I don't remember how I -- I
19   don't remember if I got it or my attorneys
20   got it.
21        Q.    Was reaching out to We Recover
22   Data, was that your idea to do that?
23        A.    I don't recall whose idea.
24        Q.    Did We Recover Data perform any
25   other services for you?



```
 1
 2              MR. LABUDA:  And just the same
 3      objection.
 4              But you can answer the question.
 5      A.      Repeat the question again.
 6      Q.      Did you understand that your old
 7  phone had information on it that could be
 8  relevant to the lawsuit at the time you
 9  turned it in to Verizon?
10              MR. LABUDA:  Same objection.
11              But you can answer.
12      A.      I -- I can't remember what I was
13  thinking at that point.
14      Q.      And the follow-up question to
15  that is why did you think you could
16  exchange it so that it would be no longer
17  available for purposes of this case?
18              MR. LABUDA:  Objection.
19              But you can answer.
20      A.      Repeat that slowly, or rephrase
21  that if you can.
22      Q.      Sure.
23              Did you think it was appropriate
24  to exchange the phone even though it would
25  be no longer available for purposes of
```



Page 85

```
 1
 2   this case?
 3            MR. LABUDA:  Objection.
 4            But you can answer.
 5       A.    I asked the Verizon technician
 6   to copy my information from my old phone
 7   onto the new phone.  So I didn't see any
 8   harm in that.
 9            I don't know if I necessarily
10   had a litigation on my mind or just making
11   sure that all of my information was
12   properly on the phone.
13            MR. GIBBS:  Okay.
14            I think we can take a break for
15       a couple minutes.
16            MR. LABUDA:  Okay.
17            MR. GIBBS:  We're towards the
18       and of our questioning, so.
19            MR. LABUDA:  Okay.
20            THE VIDEOGRAPHER:  We are going
21       off the record.
22            The time is 11:35.
23            (Recess taken.)
24            THE VIDEOGRAPHER:   We are going
25       back on the record.
```



Page 86

```
 1
 2            The time is 11:56.
 3    BY MR. GIBBS:
 4        Q.     After our break, Mr. Caroleo, I
 5    have just a few more questions to ask of
 6    you.
 7            The first is we talked earlier
 8    about, you know, some backups that had
 9    been made by We Recover Data.
10            Other than the vendors that
11    we've talked about today, are you aware of
12    any other alternative source or sources
13    from which any of your old text message
14    data could be recovered?
15            MR. LABUDA:  You can answer.
16        A.     Repeat the question?
17        Q.     Sure.
18            Other than the vendors that
19    we've talked about today, We Recover Data
20    and the others, are you aware of any other
21    source from which your old text message
22    data could be recovered?
23        A.     No.
24        Q.     Did you tell your attorneys that
25    you were going to get a new phone?
```



Page 87

```
 1
 2            MR. LABUDA:  Objection.
 3            Don't answer the question.
 4       Attorney/client privilege.
 5  BY MR. GIBBS:
 6       Q.    Did your lawyers tell you that
 7  you should not turn in your old phone?
 8            MR. LABUDA:  Same objection.
 9            Don't answer.
10  BY MR. GIBBS:
11       Q.    Going back in time, were you
12  instructed by anyone to preserve documents
13  in March 2023 when the Complaint was
14  served?
15            MR. LABUDA:  I think he's
16       already answered the question.
17            But I'm going to instruct the
18       witness to answer the question, if you
19       can, without disclosing any
20       attorney/client privileged
21       communications.  If you can't answer,
22       you can say you can't answer the
23       question.  Otherwise if you can answer
24       the question without disclosing any
25       attorney/client privileged --
```


MAGNA
LEGAL SERVICES

Page 88

```
 1
 2     A.    I don't -- I don't remember.
 3           MR. GIBBS:  I'll rephrase the
 4     question a bit.
 5  BY MR. GIBBS:
 6     Q.    Were you instructed by any
 7  attorneys to preserve documents in March
 8  2023 when the Complaint was filed and
 9  served in this case?
10           MR. LABUDA:  I object.
11           Don't answer.
12  BY MR. GIBBS:
13     Q.    At the time of the injunction
14  hearing in this case, had you been
15  instructed by an attorney at that point to
16  preserve documents?
17           MR. LABUDA:  Objection.
18           Don't answer.
19  BY MR. GIBBS:
20     Q.    Last -- I'm sorry.  Actually,
21  June of 2023, I believe, we had a
22  mediation conference with Magistrate Judge
23  Tiscione that you were present at.
24           At the time of that mediation
25  conference, had an attorney instructed you
```



```
 1
 2   at that time to preserve documents?
 3           MR. LABUDA:  Objection.
 4           Don't answer.
 5   BY MR. GIBBS:
 6       Q.    Is it correct that you first
 7   recall being instructed to preserve
 8   documents at the end of 2024?
 9           MR. LABUDA:  Objection.
10           MR. MULE:  Objection.
11           MR. LABUDA:  Don't answer.
12           MR. MULE:  And I think that
13       miss --
14           MR. LABUDA:  Don't answer with
15       respect to -- yeah.
16           MR. MULE:  -- misstates the
17       record.
18           MR. LABUDA:  Yeah, we're just
19       going to direct him not to answer if
20       it discloses attorney/client
21       privileged communications.
22           And I think there was a motion
23       to strike an answer there.  So I'm
24       going to direct him not to answer.
25
```



Page 90

 1
 2    BY MR. GIBBS:
 3        Q.    Did you advise your attorneys or
 4    tell your attorneys that you were turning
 5    in your old phone?
 6              MR. LABUDA:  Objection.
 7              Don't answer.
 8              I think you had asked that
 9        already.
10    BY MR. GIBBS:
11        Q.    Have you been following and will
12    you continue to follow your attorneys'
13    instructions not to answer questions on
14    the basis of privilege?
15        A.    What is the question?
16        Q.    I'll ask it -- I'll ask it
17    slightly different.
18              Today during your deposition,
19    have you been following your attorneys'
20    instructions with respect to instructions
21    not to answer questions on the basis of
22    privileges?
23        A.    Am I going to follow those --
24    continue to follow those directions?
25        Q.    Have you been today during the



Page 96

```
 1
 2                  C E R T I F I C A T E
 3           I, MARIE FOLEY, Registered Merit
 4    Reporter, Certified Realtime Reporter, and
 5    Notary Public for the State of New York,
 6    do hereby certify that prior to the
 7    commencement of the examination, DOMINICK
 8    CAROLEO, was duly sworn by me to testify
 9    to the truth, the whole truth and nothing
10    but the truth.
11        I DO FURTHER CERTIFY that the foregoing
12    is a verbatim transcript of the testimony
13    as taken stenographically by me at the time,
14    place and on the date hereinbefore set forth,
15    to the best of my ability.
16        I DO FURTHER CERTIFY that I am neither
17    a relative nor employee nor attorney nor
18    counsel of any of the parties to this action,
19    and that I am neither a relative nor employee
20    of such attorney or counsel, and that I am
21    not financially interested in the action.
22    _____MARIE FOLEY_____
      COURT REPORTER
23    Registered Merit Reporter
      Certified Realtime Reporter
24    Notary Public
      Dated: March 19, 2025
25
```



