# EXHIBIT C

```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
```

------------------------------X
                              :
SITEONE LANDSCAPE SUPPLY,     :
LLC,                          :    23-CV-2084 (GRB)(SIL)
             Plaintiff,       :
                              :    February 10, 2025
                              :
         V.                   :    Brooklyn, New York
                              :
NICHOLAS GIORDANO, et al.,    :
                              :
             Defendant.       :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JOHN GIBBS, III, ESQ.
                            KEVIN MULRY, ESQ.
                            DANIEL GORMAN, ESQ.
                            Troutman Pepper Locke LLP
                            600 Peachtree Street NE, Ste 3000
                            Atlanta, GA 30308-2216

For the Defendant:          MICHAEL MULE, ESQ.
                            JOSEPH LABUDA, ESQ.
                            ROBERT MILMAN, ESQ.
                            Milman Labuda Law Group PLLC
                            3000 Marcus Avenue, Ste 3w8
                            Lake Success, NY 11556

Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Calling case 23-CV-2084, Siteone
 2   Landscape Supply, LLC v. Giordano, et al.
 3              Counsel, please state your appearance for
 4   the record.
 5              MR. GIBBS:  Good afternoon, your Honor.
 6   This is John Gibbs.  I'm here for plaintiff Siteone,
 7   and with me are my colleagues, Mr. Daniel Gorman and
 8   Kevin Mulry as well.
 9              THE COURT:  And you'll be doing the talking?
10              MR. GIBBS:  Yes, your Honor.
11              THE COURT:  Okay.  Good morning.
12              MR. MULE:  Good morning, your Honor.
13   Michael Mule for the defendants from the firm Milman
14   Labuda Law Group, PLLC, with my colleagues, Joe Labuda
15   and Bob Milman.
16              THE COURT:  And you'll be doing the talking,
17   Mr. Mule?
18              MR. MULE:  I will, your Honor.
19              THE COURT:  All right, good morning.  Be
20   seated, everybody.
21              We've got some motions on the agenda for
22   today.  There's a motion I guess for sanctions or
23   discovery relief, docket entry 185 and opposition at
24   188.  And then defendants filed another motion Friday,
25   to which I don't have a response, probably because it
```

```
 1              MR. MULE:  We estimate around $900,000.
 2              THE COURT:  All right, so significant
 3   amounts of money in a case where no ESI protocol was
 4   addressed, and things were just free-flowing.  You can
 5   probably guess that that may be my opinion as to why
 6   some of this has gone int his direction.
 7              Mr. Gibbs, is the defendants' statement
 8   accurate in these opposition papers at footnote 2,
 9   where he says they've offered you a copy of the hard
10   drive from Dom's phone and you did not take it?
11              MR. GIBBS:  The offer was made, yes, your
12   Honor.  We did not take it.  The representation to us
13   was that the hard drive was unusable, so we saw no
14   reason to second-guess -- they said they've had a
15   vendor, a forensic vendor or possibly even two look at
16   the hard drive.  So I'm taking them at their word --
17              THE COURT:  Okay.
18              MR. GIBBS:  -- the attorneys at their word
19   that it's unusable.
20              THE COURT:  That's my next question.  So
21   you'll accept their representation that it's unusable.
22              MR. GIBBS:  Yes, your Honor.
23              THE COURT:  Mr. Mule, I'm curious to know
24   the answer to this question:  How do you reconcile the
25   statements in your opposition that Vic deletes evidence
```

```
 1   apparently because he's old and compulsive, and Dobbs
 2   evidence is simply missing, with an objection to
 3   document-retention-based discovery requests by the
 4   plaintiff?
 5              MR. MULE:  I'm sorry, with an objection to?
 6              THE COURT:  They said they want to take
 7   depositions about document retention and you are
 8   objecting to that.
 9              MR. MULE:  Your Honor, our objection is
10   really --
11              THE COURT:  Make sure you're at the mic.  I
12   don't care -- you can stand if you want.
13              MR. MULE:  -- is really simply that in our
14   view, this case should move forward.  We'll give them
15   more time.  They can ask those questions at the
16   deposition.  If they feel that it would take another
17   two hours --
18              THE COURT:  That's not the problem.  The
19   problem is, they're going to say they don't have all
20   the documents they need to do a complete deposition of
21   your clients, so they want to know what happened to
22   those documents in the first instance.  Then if it
23   becomes clear from the testimony that there are more
24   documents that are relevant and not produced, they're
25   going to ask for those to complete the depositions.
```

```
 1              Does that sound like a fair summary, Mr.
 2   Gibbs?
 3              MR. GIBBS:  Yes, your Honor, I think that's
 4   correct.
 5              THE COURT:  So with that understanding of
 6   the order of things, do you still object to those
 7   depositions?
 8              MR. MULE:  Well, I don't know what the -- as
 9   far as, you know, with Vic, we've identified that Vic,
10   because of his compulsion, that's what he does.
11              THE COURT:  You don't find that troubling
12   from a litigation perspective?
13              MR. MULE:  Well, your Honor --
14              THE COURT:  You see how the Court could find
15   that troubling from a litigation perspective.
16              MR. MULE:  Obviously, your Honor, we would
17   say, hey, don't do that, that shouldn't have been done.
18   However, with respect to -- with respect to Dom, you
19   know, this is just a situation where, you know, he just
20   didn't know that this was --
21              THE COURT:  Let's talk about that.
22              MR. MULE:  Yeah.
23              THE COURT:  When you buy an iPhone, it's not
24   set to delete my texts after three days.  Somebody has
25   to set that.  I assume Dom set that on his phone at
```

