Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022

troutman.com

troutman pepper locke

**Daniel E. Gorman**
daniel.gorman@troutman.com

July 18, 2025

Magistrate Judge Steven Locke
Eastern District Court New York

**Re:** ***SiteOne Landscape Supply, LLC v. Giordano, et al*. (2:23-CV-02084)**
**Reply in Further Support of Renewed Motion to Compel Production of Documents to NextPoint Law Group LLC**

Dear Judge Locke:

We write on behalf of SiteOne Landscape Supply, LLC ("SiteOne") in further support of its motion to compel NextPoint Law Group LLC ("NLG") to comply with SiteOne's subpoena dated April 9, 2025 (the "Subpoena," Exhibit 1 to Renewed Motion to Compel) and the Court's Order dated March 26, 2025 (the "March 26 Order") (ECF No. 203).

**I. Background.**

It became clear during this litigation that Defendants Nicholas Giordano ("Nick"), Victor Caroleo ("Vic"), and Dominick Caroleo ("Don", and collectively, "Defendants") intentionally destroyed text messages dating back before the action's inception and during the period for which text messages would be especially significant. SiteOne therefore sought data from several e-discovery vendors retained by Defendants in order to understand the details of Don's destruction of evidence and whether any of the spoliated evidence may be recoverable.

SiteOne issued several subpoenas. As relevant here, SiteOne subpoenaed Don's e-discovery vendor, NextPoint Law Group, LLC ("NLG"), who was retained by Don's counsel, Milman Labuda, seeking documents and communications from NLG to uncover the breadth of Defendants' destruction of data and to perform a forensic analysis.

**II. Procedural History.**

SiteOne incorporates by reference the procedural history outlined in its renewed motion to compel, dated June 19, 2025. SiteOne served its renewed motion to compel on NLG on June 19, 2025 as required by this Court's order. (ECF No. 214). On July 9, 2025, NLG served its opposition to SiteOne's renewed motion to compel. NLG continues to stand on its meritless objections, effectively arguing that because of Defendants' refusal to pay NLG's invoice SiteOne is not entitled to the essential discovery it seeks.

**III. NLG's Objection to the Application of Prior Rulings Is Disingenuous.**

NLG initially takes issue with the application of this Court's March 26 Order (ECF No. 203) to NLG. NLG's objection is without merit. As SiteOne explained in its renewed motion, SiteOne initially subpoenaed Nextpoint, Inc. After learning that the entity Don hired was NLG, and not Nextpoint, Inc., SiteOne issued a subpoena to NLG seeking the *exact same documents* sought in the Nextpoint, Inc. subpoena. There can be no doubt that March 26 Order extends to NLG. In fact, the Court was aware in entering its March 26 Order that NLG worked with Don as

his "e-discovery vendor for all purposes for the case." (*See* March 26, 2025 Hearing Tr. 32:15-17, attached hereto as Exhibit 1).

The remaining objections NLG raises in opposition to SiteOne's motion to compel illuminate precisely why this Court created the mechanism for the production of documents – so that this Court could avoid additional motion practice and SiteOne could finally obtain the information it needs to determine the scope of Don's destruction of evidence.

## IV. NLG's Retaining Lien Objection Punishes SiteOne for Defendants' Conduct.

NLG objects to the Subpoena, as before, on the basis that it seeks documents "covered by NLG's valid retaining lien." (Opp. at 2–3). NLG asserts that it is "immaterial" that the files are sought by SiteOne, rather than Milman Labuda. This is simply not the law.

NLG cites cases in support of its contention that SiteOne may not access these documents because they are subject to a retaining lien, but not a *single* case cited involves a situation in which a third party, as opposed to the former client of the attorney, seeks the documents allegedly subject to a retaining lien. Further, none of the cases cited by NLG stand for the proposition that it may deny production of these documents to a third party. Instead, each case cited by NLG is a situation where counsel of record was substituted out for non-payment by its client, new counsel substituted in, and the client then sought documents from its prior counsel.

Courts consistently grant motions to compel where the client's adversary, not the client, seeks documents subject to a retaining lien, as the "rationale underlying the general inviolability of an attorney's lien does not apply." *Tri-Ex Enters., Inc. v. Morgan Guar. Tr. Co. of New York*, 583 F. Supp. 1116, 1117 (S.D.N.Y. 1984); *M & T Mortg. Corp. v. Miller*, 2005 WL 8156779, at *2 (E.D.N.Y. Jan. 27, 2005); *Riisna v. Brennan*, 2002 WL 188337, at *1 (S.D.N.Y. Feb. 5, 2002). Further, it would be entirely "inequitable to deny a litigant access to relevant, and perhaps essential, proof merely because his adversary has refused to pay his attorney's fees." *Tri-Ex Enters., Inc.*, 583 F. Supp. at 1118; *M & T Mortg. Corp.*, 2005 WL 8156779, at *2. Courts have explicitly held that the value of NLG's lien "actually would be enhanced" by allowing SiteOne, Don's adversary, but not Don himself, "to have access to the documents." *Riisna*, 2002 WL 188337, at *1.

