Exhibit 1

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

- - -

SITEONE LANDSCAPE SUPPLY, LLC,

          Plaintiff,    Civil Action No.

v.                   2:23-CV-2084(GRB)(SL)

NICHOLAS GIORDANO; DOMINICK CAROLEO;

VICTOR CAROLEO; NARROW WAY REALTY, LTD.;

NARROW WAY 2 LLC; THE GARDEN DEPARTMENT

CORP.; GROUP 5 ASSOCIATES, LTD.; 3670

ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES

SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND

NEWAY TRUCKING,

          Defendants.

- - -

March 13, 2025

- - -

Videotaped deposition of
VICTOR CAROLEO, conducted at Farrell
Fritz, P.C., 400 RXR Plaza, Uniondale, New
York, commencing at 10:00 a.m. EDT, on the
above date.

          Magna Legal Services
             866-624-6221
            www.MagnaLS.com
                   Marie Foley
                   RMR, CRR



Page 2

```
1
2    APPEARANCES:
3
4    ON BEHALF OF PLAINTIFF:
5    TROUTMAN PEPPER HAMILTON SANDERS, LLP
6    BY: EVAN GIBBS, ESQUIRE
7       600 Peachtree Street, NE
8       Suite 3000
9       Atlanta, Georgia  30308
10      PHONE: 470.885.3093
11      EMAIL: evan.gibbs@troutman.com
12         -and-
13   FARRELL FRITZ, P.C.
14   BY: KEVIN P. MULRY, ESQUIRE
15      400 RXR Plaza
16      Uniondale, New York  11556
17      PHONE: 516.227.0620
18      EMAIL: kmulry@farrellfritz.com
19
20
21
22
23
24
25
```

Page 3

```
1
2    APPEARANCES:
3
4    ON BEHALF OF DEFENDANTS:
5    MILMAN LABUDA LAW GROUP PLLC
6    BY: JOSEPH M. LABUDA, ESQUIRE
7       MICHAEL C. MULE, ESQUIRE
8       3000 Marcus Avenue
9       Suite 3W3
10      Lake Success, New York  11042
11      PHONE: 516.328.8899
12      EMAIL: josephlabuda@mllaborlaw.com
13
14
15
16   ALSO PRESENT:
17      Don Caroleo
18
19   VIDEOGRAPHER:
20      Alejandro Gomez
21
22
23
24
25
```

Page 4

```
1
2                  - - -
3          TRANSCRIPT INDEX
4                 PAGE
5    APPEARANCES...................... 2 - 3
6    INDEX OF EXHIBITS................ 6
7    EXAMINATION OF VICTOR CAROLEO:
8    BY:  MR. GIBBS................... 10
9    SIGNATURE PAGE................... 83
10   ERRATA........................... 84
11   REPORTER'S CERTIFICATE........... 85
12
13   EXHIBITS WITH ORIGINAL TRANSCRIPT
14
15                - - -
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
1
2         FEDERAL STIPULATIONS
3
4        IT IS HEREBY STIPULATED AND
5    AGREED by and between the parties hereto,
6    through their respective counsel, that the
7    certification, sealing and filing of the
8    within examination will be and the same
9    are hereby waived;
10       IT IS FURTHER STIPULATED AND
11   AGREED that all objections, except as to
12   the form of the question, will be reserved
13   to the time of the trial;
14       IT IS FURTHER STIPULATED AND
15   AGREED that the within examination may be
16   signed before any Notary Public with the
17   same force and effect as if signed and
18   sworn to before this Court.
19
20
21
22
23
24
25
```



2  (Pages 2 to 5)

Page 6

```
 1
 2                  - - -
 3         E X H I B I T S
 4                  - - -
 5   PLAINTIFF'S   DESCRIPTION          PAGE
 6   1     Email thread March 21, 2023    15
 7
 8   2     Email thread March 21, 2023    17
 9
10   3     Email 15 Jul 2023,            49
11         Bates DonCaroleo_000456-457
12
13
14         (REPORTER'S NOTE:  All quotations from
           exhibits are reflected in the manner
15         in which they were read into the
           record and do not necessarily denote
16         an exact quote from the document.)
17
18
19
20
21
22
23
24
25
```

Page 7

```
 1
 2   DEPOSITION SUPPORT INDEX
 3
 4   DIRECTION TO WITNESS NOT TO ANSWER
 5     Page  Line  Page  Line  Page  Line
 6      20   14    28    17    57    12
 7      23    2    28    23    71     4
 8      24    7    29     6    71    16
 9      24   21    29    20    71    21
10      25    4    29    25    72     2
11      25    9    30     5    72     9
12      25   15    30    10    72    15
13      25   22    30    16    72    20
14      27   21    30    25    73     3
15      28   13    53     9
16
17
18   REQUEST FOR PRODUCTION OF DOCUMENTS
19     Page  Line
20     - -none- -
21
22   STIPULATIONS
23     Page  Line
24      5    4
25
```

Page 8

```
 1
 2                  - - -
 3            10:13 a.m. EDT
 4                  - - -
 5         THE VIDEOGRAPHER:  We are now on
 6   the record.  This begins videotape
 7   number 1 in the deposition of Victor
 8   Caroleo in the matter of SiteOne
 9   Landscape Supply, LLC versus Nicholas
10   George, et al., in the United States
11   District Court, Eastern District of
12   New York, Case No. CV-02084.
13         Today is March 13, 2025, and the
14   time on the monitor is 10:13 a.m.
15         This deposition is being taken
16   at Farrell Fritz, P.C., Uniondale, New
17   York.
18         The videographer today is
19   Alejandro Gomez of Magna Legal
20   Services, and the court reporter today
21   is Marie Foley of Magna Legal
22   Services.
23         Will counsel and all parties
24   present state their appearances and
25   whom they represent.
```

Page 9

```
 1
 2         MR. GIBBS:  Good morning.  This
 3   is Evan Gibbs on behalf of SiteOne
 4   Landscape Supply, LLC.
 5         MR. MULRY:  Kevin Mulry from
 6   Farrell Fritz also for plaintiff
 7   SiteOne.
 8         MR. LABUDA:  Good morning.  Joe
 9   Labuda, Milman Labuda Law Group.
10         MR. MULE:  Michael Mule, Milman
11   Labuda Law Group.
12         And with us our client Don
13   Caroleo.
14         THE VIDEOGRAPHER:  Okay.  Thank
15   you.
16         Will the court reporter please
17   swear in the witness.
18         THE STENOGRAPHER:  If I could
19   ask you to raise your right hand,
20   please.
21         Do you swear or affirm the
22   testimony you give will be the truth,
23   the whole truth, and nothing but the
24   truth today?
25         THE WITNESS:  Yes, I do.
```



Page 10

1
2      THE STENOGRAPHER:  Thank you.
3      THE VIDEOGRAPHER:  Thank you.
4      Counsel may proceed.
5           - - -
6   VICTOR CAROLEO, the Witness herein,
7     having been first duly sworn by a
8     Notary Public in and of the State of
9     New York, was examined and testified
10    as follows:
11  EXAMINATION BY
12  MR. GIBBS:
13    Q.   Mr. Caroleo, if you would
14  please, start by stating your full name
15  for the record.
16    A.   Victor Caroleo.
17    Q.   And are you presently on any
18  kind of medications that could affect your
19  testimony today?
20    A.   I'm on memory medication and I'm
21  on diabetes.  I don't know how that plays
22  into it, but I'm on Aricept and a few
23  others that I don't remember.  I don't
24  think that will affect my -- I don't know.
25    Q.   But to the best of your

Page 11

1
2   knowledge, you're coherent and able to
3   answer my questions today?
4     A.   Yes, I am.
5     Q.   And if, for some reason, any of
6   your medication starts to make you feel,
7   you know, like it may affect your
8   testimony, just let me know at any point
9   in the deposition.
10    A.   Thank you.
11    Q.   We can take a break or do
12  whatever we need to do.
13    A.   Thanks.
14    Q.   Just a couple of ground rules
15  for the deposition today.
16         Make sure you let me finish my
17  question before you start to answer.  You
18  know, it's really easy in common
19  conversation --
20    A.   Sure.
21    Q.   -- you'll know where I'm going
22  with the question and you'll start to
23  answer --
24    A.   Right.
25         (Stenographer admonition on

Page 12

1
2   crosstalk.)
3   BY MR. GIBBS:
4     Q.   Exactly.
5          So before I finish or before you
6   start speaking, just make sure my question
7   is totally finished just so that we have a
8   clear record for the court reporter and
9   for the videographer.
10         Make sure to answer verbally,
11  that's another thing.  A lot of times we
12  use our hands, we may nod yes or no.  We
13  say uh-huh, uh-uh, but if you would, you
14  know, try to use yes, no, things like that
15  for affirmative answers, negative answers.
16  And I'll remind you throughout the
17  deposition, you know, if you start doing
18  any of that stuff, but I'll tell you at
19  the beginning just so that we're clear on
20  that.
21    A.   Got it.
22    Q.   And of course at any point today
23  if you don't understand any question that
24  I ask you, ask me to rephrase or just tell
25  me you don't understand.  I'm happy to

Page 13

1
2   repeat questions, rephrase them, whatever
3   you need.  I just want to make sure that,
4   you know, you and I are on the same page.
5          And today do you understand that
6   you've been placed under oath?
7     A.   Yes.
8     Q.   And do you understand that
9   giving testimony today is the same as if
10  you were giving testimony in live court
11  before a judge or a jury?
12    A.   I do now.
13    Q.   And did you do anything to
14  prepare for your deposition?
15    A.   No.
16    Q.   You didn't review any documents,
17  anything like that?
18    A.   No.
19    Q.   Did you speak with your lawyers?
20  And I don't want to know the substance of
21  any conversations you may have had with
22  your attorneys, but did you all meet to
23  talk about the deposition?
24    A.   Well, they gave me the times,
25  the dates, and where the place was, but no

MAGNA
LEGAL SERVICES

Page 14

1
2  conversation.
3      Q.   Was there anybody else, other
4  than your attorneys, your son Don, or
5  anyone else, did you talk about the
6  deposition, getting ready for the
7  deposition before today?
8      A.   No.
9      Q.   Before this particular lawsuit,
10  have you ever been involved in any other
11  litigation before?
12     A.   No.
13     Q.   Was there -- I've heard that
14  there was litigation involving Home Depot
15  and the Garden Department some time ago.
16         Do you recall that case?
17     A.   That's got to be a -- a long
18  time, like in the '80s.  And there was.
19     Q.   Do you remember in that
20  particular case, do you remember any of
21  your attorneys telling you that you were,
22  you or the company were required to
23  preserve documents for that particular
24  lawsuit?
25     A.   No.

Page 15

1
2      MR. LABUDA:  I'm just going to
3  object just on the attorney/client
4  privilege.  I mean, it seems like
5  it's -- we didn't represent him.
6      MR. GIBBS:  Yeah.
7      MR. LABUDA:  At that time.  I'm
8  not sure I was practicing law in the
9  '80s, but -- I wasn't.  But -- but I
10  would -- I'd still preserve that
11  attorney/client privilege.
12     MR. MULE:  Yeah, and just
13  direct, Vic, if there's -- and Evan
14  said he didn't want to get
15  conversations with lawyers.  So if
16  there's a conversation with a lawyer,
17  give us -- give us time to put in an
18  objection before you respond --
19     THE WITNESS:  Got it.
20     MR. MULE:  -- okay?
21     MR. GIBBS:  I'm going to hand
22  you a document that I'm marking as
23  Exhibit 1 to the deposition.
24     (Plaintiff's Exhibit 1, email
25  thread March 21, 2023, was marked for

Page 16

1
2      identification, as of this date.)
3  BY MR. GIBBS:
4      Q.   And if you would, just take a
5  minute and review that document.
6      MR. LABUDA:  Thanks.
7      And here's one for Don
8  (handing).
9  BY MR. GIBBS:
10     Q.   And please tell me once you've
11  had a chance to look it over.
12     MR. LABUDA:  Just we're going to
13  instruct you to read the document and
14  then let us know when you've finished
15  reading it.
16     We're going to take the same
17  opportunity.
18     THE WITNESS:  (Witness reads
19  document.)
20  BY MR. GIBBS:
21     Q.   And you've had a chance to
22  review the document?
23     A.   Yes.
24     Q.   Do you recall receiving this
25  particular email from me back on March

Page 17

1
2  21st of 2023?
3      A.   No.
4      Q.   If you look up at the top, there
5  is a part of the document says "To:" and
6  there's several email addresses.  One of
7  those is victorcaroleo@aol.com.
8          Do you see that one?
9      A.   Yes.
10     Q.   Is that your email address?
11     A.   It is.
12     Q.   Do you recall reading the
13  documents that were attached to this
14  email?
15     A.   No.
16     Q.   As of the date of this lawsuit,
17  March 21st, 2023, did you understand that
18  a lawsuit had been filed against you?
19     A.   Yes.
20     MR. GIBBS:  And I'm handing you
21  another document that I've marked as
22  Exhibit 2 to the deposition.
23     (Plaintiff's Exhibit 2, email
24  thread March 21, 2023, was marked for
25  identification, as of this date.)



