# Exhibit 4

|  | IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR COLLIER COUNTY, FLORIDA |
|---|---|

JON TAFFER,

    Plaintiff,

vs.

VICTOR CAROLEO,

    Defendant.

_____/

CASE NO.:

## COMPLAINT FOR BREACH OF SETTLEMENT AGREEMENT

Plaintiff Jon Taffer (hereinafter "Plaintiff" or "Mr. Taffer"), by and through his undersigned counsel, hereby files his Complaint for Breach of Settlement Agreement against Victor Caroleo a/k/a Vic Caroleo (hereinafter "Defendant" or "Caroleo"), and alleges as follows:

### I. PARTIES

1.  This lawsuit arises from defendant Caroleo's continued, relentless conduct of impersonating Mr. Taffer, despite previously being sued for the same misconduct and even entering into a settlement agreement that required him to stop.

2.  Mr. Taffer, pictured below, is a citizen of Nevada and resides in Las Vegas. Mr. Taffer is a celebrity, author, business mogul, and philanthropist known for his work in producing and hosting Paramount Network's reality television show, "Bar Rescue."

 

3. Caroleo, pictured below, is a citizen of the state of Florida residing in Collier County. Caroleo owns multiple residential properties in Naples, Florida and has a Florida-issued driver's license.






## II. JURISDICTION AND VENUE

4. This is an action for injunctive relief and damages in excess of Fifty Thousand Dollars ($50,000.00) and this Court has jurisdiction pursuant to Florida Constitution, Article V, Section. 5(b), Fla. Stat. § 26.012 (2024), and Fla. Stat. § 48.193(1)(a)(a). This Court has personal

jurisdiction over Caroleo pursuant to Florida Statutes §§ 47.011 and 48.193(1)(a)(7) because Caroleo is a resident of the State of Florida and because he breached the Settlement Agreement (defined below) in this state. Additionally, Caroleo expressly consented to the jurisdiction of state and federal courts of Florida in the Settlement Agreement.

5. Venue is proper because the events giving rise to the claims in this matter occurred in Collier County, and the Settlement Agreement provides that any dispute arising out of the Settlement Agreement shall be adjudicated in the state or federal courts of Collier County, Florida.

6. Florida law applies to this case.

### III. STATEMENT OF THE CASE

#### a. Who is Jon Taffer?

7. Mr. Taffer has spent over 30 years building many successful businesses in the food and hospitality industry while also helping others looking to do the same, including on his television show, "Bar Rescue." His steadfast support of distressed businesses and his "tough love" approach providing guidance to people on the brink of giving up on their dreams has made Mr. Taffer a household name with a respectable, trustworthy reputation.

8. His name itself, "Jon Taffer," is a registered and protected trademark that holds significant value. He also owns registered trademarks for his signature, and for various other trademarks that include the name "Taffer," such as "Taffer's Tavern" and "Jon Taffer: No Excuses." Mr. Taffer's name, image, and likeness are associated with various aspects of his business operations, including Taffer's Tavern and Paramount Network's television series "Bar Rescue," and he generates significant revenue from the use and protection of his marks and brand.

#### b. Who is Victor Caroleo a/k/a Vic Caroleo?

9. Caroleo is the proprietor of the "Vic Caroleo Ministries" and a self-proclaimed "entrepreneur, prophet, [and] preacher" who claims to have "g[iven] his life to Christ over 35 years ago." Since then, he deems himself chosen by God and claims that "God has used him strategically in the workplace in both unique and effective ways."

10. Caroleo splits his time between New York and Florida, and particularly in the Naples, Florida area where he resides, frequenting many bars and other establishments that you do not typically see a "man of the cloth" frequenting.

c. **Caroleo's Second Career? Impersonating and Harassing Mr. Taffer.**

11. For unknown reasons, Caroleo appears deeply dissatisfied with his own identity, so much so that he covets and claims Mr. Taffer's name and notoriety in a brazen display of stolen valor.

12. Since at least 2017, Caroleo has recognized and embraced his resemblance to Mr. Taffer, describing himself as Mr. Taffer's "twin" on social media.

