# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                              .
Siteone Landscape Supply,     .   Docket #CV-23-2084 (GRB)(SIL)
LLC,                          .
                              .
          Plaintiff,          .
                              .   United States Courthouse
              V.              .   Central Islip, New York
                              .   June 12, 2025
Nicholas Giordano, et al.,    .   10:01 a.m.
                              .
          Defendants.         .
...............................
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For The Plaintiff:              Evan Gibbs, Esq.
                                Troutman Pepper Hamilton
                                Sanders, LLP
                                Ste. 3000
                                600 Peachtree Street, NE
                                Atlanta, GA 30208

                                Kevin P. Mulry, Esq.
                                Farrell Fritz, PC
                                400 RXR Plaza
                                Uniondale, NY 11556

                                Paris Kent, Esq.
                                Troutman Pepper Hamilton
                                Sanders, LLP
                                875 Third Ave.
                                New York, NY 10022

For The Defendants:             Thomas A Bizzaro, Jr, Esq.
                                Law Offices of
                                Thomas A. Bizzaro, Jr., P.C.
                                133C New York Avenue
                                Huntington, NY 11743

2

Michael C. Mule, Esq.
Milman Labuda Law Group, PLLC
3000 Marcus Ave.-Ste. 3w8
Lake Success, NY 11556

Audio Operator:

Transcribing Firm:               Writer's Cramp, Inc.
                                 1027 Betty Lane
                                 Ewing, NJ 08628
                                 609-588-8043


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

THE CLERK:  All rise.  Next case District Court for the Eastern District of New York is now in session, the Honorable Steven I. Locke presiding.  Calling case 23-CV-2084, <u>Siteone Landscape Supply, LLC versus Giordano et al</u>.  Counsel, please state your appearance for the record.

MR. GIBBS:  Good morning.  This is Evan Gibbs on behalf of Plaintiff Siteone Landscape Supply.

THE CLERK:  Just make sure your mic is on.

MR. GIBBS:  Good morning.  This is Evan Gibbs here on behalf of Plaintiff Siteone Landscape Supply.  And with me are my two co-counselors Paris Kent and Kevin Mulry.

THE COURT:  Good morning.

MR. MULRY:  Good morning, Your Honor.

MS. KENT:  Good morning.

MR. BIZZARO:  Good morning, Your Honor.  Thomas A. Bizzaro Jr., Law Offices of Thomas A Bizzaro Jr. PC attorney for Defendants with co-counsel Michael Mule of Milman Labuda Law Group.  Good morning.

THE COURT:  Good morning.  Please be seated.

MR. MULE:  Good morning.

THE COURT:  We have a number of motions to get through.  It seems like some of this may be obviated, but I'm not sure.  First, we have Docket Entry 206 which seeks to be -- it has to do with a Motion to Quash.  But then I think I was given the documents to review in-camera that we're talking

4

about.  Is that right?

        MR. GIBBS:  Well, Your Honor, so Docket #206, that is a -- it's basically a Motion to Compel that we filed with respect to a third party Nextpoint Law Group.

        THE COURT:  Right.  Sorry, I said Motion to Quash.

        MR. GIBBS:  That's right.  That's right, Your Honor. And so that particular one, when we briefed that, we supplied a copy to the third party, to Nextpoint.  They did not respond on the docket.  So I believe that can be categorized as an unopposed motion at this point.

        THE COURT:  Well, let me ask you this.  First of all, there's no indication on the docket that they were served with your motion.

        MR. GIBBS:  We did serve them, Your Honor.

        THE COURT:  Yes.  But it's not on the docket.  And I'm not taking your word for it because what I would do is order them to appear.

        MR. GIBBS:  Understood.

        THE COURT:  And so I wouldn't rule on this now anyway.  But that being said, this is to get them to respond to a subpoena which we had created a mechanism for dealing with the last time we met.

        MR. GIBBS:  Correct.

        THE COURT:  And then subsequently and I know Mr. -- maybe you're the right person to ask this question.  I was

given -- I was e-mailed a bucket of documents that appear to be these documents.  Are you aware of that?  Do you know anything about that?

