# EXHIBIT 6

1

2   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK

3   -------------------------------------------X
    SITEONE LANDSCAPE SUPPLY, LLC,

4                                    PLAINTIFF,

5
        v.                   Civil Action No.
6                            23-CV-02084-GRB-SIL

7   NICHOLAS GIORDANO, DOMINICK CAROLEO,
    VICTOR CAROLEO, NARROW WAY REALTY, LTD.,
8   NARROW WAY 2 LLC, THE GARDENDEPT. CORP.,
    GROUP 5 ASSOCIATES, LTD., 3670 ROUTE 112 LLC
9   and 94TH ST. LLC,

10                                   DEFENDANTS.
    -------------------------------------------X

11
                         October 15, 2025

12
                         9:03 A.M.

13

14                   DEPOSITION of SITEONE LANDSCAPE

15   SUPPLY, LLC, by a Corporate Representative,

16   DOUGLAS BLACK, taken by the Defendants, pursuant

17   to an Order and to the Federal Rules of Civil

18   Procedure, held at the above time and date via

19   videoconference, before Vanessa Walker, a

20   Shorthand Reporter and a Notary Public of the

21   State of New York.

22

23                LH REPORTING SERVICES, INC.
                  Computer-Aided Transcription
24                 50 Glen Street, Suite 316
                     Glen Cove, NY 11542

25

```
 1                        D. BLACK
 2           Q.    Can you briefly describe your job
 3    responsibilities presently for SiteOne Landscape
 4    Supply as the CEO?
 5           A.    As the CEO I'm responsible for the
 6    company's associates, operation, performance.
 7           Q.    Have you generally had the same job
 8    description or duties that you presently have
 9    now back in 2021 and 2022?
10           A.    Yes.
11           Q.    Are you aware of the term litigation
12    hold letter or have you ever heard of a
13    litigation hold?
14           A.    Yes.
15           Q.    Do you know if you personally
16    received the litigation hold in connection with
17    the Federal Court lawsuit commenced by SiteOne
18    Landscape Supply against Nicholas Giordano and
19    others?
20           A.    Yes.
21           Q.    Do you know how many litigations
22    holds you received in connection with this
23    lawsuit that you're testifying here today?
24           A.    I've been shown one that I signed.
25           Q.    And you personally.  Well, did you
```

```
 1                    D. BLACK
 2   sign an acknowledgement when you received that
 3   litigation hold?
 4        A.    I signed the hold letter.
 5        Q.    Is that the only litigation hold you
 6   personally received in connection with this
 7   lawsuit?
 8        A.    I believe so.  To the best of my
 9   knowledge, yes.
10        Q.    Have you received any litigation
11   holds in connection with any other lawsuits
12   involving Don Caroleo or Nick Giordano or the
13   defendants in this case?
14        A.    Not that I know of.
15        Q.    Do you recall what the litigation
16   hold that you received said in sum and
17   substance?
18        A.    It was basically that you have to
19   keep relevant content or content that would be
20   relevant to the case.
21        Q.    Who administered the litigation hold
22   to you personally?
23        A.    I'm not sure.
24        Q.    Do you know if it came from your
25   legal department, in-house SiteOne or outside
```

```
 1                          D. BLACK
 2    information; is that right?
 3          A.    Yes.
 4          Q.    It talks about financial information
 5    including but not limited to sales, earnings,
 6    pricing, vendor, supplier list, customer list,
 7    et cetera, do you see that?
 8          A.    Yes.
 9          Q.    Do you believe that any of that type
10    of confidential information existed on your lost
11    cell phone?
12          A.    I do not.
13          Q.    What makes you believe that that
14    information did not exist on the cell phone that
15    was lost or misplaced?
16          A.    Because I'm not a texter.  I send
17    all that type of information by e-mail.  My
18    texts are typically personal.  I use the same
19    phone for business and for personal use.  And/or
20    to make general contact with people, like, hey
21    call me or I'll call you in five minutes or you
22    know those kinds of things.
23                MR. BIZZARO, JR.:  If you can read
24            me the answer back, Ms. Walker.
25                (Whereupon, the referred to answer
```