```
 1  some point.  It may have been before the litigation but
 2  I assume he set it.  Did you ask him?
 3              MR. MULE:  Yeah.  He doesn't even know, I
 4  don't believe, your Honor.  I mean, it could have been
 5  something that was set at the iPhone store when he got
 6  it.  He had an older phone at the time.
 7              THE COURT:  Well, do you suppose that
 8  perhaps the answers to those questions might be
 9  appropriate for a deposition?
10              MR. MULE:  Sure.  They could certainly ask
11  those questions.
12              THE COURT:  Okay.  Well, here's where I'm
13  going.  I'm prepared to grant their motion with respect
14  to conducting document-retention discovery of your
15  three clients.  If you want to object, now is the time.
16  I mean, you objected in the papers but I'd like to hear
17  something about that if you have something to say.
18              MR. MULE:  If your Honor is so inclined to
19  do that, obviously your Honor -- we just --
20              THE COURT:  Well, I know I can do it.
21              MR. MULE:  The only thing we're saying is
22  that we believe that for efficiency purposes -- you
23  know, this case is really about Dom competing and in
24  our view, there hasn't been any evidence of Dom
25  competing.  So why don't we get into the substance?
```

```
 1   would the introductory correspondence be relevant?  The
 2   non-compete doesn't prevent you from getting ready to
 3   compete, does it?  It only prevents you from actually
 4   competing.
 5              MR. GIBBS:  Well, he may have been competing
 6   before.  That's our position, your Honor, is that Dom
 7   has been competing the entire time.  He has been
 8   working with them.
 9              THE COURT:  Okay, let's approach this this
10   way then?  Why don't you take the old phone and if
11   there's any evidence on it that leads you to believe
12   that there's something nefarious on the new phone, we
13   can talk about it.
14              MR. GIBBS:  That's fair, your Honor.
15              MR. MULE:  Your Honor, as far as the old
16   phone, he doesn't have his old phone.  He's got -- we
17   have the -- we have the hard drive and we have the
18   extraction that we did with respect to his old phone.
19              THE COURT:  And the old phone is the same
20   phone number?
21              MR. MULE:  Yeah, it's the same phone number,
22   so everything was transferred.
23              THE COURT:  All right, you can have all of
24   what they have.  Whatever they have, you can have, new
25   phone, hard drive, if he doesn't have the old phone.
```

1  And you can depose him on getting rid of the old phone
2  after litigation started.  I have no idea what the
3  technology would show.
4          MR. GIBBS:  I could tell you now, your
5  Honor, if we don't have the old phone, there's not
6  going to be anything to forensically analyze.  And if
7  that was discarded in October of 2024, that was after
8  our motions to compel were filed with this Court and
9  around the time that we had a hearing on the text
10 messages for Dom's phone.  We can certainly depose him
11 about this, your Honor, but I don't anticipate that
12 there will be --
13         THE COURT:  Let's conduct the deposition.
14 Why did he get rid of the phone after litigation
15 started to get a new phone?
16         MR. MULE:  It was time for an upgrade.
17         THE COURT:  I'm not saying why did he get a
18 new phone but why did he discard the old phone when
19 getting the new phone?
20         MR. MULE:  It was a trade-in.  I mean, it
21 was a trade-in.  He got his --
22         THE COURT:  After litigation started.
23         MR. MULE:  First, he got the phone extracted
24 from us and then after he got it extracted --
25         THE COURT:  Did he know about it when it

```
 1  happened?
 2          MR. MULE:  Right around the time after --
 3  after he got his phone extracted.
 4          THE COURT:  He'll have to answer questions
 5  about this.  That's a problem.  You know, there's only
 6  so much (ui) destruction of evidence that the Court is
 7  going to tolerate.  All right, so --
 8          MR. MULE:  Your Honor, his entire phone, he
 9  had a forensic copy in July of 2023.  So, you know --
10          THE COURT:  So it's up to him when he can
11  get rid of the evidence and not the Court.  That's what
12  you're telling me because that's what I'm hearing.
13          MR. MULE:  No, your Honor.  What he did is,
14  he felt bad.  He had everything preserved.
15          THE COURT:  He felt he had done an adequate
16  job without notice to the Court or his adversary that
17  he was getting rid of a phone with potentially relevant
18  information on it.  I don't see any other conclusion to
19  draw.  And what you're telling me is not comforting.
20          UNIDENTIFIED SPEAKER:  With all due respect,
21  your Honor --
22          THE COURT:  No, he's talking.  Pass him a
23  note and don't "all due respect" me, please.
24          UNIDENTIFIED SPEAKER:  Sorry, your Honor.
25          THE COURT:  Yes.
```

```
 1          MR. MULE:  Your Honor, from my client's
 2  perspective, all he felt was that once he gave it to
 3  one expert to make a copy, that he took reasonable
 4  steps.  And then when we had the extraction again in
 5  October, at that point, he had taken reasonable steps
 6  because he took steps back in 2023 and then again, his
 7  phone was extracted in 2024.
 8          THE COURT:  So my conclusion is the same,
 9  that he decided what was appropriate on his own,
10  without notice to anybody, including the Court.
11          MR. MULE:  He thought --
12          THE COURT:  Yes or no?
13          MR. MULE:  He thought he was taking
14  reasonable steps.  I guess that's all I have.
15          THE COURT:  Okay, all right.  So whatever
16  they've got, you'll depose him on it, and we're going
17  to be where we're going to be.  We can't regenerate
18  something we don't -- don't have.
19          MR. GIBBS:  Yes, your Honor.
20          THE COURT:  Okay.  So most of it's granted
21  in terms of, you'll take the depositions, you'll get
22  whatever they have in terms of phones.  You will have a
23  conversation with them about what this forensic
24  examination will look like before it's done, not after
25  it's done, so that if they have an objection, they can
```