SiteOne should not be penalized for Defendants' refusal to pay their vendor. If Your Honor believes that the March 26 Order cannot stand in light of the refusal to pay NLG's fees, SiteOne respectfully requests that Your Honor modify the March 26 Order so as to require NLG to review the documents in its possession for privilege, produce the non-privileged documents to SiteOne, and the privileged documents to Your Honor for an *in camera* review. This would obviate any argument by NLG that its retaining lien would no longer be effective, as Milman Labuda and Defendants would not have access to the documents. Alternatively, Your Honor could modify the March 26 Order to require Milman Labuda to immediately destroy the files once they have completed their review. In both situations, NLG cannot legitimately claim that its retaining lien would no longer be effective, and Defendants have no privilege concerns.

## V. The Subpoena is Narrowly Tailored.

NLG further objects to the Subpoena as unduly burdensome and asserts that the parties are trying to burden NLG with "further unpaid work." NLG's burdensome argument is nothing more

than a reframing of their argument that the retaining lien precludes SiteOne from seeking these documents. SiteOne does not wish to burden NLG with unpaid work, but SiteOne cannot be punished by Defendants' failure to pay NLG's fees. NLG explicitly states that "[p]roduction under the subpoena would cause an undue financial burden to NLG *because NLG is already owed significant money by Milman Labuda*." (Opp. at 3) (emphasis added). As explained in Section IV, *supra*, NLG's lien does not preclude production to SiteOne. *See e.g. Tri-Ex Enters., Inc.*, 583 F. Supp. at 1117; *M & T Mortg. Corp.*, 2005 WL 8156779, at *2; *Riisna*, 2002 WL 188337, at *1.

That NLG must review documents and produce those responsive to a narrowly tailored subpoena does not render the Subpoena unduly burdensome, especially where, as here, SiteOne seeks only a small subset of documents. (*See* Exhibit A to the Subpoena, seeking documents and communications from January 2022 to the present concerning NLG's services provided to Don and/or his attorneys "expressly including [NLG's] work with respect to the UFDR files from WeRecoverData.").

**VI. <u>All Documents and Communications Sought Are Not Privileged</u>.**

NLG also objects to the Subpoena on the basis that "[a]ll the documents NLG has…that are related to this action would constitute attorney client communication and/or attorney work product." In response to Defendants' motion to quash the subpoenas to their IT-vendors, Your Honor stated "not everything in those communications would be subject to the attorney work product doctrine. I don't believe that to be true." (March 26, 2025 Hearing Tr. 34:13-16). As with any non-party responding to a subpoena, NLG must review its files prior to production.

Further, to the extent Your Honor finds that the March 26 Order remains in full force and effect, Your Honor has already created a mechanism which renders any objections on the basis of privilege meaningless. The March 26 Order explicitly states that "once Plaintiff receives the responsive documents, Plaintiff will confirm what they are and then provide them to Defendants so that Defendants may assert a work product objection to specific documents on the log." (ECF 203). NLG concedes that SiteOne's counsel has requested that NLG "deliver the files to Milman Labuda so that they can reviewed for privilege." (Opp. at 2). Therefore, to the extent NLG is required to turn over its files to Defendants, there can be no privilege concerns. If, however, Your Honor modifies the March 26 Order as requested herein, *supra* Section IV, NLG will have to undertake a privilege review of its documents and produce those for which there is no valid privilege claim, just as any subpoenaed party must do. Defendants cannot use privilege as both a sword and a shield by refusing to pay NLG and also claiming that they must be the ones to review NLG's file for privilege.

**VII. <u>Conclusion</u>.**

SiteOne respectfully requests that NLG be required to comply with the Subpoena and produce the documents listed in Exhibit A of the Subpoena without further delay.

Respectfully submitted,

/s/ *Daniel E. Gorman*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X **Docket#**

SITEONE LANDSCAPE SUPPLY, LLC, : 23-cv-02084-GRB-SIL

Plaintiff,

- versus - : U.S. Courthouse : Central Islip, NY

NICHOLAS GIORDANO et al.,

: March 26, 2025

Defendants : 2:37 p.m.

--------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiffs:**

**Kevin P. Mulry, Esq.**
Farrell Fritz, PC
400 RXR Plaza
Uniondale, NY 11556

**Matthew Adler, Esq.**
Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square
18th And Arch Streets
Philadelphia, PA 19103

**John Sikes Gibbs, III, Esq.**
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308

(Appearances continue on next page)

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

**APPEARANCES CONTINUED**

**For the Defendants:**

**Thomas A. Bizzaro, Jr., Esq.**
Law Offices of Thomas A. Bizzaro, Jr., P.C.
133C New York Avenue
Huntington, NY 11743

**Michael C. Mule, Esq.**
**Robert Milman, Esq.**
Milman Labuda Law Group PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11556

every case with electronic evidence?