Page 18

1
2        MR. GIBBS:  If you would just
3   take a moment and review that
4   document.
5        THE WITNESS:  (Witness reads
6   document.)
7        MR. GIBBS:  And let me know when
8   you've had a chance to review.
9        THE WITNESS:  (Witness reads
10  document.)
11       Got it.
12  BY MR. GIBBS:
13   Q.   Do you recall sending this
14  particular email to me back on March 21st
15  of 2023?
16   A.   This one I just read?
17   Q.   Correct.
18   A.   No.
19   Q.   Do you have any reason to doubt
20  that it was you that sent this particular
21  email?
22   A.   This is my email?
23   Q.   Well, we can -- actually, we'll
24  address that question.
25       So, at the very top of this

Page 19

1
2   document there's a "From:" line and it
3   says "Victor Caroleo."  Then it has the
4   email address victorcaroleo@aol.com.
5        Do you see that?
6        MR. MULE:  I'm going to just
7   object to the question.  If you're
8   going to get into the substance of
9   this email, this deposition is
10  concerning document preservation.
11       He did identify
12  victorcaroleoaol.com as his email
13  address.  So I don't know that there's
14  an issue as to that.
15  BY MR. GIBBS:
16   Q.   You can answer the question.
17       MR. LABUDA:  Well, let's -- I
18  mean, what's -- what was the question?
19       THE WITNESS:  That's what I was
20  going to say.
21  BY MR. GIBBS:
22   Q.   Sure.
23       So, look up, if you look at the
24  top of the document that I handed you,
25  there's a line that says "From: Victor

Page 20

1
2   Caroleo."  Then it has an email address
3   victorcaroleo@aol.com.
4        Do you see that?
5    A.   Yes.
6    Q.   And you testified earlier that's
7   your email address?
8    A.   Yes.
9    Q.   And my question for you is do
10  you have any reason to believe that it was
11  someone other than yourself that sent this
12  particular email from that email account?
13       MR. LABUDA:  Yeah, again, I
14  think I -- I'd object to it and direct
15  the witness not to answer.
16       I mean, the Court has -- the
17  Court made it pretty clear, Evan,
18  that, I mean, we're here for document
19  retention discovery, you know, which,
20  from my mind, has to do with -- with
21  the scope of what was retained, what,
22  if anything, was, you know, deleted,
23  but not about emails that he sent to
24  you.
25       MR. GIBBS:  Well, what this goes

Page 21

1
2   is to when he became aware of the
3   litigation, which goes to when did his
4   duty arise to preserve documents,
5   which is directly related to his
6   retention of documents which is the
7   subject of the Court's order.
8        MR. LABUDA:  Well, I'm not --
9   I'm not necessarily sure that that's,
10  you know, accurate.  I mean, I think
11  he -- he already answered the question
12  that as of March 21st he knew that
13  there was a lawsuit.  He said that.
14       MR. GIBBS:  But that's not my
15  question.
16       My question is whether or not he
17  has any reason to believe someone
18  other than himself sent an email from
19  this particular account.
20       This email was not produced in
21  discovery, and so whether or not this
22  document came from his email account,
23  whether or not he retained copies goes
24  directly to the reason that we're here
25  today.



Page 22

1
2          MR. LABUDA:  I'm -- I'm -- I'm
3   missing it.
4          MR. GIBBS:  Well, I'll tell you
5   I've explained the basis.  If you want
6   to instruct your client not to answer
7   the question, that's totally fine,
8   but -- and there will probably be
9   several places today where you're
10  going to want to do that.
11         MR. LABUDA:  Right.
12         MR. GIBBS:  And we can decide
13  later if we want to call the Court
14  today --
15         MR. LABUDA:  Right.
16         MR. GIBBS:  -- or if we want to
17  bring it up in motion practice, but
18  this to me is a pretty straightforward
19  question.  I don't have any other
20  questions.  I have one other question
21  about this email and -- and that's it,
22  but, you know.
23         MR. LABUDA:  But I just, I don't
24  see -- I see we're kind of deviating
25  from the Court's order.

Page 23

1
2          So I'm just going to instruct
3   you not to answer the question.
4          THE WITNESS:  Okay.
5          MR. GIBBS:  And I'll ask one
6   other question about this email so
7   it's in the record.
8   BY MR. GIBBS:
9       Q.   My other question is would you
10  have used your phone to send this
11  particular email?
12      A.   I don't remember if I sent it at
13  all.
14      Q.   You were initially represented
15  in this case by Mr. Saul Zabell; is that
16  right?
17      A.   Mm-hm, yes.
18      Q.   Do you remember approximately
19  the date that you hired or retained Mr.
20  Zabell?
21      A.   I don't.
22      Q.   And I'm not asking for the
23  substance of any communications, but did
24  Mr. Zabell ever tell you that you needed
25  to preserve documents and communications

Page 24

1
2   for purposes of this case?
3       A.   Not that I --
4          MR. LABUDA:  I'm going to
5   object.  We object, attorney/client
6   privileged communications.
7          So we're directing you not to
8   answer the question.
9   BY MR. GIBBS:
10      Q.   And my follow-up questions to
11  that.
12         MR. GIBBS:  And again give you
13  time to make your objections.
14         MR. LABUDA:  Sure.
15      Q.   But, was did you receive
16  instructions in writing from Mr. Zabell to
17  that effect; in other words, to preserve
18  and not destroy any documents or
19  communications?
20         MR. LABUDA:  Same objection.
21  We're going to direct you not to
22  answer; attorney/client privileged
23  communications.
24  BY MR. GIBBS:
25      Q.   Did Mr. Zabell ever tell you to

Page 25

1
2   save emails?
3          MR. LABUDA:  Same objection.
4          Don't answer.
5   BY MR. GIBBS:
6       Q.   Did he ever tell you to save
7   text messages?
8          MR. LABUDA:  Same objection.
9          Don't answer.
10  BY MR. GIBBS:
11      Q.   Did he ever tell you to save any
12  other types of documents or communications
13  for purposes of this case?
14         MR. LABUDA:  Same objection.
15         Don't answer.
16  BY MR. GIBBS:
17      Q.   And do you ever re -- do you
18  recall receiving a document from Mr.
19  Zabell titled or referred to as a
20  "Litigation Hold"?
21         MR. LABUDA:  Same objection.
22         Don't answer.
23  BY MR. GIBBS:
24      Q.   And whether or not it came from
25  Mr. Zabell or from some other source, did



Page 26

1
2  you understand at the beginning of this
3  lawsuit that you had an obligation to
4  preserve documents and communications that
5  are related to the case?
6        MR. LABUDA:  I'm going to
7  instruct the witness not to answer
8  with respect to any attorney/client
9  communications.
10       And I got to -- we got to take a
11  break for a quick second just to deal
12  with the -- the privilege issue 'cause
13  you're, kind of, expanding it outside
14  of Zabell, I think, and any attorney,
15  right?
16       MR. GIBBS:  Well, I can rephrase
17  the question.
18       MR. LABUDA:  Okay.
19       MR. GIBBS:  It will probably
20  make this easier.
21       MR. LABUDA:  All right.
22  BY MR. GIBBS:
23    Q.   Did anyone who's not an attorney
24  ever instruct or tell you that you should
25  or needed to preserve documents or

Page 27

1
2  communications that are related to this
3  lawsuit?
4        MR. LABUDA:  You can answer
5  that.
6    A.   No.
7    Q.   You later became represented by
8  the Rivkin Radler firm.  Is that correct?
9    A.   Yes.
10   Q.   Do you remember, just
11  approximately, the date that you retained
12  them to represent you in this case?
13   A.   I don't recall.
14   Q.   Did any attorney at the Rivkin
15  firm tell you that you needed to preserve
16  documents or communications for purposes
17  of this lawsuit?
18       MR. LABUDA:  Objection.  Same
19  objection; attorney/client privileged
20  communication.
21       Don't answer the question.
22       MR. GIBBS:  And if you won't --
23  if you want to say "same objection,"
24  totally fine.
25       MR. LABUDA:  I'll just say "same

Page 28

1
2  objection."
3        MR. GIBBS:  And we'll consider
4  it preserved.
5        MR. LABUDA:  That's fine.  I
6  figured it was a new firm, let me get
7  the whole thing in.
8        MR. GIBBS:  Got it.
9  BY MR. GIBBS:
10   Q.   Did any attorneys from that firm
11  ever tell you to save emails?
12       MR. LABUDA:  Objection.
13       Don't answer.
14  BY MR. GIBBS:
15   Q.   Text messages?
16       MR. LABUDA:  Same objection.
17       Don't answer.
18  BY MR. GIBBS:
19   Q.   Or did any lawyer at that firm
20  tell you to save any other documents or
21  communications for purposes of the case?
22       MR. LABUDA:  Same objection.
23       Don't answer.
24  BY MR. GIBBS:
25   Q.   And do you recall ever receiving

Page 29

1
2  a document from anyone at the Rivkin firm
3  titled or referred to as a "Litigation
4  Hold"?
5        MR. LABUDA:  Same objection.
6        Don't answer.
7  BY MR. GIBBS:
8    Q.   And you later became represented
9  by the Milman Labuda firm?
10   A.   That's correct.
11   Q.   Do you remember approximately
12  what date they became your attorneys of
13  record?
14   A.   I don't.
15   Q.   Did any attorney at the Milman
16  Labuda firm ever tell you that you needed
17  to preserve documents or communications
18  for purposes of the case?
19       MR. LABUDA:  Same objection.
20       Don't answer.
21  BY MR. GIBBS:
22   Q.   Did anyone at the Milman Labuda
23  firm ever tell you to save emails?
24       MR. LABUDA:  Same objection.
25       Don't answer.



Page 30

1
2   BY MR. GIBBS:
3       Q.   Or text messages?
4           MR. LABUDA:  Same objection.
5           Don't answer.
6   BY MR. GIBBS:
7       Q.   Or any other documents or
8   communications for purposes of the case?
9           MR. LABUDA:  Same objection.
10          Don't answer.
11  BY MR. GIBBS:
12      Q.   Did you ever receive a document
13  from the Milman Labuda firm titled or
14  referred to as a "Litigation Hold"?
15          MR. LABUDA:  Same objection.
16          Don't answer.
17  BY MR. GIBBS:
18      Q.   And we've gone through three
19  specific law firms, but I'll ask a more
20  general question now.
21          Since March 21st, 2023, has any
22  other attorney ever instructed you not to
23  delete emails or text messages?
24          MR. LABUDA:  Same objection.
25          Don't answer.

Page 31

1
2   BY MR. GIBBS:
3       Q.   Did your son Don ever tell you
4   that you should save text messages?
5           MR. LABUDA:  You can answer.
6           THE WITNESS:  Okay.
7       A.   No.
8       Q.   What about emails, did he tell
9   you you should save emails?
10      A.   No.
11      Q.   Did he tell you you should save
12  any other types of documents for the case?
13      A.   No.
14      Q.   And since this case was filed,
15  have you ever discussed preserving
16  communications or documents at all with
17  Don?
18      A.   No.
19      Q.   And what about Nick Giordano,
20  did he ever tell you that you should save
21  text messages or emails?
22      A.   No.
23      Q.   And did Nick ever tell you that
24  you should preserve any other types of
25  documents for this case?

Page 32

1
2       A.   No.
3       Q.   And your current cell phone, was
4   it searched for text messages as part of
5   discovery in this case?
6       A.   I don't recall.
7       Q.   Other than for purposes of this
8   lawsuit, has your phone ever been searched
9   by anyone else to recover text messages or
10  emails from the device?
11      A.   Not that I recall.
12      Q.   Did anybody make a copy of the
13  data that's on your phone for purposes of
14  this lawsuit?
15      A.   Not that I recall.
16      Q.   Did anyone, other than yourself
17  obviously, search your phone for text
18  messages or emails that are relevant to
19  this case?
20      A.   No.
21      Q.   From October 1st of 2022 through
22  the present, how many cellphones have you
23  had?
24      A.   One.
25      Q.   And is it the current -- the

Page 33

1
2   cell phone that you currently have?
3       A.   Correct.
4       Q.   What about tablets, iPads,
5   anything like that?
6       A.   I don't operate with a tablet.
7       Q.   Do you own one?
8       A.   No.
9       Q.   What about laptops, do you have
10  any laptop computers that you use?
11      A.   I've never used it, but I do own
12  a laptop.
13      Q.   And for the laptop, your
14  testimony is that you -- you've never used
15  the laptop?
16      A.   I never use it for business or
17  anything personal.
18      Q.   For the cell phone that you
19  have, what is the phone number?
20      A.   (631) 484-3535.
21      Q.   How long have you had that phone
22  number?
23      A.   I can't give an exact date, but
24  it's a long time.
25      Q.   Would you say ten years?



Page 34

```
1
2        A.   I'm good with ten years.
3        Q.   Okay.
4            What -- what brand of phone do
5   you have?  What -- what make is the phone?
6        A.   It's an Apple.
7        Q.   iPhone?
8        A.   Yes.
9        Q.   Do you know the model of the
10  phone, like iPhone 14?
11       A.   No.
12       Q.   Who is your wireless carrier for
13  that phone?
14       A.   Verizon.
15       Q.   How long have you used that
16  particular carrier?
17       A.   Ten years.
18       Q.   Other than this current cell
19  phone, and begin focusing on the time
20  period of October 1st, 2022 through today,
21  have you had any other phones either
22  issued to you or that -- that you've had
23  that you've used personally?  For example,
24  a company-issued device, have you had
25  anything like that?
```

Page 35

```
1
2        A.   I don't know if I understand
3   your question, but I think I could answer
4   it by saying this.
5            This phone broke somewhere along
6   the line, I don't remember what year, and
7   I got it replaced.  Maybe that happened in
8   the last two years.
9        Q.   Was the phone replaced through
10  Verizon?
11       A.   Yes.
12       Q.   Was the phone replaced after
13  this lawsuit was filed, so after March
14  21st of 2023?
15       A.   Yes.
16       Q.   Did they transfer the data from
17  your old phone to the new phone when you
18  got the new one?
19       A.   You know, I'm not too technical,
20  but I gave it to the guy at Verizon, I
21  says, you know, make sure this is the same
22  phone as I have now.  So he did whatever
23  he had to do.
24       Q.   When you turned on, if you
25  recall, when you turned on the new phone
```

Page 36

```
1
2   that you got, did you see your old
3   messages and contacts and things like that
4   on the new phone?
5        A.   I never went and observed that.
6   I was just interested that I had my apps.
7        Q.   What happened to your old phone
8   that caused it to break?  Was it a drop?
9        A.   You know, I -- I suffer with
10  memory problems.  That's why I'm on that
11  heavy medication, so I can't remember
12  exactly.  But if I took a guess, I think I
13  got water in it, as I remember.
14       Q.   And the old phone, do you still
15  have that phone, or did you trade it in to
16  Verizon?
17       A.   You know, again with the memory
18  problems I'm going to say I traded it in,
19  but I don't recall.
20       Q.   Do you have an iCloud account?
21       A.   I've never used it, to my
22  recollection.
23       Q.   Does your iPhone back up to your
24  iCloud account?
25       A.   I have no idea.
```

Page 37

```
1
2        Q.   Other than the phone that you
3   have currently, have you used any other
4   electronic devices to communicate with
5   others since October of 2022 through the
6   present?
7        A.   No.
8        Q.   We talked earlier about your
9   victorcaroleo@aol.com email address.
10           Do you also have an email
11  address with Scapes Supply?
12       A.   I never use it, but I do have
13  one.
14       Q.   And is that
15  victor@scapessupply.com?
16       A.   I believe so.
17       Q.   Have you ever checked that email
18  account?
19       A.   Never.
20       Q.   The victorcaroleo email account,
21  how long have you had that particular
22  account?
23       A.   I've got to say it's over ten
24  years.
25       Q.   What do you use the personal
```

MAGNA
LEGAL SERVICES

Page 38

1
2   email account for?  Is it personal and
3   business or just one or the other?
4       A.   The personal email account I
5   use -- I don't do much business on my
6   personal email.  I do my personal stuff on
7   my personal email, so not business.
8       Q.   What about where do you do your
9   business emails?
10      A.   I really don't.  You know, at my
11  age, I just barely know how to work the
12  email.
13      Q.   On your AOL email account, are
14  you the only one who has access to that
15  account?
16      A.   I can't answer that for sure.
17      Q.   Have you ever used the AOL email
18  account for any type of Scapes Supply
19  business?
20      A.   Not that I recall.
21      Q.   Since the lawsuit has been filed
22  in March of 2023, how many emails would
23  you estimate that have been sent and
24  received from the AOL account?
25      A.   I wouldn't have a clue.