 

13. While some say that imitation is the greatest form of flattery, this aphorism does not hold true when someone misappropriates your name and identity to commit disgusting,

4

sexually inappropriate and abusive acts against women. In 2020, Mr. Taffer learned that an impersonator, later discovered to be Caroleo, was doing just that.

14. For instance, one woman, who will be referred to as "Jane Doe" to respect her privacy interest, retained counsel claiming a heinous sexual assault and battery by Mr. Taffer in Naples, Florida—at a time when the real Mr. Taffer was filming in California. Jane Doe alleged that an individual holding himself out to be Mr. Taffer "reached [his] hand up [Jane Doe's] skirt, without her consent, and into her underwear," "digitally molested her vulva and labia," "ignored [Jane Doe] and persisted" before "attempt[ing] to digitally penetrate her twice more," and "exposed [his] partially erect penis, once again, without her consent[,]" and "forced [her] head down close to [his] penis and attempted to orally rape her."

15. Mr. Taffer was forced to engage counsel in response to the horrific accusations lodged against him by this poor woman and initiated an investigation into the impersonator. After more than a year and tens of thousands of dollars in expenses, in approximately May 2021, Caroleo's identity was ultimately revealed and discovered as Jane Doe's perpetrator and the catalyst of Mr. Taffer's troubles. Once confronted, Caroleo, by and through his counsel, assured Mr. Taffer that the misconduct would cease. Caroleo lied.

16. In January 2024, Caroleo went to dinner with a woman at Vergina Restaurant in Naples, Florida. This woman later contacted Mr. Taffer's business and advised that Caroleo, while acting as Mr. Taffer, "was extremely touchy and inappropriate." Caroleo showed her credit cards with Mr. Taffer's name on them as "proof" that he was indeed Mr. Taffer. Once again, Caroleo preyed upon someone while impersonating Mr. Taffer, causing Mr. Taffer to be falsely blamed for abhorrent, sexually inappropriate conduct.

5

17. It became all too common for Mr. Taffer to be blamed for or associated with various acts committed by Caroleo, as he continued to impersonate Mr. Taffer in Florida and New York unchecked for his personal gain and amusement.

18. Individuals who believed they had interacted with Mr. Taffer later confirmed that Caroleo was actually the person they met, and that he was holding himself out as Mr. Taffer. Some individuals even took pictures with Caroleo believing him to be Mr. Taffer. For instance, the image below was taken in January 2024 when Caroleo was impersonating Mr. Taffer and presented a credit card with Mr. Taffer's name on it.



19. Despite Mr. Taffer's repeated demands, through counsel, for Caroleo to cease and desist, Mr. Taffer and his team continued to receive reports of new impersonation incidents, with

6

Caroleo engaging in bad behavior that he knew would be attributed to and blamed on Mr. Taffer. Witnesses reported and confirmed seeing Caroleo, posing as Mr. Taffer, acting drunk and belligerent in public, damaging personal property, and attempting to utilize Mr. Taffer's celebrity to solicit free items and other perks.

    d. **The First Lawsuit: Taffer Sues Caroleo in Federal Court to Prevent Caroleo From Continuing to Impersonate Him – Caroleo Executes a Settlement Agreement and Agrees to Discontinue His Deplorable Conduct.**

20. Having spent decades building his hard-earned reputation and successful businesses, all of which have been damaged and remain at risk of complete annihilation at the hands of a devious and unrelenting impersonator, and unable to convince Caroleo to voluntarily stop impersonating him, Mr. Taffer had no choice but to turn to the court system for assistance in seeking protection from, and retribution for, Caroleo's acts.

21. In March 2024, Mr. Taffer sued Caroleo in United States District Court for the Middle District of Florida, case number 24-cv-242-KCD (the "Federal Case").

22. *While the Federal Case was pending*, Caroleo visited Peconic Diner in Riverhead, New York on or about June 27, 2024, and posed as Mr. Taffer, offering his (Mr. Taffer's) professional advice to members of the staff on how and what to improve upon. Mr. Taffer was made aware of Caroleo's actions by a member of the staff, who confirmed that Caroleo was in fact the person that posed as him.