MR. GIBBS:  So yes, Your Honor.  So the documents that you sent, they are -- they're related.  But they're from two separate -- I think there are three categories of documents too.

THE COURT:  Yes.

MR. GIBBS:  So two categories come from two other third parties.

THE COURT:  Yes.

MR. GIBBS:  There was WeRecoverData and MRD, I think MRD Services, I believe.  And then there were, I think three -- the third category would just be, I think there were three e-mails among defense counsel and their client.  So the Nextpoint documents have not been -- as far as I know, none of those have been produced to Your Honor for in-camera review.

THE COURT:  Okay.  Well, let's find out.  Mr. Mule, what's the story?

MR. MULE:  Yeah, I can clarify, Your Honor.

THE COURT:  You can say seated.  That's fine.

MR. MULE:  Okay.  So the MRD is basically a subcontractor of Nextpoint.  So in that production which we gave --

THE COURT:  Right.

MR. MULE:  -- to you the redacted and unredacted, it would contain a lot of Nextpoint's communications.

THE COURT:  Well, does it contain everything that would --

MR. MULE:  No.

THE COURT:  -- be produced in response to a subpoena?  It does not.

MR. MULE:  It does not.

THE COURT:  So then this is still outstanding.

MR. MULE:  Correct.

THE COURT:  Okay.  So then, what I'm going to direct you to do Mr. Gibbs is I'm going to deny your motion without prejudice.  I want you to refile it and then I guess there's a retaining lien issue --

MR. GIBBS:  That's right, Your Honor.

THE COURT:  -- in their letter that's not addressed in your motion.  You may not have anticipated it and that's fine.  But why don't we have a more fulsome motion where you can also address that?  Serve it on Nextpoint with something on the docket that indicates for the record that we know it was served.  So when all of this goes up to the circuit with ten thousand issues, this one will not be among them and we'll deal with it that way.

MR. GIBBS:  Sounds good.  We can do that, Your Honor.

7

THE COURT:  Let me just type this up or it's going to be like it never happened.  So then Mr. Mule, you have no position with respect to this motion?

MR. MULE:  I have no position, Your Honor.

THE COURT:  Okay.  Wew'll indicate that too.

(Pause in proceedings)

THE COURT:  Mr. Gibbs, how long will it take you to serve this Motion to Compel, re-serve this Motion to Compel?

MR. GIBBS:  We should be able to do it, I would say, by the end of the week.

THE COURT:  Okay.  You can have more time if you want.  This is not it -- is that enough?

MR. GIBBS:  Today is Wednesday.  Let's maybe by next -- maybe a week from today.

THE COURT:  Okay.

MR. GIBBS:  Next Thursday.

THE COURT:  Let me just pull up the calendar.  Okay. So June 19th.

(Pause in proceedings)

THE COURT:  I'm going to give them two weeks to oppose, just because they're not a party.  We're going to make it July 9th to allow for the holiday.  You want a week for reply, Mr. Gibbs?  Or do you --

MR. GIBBS:  Yes, Your Honor.  I suppose that that may be helpful, just week.

8

THE COURT:  I'm anticipating that you may get another argument that you didn't anticipate and therefore can address it on papers.

MR. GIBBS:  Thank you, Your Honor.

THE COURT:  And then I'm going to leave it to you to file all the papers on ECF in case there's some issue.  Where are they based, for example?

MR. GIBBS:  They're in Arizona, Your Honor.

THE COURT:  Oh, do you know is their lawyer here or is their lawyer also in Arizona?  They were --

MR. GIBBS:  He's also in Arizona, I believe, that was my impression.

THE COURT:  But the person who responded was a partner of Nextpoint, right?  It wasn't a separate counsel, is that right?

MR. BIZZARO:  Correct.  Correct, Your Honor.

MR. MULE:  Yeah.  I believe that attorney is in Illinois.

THE COURT:  That attorney is what?

MR. MULE:  Is in Illinois.

THE COURT:  That's helpful.  Okay.  You know, and then I'll see if I can resolve it on the papers.  And if I need you to come in, I'll issue an order.  Okay.  That's first motion.  Next, I have Docket Entry 207, which is about -- oh, hold on one second.  Just one second.  This has to do with, I

9

guess a questionnaire.  Is that what you want to call it?
With respect to the text messaging, right?