D. BLACK

1

2       Q.   Mr. Black, paragraph one or labelled

3  paragraph one says Doug Black.  It says

4  "Mr. Black currently has one cell phone, an

5  iPhone, which he began using on or about

6  January 25, 2024.  All text messages from his

7  iPhone were collected and are being reviewed for

8  responsiveness.  A total of 6,599 text messages

9  were collected from Mr. Black's iPhone.

10        "Prior to approximately January 25,

11  2024, Mr. Black used an Android phone which he

12  has to date been unable to locate.  If that

13  device is subsequently found, it will of course

14  be collected and searched consistent with the

15  Court's March 26th order.  Our current

16  understanding is that because Mr. Black changed

17  from an Android device to an iPhone, his text

18  messages were not transferred from his prior

19  device to his current iPhone.  His text message

20  data thus only dates back to January 25th, 2025

21  to the present."  Do you see that?

22       A.   Yes.

23        MR. BIZZARO, JR.:  I will stipulate

24      provided Mr. Gibbs stipulates that the

25      2025 January 25, 2025, should've been

```
 1                          D. BLACK
 2             2024; is that correct, Evan?
 3                     MR. GIBBS:   That is correct.   That
 4             was a typo.
 5             Q.    Mr. Black, do you agree with
 6    Mr. Gibbs's statement concerning your iPhone or
 7    Android device?
 8             A.    Yes.
 9             Q.    To expedite things, I want you to
10    briefly read the highlighted section concerning
11    Kevin Peattie.
12             A.    Okay.
13             Q.    Just to take a step back.
14    Mr. Caroleo was terminated from SiteOne in or
15    around October 2022; is that correct?
16             A.    I don't recall the exact date.
17             Q.    Do you recall whether or not SiteOne
18    commenced this lawsuit in March of 2023?
19             A.    Yes.
20             Q.    Yes they did?
21             A.    Yes, they did.
22             Q.    Do you know whether Kevin Peattie
23    was issued a litigation hold?
24             A.    I do not.
25             Q.    As the CEO and/or board chairman for
```

D. BLACK

1

2          A.    I remember, well, when I replaced

3    the phone, I intended to keep my old phone

4    because I wanted to keep my texts, my personal

5    texts and contacts.  And when I was notified

6    that we needed that phone for this, you know, we

7    went looking for it and couldn't find it.  So

8    I'm not sure.  I know at some point in time, I

9    gave it back to Neville through my assistant,

10   Lynn.  But after that, it's unclear what

11   happened to the phone.

12         Q.    I don't want to mischaracterize your

13   testimony.  Do you know the year that you first

14   learned that the phone was relevant for this

15   litigation; was that in 2025?

16         A.    Yes.

17         Q.    So prior to the calendar year 2025,

18   am I correct that nobody on behalf of SiteOne

19   whether in-house or legal or outside counsel

20   asked you about that device or its location?

21         A.    Yeah.  It could've been earlier, it

22   could have been '24.  It was either '24, '25

23   when I was asked.  I don't remember the exact

24   date that I was asked that we needed the phone.