MR. GIBBS: No, I do not, your Honor.

THE COURT: Okay. All right. You can respond to what he said if you'd like, Mr. Mule.

MR. GIBBS: Oh, and I did not talk --

THE COURT: Oh, I'm sorry. I thought --

MR. GIBBS: I'm sorry. I did not talk about Nextpoint because --

THE COURT: Oh, yes, yes, sorry. Yes.

MR. GIBBS: -- it's a little different.

THE COURT: Right.

MR. GIBBS: And it does deserve its own attention I think.

THE COURT: Okay.

MR. GIBBS: So Nextpoint Mr. Mule is correct, they explained to us that Nextpoint is, you know, is the e-discovery vendor for all purposes for the case.

So we don't want all of the communications about other issues in the case, you know, just their general back and forth about e-discovery stuff. We're only interested in the stuff that is related specifically to the retrieval or review of the information from Don's original cell phone. And one of the reasons for that is we don't have that cell phone that was the subject of both of these vendors' efforts. That phone is now gone

and can't be forensically analyzed by us. We can't sort of, you know, check their work. And so understanding exactly what was done by whom and when and for what purpose we think justifies getting, with respect to Nextpoint, the limited communications just around this issue and not all e-discovery communications.

THE COURT: Okay. Did you get that?

MR. MULE: I'm not exactly sure if he's saying -- you know, I don't know where -- is he saying what did Nextpoint do with the original phone?

MR. GIBBS: What did Nextpoint do with the original phone? No, what I'm saying is whatever Nextpoint did with respect to the hard drive from We Recover Data and any work that Nextpoint did specifically trying to I guess recover data from Don's phone that's gone, that's what we're specifically focused on.

MR. MULE: I mean I can answer this. I mean basically we have a hard drive. We put it into the computer. It goes into the database and that's it. I mean --

THE COURT: Okay. Well, if that's the case then I don't know what your objection is. If you're saying that he produced it, then they'd just be producing it again. So what are we doing?

Let me tell you my thinking on this. I

understand the basis for the motion to quash. As I mentioned before, I have concerns about the evidence in this case obviously. And you haven't seen the -- do you have the communications with the vendor?

MR. MULE: I communicate with them all the time.

THE COURT: No, no, about this case.

MR. MULE: About this case? All the time.

THE COURT: Why so much?

MR. MULE: Well, I mean we have during the course -- we had between October and January. We were, you know, compiling all that information.

THE COURT: I have concerns that a blanket motion to quash, not everything in those communications would be subject to the attorney work product doctrine. I don't believe that to be true. Do you?

MR. MULE: I mean we could give them a statement of work I mean if that's something -- I mean I --

THE COURT: No. I'll tell you what I'm envisioning and you can react to this is that I'm going to deny the motion with the caveat the documents will be produced but you will get to review them first. And if you have assertions of specific attorney work product assertions about certain correspondence that you say

reflects your firm's mental impressions of the case, you know, there's something, in other words, something other than you're hired to do this and then they say well we copied this and we ran this search and it showed 10,000 things or (indiscernible). None of that to me is attorney work product. You're trying to get an adverse inference and they're using circumstantial evidence because the actual evidence has been deleted. Is that a fair summary, Mr. Gibbs in a sense?

MR. GIBBS: Yes, your Honor, it is.

MR. MULE: Your Honor --

THE COURT: This goes to that.

MR. MULE: Well, I'm trying to understand when I go to Nextpoint, you know --

THE COURT: You're not going to Nextpoint. They're going to respond to the subpoena. They're going to send it to Mr. Gibbs who's going to give it to you.

MR. MULE: They're going to send it to me first and then I review it?

THE COURT: No. Mr. Gibbs, I'm going to take him at his word, is going to open it just to make sure it's the response, and then without reviewing it, give it to you because this is your vendor who you have a long-term relationship with, and they have an understandable interest in keeping you happy. And I'm not saying

anything, casting no aspersions on anybody when I say that. But I am a realist.

MR. MULE: So your Honor, this is regarding -- so Nextpoint is going to make -- they're going to get a subpoena that says respond, provide -- I mean this says all documents and communications from January 2022 to present concerning --

THE COURT: About this case.

MR. MULE: -- concerning Nextpoint's services provided to Don or his attorneys. That's a lot of communications.

THE COURT: Your client should not have destroyed evidence. Period. The motion to quash is denied. But that's how it's going to go, Mr. Gibbs. You'll get a box or a file, I don't know what you're going to get. Confirm what it is and give it to -- don't read it until Mr. Mule has a chance to go through it. You want a chance to go through it?

MR. MULE: Absolutely.

THE COURT: Okay. And that's what you get.

MR. GIBBS: And your Honor, just to --

THE COURT: Yes.

MR. GIBBS: -- just to tie a finer point on it, would you envision that they would just produce the documents to us with any type of log or anything that --