Page 39

1
2           MR. MULE:  Can we take a
3   five-minute break?
4           MR. LABUDA:  Sure.
5           MR. GIBBS:  Sure.
6           THE VIDEOGRAPHER:  We are going
7   off the record.
8           The time is 10:40.
9           (Recess taken.)
10          THE VIDEOGRAPHER:  We are going
11  back on the record.
12          The time is 10:53.
13          MR. LABUDA:  All right.
14          The witness -- if we could, the
15  witness wanted to clarify a couple
16  answers that he gave to a few
17  questions.
18          MR. GIBBS:  Certainly.
19          MR. LABUDA:  Okay.
20          Mr. Caroleo, with respect to the
21  timing of the replacement, of the
22  timing of when your old phone broke,
23  do you have a -- do you have a
24  recollection of when that was?
25          THE WITNESS:  I don't have a

Page 40

1
2   recollection.
3           MR. LABUDA:  Do you know whether
4   or not it was before or after the
5   litigation here began?
6           THE WITNESS:  I don't have a
7   recollection.
8           MR. LABUDA:  Okay.
9           Second one, with respect to
10  the -- you were asked questions about
11  reviewing text messages, and I think
12  your answer was that you reviewed text
13  messages.
14          Do you know whether or not your
15  lawyers reviewed your text messages in
16  relation to this litigation?
17          THE WITNESS:  My lawyers did
18  review those text messages.
19          MR. LABUDA:  Okay.
20  BY MR. GIBBS:
21      Q.   Did not?
22      A.   They did.
23      Q.   Did review text messages.
24          And which attorneys are you
25  referring to --

Page 41

1
2       A.   These --
3       Q.   -- in particular?
4       A.   These gentlemen here.
5       Q.   And do you know if anyone at
6   the -- any of the -- either of the prior
7   law firms that represented you, they
8   reviewed your text messages as well?
9       A.   That I don't recall.
10      Q.   And I did, speaking of not
11  recalling, I did want to go back just
12  really quickly before I forget.
13          You mentioned at the beginning
14  of the deposition that you were taking a
15  memory medication, and I just wanted to
16  ask you a little more specifically how
17  does -- how does that medication affect
18  your memory?
19      A.   Well, I was in a coma in 2004.
20  When I came out, I had severe memory
21  problems.  As I got older, they
22  progressed.  Went to a Florida doctor,
23  spent two years with him, and he said you
24  definitely have memory problems, and he
25  put me on Aricept and two other



Page 42

```
 1
 2   medications which I don't recall the name,
 3   and with them at least I could have a -- a
 4   fair chance of trying to remember
 5   something 'cause if I don't take them, I
 6   remember nothing.
 7       Q.   When did you begin taking those
 8   medications?
 9       A.   I started about, as -- as I
10   recall, ten years ago.
11       Q.   And --
12       A.   I want -- I want to strike that.
13            I started right after the coma.
14   I realized I had severe -- so that was
15   2004.  So I've been taking them that long.
16       Q.   Was there any particular
17   condition or diagnosis that you received
18   for those medications?
19       A.   It was a diagnosis.  He wants to
20   take more tests, and I don't recall his
21   diagnosis completely that I could say what
22   it was, but he told me I have -- you do --
23   you definitely have severe memory loss.
24       Q.   With respect -- before -- I'll
25   take a step back.
```

Page 43

```
 1
 2            Before our break, we were
 3   talking about your personal email account
 4   which is the victorcaroleo@aol.com.  I
 5   want to ask you a few more questions about
 6   that.
 7            Have you communicated with Nick
 8   Giordano via that email account at any
 9   point?
10       A.   No.
11       Q.   Was that particular email
12   account searched as part of the discovery
13   process in this case?
14       A.   I don't know.
15       Q.   Do you recall turning over
16   access of the account to any of your
17   attorneys?
18       A.   I don't recall.
19       Q.   Since this case was filed, have
20   you deleted any emails from that
21   particular email account?
22       A.   I'm sure I deleted stuff.  It's
23   my common practice.
24       Q.   And talking just about emails,
25   you mean it's a common practice for you to
```

Page 44

```
 1
 2   delete emails --
 3       A.   Correct.
 4       Q.   -- in that account?
 5            How often do you delete emails?
 6       A.   Basically every time I get
 7   something it gets deleted, and the reason
 8   for that is I'm having this memory problem
 9   and it -- I get overwhelmed when I have a
10   lot of emails to go through.  So I -- once
11   I go through them, I delete them.
12       Q.   Do you know if your email
13   account retains deleted emails for any
14   period of time?
15       A.   You know, if the -- if it does,
16   they get deleted too.
17       Q.   So you double delete?  You do
18   a --
19       A.   Correct.
20       Q.   You delete the deleted?
21       A.   And this is a practice I've been
22   dealing with for years, but as the memory
23   problem became worse, like the memory
24   doctor said do whatever you can do to keep
25   your memory sharp as you can, and I do
```

Page 45

```
 1
 2   everything I could do to keep it as sharp
 3   as I can.
 4       Q.   And on the AOL email account, do
 5   you check that email account from your
 6   phone?
 7       A.   Yes.
 8       Q.   And turning to the Scapes Supply
 9   email account, do you know what platform
10   that account uses?  Is it a Gmail or an
11   Outlook type account?
12       A.   I have no idea.
13            Like I said, I don't use it.
14       Q.   Do you know if a litigation hold
15   was turned on for that particular email
16   account?
17            MR. MULE:  I'm going to object.
18   BY MR. GIBBS:
19       Q.   And the -- the question is just
20   do you know, not did an attorney instruct
21   you to do so.  It's just do you know if a
22   litigation hold was placed on that
23   account?
24            MR. LABUDA:  Yeah, I mean, I
25        think we're objecting.
```

MAGNA
LEGAL SERVICES

Page 46

1
2      I mean, can you clarify that in
3  terms of what you mean by "a
4  litigation hold on the account"?
5      MR. GIBBS:  I don't think I
6  can -- I don't really want to clarify
7  any further than that.  I just --
8  that's -- that's the question pending.
9  BY MR. GIBBS:
10     Q.   Do you -- are you aware if a
11 litigation hold has ever been placed on
12 that particular email account?
13     MR. LABUDA:  I mean, we're going
14     to object to that.  I guess we'd just
15     object and -- 'cause it seems like
16     it's leading to attorney/client
17     privileged communications.
18 BY MR. GIBBS:
19     Q.   And I don't want to know about
20 any attorney/client privileged
21 communications.
22     My question is only do you know
23 if that account has been placed on a
24 litigation hold?
25     MR. LABUDA:  You could answer

Page 47

1
2  the question inasmuch as you not
3  disclosing any attorney/client
4  privileged communications if you can
5  answer that question.
6      If you want clarity, we'd have
7  to take a break for a second, but
8  it's -- it's up to you.
9      A.   Can you repeat that question one
10 more time?
11     Q.   Do you know if that particular
12 email account has a litigation hold placed
13 on it?
14     A.   I don't know.
15     Q.   And the Scapes Supply email
16 account, can you access that one from your
17 phone?
18     A.   No.  At least I don't know how.
19     Q.   When was the Scapes Supply email
20 account for you set up?
21     A.   Somewhere in the beginning when
22 the corporation was formed.
23     Q.   So that would have been in 2023?
24     A.   2023.  I don't know about that.
25     Q.   I'll represent that the company

Page 48

1
2  was formed in April/May of 2023.
3      Does that sound approximately
4  about the time period when the email
5  account was created?
6      A.   I'm going to just say I don't
7  know.
8      Q.   And it's your testimony today
9  that you've never checked the Scapes
10 Supply account?
11     A.   That is correct.
12     Q.   Was that email account searched
13 as part of the discovery process in this
14 case?
15     A.   Can you say that again?
16     Q.   Sure.
17     That email account, the Scapes
18 Supply email account, was that searched as
19 part of the discovery process in this
20 case?
21     A.   I'm not aware.
22     Q.   Since this lawsuit was filed,
23 have you ever used anybody else's email
24 account to send emails?
25     A.   No.

Page 49

1
2      MR. GIBBS:  Mr. Caroleo, I'm
3      handing you an email dated July 15th,
4      2023, which I've marked as Exhibit 3
5      to the deposition.
6      (Plaintiff's Exhibit 3, email 15
7      Jul 2023, Bates DonCaroleo_000456-457,
8      was marked for identification, as of
9      this date.)
10 BY MR. GIBBS:
11     Q.   If you would, just take a moment
12 and review that email.
13     A.   So this is my email, is that
14 what this is?
15     Q.   Well, we can talk about it in
16 just a second, but just take a moment to
17 review and just let me know when you're
18 finished and we'll walk through it.
19     A.   (Witness reads document.)
20     MR. MULE:  Could we take a --
21     take a break?
22     MR. LABUDA:  Sure.
23     MR. GIBBS:  Well, there's a --
24     there's a --
25     MR. MULE:  I mean, there's no



13  (Pages 46 to 49)

Page 50

1
2  question present that was asked.
3      MR. GIBBS:  Well, we just
4  introduced an exhibit.
5      No, I'm not agreeable to -- I'm
6  not agreeable.
7      MR. MULE:  Well, it's --
8      MR. GIBBS:  We just took a break
9  five minutes ago.  I mean, we just got
10  back on the record.
11      MR. LABUDA:  Yeah.
12      MR. MULE:  Well --
13      MR. LABUDA:  I mean, if you want
14  to take a break, we can take a break
15  if there's not a question pending.
16      MR. MULE:  There's not a
17  question pending.
18      MR. GIBBS:  Well, then I will
19  make my objection on the record.  This
20  is -- this is an email that was
21  produced in discovery.  We're going to
22  ask questions about it.
23      And I'm objecting to a break
24  after we just came back for five
25  minutes.

Page 51

1
2      MR. LABUDA:  Yeah, but, all
3  right.
4      I mean, it seems like, I mean, I
5  haven't had a chance to look at this
6  thing, but it looks like it's -- this
7  is kind of beyond the scope of what
8  the deposition's supposed to be about.
9      MR. GIBBS:  This goes to -- this
10  goes -- this -- my questions -- my
11  question will go directly to the
12  retention of documents, which of
13  course is the basis for the
14  deposition.
15      MR. LABUDA:  Okay.  Well, let's
16  take a break for a second.
17      MR. GIBBS:  Noted on the record
18  that this is over counsel's objection.
19      THE VIDEOGRAPHER:  We are going
20  off the record.
21      The time is 11:03.
22      (Recess taken.)
23      THE VIDEOGRAPHER:  We are going
24  back on the record.
25      The time is 11:11.

Page 52

1
2  BY MR. GIBBS:
3      Q.   Mr. Caroleo, before you took
4  your break, I handed you a document that
5  was marked as Exhibit 3.
6      Have you had a chance to review
7  that document now?
8      A.   Yes, I did.
9      Q.   And do you see at the top of
10  this particular document that -- and, I'm
11  sorry.  Go three lines down in the email
12  where it starts with "On or about January
13  15, 2023, I Vic Caroleo."
14      Do you see that?
15      A.   Yes.
16      Q.   Are you the one that authored
17  this email?
18      MR. LABUDA:  So, we're -- we're
19  just going to object.  I mean, I think
20  this is getting into the substance of
21  the case, Evan.
22      So, you know, the purpose for
23  this deposition is to deal with
24  document retention discovery.  You --
25  you clearly had this document, it's

Page 53

1
2  Bates stamped as such.  It's been
3  retained and, you know, this is not an
4  opportunity to conduct, you know,
5  litigation discovery in the case.
6  It's a very limited scope of document
7  retention discovery, and you have the
8  document.
9      So it's -- I think beyond that,
10  we're going to instruct the witness
11  not to answer because it's beyond the
12  scope of the deposition.
13      MR. GIBBS:  Well --
14      MR. LABUDA:  As ordered by the
15  court.
16      MR. GIBBS:  Well, the problem
17  with that is that Mr. Caroleo said
18  he's never used anyone else's email to
19  send an email.  This seems to suggest
20  otherwise, and which suggests he has
21  access to other people's email
22  accounts which he is conducting
23  business through.  And so whether or
24  not he accessed, used, deleted other
25  email accounts is directly relevant to



14  (Pages 50 to 53)

Page 54

1
2   why we're here.
3       MR. MULE:  I'm just -- you know,
4   I believe the question before, I could
5   be wrong, was whether anyone else used
6   his email.  So I think it was a
7   different question.
8       But be that as, you know, as it
9   may, I don't -- I don't --
10      MR. GIBBS:  I'm going to ask the
11  court reporter to read the question
12  back.
13      MR. LABUDA:  I believe -- I
14  believe Evan asked the question
15  whether or not he used other email
16  addresses.
17      MR. MULE:  Okay.
18      MR. LABUDA:  Or something along
19  those lines.  It's my recollection.
20      MR. GIBBS:  Yeah.
21      Could you re-read that question
22  for us, please, Madam Court Reporter?
23      THE STENOGRAPHER:  What am I
24  looking for?
25      MR. GIBBS:  It's the question

Page 55

1
2   that I asked just before the break was
3   taken with respect to Mr. Caroleo
4   using anyone else's email account to
5   send emails.
6       (The requested portion of the
7   record was read back by the court
8   reporter.)
9       MR. LABUDA:  Yeah, I -- I still
10  don't think -- I mean, it still
11  doesn't substantively change, you
12  know, our position which is that, you
13  know, we're here to, you know, focus
14  on, you know, what was retained, what,
15  if anything, was deleted.
16      In terms of the use of another
17  email or whatever, it -- the document
18  speaks for itself, I mean, so,
19  whatever it is.
20      But I think it's -- it's really
21  more -- more appropriate to ask those
22  questions during the, let's say,
23  second round of the Vic deposition
24  which will take place when -- whenever
25  the Court allows both parties to do,

Page 56

1
2   you know, litigation discovery as
3   opposed to this narrow issue.
4       But, I mean, we're -- we're here
5   to answer questions about the document
6   retention.
7       MR. GIBBS:  But he has -- he has
8   access to another email account.
9       How -- how -- how is him being
10  able to access another email account,
11  how is that not relevant to whether or
12  not he retained or deleted emails from
13  that email account?
14      MR. LABUDA:  Yeah, but you're --
15  but it's like he -- he said that --
16  he's already said that there are -- he
17  said -- you asked him questions about
18  whether or not he's deleted emails
19  before, and I think he said, "I'm --
20  I'm sure I have deleted emails
21  before."  That's his general practice.
22      So I'm not sure how this, like,
23  moves the ball forward with respect to
24  that.  Clearly this one was not
25  deleted because it's here, so.