23. After months of costly litigation, Mr. Taffer agreed to resolve his claims in exchange for Caroleo's express agreement to stop impersonating him. The parties executed a settlement agreement dated September 27, 2024 (the "Settlement Agreement"), wherein Caroleo agreed that he would, once and for all, discontinue his impersonation of Mr. Taffer. *See* Ex. A (Settlement Agreement).

7

24. In Paragraph 1(a) of the Settlement Agreement, under the heading "**Caroleo's Agreement Not to Impersonate Taffer**," Caroleo agreed "he will not affirmatively represent himself to any third-party or through any medium as Taffer[,]" including but not limited to, "[t]ell[ing] people that he is Taffer or the guy from 'Bar Rescue'[.]" *See* Ex. A, pp. 1-2. Furthermore, Paragraph 1(b) further provides, "if Caroleo perceives that a third-party mistakenly believes he is Taffer or the guy from 'Bar Rescue,' he will undertake to correct such mistaken belief." *Id.*, p. 2.

25. In the event Caroleo failed to uphold his duties and obligations in breach of the Settlement Agreement, Paragraph 8 entitles Mr. Taffer to specific remedies, including but not limited to: (a) "an injunction, specific performance and other equitable relief in connection with Caroleo's breach of Paragraphs 1(a) and 4 of [the] Settlement Agreement (without the posting of bond or other security);" and (b) "$10,000 as liquidated damages" or, in Mr. Taffer's sole discretion, "actual damages according to proof instead of the aforementioned liquidated damages." *See* Ex. 2, pp. 3-4.

26. Paragraph 9 further provides that "if any legal action or proceeding it initiated to enforce or interpret any terms of this Settlement Agreement, then the prevailing party shall be entitled to recover his expenses, costs, and outside attorneys' fees." *See* Ex. 2, p. 4.

    e. **Caroleo Breaches the Settlement Agreement**.

27. On or around March 28, 2025, Caroleo breached the Settlement Agreement by impersonating Mr. Taffer at "Bar Tulias's," located at 462 5th Ave., S. Naples, Florida 34102. A witness asked, "has anyone ever said you look like Jon Taffer," to which Caroleo responded, "I am Jon Taffer." Two night later, Caroleo struck again.

28. On or about March 30, 2025, Caroleo was sitting at the "Hops & Vines" bar area within "Seed to Table," located at 4835 Immokalee Road, Naples, Florida 34110, waiting for a female companion to join him.

29. At some point between 8-10 PM EST, an individual sitting in the same bar area noticed Caroleo and thought he looked familiar. That individual then approached Caroleo and asked him if he was Jon Taffer. In response, Caroleo affirmatively stated, "Yes, I am."

30. That same night, the individual messaged the real Mr. Taffer's Facebook business account about their interaction at "Seed to Table," which was how Mr. Taffer learned of the latest impersonation attempt.

31. After being shown images of Caroleo (specifically the four images appearing in Paragraph 3 of this Complaint), which were sourced from Caroleo's public Instagram account, the individual confirmed that Caroleo was indeed the man he met at "Seed to Table" claiming to be Mr. Taffer.

32. At no point in time was this individual hired, retained by, or instructed by Mr. Taffer or his agents to entrap Caroleo or encourage him to breach the terms of the Settlement Agreement.

   f. **Caroleo Preys Upon the Public and His Conduct Risks Destruction of Mr. Taffer's Good Name, Image, and Career**.

33. Despite holding himself out to be a man of "God," Caroleo has demonstrated that his passions lie more with deception. Caroleo's actions have continued to expose Mr. Taffer to ridicule and shame, causing substantial and irreparable damage to Mr. Taffer's personal and professional reputation, and violated his rights, including his right to control his name and likeness. For years, Mr. Taffer has been forced to spend money having his counsel respond to allegations that relate to Caroleo's conduct and to try to get Caroleo to stop impersonating him. Now, despite

9

executing the Settlement Agreement, Mr. Taffer has been forced to expend more money and resources to enforce the terms and conditions Caroleo agreed to under the Settlement Agreement.