        MR. BIZZARO:  That's correct, Your Honor.

        THE COURT:  Okay.  Candidly nothing like this was
contemplated in the prior proceedings, which I think is what
you're saying, Mr. Gibbs.

        MR. GIBBS:  Yes, Your Honor.

        THE COURT:  Here's my concern where I want to be
practical is they're -- they'll get a bunch of text messages,
presumably it will identify who they're from and who they're
to, at which point they're going to conduct further discovery
on it and get roughly the same information.  So what do you
want to do?

        MR. BIZZARO:  But Your Honor, this relates to other
motions that are on the table today.  But it really is
clarified and the issue is based upon and raised in Mr.
Gibbs's May 27th correspondence.  The reason why -- had we had
this questionnaire, we might not be here with these motions.
And the reason is, is there are so many questions that could
have been answered.  For example, the questionnaire iCloud
accounts.  There, if you look at Mr. Gibbs's May 27th letter,
there's missing text messages from multiple phones.  There's
devices that were lost.  There's people that have iPhones that
won't turn over their iPhones, but there's iCloud accounts,
right?  That's one of the items we asked for in the

questionnaire.  We didn't ask for it to burden them.  We asked for it because we foresaw this.  We foresaw there being more issues raised by the production, which we haven't even gotten.  Don't know what it is yet.  But there are so many issues here.  How can a seven billion dollar public company that has Siteone issued iPhones not have access to iCloud accounts, not have backed up phones before they factory reset them, not have made sure Mr. Black, the CEO. of a public company when he upgraded his phone, IT lost the phone, or he lost the phone.  No backup.  The problem becomes is -- there are so many questions, a lot of which will be answered at depositions.  Mr. Gibbs has agreed to produce custodians for discovery depositions, foliation type depositions.  I think some of the questions --

        THE COURT:  Foli what type of depositions?

        MR. MULE:  Discovery --

        MR. BIZZARO:  Discovery retention depositions.

        THE COURT:  Okay.  So like thirty-six depositions on informa -- on evidence retention?

        MR. BIZZARO:  Limited.

        THE COURT:  Okay.

        MR. BIZZARO:  Limited with --

        THE COURT:  Well, I would order that anyway, so I think it makes sense because --

        MR. BIZZARO:  Correct.  But part of the reason the

questionnaire is important, first of all make the depositions
a lot easier because I won't have to ask the same -- I have an
answer to the questionnaire on certain issues.  Do you have an
iCloud account?  Like Mr. Salsa for example, won't give over
his phone.  They have no access to it.  He might not have to
give over his phone.  If he has an iCloud account that's
controlled by the company, then they clearly have access to
his iCloud account and could probably get text messages or if
he didn't want to give over his device, but has a personal
iCloud account, he can give those messages, just the messages
to Siteone possibly.  I'm not an IT guy.  But there are
several issues.  For example, with Mr. Black, they say he went
from an Android to an iPhone and that you couldn't transfer
the text messages or they were corrupted.  I'm not an IT guy.
But they are a $7 billion company with an IT Department.  I
did a quick Google search last night.  There are multiple
programs that clearly, not only can transfer text messages
from an Android device to an iPhone, but they -- there's
programs to back them up at least.  This is Siteone with an IT
Department.

          THE COURT:  Okay.  You can keep saying over and over
they're a $7 billion company, whatever.  But let's just get to
it.  The problem with this case from the beginning has been
every effort to shortcut normal discovery procedures has
produced ten times the amount of motions that shouldn't be

necessary.  All this goes back to the lack of a clear ASI protocol, al of it.  Because everybody is kind of just taking one shot at a time and nothing is working.  So let me ask you this, Mr. Gibbs, what do you want to do?  Because the information is going to come out one way or the other.  It may make sense to forget all the niceties of discovery and just get the information for these questionnaires the short way rather than a long way.