25         Q.    Do you know who asked you?

                              D. BLACK
1
2         A.    It's likely that it was Briley
3    Brisendine but I'm not a hundred percent there.
4         Q.    Do you know if Mr. Gibbs asked you?
5         A.    I don't believe so.
6         Q.    Do you know if any attorney from
7    SiteOne other than in-house legal counsel ever
8    asked you for the location for the Android
9    device or for the device itself?
10        A.    I don't believe so.
11        Q.    Do you recall where you were when
12   you first learned that the phone was necessary
13   or important for this litigation?
14        A.    No.
15        Q.    Were you in the office, do you know?
16        MR. GIBBS:  Objection.  Asked and
17          answered.
18        Q.    So could you please briefly describe
19   each and every step you took once you realized
20   that the phone was necessary for this litigation
21   as far as trying to locate it?
22        A.    Yes.  I talked to my assistant,
23   Lynn, and we both searched my office in Roswell.
24   And then I went home and I searched my home
25   office, all the places that the phone would be.

```
 1                        D. BLACK
 2   And then Lynn contacted Neville who works in our
 3   IT Department went to search places where he
 4   would've stored the phone and the three of us
 5   could not find the phone.
 6          Q.    When you say that your assistant
 7   Lynn, is that Lynn Fracassi, F-R-A-C-A-S-S-I?
 8          A.    Yes.
 9          Q.    And Neville Ranglin, R-A-N-G-L-I-N?
10          A.    Yes.
11          Q.    Mr. Black, did you or anyone on
12   behalf of SiteOne document any of your efforts
13   or SiteOne's efforts to locate this phone?
14          A.    No.
15          Q.    Do you recall what year you first
16   advised or informed anyone at SiteOne whether
17   in-house counsel, outside counsel or someone
18   else that the Android device was lost?
19          A.    No.
20          Q.    Do you know if you notified anyone
21   prior to the year 2025?
22          A.    No.  I don't recall.
23          Q.    Since the May 27, 2025 letter that I
24   showed you before from Mr. Gibbs regarding your
25   phone, has the phone been located since that
```

1                          D. BLACK

2        letter was sent?

3              A.    No.

4              Q.    As we sit here today, do you have

5        any idea what happened to that Android device?

6              A.    I have no idea.

7              Q.    Now that device, was that your

8        personal phone or was that a SiteOne issued

9        cellular device?

10             A.    That was a SiteOne issued.  But

11       again, I only have one phone so I use it for

12       both personal and business.

13             Q.    And you presently have an iPhone for

14       business; is that correct?

15             A.    Yes.

16             Q.    Is that the same iPhone that you've

17       had since January 2024?

18             A.    Actually, no.  I recently upgraded

19       and got a new iPhone.

20             Q.    Do you know if there was any problem

21       transporting or porting over text messages to

22       the old iPhone to your current iPhone?

23             A.    No.  There was no problem.

24             Q.    Your current iPhone, does it have an

25       iCloud account?

```
 1                      D. BLACK
 2    this.  Are you good?
 3                    (Whereupon, 12/6/2023 David Black
 4            E-Mail was marked as Defendants' Exhibit
 5            F for identification as of this date by
 6            the Reporter.)
 7            A.    Yes.
 8            Q.    So the highlighted section says at
 9    this point -- withdrawn.
10                  Have you ever seen this document
11    before today?
12            A.    Well, yes.  I saw this yesterday.
13            Q.    Do you recall receiving this e-mail
14    in or around December 6, 2023 from David Black?
15            A.    I don't recall.
16            Q.    Is David Black the chief, the CISO
17    of SiteOne Landscape?
18            A.    Yes.
19            Q.    Was that his title back in
20    December 2023?
21            A.    Yes.
22            Q.    So in the highlighted paragraph, it
23    says "at in this point your Android S9 is the
24    last device across SiteOne that is EOL.  While
25    it probably works fine, there are security
```

```
 1                          D. BLACK
 2     vulnerabilities with Android OS on S9 devices
 3     that cannot be addressed because they are no
 4     longer patching that model and newer versions of
 5     Android OS won't run on the old device.  This
 6     puts SiteOne at risk as threat actors could
 7     target you via e-mail, SMS and other methods to
 8     attempt to gain access to your account and data.
 9     We need to get you to a newer device that
10     provides the security we need to ensure SiteOne
11     is protected across the Board."
12              Do you see that?
13         A.   Yes.
14         Q.   You have no recollection as you sit
15     here today of receiving this e-mail?
16         A.   No.
17         Q.   After you realized that the lost
18     Android device was needed for this litigation,
19     did you ever inquire with Mr. David Black what
20     security risks or threats may exist with the
21     Android device being lost?
22         A.   No.
23         Q.   Did there come a point in time
24     during the upgrade process of your phone during
25     January 2024 that you were informed by someone
```

```
1                          D. BLACK
2    on behalf of SiteOne that your text message data
3    would not port over, so to speak, to the new
4    iPhone?
5             A.    Yes, I'm made aware of that.
6             Q.    Who made you aware of that?
7             A.    It would've been Lynn.
8             Q.    And do you know who told Lynn
9    Fracassi, your assistant, about the text message
10   issue?
11            A.    It was likely Neville.
12            Q.    Do you know when that occurred
13   approximately, the date?
14            A.    I'm not sure.
15            MR. BIZZARO, JR.:  Hold on one
16        second, please.
17            Q.    What do you recall Ms. Fracassi
18   telling you about your text messages from your
19   Android device?
20            A.    Well, I remember that she said that
21   we're not going to be able to transfer them
22   over.  I was disappointed in that and that's
23   when I told her well, you know, let's just keep
24   the old phone for a while.  Because there, as I
25   mentioned, there's personal contacts and
```