Page 57

1
2       I mean, I -- I really think
3   you're just, you're getting into the
4   substance of -- of some of the issues
5   in the case, and it's -- it's really
6   a -- you know, it's -- it's a clear
7   deviation from the Court's order, and
8   you're trying to do an end-around in
9   terms of trying to do the litigation
10  discovery during this narrow
11  deposition focus.
12      So with respect to this, we're
13  going to direct him not to answer the
14  questions with -- with respect to
15  Exhibit 3.
16      MR. GIBBS:  That's fine.
17      We'll call the Court about
18  this --
19      MR. LABUDA:  Okay.
20      MR. GIBBS:  -- in just a few.
21      MR. LABUDA:  Yeah.
22      MR. GIBBS:  I think though it's
23  probably more productive to move on
24  into other areas of questioning, so
25  that if there are other issues we need



Page 58

```
1
2        to ask the Court about, we can just do
3    it all at once.
4            MR. LABUDA:  Sure.  Yeah, that's
5    fine.
6            MR. GIBBS:  So I've got these--
7            MR. LABUDA:  We can table -- we
8    can table --
9            MR. GIBBS:  We've got those
10    flagged for the call.
11            MR. LABUDA:  Okay.
12    BY MR. GIBBS:
13       Q.   Since this lawsuit was filed,
14    Mr. Caroleo, have you ever emailed anyone
15    about Narrow Way Realty, Limited?
16       A.   Not that I recall.
17       Q.   What about Narrow Way 2, LLC?
18       A.   Not that I recall.
19       Q.   What about the Yaphank Middle
20    Island Road property?
21       A.   Not that I recall.
22       Q.   What about the Long Island
23    Avenue property?
24       A.   Can you just say the question
25    one more time?
```

Page 59

```
1
2       Q.   Sure.
3            Since the lawsuit has been
4    filed, have you ever emailed anyone about
5    the Long Island Avenue property?
6       A.   No.
7       Q.   What about the Horseblock Road
8    property?
9       A.   No.
10       Q.   And your attorneys represented
11    in this case that you have a practice of
12    regularly deleting text messages, and you
13    talked about that earlier.
14            And with respect to deleting
15    emails, have you stopped the practice of
16    deleting emails?
17       A.   Yes, in the last few weeks.
18       Q.   Approximately when would you say
19    you started that?
20       A.   Maybe in the last four weeks.
21       Q.   Do you communicate using text
22    messages on a regular basis?
23       A.   Well, I'd rather call people
24    than use a text message.
25       Q.   Do you use text messages
```

Page 60

```
1
2    regularly?
3       A.   You know, text message wasn't
4    something that I grew up.  So for me it's
5    easier that I call somebody.
6            But do I use text messages?
7    Yes, I do.
8       Q.   How often would you say that you
9    receive and send text messages?
10       A.   I would be guessing.  I don't
11    know.
12       Q.   Would you say is it fair to say
13    daily you receive and send text messages?
14       A.   Yes.
15       Q.   Is it fair to say you send and
16    receive text messages multiple times a
17    day?
18       A.   Yes.
19       Q.   Have you ever sent or received
20    any text messages about business for
21    Scapes Supply?
22       A.   Send and receive text messages
23    about Scapes Supplies?
24       Q.   Sure.  And, yeah, we'll take
25    that -- we'll break that into two parts.
```

Page 61

```
1
2            Have you ever sent any text
3    messages about business for Scapes Supply?
4            MR. MULE:  We're going to --
5            MR. LABUDA:  Just objection.
6    You know, I believe that the Court's
7    order, you know, was really in terms
8    of focused on communications between
9    Don and Vic for -- for this.  I mean,
10    you're going a bit beyond that.
11            MR. GIBBS:  I think we should
12    probably just go ahead and call the
13    Court 'cause that's -- that -- that --
14    that's absolutely not what the Court
15    said.  He said document retention.  He
16    didn't say all -- you'll only talk
17    about documents between the three
18    defendants.  Because, I mean, a lot of
19    my questions are going to get into
20    these types of questions.
21            MR. LABUDA:  Right.
22            MR. GIBBS:  So.
23            MR. LABUDA:  Yeah, I mean, there
24    was a, you know -- and -- and I was
25    giving you a -- a lot of leeway in
```



Page 62

1
2    terms of that stuff, but my -- my
3    recollection was that, you know, it
4    was really supposed to be limited to
5    questions about Don and Vic.
6            MR. GIBBS:  I think it's -- we
7    can go ahead and we'll call the Court.
8    I think that's probably best.
9            MR. LABUDA:  Yeah, let me
10    just --
11            MR. GIBBS:  We can take a
12    recess.
13            THE VIDEOGRAPHER:  Okay.  We are
14    going off the record.
15            The time is 11:20.
16            (Recess taken.)
17            THE VIDEOGRAPHER:  We are going
18    back on the record.
19            The time is 11:21.
20    BY MR. GIBBS:
21    Q.    And have you ever sent text
22    messages about business for Scapes Supply?
23    A.    I don't remember.
24    Q.    Have you ever received text
25    messages about Scapes Supply?

Page 63

1
2    A.    I don't remember.
3    Q.    Have you ever exchanged text
4    messages with any Scapes Supply customers?
5    A.    I don't remember.
6    Q.    What about any suppliers or
7    vendors for Scapes Supply?
8    A.    I don't recall.
9    Q.    What about any employees of
10    Scapes Supply?
11    A.    I don't recall.
12    Q.    And have you ever sent any
13    business solicitations or anything like
14    that via text to customers or prospective
15    customers?
16    A.    I don't recall.
17    Q.    Have you ever texted with
18    anybody about Narrow Way Realty, Limited?
19    A.    I don't recall.
20    Q.    Same question with respect to
21    Narrow Way 2, LLC.
22    A.    I don't recall.
23    Q.    Same question with respect to
24    the Yaphank Middle Island Road property.
25    A.    I don't recall.

Page 64

1
2    Q.    Same question with respect to
3    the Long Island Avenue property.
4    A.    I don't recall.
5    Q.    And same question with respect
6    to the Horseblock Road property.
7    A.    I don't recall.
8    Q.    Do you send and receive text
9    messages with your son Don?
10    A.    I do.
11    Q.    And just talking about from the
12    beginning of the lawsuit to currently,
13    just in general how frequently would you
14    say that you text with your son Don?
15    A.    Once a week, twice a week.
16    Q.    And just generally speaking, I'm
17    not trying to get into your personal
18    private business, but generally what do
19    you guys talk about in text messages?
20    A.    You know, my grandson's becoming
21    a baseball -- pretty good at it, and I'll
22    ask him how he's doing.  So let's call
23    these things that we have on the phone
24    family-related questions: when's the
25    birthday party, what time.

Page 65

1
2    Q.    And any of those text messages,
3    do you save those, or do you delete those
4    as well?
5    A.    I delete them.
6    Q.    Since October of 2024, have you
7    deleted any text messages from Don, to or
8    from Don?
9    A.    Yes, I'm sure 'cause that's my
10    practice.
11    Q.    And since the beginning of the
12    lawsuit to the present, have you ever sent
13    or received any texts from Nick Giordano?
14    A.    I might have received some texts
15    from Nick.
16    Q.    How frequently would you say
17    that you exchange text messages with Nick?
18    A.    Three times a week.
19    Q.    And what types of things do you
20    typically discuss in text messages?
21    A.    What was the years you said?
22    Q.    From the beginning of the
23    lawsuit to the present.  So that would be
24    March 21st, 2023 through today.
25            THE WITNESS:  So I have a

MAGNA ▶
LEGAL SERVICES

Page 66

1
2      question for you.
3          MR. LABUDA:  Well, there's a
4      question pending.  You can answer the
5      question and then we'd have to take a
6      break unless -- unless your -- there's
7      an issue about --
8          MR. MULE:  Do you have a
9      question about privilege?
10          MR. LABUDA:  -- communication
11      that we've had.
12          But you can -- I think the
13      question was whether or not you've had
14      conversations --
15          MR. GIBBS:  Texts.
16          MR. LABUDA:  What are the
17      substance of the conversations.
18  BY MR. GIBBS:
19      Q.   What are the substances of the
20  text messages between you and Nick,
21  generally?
22          MR. MULE:  From March of '23,
23      right?
24          MR. GIBBS:  Correct.
25          THE WITNESS:  My problem is the

Page 67

1
2      dates that he's using.
3          MR. LABUDA:  Well, he's saying
4      March of, so it's for the last two
5      years.
6  BY MR. GIBBS:
7      Q.   Since Scapes Supply has been in
8  operation.  Maybe that makes it easier.
9  Since Scapes Supply has been operating,
10  what are the topics of the text messages
11  between you and Nick?
12      A.   It would be business related.
13      Q.   Have you saved any of those text
14  messages?
15      A.   No.
16      Q.   When was the last time that you
17  exchanged text messages with Nick?
18      A.   I'm sure yesterday.
19      Q.   Have you retained those text
20  messages?
21      A.   I'm sure I did.
22      Q.   Since October of 2024, have you
23  deleted any text messages between you and
24  Nick?
25      A.   October what?

Page 68

1
2      Q.   2024.
3      A.   October '24.
4          Yes.
5      Q.   Do you have an estimate of how
6  many messages you deleted between you and
7  Nick?
8      A.   I don't.
9      Q.   When was the last time that you
10  deleted a text message to or from Nick?
11      A.   I don't recall.
12      Q.   Since this lawsuit was filed, or
13  to make it easier, since Scapes Supply was
14  opened for business in 2023, have you ever
15  backed up your cell phone?
16      A.   No.
17      Q.   And a slightly different way of
18  asking the question.
19          During that same time period,
20  since Scapes Supply opened, have you ever
21  had a third party back up your cell phone?
22      A.   No.
23      Q.   Have you personally made any
24  efforts to recover any deleted text
25  messages as part of this case?

Page 69

1
2      A.   No.
3      Q.   And we discussed, we talked
4  around this, I think, earlier, but just
5  for a clear record, are you aware of any
6  alternative sources for which your deleted
7  text messages could be retrieved?
8      A.   I'm not aware of any.
9          MR. GIBBS:  I think Kevin and I
10      will take a break and discuss, but I
11      think except for the issue that we
12      need to call the Court about, I think
13      those would probably be most of the
14      questions.
15          MR. LABUDA:  Okay.
16          MR. LABUDA:  So we'll take a
17      break for just a few minutes and we'll
18      come back.
19          MR. LABUDA:  Sure, that's fine.
20          THE VIDEOGRAPHER:  We are going
21      off the record.
22          The time is 11:29.
23          (Recess taken.)
24          THE VIDEOGRAPHER:  We are going
25      back on the record.

Page 70

1
2          The time is 11:53.
3    BY MR. GIBBS:
4       Q.   And earlier in the deposition,
5    Mr. Caroleo, we asked you a few questions,
6    or I presented you with an email that we
7    marked as Exhibit 3 to the deposition.
8    Your attorneys objected to questions about
9    that email.
10         We've tried to call the Court at
11   this point.  The Court is unavailable.
12   And so, to preserve the record, I'm going
13   to go through and ask you the questions
14   that I have about this particular email,
15   and then your attorneys, I believe, are
16   going to make objections.  We're just
17   making sure that we have a clear record
18   here.
19         With respect to the document
20   that I marked as Exhibit 3, my first
21   question was going to be for you to tell
22   me generally about this email and what you
23   recall about this email.
24         MR. LABUDA:  All right.  We're
25   going to object; beyond the scope of

Page 71

1
2    the Court orders for this deposition
3    for this case.
4          So I'm going to instruct you not
5    to answer.
6          And I'm just going to say same
7    objection, not answer next time.
8    BY MR. GIBBS:
9       Q.   Who is -- down towards the
10   bottom of the page there's a sentence that
11   says:  But for timing purposes, we are
12   willing to settle with Annette and the
13   town.
14         Who is Annette?
15         MR. LABUDA:  Same objection.
16         Don't answer.
17   BY MR. GIBBS:
18      Q.   Have you ever exchanged emails
19   with Annette?
20         MR. LABUDA:  Same objection.
21         Don't answer.
22   BY MR. GIBBS:
23      Q.   Did you receive any responses to
24   this particular email?
25         MR. LABUDA:  Same objection.

Page 72

1
2          Don't answer.
3    BY MR. GIBBS:
4       Q.   Did you ever communicate with
5    Dominic Thorne, which is the person this
6    email was directed to, did you communicate
7    with him via any other method?
8          MR. LABUDA:  Same objection.
9          Don't answer.
10   BY MR. GIBBS:
11      Q.   And have you otherwise
12   communicated with anybody else with
13   Suffolk County?
14         MR. LABUDA:  Same objection.
15         Don't answer.
16   BY MR. GIBBS:
17      Q.   Same question for the Town of
18   Brookhaven.
19         MR. LABUDA:  Same objection.
20         Don't answer.
21   BY MR. GIBBS:
22      Q.   And did you also produce a copy
23   of this email from your
24   victorcaroleo@aol.com email account?
25         MR. LABUDA:  Same objection.