34. As demonstrated above, Caroleo's impersonation efforts are actively ongoing and represent a continuous threat to Mr. Taffer and his interests, and to the unwitting victims of his deception, and constitutes a breach of the Settlement Agreement.

35. The full extent of Caroleo's misconduct while acting as Mr. Taffer and the devastating potential impact remains unknown, but what stands clear and obvious is that Mr. Taffer and his name have already been wrongfully associated with Caroleo's string of misconduct, and it will not end without court intervention. Mr. Taffer seeks to finally put an end to this nightmare.

## COUNT I
### (BREACH OF SETTLEMENT AGREEMENT)

36. Plaintiff incorporates, adopts, and realleges the allegations set forth in Paragraphs 1 through 35 above as if fully set forth herein.

37. Caroleo voluntarily entered into the Settlement Agreement and agreed to the terms and conditions contained therein.

38. The Settlement Agreement is enforceable.

39. Caroleo materially breached Paragraph 1 of the Settlement Agreement by representing himself to be Mr. Taffer after agreeing not to.

40. As a result of Caroleo's material breach, Mr. Taffer has been damaged and is entitled to enforce his rights under the Settlement Agreement.

41. Paragraph 8(a) of the Settlement Agreement states:

Each of the Parties shall be entitled to an injunction, specific performance and other equitable relief in connection with the other's breach of Paragraphs 5 and/or 7 of this Settlement Agreement (without the posting of a bond or other security). ***Taffer, alone, shall be entitled to an injunction, specific performance and other equitable***

*<u>relief in connection with Caroleo's breach of Paragraphs 1(a) and/or 4 of this Settlement Agreement (without the posting of a bond or other security)</u>*.

(emphasis added).

42. Paragraph 8(b) of the Settlement Agreement states:

In the event that Caroleo is found to have breached Paragraphs 1(a), 4, 5 and/or 7 of this Settlement Agreement, Caroleo shall be required to pay Taffer $10,000 as liquidated damages. However, the Parties agree that, in his sole discretion, Taffer shall have the right to seek actual damages according to proof instead of the aforementioned liquidated damages.

43. Paragraph 9 of the Settlement Agreement, entitled "Attorneys' Fees," states "if any legal action or proceeding is initiated to enforce or interpret any terms of this Settlement Agreement, then the prevailing party shall be entitled to recover his expenses, costs, and outside attorneys' fees."

44. Mr. Taffer now seeks temporary and permanent injunctive relief against Caroleo without the need to post a bond or other security as agreed to in the Settlement Agreement, as well as damages pursuant to Paragraph 8(b) and attorneys' fees and costs associated with this enforcement action under Paragraph 9.

**WHEREFORE,** Plaintiff Jon Taffer demands judgment against Defendant Victor Caroleo for injunctive relief and damages as set forth under the Settlement Agreement, along with attorneys' fees and costs expended in this breach and enforcement action, and for any other relief this Court deems just and proper. Plaintiff Jon Taffer reserves his right to amend this pleading to include a claim for punitive damages.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Jon Taffer hereby demands a trial by jury in this action on all claims so triable.

Dated: May 5, 2025.                    Respectfully submitted,

**COHEN & MCMULLEN, P.A.**
Counsel for Plaintiff Jon Taffer
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 523-7774
Facsimile: (954) 523-2656
Email: service@floridajusticefirm.com

By: <u>  Bradford Cohen, Esq.  </u>
    BRADFORD M. COHEN, ESQ.
    Florida Bar Number: 118176
    MICHAEL J. MCMULLEN, ESQ.
    Florida Bar Number 106109

# **<u>Exhibit A</u>**

# CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This AGREEMENT (the "**Settlement Agreement**"), dated September 27, 2024 (the "**Effective Date**"), is made and entered into by Victor Caroleo ("**Caroleo**"), on the one hand, and Jon Taffer ("**Taffer**"), on the other hand. Caroleo and the Taffer will sometimes be referred to individually as a "**Party**" or, collectively, as the "**Parties**."