MR. GIBBS:  Yes, Your Honor.  And I totally agree with that.  And I believe that a lot of the core information specifically related to the custodians, their phones, we've provided a lot of the core information.  Do they have a personal phone or a work phone?  A lot of that stuff, we've provided.  The problem with the questionnaire is that it asks stuff that's just -- it goes way too far.  So for example, there are five questions just about social media accounts.  You know, identify all social media accounts owner controlled by each custodian. So this is 10 different people, the majority of whom have no, you know, evidence preservation, there's no issues with their data.  There's no argument.  They didn't retain everything that was necessary.  So the questionnaire -- we're certainly happy to provide, you know, the same types of information that they provided to us, you know, that goes directly to the issue of the text messages.

For example, there's also -- there are a bunch of questions

13

around e-mail accounts and there's been no -- I mean, there's been no issue with any kind of preservation of e-mails.  You know, we've produced, gosh, at this point, you know, pushing, you know 80,000 e-mails at this point.  I mean there's just -- that stuff, it just goes too far.  You know, they're asking for, you know, all of the e-mail accounts that every person has, including the personal e-mail accounts.  And so we're fine.  We absolutely agree, Your Honor.  We want to streamline this.  But some of it, it just goes too far.

        THE COURT:  All right.  I'm pulling up the questionnaire right now.  Just give me a second.

        MR. BIZZARO:  Your Honor, if I may?

        THE COURT:  One second.

    (Pause in proceedings)

        THE COURT:  Yes.

        MR. BIZZARO:  I think I could save the Court some time because when this questionnaire was first served --

        THE COURT:  Right.

        MR. BIZZARO:  -- it was pre Mr. Gibbs's May 27th letter and pre single document being produced to us.  And so on May 9th even before that letter, Mr. Mule wrote to Your Honor, and we actually withdrew the social media request by -- I think the document on that is 209 on Pacer.  So I think we can withdraw the actual motion for the questionnaire because what I was trying to get to is Mr. Gibbs has agreed to

depositions limited on these issues.  So I could ask relevant questions at those depositions.  Nobody was looking to give anybody extra work.  We were trying to be more efficient.

       THE COURT:  Okay.  How does that sound, Mr. Gibbs?

       MR. GIBBS:  That's totally fine.  With the individuals that they want to depose on these, you know, sort of evidence document retention type depositions, I think this stuff is fair game.

       THE COURT:  Okay.  So then let's just do that.  In terms of document retention depositions, let's flesh that out a little more.  How many are you talking about Mr. Bizzaro?

       MR. BIZZARO:  I think I certainly want every one of the individuals identify -- the ten on the May 27th letter.  I don't -- I like to write to depose them, but I don't know that I need to because depending on what sub certain --

       THE COURT:  Well, I think that's what I was going to say.  You maybe taking ten of the same depositions if you do that.

       MR. BIZZARO:  Correct.  And additionally, I certainly need somebody from Siteone IT who can explain --

       THE COURT:  Well, that's what I was anticipating.  I mean, someone from Siteone IT who can explain this, I would think Mr. Gibbs, you don't have a problem with.

       MR. GIBBS:  I think that's fine, Your Honor.

       THE COURT:  Why don't we do that and then --

MR. GIBBS:  Well --

THE COURT:  Go ahead.

MR. GIBBS:  -- I will say as a point of clarification, Your Honor.

THE COURT:  Sure.

MR. GIBBS:  There were -- at the March 26th hearing, there were 10 specific custodians that, Your Honor --

THE COURT:  Right.

MR. GIBBS:  -- required that we do the search.  Five or six of those individuals there's no issue.  There are no issues with whether or not they preserved evidence.  They got a litigation hold, we have all of their text messages.

THE COURT:  Okay.

MR. GIBBS:  There's no basis for an evidence spoliation or evidence retention deposition with respect to those individuals.  Because there are no retention issues.

THE COURT:  Okay.

MR. GIBBS:  We have all of their data.  So it's a more limited universe --

THE COURT:  I'm waiting for the but.

MR. GIBBS:  Yeah.  So, there's a limited universe of individuals that we agree we told them, hey, you want to take -- there are some issues some of the data was lost, we're not going to fight you over those depositions.