1                    D. BLACK

2   pictures and personal texts.  Those kind of

3   things I wanted to make sure that we didn't

4   lose.

5            Q.    In connection with the Android

6   device in addition to personal texts and

7   photographs, is it fair to say that there were

8   business related texts on that device?

9            A.    As I mentioned, I do use it to

10  contact people for business purposes, but it's

11  generally not significant content in those

12  texts.

13           Q.    So the answer is yes, there's

14  business texts on that device?

15           A.    There's business contact texts, yes.

16           Q.    Is it fair to say that there are

17  also business e-mails on that device?

18                 MR. GIBBS:  Objection.  Asked and

19            answered.

20                 MR. BIZZARO, JR.:  You can answer.

21           A.    I do contact business associates

22  with texts, yes.

23           Q.    At the time that that Android device

24  was lost, was it password protected?

25           A.    Yes.

```
 1                        D. BLACK
 2          Q.    And whose password was that, yours
 3    or SiteOne or someone else's?
 4          A.    No.   I have a password, a pin that
 5    you put in.
 6          Q.    To your knowledge -- withdrawn.
 7                Did you ever personally try to erase
 8    that phone remotely once it was lost?
 9          A.    No.
10          Q.    Do you know if anyone on behalf of
11    SiteOne ever attempted to remotely erase that
12    phone?
13          A.    No.
14          Q.    Do you know why not?
15          A.    The whole purpose for keeping the
16    phone was to keep the texts on the phone.
17          Q.    Correct.   But the phone's been lost
18    now for over a year and a half, correct?
19          A.    Yes.
20          Q.    And still nobody's attempted to
21    erase that phone remotely; is that correct?
22          A.    Not that I know of it.
23          Q.    What, if anything, did you do after
24    being told that the text messages and
25    photographs, et cetera, would not transfer to
```

```
 1                         D. BLACK
 2          Q.    Do you know why that wasn't done?
 3          A.    No.  I don't think it was necessary
 4    to be done at the time.
 5          Q.    Well, now that the phone is lost and
 6    we can't find it, do you believe it's necessary
 7    or should've been done?
 8               MR. GIBBS:  Objection.  Calls for
 9                speculation.
10          Q.    You can answer.
11          A.    No.  Because there wasn't relevant
12    data on that.  So I don't believe we lost
13    anything meaningful.
14          Q.    If you don't have the phone, correct
15    me if I'm wrong, you don't have access to those
16    text messages anymore, correct?
17          A.    That's correct.
18          Q.    So as you sit here today, how do you
19    know that there's no relevant data on a phone
20    that has been lost for a year and a half?
21          A.    Well, as I mentioned, I don't put
22    significant data on my texts.  And in regards to
23    this case, I would have a very tight circle of
24    people that I would text with on this case.  And
25    that would be three people:  Briley Brisendine,
```

```
 1                         D. BLACK
 2    he's our general counsel; Jerry Justice, who is
 3    president of the West who Don reported to; and
 4    Joe Ketter who is our head of HR.  So since you
 5    have the texts for those, I think you got
 6    everything that is associated with this case in
 7    text form.
 8              Q.    Do you have any personal knowledge
 9    as to the exact reason or reasons that the data
10    could not be transported or ported to the