Page 73

1
2          Don't answer.
3    BY MR. GIBBS:
4       Q.   And just a few other questions.
5          MR. LABUDA:  On -- on E -- I'm
6    sorry, on 3?
7          MR. GIBBS:  I'm sorry, not on
8    Exhibit 3.  Just a few final topics.
9          MR. LABUDA:  That's fine.  I
10   just want to take a break after you
11   ask your questions.  I just want to
12   see if there's some -- you know, I
13   just want to --
14         MR. GIBBS:  Areas for cross?
15         MR. LABUDA:  Yes, yes.  But go
16   ahead.
17         MR. GIBBS:  Sure.
18   BY MR. GIBBS:
19      Q.   We talked earlier some about
20   your memory problems, Mr. Caroleo.
21         Are you experiencing today any
22   specific or particular memory issues today
23   that are out of the ordinary?
24      A.   Yes.
25      Q.   And are the memory issues that



Page 74

```
1
2    you're experiencing today, are they out of
3    the ordinary or unusual for you?
4        A.   Out of the ordinary.
5        Q.   Do you have any idea why they
6    are out of the ordinary specifically
7    today?
8        A.   My age.  It's progressing.
9        Q.   Have you ever texted with Don
10   about anything related to Scapes Supply?
11       A.   No.
12           And if I could just say
13   something here.
14       Q.   Sure.
15       A.   There's no reason for me to text
16   him about Scapes Supplies 'cause I'm the
17   originator of the business.  I've been in
18   the business 45 years.  I didn't need to
19   ask Donny anything.
20           As far as the people in the
21   business, they knew I was the man that ran
22   the business.  So I could do that business
23   with my eyes close.
24       Q.   When you say "the originator of
25   the business," do you mean the -- the
```

Page 75

```
1
2    founder of Scapes Supply?  Is that what
3    you mean?
4        A.   No, I meant the founder of
5    Garden Department.
6        Q.   When was Garden Department
7    founded?  What year was that?
8        A.   I think it's '78.
9        Q.   And you mentioned earlier that
10   you have the prescriptions that you take
11   for your memory issues.
12           Are you currently seeing a,
13   like, a memory specialist physician?
14       A.   As of recently, maybe in the
15   last six months I have.
16       Q.   And is that physician, is he
17   here in New York or Florida?
18       A.   Florida.
19       Q.   What's his name?
20       A.   I don't even remember his name.
21       Q.   I think I only have a couple
22   more questions.
23           Do you have an understanding as
24   we sit here today that you have an
25   obligation to main documents -- maintain
```

Page 76

```
1
2    documents as part of this lawsuit?
3        A.   Can you repeat that?
4        Q.   Do you have an understanding as
5    we sit here today that you have an
6    obligation to preserve documents and
7    communications as part of this lawsuit?
8        A.   As we sit here today I do have
9    that knowledge.
10       Q.   And when did you first come to
11   that understanding or first gain that
12   knowledge?
13       A.   I believe it was my attorney
14   that told me --
15           MR. MULE:  Objection.
16           MR. LABUDA:  Objection.
17           We'd move to strike that.
18           Just you can answer the
19   question.  The question was a specific
20   one which is when, when did you get
21   that knowledge about retaining, not
22   any --
23           MR. GIBBS:  That's right.
24           MR. LABUDA:  Yeah, so.
25       A.   I couldn't -- I couldn't answer
```

Page 77

```
1
2    when.
3           MR. GIBBS:  No further
4    questions.
5           MR. LABUDA:  Okay.  Let's just
6    take a break for a second.
7           MR. GIBBS:  Sure.
8           MR. LABUDA:  Keep the record on.
9           THE WITNESS:  I got one thing.
10   It'll be good.
11           MR. LABUDA:  Are you sure?
12           MR. LABUDA:  Exactly.
13           THE VIDEOGRAPHER:  We are going
14   off the record.
15           The time is 11:59.
16           (Recess taken.)
17           THE VIDEOGRAPHER:  We are going
18   back on the record.
19           The time is 12:09.
20   BY MR. GIBBS:
21       Q.   And I've had further discussions
22   off the record about questions surrounding
23   the document marked as Exhibit 3, so I'm
24   revisiting that document to ask a few
25   particular questions.
```



Page 78

1
2        Mr. Caroleo, do you have in
3   front of you the document that I've marked
4   as Exhibit 3?
5        A.   Yes.
6        Q.   And at the top of that document
7   do you see where it says "From:  Don
8   Carloleo"?
9        A.   Yes.
10       Q.   Do you recall writing this
11  particular email?
12       A.   No, I don't.
13       Q.   And do you recall sending this
14  email from doncaroleo5484@gmail.com?
15       A.   No, I don't.
16       Q.   Do you recall receiving a copy
17  of this email in your
18  victorcaroleo@aol.com email address
19  account?
20       A.   No, I don't.
21       Q.   Have you ever had access to the
22  doncaroleo5484@gmail.com email account?
23       A.   I never had access to it.
24       Q.   Has Don ever had access to your
25  victorcaroleo@aol.com email account?

Page 79

1
2        A.   Absolutely not.
3        Q.   And looking at this particular
4   email, referenced down at the bottom of
5   the page in the next to last sentence
6   there's a sentence that says:  But for
7   timing purpose we are -- purposes, we are
8   willing to settle with Annette and the
9   town.
10           Do you know who Annette is?
11       A.   She's the town attorney.
12       Q.   Have you ever exchanged emails
13  with Annette?
14       A.   No.
15       Q.   Did you receive any responses to
16  this particular email?
17       A.   Never.
18       Q.   And up at the top there's a line
19  that says "To: Dominic S Thorne at Suffolk
20  County New York.gov."
21           Are there any other -- have you
22  ever communicated with Mr. Thorne via any
23  other method?
24       A.   No.
25           MR. MULE:  I object, but go

Page 80

1
2   ahead.
3   BY MR. GIBBS:
4        Q.   Have you sent any other emails
5   to Mr. Thorne?
6        A.   No.
7        Q.   Have you had any other email
8   communications with Suffolk County or the
9   Town of Brookhaven?
10       A.   No.
11       Q.   And did you retain a copy of
12  this particular email in your
13  victorcaroleo@aol.com email account?
14       A.   No.
15       Q.   Do you recall that you deleted
16  this email?
17       A.   I don't recall.
18       Q.   Are you certain that you don't
19  have a copy in the victorcaroleo@aol.com
20  email account?
21       A.   I'm certain I don't have a copy.
22       Q.   Why are you certain that you
23  don't have a copy?
24       A.   'Cause I would have deleted it,
25  so I -- I don't remember.

Page 81

1
2           MR. GIBBS:  No further
3   questions.
4           MR. LABUDA:  Okay.
5           THE VIDEOGRAPHER:  We are going
6   off the record at 12:13 p.m.
7           (Deposition adjourned at
8   approximately 12:13 p.m. EDT)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



Page 82

INSTRUCTIONS TO WITNESS

1
2
3
4       Please read your deposition over
5   carefully and make any necessary
6   corrections.  You should state the
7   reason in the appropriate space on the
8   errata sheet for any corrections that
9   are made.
10      After doing so, please sign the
11  errata sheet and date it.  It will be
12  attached to your deposition.
13      It is imperative that you return
14  the original errata sheet to the
15  deposing attorney within thirty (30)
16  days of receipt of the deposition
17  transcript by you.  If you fail to do
18  so, the deposition transcript may be
19  deemed to be accurate and may be used
20  in court.
21
22
23
24
25

Page 84

E R R A T A

PAGE/LINE/    CHANGE    /   REASON

1
2
3
4    ___/___/_____/_____
5    ___/___/_____/_____
6    ___/___/_____/_____
7    ___/___/_____/_____
8    ___/___/_____/_____
9    ___/___/_____/_____
10   ___/___/_____/_____
11   ___/___/_____/_____
12   ___/___/_____/_____
13   ___/___/_____/_____
14   ___/___/_____/_____
15   ___/___/_____/_____
16   ___/___/_____/_____
17   ___/___/_____/_____
18   ___/___/_____/_____
19   ___/___/_____/_____
20   ___/___/_____/_____
21   ___/___/_____/_____
22   ___/___/_____/_____
23   ___/___/_____/_____
24   ___/___/_____/_____
25   ___/___/_____/_____

Page 83

A C K N O W L E D G M E N T

1
2
3
4   STATE OF          )
5                      :ss
6   COUNTY OF          )
7
8       I, VICTOR CAROLEO, hereby certify
9   that I have read the transcript of my
10  testimony taken under oath in my
11  deposition of March 13, 2025; that the
12  transcript is a true and complete record
13  of my testimony, and that the answers on
14  the record as given by me are true and
15  correct.
16
17
18  _____
        VICTOR CAROLEO
19
20  Signed and subscribed to before me this
21  _____ day of _____, 20___.
22
23  _____
24  Notary Public, State of
25

Page 85

C E R T I F I C A T E

1
2
3       I, MARIE FOLEY, Registered Merit
4   Reporter, Certified Realtime Reporter, and
5   Notary Public for the State of New York,
6   do hereby certify that prior to the
7   commencement of the examination,
8   VICTOR CAROLEO, was duly sworn by me to
9   testify to the truth, the whole truth and
10  nothing but the truth.
11      I DO FURTHER CERTIFY that the foregoing
12  is a verbatim transcript of the testimony
13  as taken stenographically by me at the time,
14  place and on the date hereinbefore set forth,
15  to the best of my ability.
16      I DO FURTHER CERTIFY that I am neither
17  a relative nor employee nor attorney nor
18  counsel of any of the parties to this action,
19  and that I am neither a relative nor employee
20  of such attorney or counsel, and that I am
21  not financially interested in the action.
22  _____
23  COURT REPORTER
    Registered Merit Reporter
    Certified Realtime Reporter
24  Notary Public
    Dated: March 18, 2025
25



22  (Pages 82 to 85)

## A

**ability**
85:15
**able**
11:2 56:10
**absolutely**
61:14 79:2
**access**
38:14 43:16 47:16
53:21 56:8,10 78:21
78:23,24
**accessed**
53:24
**account**
20:12 21:19,22 36:20
36:24 37:18,20,22
38:2,4,13,15,18,24
43:3,8,12,16,21
44:4,13 45:4,5,9,10
45:11,16,23 46:4,12
46:23 47:12,16,20
48:5,10,12,17,18,24
55:4 56:8,10,13
72:24 78:19,22,25
80:13,20
**accounts**
53:22,25
**accurate**
21:10 82:19
**action**
1:5 85:18,21
**address**
17:10 18:24 19:4,13
20:2,7 37:9,11
78:18
**addresses**
17:6 54:16
**adjourned**
81:7
**admonition**
11:25
**affect**
10:18,24 11:7 41:17
**affirm**
9:21

**affirmative**
12:15
**age**
38:11 74:8
**ago**
14:15 42:10 50:9
**agreeable**
50:5,6
**AGREED**
5:5,11,15
**ahead**
61:12 62:7 73:16
80:2
**al**
8:10
**Alejandro**
3:20 8:19
**allows**
55:25
**alternative**
69:6
**Annette**
71:12,14,19 79:8,10
79:13
**answer**
7:4 11:3,17,23 12:10
19:16 20:15 22:6
23:3 24:8,22 25:4,9
25:15,22 26:7 27:4
27:21 28:13,17,23
29:6,20,25 30:5,10
30:16,25 31:5 35:3
38:16 40:12 46:25
47:5 53:11 56:5
57:13 66:4 71:5,7
71:16,21 72:2,9,15
72:20 73:2 76:18,25
**answered**
21:11
**answers**
12:15,15 39:16 83:13
**anybody**
14:3 32:12 48:23
63:18 72:12
**AOL**
38:13,17,24 45:4

**appearances**
2:2 3:2 4:5 8:24
**Apple**
34:6
**appropriate**
55:21 82:7
**approximately**
23:18 27:11 29:11
48:3 59:18 81:8
**apps**
36:6
**April/May**
48:2
**areas**
57:24 73:14
**Aricept**
10:22 41:25
**asked**
40:10 50:2 54:14
55:2 56:17 70:5
**asking**
23:22 68:18
**ASSOCIATES**
1:10
**Atlanta**
2:9
**attached**
17:13 82:12
**attorney**
26:14,23 27:14 29:15
30:22 45:20 76:13
79:11 82:15 85:17
85:20
**attorneys**
13:22 14:4,21 28:10
29:12 40:24 43:17
59:10 70:8,15
**attorney/client**
15:3,11 24:5,22 26:8
27:19 46:16,20 47:3
**authored**
52:16
**Avenue**
3:8 58:23 59:5 64:3
**aware**
21:2 46:10 48:21

69:5,8
**a.m**
1:21 8:3,14

## B

**B**
6:3
**back**
16:25 18:14 36:23
39:11 41:11 42:25
50:10,24 51:24
54:12 55:7 62:18
68:21 69:18,25
77:18
**backed**
68:15
**ball**
56:23
**barely**
38:11
**baseball**
64:21
**Basically**
44:6
**basis**
22:5 51:13 59:22
**Bates**
6:11 49:7 53:2
**becoming**
64:20
**began**
40:5
**beginning**
12:19 26:2 41:13
47:21 64:12 65:11
65:22
**begins**
8:6
**behalf**
2:4 3:4 9:3
**believe**
20:10 21:17 37:16
54:4,13,14 61:6
70:15 76:13
**best**
10:25 62:8 85:15



**beyond**
51:7 53:9,11 61:10
 70:25
**birthday**
64:25
**bit**
61:10
**bottom**
71:10 79:4
**brand**
34:4
**break**
11:11 26:11 36:8
 39:3 43:2 47:7
 49:21 50:8,14,14,23
 51:16 52:4 55:2
 60:25 66:6 69:10,17
 73:10 77:6
**bring**
22:17
**broke**
35:5 39:22
**Brookhaven**
72:18 80:9
**business**
33:16 38:3,5,7,9,19
 53:23 60:20 61:3
 62:22 63:13 64:18
 67:12 68:14 74:17
 74:18,21,22,22,25