## RECITALS

A. WHEREAS, Taffer is a public figure who is commonly known for his work in producing and hosting the television show "Bar Rescue" on the Paramount Network;

B. WHEREAS, Caroleo is an individual who holds himself out as a prophet and preacher and hosts sermons online and on television;

C. WHEREAS, since at least as early as 2017, Taffer alleges that Caroleo has taken steps to impersonate Taffer; to present himself as Taffer to members of the public, including by obtaining credit cards in Taffer's name; to obtain attention and free or discounted services or products by people who believe he is Taffer; and to obtain dates and other contact with women who believe he is Taffer, some of whom have alleged sexual assault and sexual harassment by an individual whom they believed was Taffer;

D. WHEREAS, on March 15, 2024, Taffer filed a complaint (the "**Complaint**") against Caroleo in the United States District Court for the Middle District of Florida, *Jon Taffer vs. Victor Caroleo* (Case No.:24-cv-242), asserting causes of action for injunctive relief and common law invasion of privacy – misappropriation (the "**Lawsuit**") based upon the allegations set forth in Recital C;

E. WHEREAS, on June 21, 2024, Caroleo moved to dismiss the Complaint and, in response, Taffer sought leave to amend his Complaint, which was granted;

F. WHEREAS, on August 9, 2024, Taffer filed an Amended Complaint alleging an entitlement to injunctive relief pursuant to Fla. Stat. §§ 812.012, 812.014, and 812.035; and further alleging claims against Caroleo for intentional infliction of emotional distress, defamation by implication, and misappropriation (the "**Amended Complaint**");

G. WHEREAS, in lieu of the time and expense of further litigation, the Parties wish to settle and resolve any and all disputes between them and fully and finally release any and all claims that might exist between them;

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained herein, and further good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties incorporate by reference as terms of this Settlement Agreement all of the Recitals set forth above and further agree as follows:

## SETTLEMENT TERMS

1. <u>Caroleo's Agreement Not to Impersonate Taffer.</u>

   a. From the Effective Date, Caroleo agrees that he will not affirmatively represent himself to any third-party or through any medium as Taffer. This agreement includes, but is not limited to, an agreement that Caroleo will not:

1

      i. Tell people that he is Taffer or the guy from "Bar Rescue";

      ii. Obtain and/or present credit cards and other forms of identification bearing Taffer's name;

      iii. Represent himself to be Taffer for any business/commercial purpose;

      iv. Sign any papers or documents using the name "Taffer"; or

      v. Use the name "Taffer" or phrase "Bar Rescue" as the account name or in the account description of any social media account or e-mail account that he creates.

    b. From the Effective Date, if Caroleo perceives that a third-party mistakenly believes that he is Taffer or the guy from "Bar Rescue," he will undertake to correct such mistaken belief. Nevertheless, notwithstanding anything to the contrary in this Settlement Agreement, Caroleo shall not be responsible for a third-party's mistaken belief that he is Taffer or his failure to correct such mistaken belief, unless such mistaken belief or his failure to correct such mistaken belief has been caused by Caroleo's affirmative conduct in violation of Paragraph 1(a) or statements or other conduct in violation of the law.

2. <u>Payment.</u> Within ten (10) business days of the complete execution of this Settlement Agreement, Caroleo will deliver to Taffer the amount of ███████████████ USD (the "**Settlement Payment**"). The payment shall be in the form of a wire transfer made payable to the Russ, August & Kabat, LLP Client Trust Account as follows:

    Bank Address:
        Banc of California
        3 MacArthur Place
        Santa Ana, CA 92707

    Account Address:
        12424 Wilshire Blvd., 12th Floor
        Los Angeles, CA 90025

    Wire ABA Number: 322274527
    Account Number: 2030572237

3. <u>Dismissal.</u> Within five (5) business days of Taffer's receipt of the Settlement Payment, Taffer will dismiss the Lawsuit with prejudice.