THE COURT:  Okay.

MR. GIBBS:  So, it's those four or five individuals as opposed to the whole group of 10, so, I just want to make sure we're clear about that.

THE COURT:  Well, all right.  Mr. Bizzaro, do you want us to start with them and see how it goes?

MR. BIZZARO:  Well, I think we could choose four to start with including I guess five.  Four of the custodians plus one IT.  But I'd like Mr. Gibbs to tell me which custodian here he thinks there's not an issue with, because I could have an issue with every single one of them.  The letter is drafted in a certain way, but it doesn't talk about certain issues.

THE COURT:  All right.  You need to have a conversation about that because what I would be prepared to do, let's say you represent Mr. Gibbs that six of these people there were no issue with, I'd still let Mr. Bizzaro depose at least one of them to confirm your representation.  He's certainly going to be allowed to kick the tires.  You would not be the first lawyer to have a disconnect with a client over, you know, some kind of computer understanding.

MR. GIBBS:  Sure, Your Honor.

THE COURT:  So, all right, give me one second.  So, let's say it'll be five depositions just to put a number on it, how long would it take for those to be completed?

MR. GIBBS:  You know, just not knowing people's

schedules --

  THE COURT:  Yeah.

  MR. GIBBS:  -- I mean, I would say between five people, 30 to 60 days -- 45 days.

  THE COURT:  All right.  Let's say 45 days, can you get it done in 45 days, Mr. Bizzaro?

  MR. BIZZARO:  Oh, absolutely.

  THE COURT:  Okay.  So, let's give you a deadline for that.  Let's call it July 24th.  Okay.  So, that would be 207.  Next, I -- well --

  MR. GIBBS:  I think it should be 210, Your Honor.

  THE COURT:  I think so also, but I didn't want to jump the gun.  Okay.  Motion For An Extension Of Time.  This is to produce what you're already compiling, right?

  MR. GIBBS:  Yes, Your Honor.  So we're working to -- the request is we had agreed at the March 26th hearing to have everything produced within --

  THE COURT:  Right.

  MR. GIBBS:  -- I think it was 60 days to May 27th.  On the 27th, we produced about 47,000 documents.

  THE COURT:  Okay.

  MR. GIBBS:  The rest hit on our privilege screen --

  THE COURT:  Just give me a date for the rest of this.

  MR. GIBBS:  We are shooting for June 30th.  That is

18

our -- that's what we asked for.

        THE COURT:  Yeah.

        MR. GIBBS:  That is what we are targeting.  We're
making every effort to finish by then.

        THE COURT:  Okay.  You want to -- I'm going to give
it to him.  You want to make a record, Mr. Bizzaro?

        MR. BIZZARO:  No.  No, I don't want to waste
anybody's time.  June 30th is fine.  But Judge, I think what
-- you know, I've spoken to Mr. Gibbs and there could be a 40
to 50,000 document privilege log that's coming your way,
because that's what has been half of production and the 47,000
documents that have been received in accordance or in
compliance with Your Honor's March 26th, 2025 order are
admittedly a document dump.  I mean, other than learning the
price of begonias on Long Island in 2023, I didn't see
anything that's even relevant.  On top of that, there are
documents that don't even comply with the search protocol or
criteria.  It is a clear document dump.

        THE COURT:  Okay.

        MR. BIZZARO:  I think it said it produced 80 text
messages in that 80 gigabytes.  Eighty gigabytes, 80 text
messages, we can't find them.

        THE COURT:  Okay.  When you get the rest of -- wait
'til June 30th, you will get the rest of them.  You will have
a list of -- however many problems you have, you will meet and

19

confer at length and go through them and then I presume, you will make a motion.  And we will sit here all day and we will go through your motion.  I don't perceive any other way to do this.

MR. BIZZARO:  My only concern, Your Honor, is again, we want to push this case.  And at the end of the day, how long it could -- if the Court is giving them, let's just say a 25,000 document privilege log and what I've learned from the 47,000 documents, that equated to about 200,000 plus pages.  So, the Court could possibly get 200,000 plus pages of documents for in-camera review.