11    Android to the iPhone without a corruption
12    issue?
13              A.    No.  I don't know why that couldn't
14    happen.
15              Q.    Did you ever ask?
16              A.    No.  I'm not a technical person so I
17    took the word of Neville.
18              Q.    So you didn't ask, correct?
19              A.    It's likely that I didn't ask.
20              Q.    Did you have any form of iPad or
21    tablet or other personal data device back in the
22    calendar year 2021?
23              A.    I have an iPad, yes.  That I use for
24    personal use.
25              Q.    And when did you first start using
```

```
 1                      D. BLACK
 2   with anyone about whether or not SiteOne has
 3   that extra or enhanced data retention plan with
 4   Verizon Wireless?
 5              MR. GIBBS:  Objection.  Asked and
 6          answered.  You can answer.
 7          A.    No.
 8          Q.    Let's go down to the last paragraph
 9   on Page 2.  "Doug Black's lost phone and his
10   cancelled deposition."  It says "the loss of
11   Doug Black's phone was not a 'ruse' or
12   'fabricated' as your letter states.  The e-mails
13   we produced to you confirm that Doug Black's
14   phone became too old to be supported in
15   December 2023 and that he was told that he
16   needed to transition to a new phone."  Do you
17   see that?
18          A.    Yes.
19          Q.    And to your knowledge is that when
20   David Black sent you the December 6, 2023 e-mail
21   about upgrading your Android because it was end
22   of life?
23          A.    Yes.
24          Q.    Are you aware of any other e-mails
25   that Mr. Gibbs is referring to other than that
```

```
 1                      D. BLACK
 2   one e-mail from David Black dated December 6,
 3   2023?
 4          A.   No.
 5          Q.   Has anybody looked for any
 6   additional e-mails other than that one e-mail
 7   from David Black dated December 6, 2023?
 8          A.   I don't know.
 9          Q.   Did you ever ask anybody to ever
10   look into that?
11          A.   No.
12          Q.   It then says "thus in January 2024
13   SiteOne IT employee Neville Ranglin worked with
14   Doug directly to set up his new iPhone and
15   transfer data from the old phone (a Samsung
16   Galaxy S9 an Android device) to the new one.
17   The e-mails and instant messaging conversation
18   clearly show that Ranglin attempted to transfer
19   the text messages using two different software
20   applications (one of which was purchased solely
21   for the purpose of trying to transfer Doug
22   Black's messages) but was unsuccessful."  Do you
23   see that?
24          A.   Yes.
25          Q.   Do you know the name of the software
```

```
 1                        D. BLACK
 2    application that was purchased just to transfer
 3    your messages?
 4            A.    No.
 5            Q.    Do you know who would know that
 6    information?
 7            A.    Neville.
 8            Q.    Who is the head presently of the IT
 9    Department?
10            A.    It's David Bannister.
11            Q.    Who was the head of SiteOne IT back
12    in January 2024?
13            A.    Sean Kramer.
14            Q.    It says on the last sentence of this
15    paragraph, "the e-mails and instant messaging
16    conversation clearly show that Ranglin attempted
17    to transfer the text messages."  My question is
18    what instant messaging conversations is
19    Mr. Gibbs referring to, if you know?
20            A.    I don't know.
21            Q.    What is instant messaging?
22            A.    If it's different from texts, I
23    don't use it.
24            Q.    Does SiteOne have some internal
25    instant messaging feature?
```