**C**

**C**
3:7 83:2 85:2,2
**call**
22:13 57:17 58:10
 59:23 60:5 61:12
 62:7 64:22 69:12
 70:10
**carefully**
82:5
**Carloleo**
78:8
**Caroleo**
1:7,8,19 3:17 4:7 8:8
 9:13 10:6,13,16

19:3 20:2 39:20
49:2 52:3,13 53:17
55:3 58:14 70:5
73:20 78:2 83:8,18
85:8
**carrier**
34:12,16
**case**
8:12 14:16,20 23:15
 24:2 25:13 26:5
 27:12 28:21 29:18
 30:8 31:12,14,25
 32:5,19 43:13,19
 48:14,20 52:21 53:5
 57:5 59:11 68:25
 71:3
**cause**
26:12 42:5 46:15
 61:13 65:9 74:16
 80:24
**caused**
36:8
**cell**
32:3 33:2,18 34:18
 68:15,21
**cellphones**
32:22
**certain**
80:18,21,22
**Certainly**
39:18
**CERTIFICATE**
4:11
**certification**
5:7
**Certified**
85:4,23
**certify**
83:8 85:6,11,16
**chance**
16:11,21 18:8 42:4
 51:5 52:6
**change**
55:11 84:3
**check**
45:5

**checked**
37:17 48:9
**Civil**
1:5
**clarify**
39:15 46:2,6
**clarity**
47:6
**clear**
12:8,19 20:17 57:6
 69:5 70:17
**clearly**
52:25 56:24
**client**
9:12 22:6
**close**
74:23
**clue**
38:25
**coherent**
11:2
**coma**
41:19 42:13
**come**
69:18 76:10
**commencement**
85:7
**commencing**
1:21
**common**
11:18 43:23,25
**communicate**
37:4 59:21 72:4,6
**communicated**
43:7 72:12 79:22
**communication**
27:20 66:10
**communications**
23:23,25 24:6,19,23
 25:12 26:4,9 27:2
 27:16 28:21 29:17
 30:8 31:16 46:17,21
 47:4 61:8 76:7 80:8
**company**
14:22 47:25
**company-issued**

34:24
**complete**
83:12
**completely**
42:21
**computers**
33:10
**concerning**
19:10
**condition**
42:17
**conduct**
53:4
**conducted**
1:19
**conducting**
53:22
**consider**
28:3
**contacts**
36:3
**conversation**
11:19 14:2 15:16
**conversations**
13:21 15:15 66:14,17
**copies**
21:23
**copy**
32:12 72:22 78:16
 80:11,19,21,23
**CORP**
1:10
**corporation**
47:22
**correct**
18:17 27:8 29:10
 33:3 44:3,19 48:11
 66:24 83:15
**corrections**
82:6,8
**counsel**
5:6 8:23 10:4 85:18
 85:20
**counsel's**
51:18
**County**



72:13 79:20 80:8
83:6
**couple**
11:14 39:15 75:21
**course**
12:22 51:13
**court**
1:1 5:18 8:11,20 9:16
12:8 13:10 20:16,17
22:13 53:15 54:11
54:22 55:7,25 57:17
58:2 61:13,14 62:7
69:12 70:10,11 71:2
82:20 85:22
**Court's**
21:7 22:25 57:7 61:6
**created**
48:5
**cross**
73:14
**crosstalk**
12:2
**CRR**
1:25
**current**
32:3,25 34:18
**currently**
33:2 37:3 64:12
75:12
**customers**
63:4,14,15
**CV-02084**
8:12

_____

**D**

**D**
83:2
**daily**
60:13
**data**
32:13 35:16
**date**
1:22 16:2 17:16,25
23:19 27:11 29:12
33:23 49:9 82:11
85:14

**dated**
49:3 85:24
**dates**
13:25 67:2
**day**
60:17 83:21
**days**
82:16
**deal**
26:11 52:23
**dealing**
44:22
**decide**
22:12
**deemed**
82:19
**defendants**
1:14 3:4 61:18
**definitely**
41:24 42:23
**delete**
30:23 44:2,5,11,17
44:20 65:3,5
**deleted**
20:22 43:20,22 44:7
44:13,16,20 53:24
55:15 56:12,18,20
56:25 65:7 67:23
68:6,10,24 69:6
80:15,24
**deleting**
59:12,14,16
**denote**
6:15
**Department**
1:9 14:15 75:5,6
**deposing**
82:15
**deposition**
1:18 7:2 8:7,15 11:9
11:15 12:17 13:14
13:23 14:6,7 15:23
17:22 19:9 41:14
49:5 51:14 52:23
53:12 55:23 57:11
70:4,7 71:2 81:7

82:4,12,16,18 83:11
**deposition's**
51:8
**Depot**
14:14
**DESCRIPTION**
6:5
**destroy**
24:18
**deviating**
22:24
**deviation**
57:7
**device**
32:10 34:24
**devices**
37:4
**diabetes**
10:21
**diagnosis**
42:17,19,21
**different**
54:7 68:17
**direct**
15:13 20:14 24:21
57:13
**directed**
72:6
**directing**
24:7
**DIRECTION**
7:4
**directly**
21:5,24 51:11 53:25
**disclosing**
47:3
**discovery**
20:19 21:21 32:5
43:12 48:13,19
50:21 52:24 53:5,7
56:2 57:10
**discuss**
65:20 69:10
**discussed**
31:15 69:3
**discussions**

77:21
**District**
1:1,2 8:11,11
**doctor**
41:22 44:24
**document**
6:16 15:22 16:5,13
16:19,22 17:5,21
18:4,6,10 19:2,10
19:24 20:18 21:22
25:18 29:2 30:12
49:19 52:4,7,10,24
52:25 53:6,8 55:17
56:5 61:15 70:19
77:23,24 78:3,6
**documents**
7:18 13:16 14:23
17:13 21:4,6 23:25
24:18 25:12 26:4,25
27:16 28:20 29:17
30:7 31:12,16,25
51:12 61:17 75:25
76:2,6
**doing**
12:17 64:22 82:10
**Dominic**
72:5 79:19
**DOMINICK**
1:7
**Don**
3:17 9:12 14:4 16:7
31:3,17 61:9 62:5
64:9,14 65:7,8 74:9
78:7,24
**DonCaroleo_0004...**
6:11 49:7
**doncaroleo5484@...**
78:14,22
**Donny**
74:19
**double**
44:17
**doubt**
18:19
**drop**
36:8



**duly**
10:7 85:8
**duty**
21:4

---

**E**

**E**
6:3 73:5 83:2,2 84:2
85:2,2
**earlier**
20:6 37:8 59:13 69:4
70:4 73:19 75:9
**easier**
26:20 60:5 67:8
68:13
**Eastern**
1:2 8:11
**easy**
11:18
**EDT**
1:21 8:3 81:8
**effect**
5:17 24:17
**efforts**
68:24
**either**
34:21 41:6
**electronic**
37:4
**else's**
48:23 53:18 55:4
**email**
2:11,18 3:12 6:6,8,10
15:24 16:25 17:6,10
17:14,23 18:14,21
18:22 19:4,9,12
20:2,7,12,12 21:18
21:20,22 22:21 23:6
23:11 37:9,10,17,20
38:2,4,6,7,12,13,17
43:3,8,11,21 44:12
45:4,5,9,15 46:12
47:12,15,19 48:4,12
48:17,18,23 49:3,6
49:12,13 50:20
52:11,17 53:18,19

53:21,25 54:6,15
55:4,17 56:8,10,13
70:6,9,14,22,23
71:24 72:6,23,24
78:11,14,17,18,22
78:25 79:4,16 80:7
80:12,13,16,20
**emailed**
58:14 59:4
**emails**
20:23 25:2 28:11
29:23 30:23 31:8,9
31:21 32:10,18 38:9
38:22 43:20,24 44:2
44:5,10,13 48:24
55:5 56:12,18,20
59:15,16 71:18
79:12 80:4
**employee**
85:17,19
**employees**
63:9
**end-around**
57:8
**errata**
4:10 82:8,11,14
**ESQUIRE**
2:6,14 3:6,7
**estimate**
38:23 68:5
**et**
8:10
**Evan**
2:6 9:3 15:13 20:17
52:21 54:14
**evan.gibbs@trout...**
2:11
**exact**
6:16 33:23
**exactly**
12:4 36:12 77:12
**examination**
4:7 5:8,15 10:11 85:7
**examined**
10:9
**example**

34:23
**exchange**
65:17
**exchanged**
63:3 67:17 71:18
79:12
**exhibit**
15:23,24 17:22,23
49:4,6 50:4 52:5
57:15 70:7,20 73:8
77:23 78:4
**exhibits**
4:6,13 6:14
**expanding**
26:13
**experiencing**
73:21 74:2
**explained**
22:5
**eyes**
74:23

---

**F**

**F**
85:2
**fail**
82:17
**fair**
42:4 60:12,15
**family-related**
64:24
**far**
74:20
**Farrell**
1:19 2:13 8:16 9:6
**FEDERAL**
5:2
**feel**
11:6
**figured**
28:6
**filed**
17:18 31:14 35:13
38:21 43:19 48:22
58:13 59:4 68:12
**filing**

5:7
**final**
73:8
**financially**
85:21
**fine**
22:7 27:24 28:5
57:16 58:5 69:19
73:9
**finish**
11:16 12:5
**finished**
12:7 16:14 49:18
**firm**
27:8,15 28:6,10,19
29:2,9,16,23 30:13
**firms**
30:19 41:7
**first**
10:7 70:20 76:10,11
**five**
50:9,24
**five-minute**
39:3
**flagged**
58:10
**Florida**
41:22 75:17,18
**focus**
55:13 57:11
**focused**
61:8
**focusing**
34:19
**Foley**
1:24 8:21 85:3
**follows**
10:10
**follow-up**
24:10
**force**
5:17
**foregoing**
85:11
**forget**
41:12



**form**
5:12
**formed**
47:22 48:2
**forth**
85:14
**forward**
56:23
**founded**
75:7
**founder**
75:2,4
**four**
59:20
**frequently**
64:13 65:16
**Fritz**
1:20 2:13 8:16 9:6
**front**
78:3
**full**
10:14
**further**
5:10,14 46:7 77:3,21
    81:2 85:11,16

___ **G** ___

**G**
83:2
**gain**
76:11
**Garden**
1:9 14:15 75:5,6
**general**
30:20 56:21 64:13
**generally**
64:16,18 66:21 70:22
**gentlemen**
41:4
**George**
8:10
**Georgia**
2:9
**getting**
14:6 52:20 57:3
**Gibbs**

2:6 4:8 9:2,3 10:12
12:3 15:6,21 16:3,9
16:20 17:20 18:2,7
18:12 19:15,21
20:25 21:14 22:4,12
22:16 23:5,8 24:9
24:12,24 25:5,10,16
25:23 26:16,19,22
27:22 28:3,8,9,14
28:18,24 29:7,21
30:2,6,11,17 31:2
39:5,18 40:20 45:18
46:5,9,18 49:2,10
49:23 50:3,8,18
51:9,17 52:2 53:13
53:16 54:10,20,25
56:7 57:16,20,22
58:6,9,12 61:11,22
62:6,11,20 66:15,18
66:24 67:6 69:9,16
70:3 71:8,17,22
72:3,10,16,21 73:3
73:7,14,17,18 76:23
77:3,7,11,20 80:3
81:2
**Giordano**
1:7 31:19 43:8 65:13
**give**
9:22 15:17,17 24:12
33:23
**given**
83:14
**giving**
13:9,10 61:25
**Gmail**
45:10
**go**
41:11 44:10,11 51:11
52:11 61:12 62:7
70:13 73:15 79:25
**goes**
20:25 21:3,23 51:9
51:10
**going**
11:21 15:2,21 16:12
16:16 19:6,8,20

22:10 23:2 24:4,21
26:6 36:18 39:6,10
45:17 46:13 48:6
50:21 51:19,23
52:19 53:10 54:10
57:13 61:4,10,19
62:14,17 69:20,24
70:12,16,21,25 71:4
71:6 77:13,17 81:5
**Gomez**
3:20 8:19
**good**
9:2,8 34:2 64:21
77:10
**grandson's**
64:20
**grew**
60:4
**ground**
11:14
**Group**
1:10 3:5 9:9,11
**guess**
36:12 46:14
**guessing**
60:10
**guy**
35:20
**guys**
64:19

___ **H** ___

**H**
6:3
**HAMILTON**
2:5
**hand**
9:19 15:21
**handed**
19:24 52:4
**handing**
16:8 17:20 49:3
**hands**
12:12
**happened**
35:7 36:7

**happy**
12:25
**heard**
14:13
**heavy**
36:11
**hereinbefore**
85:14
**hereto**
5:5
**hired**
23:19
**hold**
25:20 29:4 30:14
    45:14,22 46:4,11,24
    47:12
**Home**
14:14
**Horseblock**
59:7 64:6

___ **I** ___

**iCloud**
36:20,24
**idea**
36:25 45:12 74:5
**identification**
16:2 17:25 49:8
**identify**
19:11
**imperative**
82:13
**inasmuch**
47:2
**INDEX**
4:3,6 7:2
**initially**
23:14
**instruct**
16:13 22:6 23:2 26:7
    26:24 45:20 53:10
    71:4
**instructed**
30:22
**instructions**
24:16 82:2



MAGNA
LEGAL SERVICES

**interested**
36:6 85:21
**introduced**
50:4
**involved**
14:10
**involving**
14:14
**iPads**
33:4
**iPhone**
34:7,10 36:23
**Island**
58:20,22 59:5 63:24
  64:3
**issue**
19:14 26:12 56:3
  66:7 69:11
**issued**
34:22
**issues**
57:4,25 73:22,25
  75:11
**It'll**
77:10

---
**J**

**January**
52:12
**Joe**
9:8
**JOSEPH**
3:6
**josephlabuda@mll...**
3:12
**judge**
13:11
**Jul**
6:10 49:7
**July**
49:3
**jury**
13:11