4. <u>Non Disparagement.</u> Caroleo agrees that he will not, directly or indirectly via a third party or any other means, disparage, defame or make derogatory remarks about (whether orally or in writing), or direct or authorize anybody else to disparage, defame or make derogatory remarks about (whether orally or in writing), Taffer or his businesses or products, to third parties or in any media whatsoever, including but not limited to television, cable, radio, newspapers, books, magazines, internet websites of any kind, recordings (audio, video, and digital or computer-based), disks (audio, video and digital or computer-based), theatrical productions of any kind, broadcasts, "blogs" and message boards, "tweets" and all other types of electronic, social, and digital media, in any language and in any jurisdiction, whether now known or subsequently developed.

5. <u>No Statements.</u>  The Parties agree that they will not make any public or private statement about the resolution of the Lawsuit.  Notwithstanding the foregoing, if somebody asks either Party about the status of the Lawsuit, he is permitted to say only that "it was resolved."  If, in the future, Caroleo is asked whether he is Jon Taffer, he shall respond that he is not.

6. <u>Releases.</u>

    a. <u>Release of Caroleo</u>

Except with respect to the obligations created by this Settlement Agreement, upon the complete execution of this Settlement Agreement and receipt of the Settlement Payment, Taffer forever releases and discharges Caroleo and any of his heirs, successors, assigns, representatives, employees, independent contractors, agents, attorneys, and employees, from the claims, causes of action, liabilities, damages, and losses for the events claimed in the Complaint, Amended Complaint, and Lawsuit.

    b. <u>Release of Taffer</u>

Except with respect to the obligations created by this Settlement Agreement, upon the complete execution of this Settlement Agreement, Caroleo forever releases and discharges Taffer and any of his heirs, successors, assigns, representatives, employees, independent contractors, agents, attorneys, and employees, from any claims, causes of action, liabilities, damages, and losses that could have been brought in connection with the Lawsuit or the defense thereof.

7. <u>Confidentiality</u>.

Except as otherwise set forth in Paragraph 5 of this Settlement Agreement or as needed to enforce the Settlement Agreement, the Parties represent and agree that they shall keep the terms of this Settlement Agreement confidential (the "Confidential Information"); provided, however, that the Parties may disclose the Confidential Information to their lawyers, accountants, insurers, tax preparers, and financial advisors, on an as-needed basis, and provided the lawyers, accountants, insurers, and/or tax preparers agree in advance to maintain the confidentiality of such information and to abide by the Notice Obligation described below.

Notwithstanding the foregoing, any Party requested or required pursuant to valid court order, judicial process or regulatory authority, validly-issued and properly served subpoena, or other legal compulsion to reveal any Confidential Information (1) may disclose the existence of the Settlement Agreement (but not its terms), and (2) agrees to give the other Party prompt notice of such request or requirement prior to providing additional Confidential Information, so that the other Party or Parties may seek to obtain legal relief to prevent the disclosure of such Confidential Information (the "Notice Obligation").  No Party shall produce any material or information in response to a subpoena or other compulsory process without the prior written consent of the other Party, except as ordered by a court of competent jurisdiction.  The Notice Obligation shall not apply where a court order, judicial process or regulatory authority, validly issued subpoena, or other legal compulsion specifically prohibits the receiving Party from complying with it.

8. <u>Remedies</u>.

In addition to whatever non-contractual claims he might have against Caroleo, Taffer shall be entitled to seek monetary damages in connection with Caroleo's breach of any of the terms of this Settlement Agreement.  Caroleo further acknowledges and agrees that, in the event Caroleo breaches the obligations of this Settlement Agreement, Taffer will suffer great and irreparable harm.  As a result, in

3

addition to any other remedies Taffer may have, Caroleo agrees to the following remedies, which are not intended to be a penalty:

a. Each of the Parties shall be entitled to an injunction, specific performance and other equitable relief in connection with the other's breach of Paragraphs 5 and/or 7 of this Settlement Agreement (without the posting of a bond or other security). Taffer, alone, shall be entitled to an injunction, specific performance and other equitable relief in connection with Caroleo's breach of Paragraphs 1(a) and/or 4 of this Settlement Agreement (without the posting of a bond or other security); and

b. In the event that Caroleo is found to have breached Paragraphs 1(a), 4, 5 and/or 7 of this Settlement Agreement, Caroleo shall be required to pay Taffer $10,000 as liquidated damages. However, the Parties agree that, in his sole discretion, Taffer shall have the right to seek actual damages according to proof instead of the aforementioned liquidated damages.