THE COURT:  Yes.  And I'm not going to do that.  So, we're going to come up with something else.

MR. BIZZARO:  Okay.  That's all I needed to know.  Thank you, Your Honor.

THE COURT:  There is no chance of me doing that.  I am the least generous when it comes to in-camera review.  Okay.  That was 210.  Next is 212, Motion to Compel In-Camera Review of the e-mails that you've already provided me.  Is that a fair way to articulate it?

MR. GIBBS:  Yeah.  Yes, Your Honor.

THE COURT:  Well, it's your motion.

MR. GIBBS:  I think it's 213 and -- excuse me.

THE COURT:  There's 212 and 213.  I have two motions.

MR. GIBBS:  Okay.

THE COURT:  213, I think has to do with the phone -- certain employees not giving access to phones that I got last night from Mr. Bizzaro.

MR. GIBBS:  Oh, that's right.

THE COURT:  Your motion is 212, which I think is to have in-camera review of documents that have since been provided to me for in-camera review.

MR. GIBBS:  That's right, Your Honor.

THE COURT:  I've taken the first pass at them. We'll get you something -- I was hoping to give you a ruling today.  We'll have something shortly on it.  But the motion is granted.  I'll look at it and you'll get something.

MR. GIBBS:  Thank you, Your Honor.  Okay.

(Pause in proceedings)

THE COURT:  And then last is something I received last night from Mr. Bizzaro.  Do you have it, Mr. Gibbs?

MR. GIBBS:  Yes, Your Honor.  We did get a copy last night.

THE COURT:  Okay.  How do -- he can get the information.  How do you want to handle this is what I'm saying?

MR. GIBBS:  Your Honor, so I think that -- I think what we need is just an order directed to these three individuals ordering them to turn over their personal cell

phones.

THE COURT:  Okay.  Here's my concern.  They don't want to do it and they are not here.  I don't know what your client's relationship which is with these employees.  But in an abundance of caution, I'm inclined to do it the long way that may prove easier in the end, which is to order you within five days to turn over their personal contact information so that Mr. Bizzaro can hire a process server to appear at their homes in the middle of the night with subpoenas and make them give it to us.  Or they can -- you can relay this information to them and say, "Hey, this is what the Court is going to do in a week unless you just -- we can do it the easy way."  And do it that way.  Because they should -- the Court should observe some rights for them here, and I don't want to hear that their rights were violated later.  So, I think we'll do it that way.  Mr. Bizzaro, how does that sound?

MR. BIZZARO:  That would be perfect.  I think that's the easiest way, Judge.

THE COURT:  I don't know if it's easiest, but it's easiest for me.  All right.  I'm sorry.  How many employees did you say it was?  Three or five?

MR. GIBBS:  It's three individuals.

THE COURT:  Okay.

MR. GIBBS:  I can give you their names if you need that.

            MR. BIZZARO:  It's four.

            THE COURT:  Four?  All right.  Why don't we have --
why don't you give me their names?

            MR. BIZZARO:  It's Passaro P --

            THE COURT:  Oh, I know they're in here somewhere.
Just spell everybody's name for me though.

            MR. BIZZARO:  Oh, you do it.

            MR. MULE:  Passaro --

            THE COURT:  First name, first and last name.

            MR. MULE:  Let's get his name.  Okay.  Gerard
G-E-R-A-R-D, Passaro P-A-S-S-A-R-O.

            THE COURT:  With P-A-S-S?

            MR. MULE:  P-A-S-S, correct.

            THE COURT:  A-R-O, okay.

            MR. MULE:  Kevin Peattie, P-E-A-T-T-I-E.

            THE COURT:  Okay.

            MR. MULE:  And Alex Trama, T-R-A-M-A.

            MR. BIZZARO:  And Your Honor, I --

            THE COURT:  You said four.

            MR. BIZZARO:  I do not see, which we should add is
Salsa.  Mr. Salsa --

            THE COURT:  Okay.

            MR. BIZZARO:  -- is in the same situation.  He has a
personal phone --

            MR. GIBBS:  He doesn't.  No, Mr. Salsa just has the

one phone that we collected.  There's not another one.

      THE COURT:  And you have it?