---
**K**

**K**

83:2
**keep**
44:24 45:2 77:8
**Kevin**
2:14 9:5 69:9
**kind**
10:18 22:24 26:13
  51:7
**kmulry@farrellfri...**
2:18
**knew**
21:12 74:21
**know**
10:21,24 11:7,8,18
  11:21 12:14,17 13:4
  13:20 16:14 18:7
  19:13 20:19,22
  21:10 22:22 34:9
  35:2,19,21 36:9,17
  38:10,11 40:3,14
  41:5 43:14 44:12,15
  45:9,14,20,21 46:19
  46:22 47:11,14,18
  47:24 48:7 49:17
  52:22 53:3,4 54:3,8
  55:12,13,13,14 56:2
  57:6 60:3,11 61:6,7
  61:24 62:3 64:20
  73:12 79:10
**knowledge**
11:2 76:9,12,21

---
**L**

**L**
83:2
**Labuda**
3:5,6 9:8,9,9,11 15:2
  15:7 16:6,12 19:17
  20:13 21:8 22:2,11
  22:15,23 24:4,14,20
  25:3,8,14,21 26:6
  26:18,21 27:4,18,25
  28:5,12,16,22 29:5
  29:9,16,19,22,24
  30:4,9,13,15,24
  31:5 39:4,13,19

40:3,8,19 45:24
46:13,25 49:22
50:11,13 51:2,15
52:18 53:14 54:13
54:18 55:9 56:14
57:19,21 58:4,7,11
61:5,21,23 62:9
66:3,10,16 67:3
69:15,19 70:24
71:15,20,25 72:8,14
72:19,25 73:5,9,15
76:16,24 77:5,8,12
81:4
**Lake**
3:10
**Landscape**
1:4 8:9 9:4
**laptop**
33:10,12,13,15
**laptops**
33:9
**law**
3:5 9:9,11 15:8 30:19
  41:7
**lawsuit**
14:9,24 17:16,18
  21:13 26:3 27:3,17
  32:8,14 35:13 38:21
  48:22 58:13 59:3
  64:12 65:12,23
  68:12 76:2,7
**lawyer**
15:16 28:19
**lawyers**
13:19 15:15 40:15,17
**leading**
46:16
**leeway**
61:25
**Legal**
1:23 8:19,21
**let's**
19:17 51:15 55:22
  64:22 77:5
**limited**
53:6 58:15 62:4

63:18
**line**
7:5,5,5,19,23 19:2,25
  35:6 79:18
**lines**
52:11 54:19
**litigation**
14:11,14 21:3 25:20
  29:3 30:14 40:5,16
  45:14,22 46:4,11,24
  47:12 53:5 56:2
  57:9
**little**
41:16
**live**
13:10
**LLC**
1:4,9,11,11,12,12 8:9
  9:4 58:17 63:21
**LLP**
2:5
**long**
14:17 33:21,24 34:15
  37:21 42:15 58:22
  59:5 64:3
**look**
16:11 17:4 19:23,23
  51:5
**looking**
54:24 79:3
**looks**
51:6
**loss**
42:23
**lot**
12:11 44:10 61:18,25

---
**M**

**M**
3:6 83:2
**Madam**
54:22
**Magna**
1:23 8:19,21
**main**
75:25



**maintain**
75:25
**making**
70:17
**man**
74:21
**MANAGEMENT**
1:12
**manner**
6:14
**March**
1:16 6:6,8 8:13 15:25
  16:25 17:17,24
  18:14 21:12 30:21
  35:13 38:22 65:24
  66:22 67:4 83:11
  85:24
**Marcus**
3:8
**Marie**
1:24 8:21 85:3
**marked**
15:25 17:21,24 49:4
  49:8 52:5 70:7,20
  77:23 78:3
**marking**
15:22
**matter**
8:8
**mean**
15:4 19:18 20:16,18
  21:10 43:25 45:24
  46:2,3,13 49:25
  50:9,13 51:4,4
  52:19 55:10,18 56:4
  57:2 61:9,18,23
  74:25 75:3
**meant**
75:4
**medication**
10:20 11:6 36:11
  41:15,17
**medications**
10:18 42:2,8,18
**meet**
13:22

**memory**
10:20 36:10,17 41:15
  41:18,20,24 42:23
  44:8,22,23,25 73:20
  73:22,25 75:11,13
**mentioned**
41:13 75:9
**Merit**
85:3,23
**message**
59:24 60:3 68:10
**messages**
25:7 28:15 30:3,23
  31:4,21 32:4,9,18
  36:3 40:11,13,15,18
  40:23 41:8 59:12,22
  59:25 60:6,9,13,16
  60:20,22 61:3 62:22
  62:25 63:4 64:9,19
  65:2,7,17,20 66:20
  67:10,14,17,20,23
  68:6,25 69:7
**method**
72:7 79:23
**Michael**
3:7 9:10
**Middle**
58:19 63:24
**Milman**
3:5 9:9,10 29:9,15,22
  30:13
**mind**
20:20
**minute**
16:5
**minutes**
50:9,25 69:17
**missing**
22:3
**Mm-hm**
23:17
**model**
34:9
**moment**
18:3 49:11,16
**monitor**

8:14
**months**
75:15
**morning**
9:2,8
**motion**
22:17
**move**
57:23 76:17
**moves**
56:23
**Mule**
3:7 9:10,10 15:12,20
  19:6 39:2 45:17
  49:20,25 50:7,12,16
  54:3,17 61:4 66:8
  66:22 76:15 79:25
**Mulry**
2:14 9:5,5
**multiple**
60:16

_____

**N**

**N**
83:2,2
**name**
10:14 42:2 75:19,20
**narrow**
1:8,9 56:3 57:10
  58:15,17 63:18,21
**NE**
2:7
**necessarily**
6:15 21:9
**necessary**
82:5
**need**
11:12 13:3 57:25
  69:12 74:18
**needed**
23:24 26:25 27:15
  29:16
**negative**
12:15
**neither**
85:16,19

**never**
33:11,14,16 36:5,21
  37:12,19 48:9 53:18
  78:23 79:17
**new**
1:2,20 2:16 3:10 8:12
  8:16 10:9 28:6
  35:17,18,25 36:4
  75:17 79:20 85:5
**NEWAY**
1:12,13
**Nicholas**
1:7 8:9
**Nick**
31:19,23 43:7 65:13
  65:15,17 66:20
  67:11,17,24 68:7,10
**nod**
12:12
**Notary**
5:16 10:8 83:24 85:5
  85:24
**NOTE**
6:14
**Noted**
51:17
**number**
8:7 33:19,22

_____

**O**

**O**
83:2
**oath**
13:6 83:10
**object**
15:3 19:7 20:14 24:5
  24:5 45:17 46:14,15
  52:19 70:25 79:25
**objected**
70:8
**objecting**
45:25 50:23
**objection**
15:18 24:20 25:3,8
  25:14,21 27:18,19
  27:23 28:2,12,16,22



29:5,19,24 30:4,9
30:15,24 50:19
51:18 61:5 71:7,15
71:20,25 72:8,14,19
72:25 76:15,16
**objections**
5:11 24:13 70:16
**obligation**
26:3 75:25 76:6
**observed**
36:5
**obviously**
32:17
**October**
32:21 34:20 37:5
65:6 67:22,25 68:3
**okay**
9:14 15:20 23:4
26:18 31:6 34:3
39:19 40:8,19 51:15
54:17 57:19 58:11
62:13 69:15 77:5
81:4
**old**
35:17 36:2,7,14
39:22
**older**
41:21
**once**
16:10 44:10 58:3
64:15
**opened**
68:14,20
**operate**
33:6
**operating**
67:9
**operation**
67:8
**opportunity**
16:17 53:4
**opposed**
56:3
**order**
21:7 22:25 57:7 61:7
**ordered**

53:14
**orders**
71:2
**ordinary**
73:23 74:3,4,6
**original**
4:13 82:14
**originator**
74:17,24
**Outlook**
45:11
**outside**
26:13
**overwhelmed**
44:9

**P**

**P**
2:14
**page**
4:4,9 6:5 7:5,5,19
7:23 13:4 71:10
79:5
**PAGE/LINE**
84:3
**part**
17:5 32:4 43:12
48:13,19 68:25 76:2
76:7
**particular**
14:9,20,23 16:25
18:14,20 20:12
21:19 23:11 34:16
37:21 41:3 42:16
43:11,21 45:15
46:12 47:11 52:10
70:14 71:24 73:22
77:25 78:11 79:3,16
80:12
**parties**
5:5 8:23 55:25 85:18
**parts**
60:25
**party**
64:25 68:21
**Peachtree**

2:7
**pending**
46:8 50:15,17 66:4
**people**
59:23 74:20
**people's**
53:21
**PEPPER**
2:5
**period**
34:20 44:14 48:4
68:19
**person**
72:5
**personal**
33:17 37:25 38:2,4,6
38:6,7 43:3 64:17
**personally**
34:23 68:23
**phone**
2:10,17 3:11 23:10
32:3,8,13,17 33:2
33:18,19,21 34:4,5
34:10,13,19 35:5,9
35:12,17,17,22,25
36:4,7,14,15 37:2
39:22 45:6 47:17
64:23 68:15,21
**phones**
34:21
**physician**
75:13,16
**place**
13:25 55:24 85:14
**placed**
13:6 45:22 46:11,23
47:12
**places**
22:9
**plaintiff**
1:5 2:4 9:6
**Plaintiff's**
6:5 15:24 17:23 49:6
**platform**
45:9
**plays**

10:21
**Plaza**
1:20 2:15
**please**
9:16,20 10:14 16:10
54:22 82:4,10
**PLLC**
3:5
**point**
11:8 12:22 43:9
70:11
**portion**
55:6
**position**
55:12
**practice**
22:17 43:23,25 44:21
56:21 59:11,15
65:10
**practicing**
15:8
**prepare**
13:14
**prescriptions**
75:10
**present**
3:16 8:24 32:22 37:6
50:2 65:12,23
**presented**
70:6
**presently**
10:17
**preservation**
19:10
**preserve**
14:23 15:10 21:4
23:25 24:17 26:4,25
27:15 29:17 31:24
70:12 76:6
**preserved**
28:4
**preserving**
31:15
**pretty**
20:17 22:18 64:21
**prior**



41:6 85:6
**private**
64:18
**privilege**
15:4,11 26:12 66:9
**privileged**
24:6,22 27:19 46:17
46:20 47:4
**probably**
22:8 26:19 57:23
61:12 62:8 69:13
**problem**
44:8,23 53:16 66:25
**problems**
36:10,18 41:21,24
73:20
**proceed**
10:4
**process**
43:13 48:13,19
**produce**
72:22
**produced**
21:20 50:21
**PRODUCTION**
7:18
**productive**
57:23
**progressed**
41:22
**progressing**
74:8
**property**
58:20,23 59:5,8
63:24 64:3,6
**prospective**
63:14
**Public**
5:16 10:8 83:24 85:5
85:24
**purpose**
52:22 79:7
**purposes**
24:2 25:13 27:16
28:21 29:18 30:8
32:7,13 71:11 79:7

**put**
15:17 41:25
**P.C**
1:20 2:13 8:16
**p.m**
81:6,8

---

**Q**

**question**
5:12 11:17,22 12:6
12:23 18:24 19:7,16
19:18 20:9 21:11,15
21:16 22:7,19,20
23:3,6,9 24:8 26:17
27:21 30:20 35:3
45:19 46:8,22 47:2
47:5,9 50:2,15,17
51:11 54:4,7,11,14
54:21,25 58:24
63:20,23 64:2,5
66:2,4,5,9,13 68:18
70:21 72:17 76:19
76:19
**questioning**
57:24
**questions**
11:3 13:2 22:20
24:10 39:17 40:10
43:5 50:22 51:10
55:22 56:5,17 57:14
61:19,20 62:5 64:24
69:14 70:5,8,13
73:4,11 75:22 77:4
77:22,25 81:3
**quick**
26:11
**quickly**
41:12
**quotations**
6:14
**quote**
6:16

---

**R**

**R**
84:2,2 85:2

**Radler**
27:8
**raise**
9:19
**ran**
74:21
**read**
6:15 16:13 18:16
54:11 55:7 82:4
83:9
**reading**
16:15 17:12
**reads**
16:18 18:5,9 49:19
**ready**
14:6
**realized**
42:14
**really**
11:18 38:10 41:12
46:6 55:20 57:2,5
61:7 62:4
**Realtime**
85:4,23
**Realty**
1:8 58:15 63:18
**reason**
11:5 18:19 20:10
21:17,24 44:7 74:15
82:7 84:3
**recall**
14:16 16:24 17:12
18:13 25:18 27:13
28:25 32:6,11,15
35:25 36:19 38:20
41:9 42:2,10,20
43:15,18 58:16,18
58:21 63:8,11,16,19
63:22,25 64:4,7
68:11 70:23 78:10
78:13,16 80:15,17
**recalling**
41:11
**receipt**
82:16
**receive**

24:15 30:12 60:9,13
60:16,22 64:8 71:23
79:15
**received**
38:24 42:17 60:19
62:24 65:13,14
**receiving**
16:24 25:18 28:25
78:16
**recess**
39:9 51:22 62:12,16
69:23 77:16
**recollection**
36:22 39:24 40:2,7
54:19 62:3
**record**
6:15 8:6 10:15 12:8
23:7 29:13 39:7,11
50:10,19 51:17,20
51:24 55:7 62:14,18
69:5,21,25 70:12,17
77:8,14,18,22 81:6
83:12,14
**recover**
32:9 68:24
**referenced**
79:4
**referred**
25:19 29:3 30:14
**referring**
40:25
**reflected**
6:14
**Registered**
85:3,23
**regular**
59:22
**regularly**
59:12 60:2
**related**
21:5 26:5 27:2 67:12
74:10
**relation**
40:16
**relative**
85:17,19



**relevant**
32:18 53:25 56:11
**remember**
10:23 14:19,20 23:12
23:18 27:10 29:11
35:6 36:11,13 42:4
42:6 62:23 63:2,5
75:20 80:25
**remind**
12:16
**repeat**
13:2 47:9 76:3
**rephrase**
12:24 13:2 26:16
**replaced**
35:7,9,12
**replacement**
39:21
**reporter**
8:20 9:16 12:8 54:11
54:22 55:8 85:4,4
85:22,23,23
**REPORTER'S**
4:11 6:14
**represent**
8:25 15:5 27:12
47:25
**represented**
23:14 27:7 29:8 41:7
59:10
**REQUEST**
7:18
**requested**
55:6
**required**
14:22
**reserved**
5:12
**respect**
26:8 39:20 40:9
42:24 55:3 56:23
57:12,14 59:14
63:20,23 64:2,5
70:19
**respective**
5:6