The Parties agree that the foregoing terms are not intended to be a penalty, but rather a reasonable measure of damages, based upon their experience and given the nature of the losses that might result from Caroleo's breach of the terms that are material to this Settlement Agreement.

Notwithstanding the foregoing, Taffer shall not be entitled to the remedies set forth in this Paragraph 8 if Caroleo can prove that any purported breach of the Settlement Agreement by Caroleo was procured by Taffer, or an agent acting on Taffer's behalf, to entrap Caroleo or encourage him to breach the terms of this Settlement Agreement. Taffer further agrees that (i) neither he nor anyone acting on his behalf shall attempt to entrap Caroleo and/or encourage him to violate Paragraph 1, and (ii) that Caroleo may seek injunctive relief in the event that Taffer breaches this agreement not to entrap and/or encourage Caroleo to breach Paragraph 1.

9. <u>Attorneys' Fees</u>. The Parties acknowledge and agree that each of them will bear his own costs, expenses and attorneys' fees arising out of /or concerned with the Lawsuit, their dispute, and the negotiation, drafting and execution of this Settlement Agreement. However, if any legal action or proceeding is initiated to enforce or interpret any terms of this Settlement Agreement, then the prevailing party shall be entitled to recover his expenses, costs, and outside attorneys' fees.

10. <u>No Admission</u>: No court or administrative agency has made any final conclusive finding as to the merits of the Lawsuit or any allegations as contained in the Complaint or Amended Complaint. The Parties understand and agree that neither the making of this Agreement nor anything contained herein shall, in any way, be construed or considered to be an admission by Caroleo of fault, guilt, or noncompliance with any federal, state, or local statute, public policy, tort law, contract law, common law or of any other wrongdoing whatsoever. To the contrary, Caroleo expressly denies any and all allegations made against him in the Lawsuit.

11. <u>Miscellaneous Terms.</u>

a. <u>Notices</u>. All notices required or desired to be given or delivered under the terms of this Settlement Agreement shall be in writing and signed by the party so giving notice, and shall be either personally delivered; transmitted by e-mail; or mailed by registered or certified mail, return receipt requested. Notices or deliveries shall be effective (i) if mailed, upon the earlier of (a) receipt or (b) seventy-two (72) hours after deposit (postage prepaid) in the United States mail; (ii) if by e-mail, upon transmission; or (iii) if delivered in person, upon such delivery.

4

Any of the Parties to this Settlement Agreement may, from time to time, change his or her address for receiving notices by giving written notice thereof to each of the other Parties to this Settlement Agreement in the manner outlined above. As of the date of this Settlement Agreement, notices shall be delivered as follows:

| For Caroleo: | For Taffer: |
|---|---|
| Michael C. Mulè, Esq.<br>Milman Labuda Law Group PLLC<br>3000 Marcus Avenue, Suite 3W8<br>Lake Success, NY 11042<br>michaelmule@mllaborlaw.com | Michael James McMullen, Esq.<br>Bradford M. Cohen, Esq.<br>Cohen & McMullen, P.A.<br>1132 SE 3rd Avenue<br>Fort Lauderdale, FL 33316<br>michael@floridajusticefirm.com<br><br>With a copy to:<br><br>Stanton L. Stein, Esq.<br>Ashley R. Yeargan, Esq.<br>Russ, August & Kabat P.C.<br>12424 Wilshire Blvd., 12th Floor<br>Los Angeles, CA 90025<br>Facsimile: 310.500.3501<br>lstein@raklaw.com<br>ayeargan@raklaw.com |

b.      **Representations and Warranties.**  Each Party hereby represents and warrants to the other that: (a) he is the sole and rightful owner of all rights, title and interests in and to every claim, interest and other matter which is released herein; (b) he has not heretofore assigned or otherwise transferred, and shall not hereafter assign or otherwise transfer, any interest in any claim, interest or right which he may have against the other Party that are released and discharged pursuant to this Settlement Agreement; (c) no promise, inducement, or warranty not herein expressed and concerning the subject matter hereof has been made to him by any other Party to induce him or her to execute this Settlement Agreement; and (d) each person executing this Settlement Agreement on behalf of each Party represents and warrants that the person executing this Settlement Agreement has the authority to do so.