      MR. GIBBS:  There's -- yeah, we've collected his.
He doesn't have a second one.

      THE COURT:  Okay.

      MR. GIBBS:  He only has the one.

      THE COURT:  So, then just three, okay.

      MR. BIZZARO:  Well, hold on, Judge, because that's
part of the problem.  So, in Mr. Gibbs's letter with regard to
Mr. Salsa, this is the May 27th letter.  Mr. Gibbs writes,
"Mr. Salsa currently has one cell phone, an iPhone, which he
began using on or about January, 2024.  Mr. Salsa's text
messages dates back to March 11th, 2025.  Mr. Salsa's iPhone
had a 30-day auto-delete feature for his text messages for
some period of time, which is the apparent reason for the
limited scope of his text message data.  This is the only cell
phone Mr. Salsa has had during the relevant time period.  The
available text message data from this device has been
collected and searched by Siteone.  A total of 1402 text
messages were collected and searched from this device."  So,
the issue that we have with Mr. Salsa is -- well, first of
all, again, the questionnaire would have answered this
question.  Is this a Siteone issued phone or is this a
personal phone?  It doesn't say that.  That's why we didn't
include him in our original motion that Mr. Mule filed that

we're talking about right now, because we didn't know.

THE COURT:  But you're jumping all over the place.
The question is whether he refused to turn over a phone.  Mr.
Gibbs said he did not refuse.  You're saying there's all kinds
of problems, which there may be.  But that's not germane to
you serving a subpoena on him.  Mr. Gibbs --

MR. BIZZARO:  Okay.

THE COURT:  -- he'll produce him if you want.

MR. BIZZARO:  Okay.  I understand.  That's fine.

THE COURT:  Okay.

MR. MULE:  If I may add --

THE COURT:  Yes.

MR. MULE:  -- Your Honor.  One of the issues with
Mr. Salsa was they have a time period in January, 2024.  And
this is current.  So, they don't identify anything prior there
to -- which is part of the issue with Mr. Salsa.

THE COURT:  Okay.  That's still not a reason to get
a subpoena and serve him in the middle of the night when
there's been no indication that he will not appear.

MR. BIZZARO:  Yeah, I don't think --

THE COURT:  We're dealing with non-unwilling and
non-compliant witnesses.  There's no indication that he falls
in that bucket.

MR. BIZZARO:  Yeah, you're correct.  But if it was
his personal phone, as opposed to a Siteone phone, then I

would like to actually have a forensic exam on his phone.

THE COURT:  Well then, let's figure whether that's
the case.

MR. BIZZARO:  Mr. -- Evan, is it his Siteone phone?
Would you give us that phone?

THE COURT:  You could have meet and confers outside
of my courtroom.  You don't need me to --

MR. BIZZARO:  Okay.

THE COURT:  -- referee this.

MR. GIBBS:  That's right.  And he only -- I guess
the point here is he only has one phone in his possession.
There's not a -- there's not another phone that hasn't been
collected.

THE COURT:  Well, but he's -- well, it was from a
certain date.  It's possible that prior to that date, he had a
different phone.

MR. GIBBS:  Correct.

THE COURT:  What happened to the phone?

MR. GIBBS:  Correct, but he doesn't have -- exactly.

THE COURT:  He backed up the phone.  You can ask all
of those questions.  But that's not what your motion is about.

MR. BIZZARO:  Understood.

THE COURT:  Okay.

(Pause in proceedings)

THE COURT:  Okay.  The subpoenas would be directed

to cell phone access.  Is that a fair way to describe Mr. Bizzaro?

    MR. BIZZARO:  Yes, correct.

  (Pause in proceedings)

    THE COURT:  Okay.  And Mr. Gibbs, I'm going to direct you to provide a copy of this order to the individuals also with the sincere hope that once they see the order, you guys can get together and say, let's tap the brakes and we'll do this the easy way.  Okay?

    MR. GIBBS:  Yes, Your Honor.

    THE COURT:  All right.  That's all the motions I have right now.  I ask hesitatingly, is there anything else we need to talk about?