**respond**
15:18
**responses**
71:23 79:15
**retain**
80:11
**retained**
20:21 21:23 23:19
27:11 53:3 55:14
56:12 67:19
**retaining**
76:21
**retains**
44:13
**retention**
20:19 21:6 51:12
52:24 53:7 56:6
61:15
**retrieved**
69:7
**return**
82:13
**review**
13:16 16:5,22 18:3,8
40:18,23 49:12,17
52:6
**reviewed**
40:12,15 41:8
**reviewing**
40:11
**revisiting**
77:24
**re-read**
54:21
**right**
9:19 11:24 22:11,15
23:16 26:15,21
39:13 42:13 51:3
61:21 66:23 70:24
76:23
**Rivkin**
27:8,14 29:2
**RMR**
1:25
**Road**
58:20 59:7 63:24

64:6
**round**
55:23
**ROUTE**
1:11
**rules**
11:14
**RXR**
1:20 2:15

---

**S**

**S**
6:3 79:19
**SANDERS**
2:5
**Saul**
23:15
**save**
25:2,6,11 28:11,20
29:23 31:4,9,11,20
65:3
**saved**
67:13
**saying**
35:4 67:3
**says**
17:5 19:3,25 35:21
71:11 78:7 79:6,19
**Scapes**
1:11 37:11 38:18
45:8 47:15,19 48:9
48:17 60:21,23 61:3
62:22,25 63:4,7,10
67:7,9 68:13,20
74:10,16 75:2
**scope**
20:21 51:7 53:6,12
70:25
**sealing**
5:7
**search**
32:17
**searched**
32:4,8 43:12 48:12
48:18
**second**

**see**
26:11 40:9 47:7
49:16 51:16 55:23
77:6
**see**
17:8 19:5 20:4 22:24
22:24 36:2 52:9,14
73:12 78:7
**seeing**
75:12
**send**
23:10 48:24 53:19
55:5 60:9,13,15,22
64:8
**sending**
18:13 78:13
**sent**
18:20 20:11,23 21:18
23:12 38:23 60:19
61:2 62:21 63:12
65:12 80:4
**sentence**
71:10 79:5,6
**Services**
1:23 8:20,22
**set**
47:20 85:14
**settle**
71:12 79:8
**severe**
41:20 42:14,23
**sharp**
44:25 45:2
**sheet**
82:8,11,14
**sign**
82:10
**SIGNATURE**
4:9
**signed**
5:16,17 83:20
**sit**
75:24 76:5,8
**SiteOne**
1:4 8:8 9:3,7
**six**
75:15



**slightly**
68:17
**solicitations**
63:13
**somebody**
60:5
**son**
14:4 31:3 64:9,14
**sorry**
52:11 73:6,7
**sound**
48:3
**source**
25:25
**sources**
69:6
**space**
82:7
**speak**
13:19
**speaking**
12:6 41:10 64:16
**speaks**
55:18
**specialist**
75:13
**specific**
30:19 73:22 76:19
**specifically**
41:16 74:6
**spent**
41:23
**ss**
83:5
**ST**
1:11
**stamped**
53:2
**start**
10:14 11:17,22 12:6
  12:17
**started**
42:9,13 59:19
**starts**
11:6 52:12
**state**

8:24 10:8 82:6 83:4
  83:24 85:5
**States**
1:1 8:10
**stating**
10:14
**Stenographer**
9:18 10:2 11:25
  54:23
**stenographically**
85:13
**step**
42:25
**STIPULATED**
5:4,10,14
**STIPULATIONS**
5:2 7:22
**stopped**
59:15
**straightforward**
22:18
**Street**
2:7
**strike**
42:12 76:17
**stuff**
12:18 38:6 43:22
  62:2
**subject**
21:7
**subscribed**
83:20
**substance**
13:20 19:8 23:23
  52:20 57:4 66:17
**substances**
66:19
**substantively**
55:11
**Success**
3:10
**suffer**
36:9
**Suffolk**
72:13 79:19 80:8
**suggest**

53:19
**suggests**
53:20
**Suite**
2:8 3:9
**suppliers**
63:6
**Supplies**
60:23 74:16
**Supply**
1:4,12 8:9 9:4 37:11
  38:18 45:8 47:15,19
  48:10,18 60:21 61:3
  62:22,25 63:4,7,10
  67:7,9 68:13,20
  74:10 75:2
**SUPPORT**
7:2
**supposed**
51:8 62:4
**sure**
11:16,20 12:6,10
  13:3 15:8 19:22
  21:9 24:14 35:21
  38:16 39:4,5 43:22
  48:16 49:22 56:20
  56:22 58:4 59:2
  60:24 65:9 67:18,21
  69:19 70:17 73:17
  74:14 77:7,11
**surrounding**
77:22
**swear**
9:17,21
**sworn**
5:18 10:7 85:8

---

**T**

**T**
6:3 83:2 84:2 85:2,2
**table**
58:7,8
**tablet**
33:6
**tablets**
33:4

**take**
11:11 16:4,16 18:3
  26:10 39:2 42:5,20
  42:25 47:7 49:11,16
  49:20,21 50:14,14
  51:16 55:24 60:24
  62:11 66:5 69:10,16
  73:10 75:10 77:6
**taken**
8:15 39:9 51:22 55:3
  62:16 69:23 77:16
  83:10 85:13
**talk**
13:23 14:5 49:15
  61:16 64:19
**talked**
37:8 59:13 69:3
  73:19
**talking**
43:3,24 64:11
**technical**
35:19
**tell**
12:18,24 16:10 22:4
  23:24 24:25 25:6,11
  26:24 27:15 28:11
  28:20 29:16,23 31:3
  31:8,11,20,23 70:21
**telling**
14:21
**ten**
33:25 34:2,17 37:23
  42:10
**terms**
46:3 55:16 57:9 61:7
  62:2
**testified**
10:9 20:6
**testify**
85:9
**testimony**
9:22 10:19 11:8 13:9
  13:10 33:14 48:8
  83:10,13 85:12
**tests**
42:20



text
25:7 28:15 30:3,23
  31:4,21 32:4,9,17
  40:11,12,15,18,23
  41:8 59:12,21,24,25
  60:3,6,9,13,16,20
  60:22 61:2 62:21,24
  63:3,14 64:8,14,19
  65:2,7,17,20 66:20
  67:10,13,17,19,23
  68:10,24 69:7 74:15
texted
63:17 74:9
texts
65:13,14 66:15
Thank
9:14 10:2,3 11:10
Thanks
11:13 16:6
thing
12:11 28:7 51:6 77:9
things
12:14 36:3 64:23
  65:19
think
10:24 20:14 21:10
  26:14 35:3 36:12
  40:11 45:25 46:5
  52:19 53:9 54:6
  55:10,20 56:19 57:2
  57:22 61:11 62:6,8
  66:12 69:4,9,11,12
  75:8,21
third
68:21
thirty
82:15
Thorne
72:5 79:19,22 80:5
thread
6:6,8 15:25 17:24
three
30:18 52:11 61:17
  65:18
time
5:13 8:14 14:15,18

15:7,17 24:13 33:24
34:19 39:8,12 44:6
44:14 47:10 48:4
51:21,25 58:25
62:15,19 64:25
67:16 68:9,19 69:22
70:2 71:7 77:15,19
85:13
times
12:11 13:24 60:16
  65:18
timing
39:21,22 71:11 79:7
titled
25:19 29:3 30:13
today
8:13,18,20 9:24
  10:19 11:3,15 12:22
  13:5,9 14:7 21:25
  22:9,14 34:20 48:8
  65:24 73:21,22 74:2
  74:7 75:24 76:5,8
told
42:22 76:14
top
17:4 18:25 19:24
  52:9 78:6 79:18
topics
67:10 73:8
totally
12:7 22:7 27:24
town
71:13 72:17 79:9,11
  80:9
trade
36:15
traded
36:18
transcript
4:3,13 82:17,18 83:9
  83:12 85:12
transfer
35:16
trial
5:13
tried

70:10
TROUTMAN
2:5
TRUCKING
1:13
true
83:12,14
truth
9:22,23,24 85:9,9,10
try
12:14
trying
42:4 57:8,9 64:17
turned
35:24,25 45:15
turning
43:15 45:8
twice
64:15
two
35:8 41:23,25 60:25
  67:4
type
38:18 45:11
types
25:12 31:12,24 61:20
  65:19
typically
65:20

_____
U
_____

uh-huh
12:13
uh-uh
12:13
unavailable
70:11
understand
12:23,25 13:5,8
  17:17 26:2 35:2
understanding
75:23 76:4,11
Uniondale
1:20 2:16 8:16
United
1:1 8:10

unusual
74:3
use
12:12,14 33:10,16
  37:12,25 38:5 45:13
  55:16 59:24,25 60:6
uses
45:10

_____
V
_____

v
1:6
vendors
63:7
verbally
12:10
verbatim
85:12
Verizon
34:14 35:10,20 36:16
versus
8:9
Vic
15:13 52:13 55:23
  61:9 62:5
Victor
1:8,19 4:7 8:7 10:6
  10:16 19:3,25 83:8
  83:18 85:8
victorcaroleo
37:20
victorcaroleoaol.co...
19:12
victorcaroleo@aol....
17:7 19:4 20:3 37:9
  43:4 72:24 78:18,25
  80:13,19
victor@scapessup...
37:15
videographer
3:19 8:5,18 9:14 10:3
  12:9 39:6,10 51:19
  51:23 62:13,17
  69:20,24 77:13,17
  81:5
videotape



8:6
**Videotaped**
1:18

---
**W**
---
**W**
83:2
**waived**
5:9
**walk**
49:18
**want**
13:3,20 15:14 22:5
22:10,13,16 27:23
41:11 42:12,12 43:5
46:6,19 47:6 50:13
73:10,11,13
**wanted**
39:15 41:15
**wants**
42:19
**wasn't**
15:9 60:3
**water**
36:13
**way**
1:8,9 58:15,17 63:18
63:21 68:17
**week**
64:15,15 65:18
**weeks**
59:17,20
**went**
36:5 41:22
**we'll**
18:23 28:3 49:18
57:17 60:24,25 62:7
69:16,17
**we're**
12:19 16:12,16 20:18
21:24 22:24 24:7,21
45:25 46:13 50:21
52:18,18 53:10 54:2
55:13 56:4,4 57:12
61:4 70:16,24
**we've**

30:18 58:9 66:11
70:10
**when's**
64:24
**willing**
71:12 79:8
**wireless**
34:12
**witness**
7:4 9:17,25 10:6
15:19 16:18,18 18:5
18:5,9,9 19:19
20:15 23:4 26:7
31:6 39:14,15,25
40:6,17 49:19 53:10
65:25 66:25 77:9
82:2
**words**
24:17
**work**
38:11
**worse**
44:23
**wouldn't**
38:25
**writing**
24:16 78:10
**wrong**
54:5
**www.MagnaLS.com**
1:24

---
**X**
---
**X**
6:3

---
**Y**
---
**Yaphank**
58:19 63:24
**yeah**
15:6,12 20:13 45:24
50:11 51:2 54:20
55:9 56:14 57:21
58:4 60:24 61:23
62:9 76:24
**year**

35:6 75:7
**years**
33:25 34:2,17 35:8
37:24 41:23 42:10
44:22 65:21 67:5
74:18
**yesterday**
67:18
**York**
1:2,21 2:16 3:10 8:12
8:17 10:9 75:17
85:5
**York.gov**
79:20

---
**Z**
---
**Zabell**
23:15,20,24 24:16,25
25:19,25 26:14

---
**1**
---
**1**
6:6 8:7 15:23,24
**1st**
32:21 34:20
**10**
4:8 7:12
**10:00**
1:21
**10:13**
8:3,14
**10:40**
39:8
**10:53**
39:12
**11:03**
51:21
**11:11**
51:25
**11:20**
62:15
**11:21**
62:19
**11:29**
69:22
**11:53**

70:2
**11:59**
77:15
**11042**
3:10
**112**
1:11
**11556**
2:16
**12**
7:6
**12:09**
77:19
**12:13**
81:6,8
**13**
1:16 7:15 8:13 83:11
**14**
7:6 34:10
**15**
6:6,10 7:12,12 49:6
52:13
**15th**
49:3
**16**
7:8,13
**17**
6:8 7:6
**18**
85:24

---
**2**
---
**2**
1:9 4:5 6:8 7:7,10
17:22,23 58:17
63:21
**2:23-CV-2084(GR...**
1:6
**20**
7:6,9,13 83:21
**2004**
41:19 42:15
**2022**
32:21 34:20 37:5
**2023**
6:6,8,10 15:25 17:2



17:17,24 18:15
30:21 35:14 38:22
47:23,24 48:2 49:4
49:7 52:13 65:24
68:14
**2024**
65:6 67:22 68:2
**2025**
1:16 8:13 83:11
85:24
**21**
6:6,8 7:9,9,14 15:25
17:24
**21st**
17:2,17 18:14 21:12
30:21 35:14 65:24
**22**
7:13
**23**
7:7,7 66:22
**24**
7:8,9 68:3
**25**
7:10,10,11,12,13,14
**27**
7:14
**28**
7:6,7,15
**29**
7:8,9,10

---

**3**

**3**
4:5 6:10 7:14 49:4,6
52:5 57:15 70:7,20
73:6,8 77:23 78:4
**3W3**
3:9
**30**
7:11,12,13,14 82:15
**3000**
2:8 3:8
**30308**
2:9
**3670**
1:10

---

**4**

**4**
7:7,10,24
**4TH**
1:11
**400**
1:20 2:15
**45**
74:18
**470.885.3093**
2:10
**484-3535**
33:20
**49**
6:10

---

**5**

**5**
1:10 7:11,24
**516.227.0620**
2:17
**516.328.8899**
3:11
**53**
7:15
**57**
7:6

---

**6**

**6**
4:6 7:8
**600**
2:7
**631**
33:20

---

**7**

**7**
7:8
**71**
7:7,8,9
**72**
7:10,11,12,13
**73**
7:14
**78**

---

75:8

---

**8**

**80s**
14:18 15:9
**83**
4:9
**84**
4:10
**85**
4:11
**866-624-6221**
1:23

---

**9**

**9**
1:11 7:11,11,15