c.      **Governing Law and Dispute Resolution.**  This Settlement Agreement and the rights and obligations of the Parties shall be construed, interpreted and enforced in accordance with the laws of the State of Florida. Any and all disputes which in any way concern, relate to or arise out of this Settlement Agreement, or the subject matter of this Settlement Agreement, shall be adjudicated in the state or federal courts of Collier County or any other county in the State of Florida pursuant to §47.011, Fla. Stat., and the Parties consent to the jurisdiction of such state and federal courts.

d.      **Entire Agreement.**  This Settlement Agreement states the entire agreement among the Parties with respect to the subject matter herein and supersedes their prior agreements, negotiations, or understandings. No modification, alteration, or amendment hereof shall be binding or valid unless in writing and signed by the Party to be charged with such modification, alteration, or amendment. No waiver of any term, covenant, or condition of this Settlement Agreement shall be construed as a waiver of any other term, covenant, or condition, nor shall any waiver of any default under this Settlement Agreement be construed as a continuing waiver thereof or as a waiver of any other default.

...

e.  **Fairness of Negotiation, Execution and Substance of Agreement**:  Each Party represents that he is (a) competent to review and understand the provisions of this Settlement Agreement, and has read every word of this Settlement Agreement before signing it, and (b) not acting under the influence of any medication, mind-altering substance, or stress impairing his ability to fully comprehend the nature or effect of his actions in entering into this Settlement Agreement. The Parties acknowledge and agree that they have freely and voluntarily negotiated and executed this Settlement Agreement, and that this Settlement Agreement is fair, equitable and reasonable for each of them.

f.  **Consultation with counsel**.  Each of the Parties acknowledges that he has carefully read and fully understands this Settlement Agreement, and that he has had the opportunity to raise any questions, concerns or issues he may have in connection with the Settlement Agreement, or its terms.  The Parties further each acknowledge that he has had the opportunity, and taken it to the extent he deemed appropriate and necessary, to consult legal counsel of his choice, in connection with this Settlement Agreement and consents to all of the terms and provisions contained herein knowingly, voluntarily and without any reservation whatsoever.

g.  **Construction and Interpretation.**  Neither this Settlement Agreement nor any individual term thereof shall be construed for or against any Party on the basis that the Settlement Agreement or any individual term thereof was prepared by such Party.  The Settlement Agreement shall be construed in all respects as if the Parties had jointly prepared it, and any uncertainty or ambiguity shall not be interpreted for or against any one Party.  The finding that any provision in this Settlement Agreement is invalid, illegal or unenforceable shall not affect any other provision of this Settlement Agreement and this Settlement Agreement shall be construed and enforced as if any such provision so found were not contained herein.

h.  **Binding on Successors and Others.**  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties' respective heirs, successors, predecessors, and permitted assigns, including, but not limited to, any trustee, receiver, or other representative in any bankruptcy case, or any other state or federal proceeding, involving any Party, as well as any and all present and former employees, agents and attorneys of the Parties, or any subsequent permitted assignee or transferee of any rights of any of the Parties, to the extent permitted by law.

i.  **Headings**.  The various headings in this Settlement Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Settlement Agreement or any provision hereof.

j.  **Execution in Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same agreement.  This Settlement Agreement may also be executed through signatures transmitted via facsimile or electronically, and said signatures shall fully bind the Parties hereto.

IN WITNESS WHEREOF, the parties hereto have signed and delivered this Settlement Agreement, which shall be deemed effective as of the date set forth above.

_____          _____
                                                                      DocuSigned by: [signature]
                                                                      66E81BEDCEE44E4...

Victor Caroleo                                                 Jon Taffer


Vic Caroleo (Sep 30, 2024 10:30 EDT)