    MR. GIBBS:  I think we sent over a proposal to defense counsel and we spoke about it last week, a little bit about opening up the merits deposition process, establishing the number and timeframe for that.  I thought that perhaps we could address that today just to get one more thing off, keep the case moving along.

    THE COURT:  Okay.  Where's your head on that, Mr. Bizzaro?

    MR. BIZZARO:  I think Mr. Gibbs is asking us to proceed with depositions without a single document.  There's 50,000 documents that he's going to submit doing for an in-camera --

THE COURT:  Well, he's also just talking about a schedule right now.  I think you're going to start --

MR. BIZZARO:  I can certainly schedule the depositions after the spoliation of the --

THE COURT:  Yeah.  Well --

MR. BIZZARO:  -- discovery depositions, meaning yes.

THE COURT:  Yes, right.  Why don't you have a -- do you know who you wanted to depose?  Do you want to have a conversation about that now?  You want to --

MR. BIZZARO:  I think it makes more sense to sit.  We'll talk to our clients, let him talk to his, see availability, check calendars.

THE COURT:  Okay.  Why don't we do this.  I'll give you a deadline to submit a schedule to me on this topic so that you have time to talk about it.  I'll also allow for it to be after the production of the documents at the end of the month.  So why don't we do this --

MR. GIBBS:  And you're referring, Your Honor, to the sort of full merits -- the schedule for the full merit's depositions.

THE COURT:  Yes.  But I'm not as optimistic as you appear to be.  So, on July 10th, you'll file a joint status report concerning merit's depositions.

MR. BIZZARO:  Your Honor, in an effort to try to, you know, nip it in the bud.

THE COURT:  Yeah.

MR. BIZZARO:  Could we have some clarification.  Can we have these depositions in person in New York?

THE COURT:  Where is -- I mean, there are local rules that speak --

MR. BIZZARO:  Okay.

THE COURT:  -- to this, which I'm inclined to follow, unless there's a reason not to, which to my mind is usually medical problems.

MR. GIBBS:  At least, one of the individuals -- actually I think -- if we're talking about just the document retention depositions, I believe everyone but one person is here local.  The one person that's not local is in Atlanta and it's our CEO.  And he's in Atlanta.

THE COURT:  Okay.  And he's going to -- what was the last sentence?

MR. GIBBS:  I just said he's in Atlanta and that's where he lives.

THE COURT:  Okay.

MR. GIBBS:  And so, I don't know -- I mean I think we would typically, you know, have his deposition in Atlanta.  But we can certainly address that.

THE COURT:  Okay.  That's what the local rules provide for Mr. Bizzaro.  So, think about that.  You can work out what you can agree on.  If there's something you can't,

29

you let me know and I'll rule on it.  But we are more open to
remote depositions than say, pre-COVID.  So, you'll tell me
what you need to tell me, but all right.  So, by July 10th,
you'll submit a joint status report concerning merits
depositions.

    (Pause in proceedings)

       THE COURT:  And then what I'm going to do now is
just give you a control date in September, hoping you don't
need to come in before then.  If you do, we'll move stuff
around.  But I don't want to have nothing on the calendar for
this case.  So, Chris, what do I have in September?

       THE CLERK:  September 29th at noon.

       THE COURT:  Okay.

    (Pause in proceedings)

       THE COURT:  If you wind up coming in before that it
would behoove us all for you to remind me that we have a
September date, so we can remember to move it if we need to.
Is there anything else?

       MR. GIBBS:  Not from our perspective, Your Honor.

       THE COURT:  All right.  That's a start.  Mr.
Bizzaro?

       MR. BIZZARO:  Not from our side.

       THE COURT:  All right.  So long everybody, have a
good day.

       MR. GIBBS:  Thank you, Your Honor.

30

        MR. BIZZARO:   Enjoy the weekend.  Happy Father's

Day.

        THE COURT:  Likewise.

    (Court adjourned)


                    CERTIFICATION
I, Lewis Parham, certify that the foregoing is a correct
transcript from the electronic sound recording of the
proceedings in the above-entitled matter.


*Lewis Parham*                          6/30/25
_____        _____
**Signature of Transcriber**            **Date**