# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

SITEONE LANDSCAPE SUPPLY, LLC,

                  Plaintiff,

         -against-

NICHOLAS GIORDANO; DOMINICK CAROLEO;
VICTOR CAROLEO; NARROW WAY REALTY,LTD.;
NARROW WAY 2 LLC; THE GARDENDEPT. CORP.;
GROUP 5 ASSOCIATES, LTD.;3670 ROUTE 112
LLC; 9 4TH ST. LLC; SCAPESSUPPLY LLC; NEWAY
MANAGEMENT, LLC; and NEWAY TRUCKING,

                  Defendants.

--------------------------------------------------------X

Docket No.: 23-cv-02084
(GRB) (SL)

**DEFENDANTS'
DEMAND FOR THE
PRODUCTION OF
DOCUMENTS**

      PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Nicholas Giordano, Dominick Caroleo, Victor Caroleo, Narrow Way Realty, Ltd., Narrow Way 2 LLC, and Scapes Supply, LLC, ("Defendants"), by their attorneys, Law Offices of Thomas A. Bizzaro, Jr., P.C., hereby demand that Plaintiff SiteOne Landscape Supply, LLC produce each of the following documents described below at the Law Offices of Thomas A. Bizzaro, Jr., P.C., 23 Green Street, Suite 309, Huntington, New York 11743, within thirty (30) days of service of this demand.

## DEFINITIONS AND INSTRUCTIONS

      Unless specifically indicated or otherwise required by the context in which the terms, names and instructions are used, the following definitions and instructions shall be applicable to this Demand for Documents:

      1.     The term "Custodians" shall refer, either individually and/or collectively, to

- 1 -

the following twenty (20) individuals:

| | |
|---|---|
| (i) | Doug Black; |
| (ii) | Anthony Catalano; |
| (iii) | Greg Thistle; |
| (iv) | Kevin Peattie; |
| (v) | Jerry Justice; |
| (vi) | Joseph Ketter; |
| (vii) | Brian Kersnowski; |
| (viii) | Alex Trama; |
| (ix) | Gerard Passaro; |
| (x) | Phil Sausto; |
| (xi) | Briley Brisindine; |
| (xii) | David Black; |
| (xiii) | Ana Valentin; |
| (xiv) | Sean Kramer; |
| (xv) | David Bannister; |
| (xvi) | Laura Shartle; |
| (xvii) | Neville Ranglin; |
| (xviii) | Brandon Chin; |
| (xix) | Lynn Fracassi; and |
| (xx) | Jill Verbeen. |

2.    "Relevant Time Period" shall mean between September 1, 2022 and to the present.

3.    The term "document" means all writings of any kind including, without limitation, analyses; estimates, receipts; tickets; proposals; account books; invoice(s); studies; message; correspondence; memoranda; notes; diaries; logs; statistics; letters; telegrams; minutes; contract(s); report(s); studies; checks; return(s); summaries; mortgage(s); note(s); assignment(s); prospectuses; inter-office and intra-office communications; offers; title reports; title policies; surveys; leases; notations of any sort of conversations, telephone calls, meetings or other communications; bulletins; printed matter; computer printouts; teletypes; telefax; mailgrams; worksheets; and all drafts, alterations, modifications, changes and amendments of any kind; and written,

mechanical or electrical records or representations of any kind, including without limitation, photographs, charts, graphs, microfilm, microfiles, videotapes, recordings, motion pictures, and written, mechanical or electrical records or representations of any kind, including, without limitation, tapes, cassettes, discs and recordings.

4.      The term "possession, custody or control" includes, without limitation, possession, custody or control of Plaintiff, or any person or entity acting or purporting to act on behalf of Plaintiff, whether as agent, accountant, employee, attorney, sponsor, spokesman or otherwise.

5.      The term "and" and "or" shall be construed disjunctively or conjunctively, as necessary to make the request inclusive rather than exclusive.

6.      The use of the singular shall include the plural, and visa versa, and the use of the masculine shall include the feminine, and vice versa, as the context requires.

7.      In the event that any document called for by this notice to produce is not produced:

        (a)      Identify each such document;

        (b)      Set forth the reason why the document has not been produced (e.g., not in Plaintiff's custody, possession or control, destruction, claim of privilege);

                (i)      If the document is not produced on the basis of a claim of privilege, set forth the nature of the privilege asserted, and the relationship to Plaintiff of each person or entity to whom each such

- 3 -

document was transmitted or shown, or to whom the information therein was disclosed; and

(ii)     If the document is in the possession of a person or business entity other than Plaintiff over which Plaintiff has no control:

(A)     Set forth whether and when the document was in Plaintiff's possession;

(B)     Set forth what disposition was made of the document; and

(C)     Identify the person or entity which is presently in possession of the document;

(iii)    If the document was destroyed:

(A)     Set forth the date of destruction;

(B)     Set forth the manner of destruction;

(C)     Set forth the reason for destruction;

(D)     Set forth the name and address of the person authorizing the destruction

(E)     Set forth the name and address of the person destroying the document.

8.     If any documents requested in these requests were at one time in existence but has been lost, discarded or destroyed, then (i) identify each such document by date, type, and subject matter; and (ii) describe the circumstances under which each such document was lost, discarded or destroyed.

9.      Pursuant to the FRCP, you are under a continuing duty to supplement your answers and responses to the requests for production of documents when the Plaintiff's original answers are no longer true or complete.

10.     Defendants will object at any further proceeding of this action to the testimony of any witness and/or the presentation of any evidence which has been requested for production but has not been fully provided.

11.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), by any means, including verbal, telephonic, facsimile, e-mail or text message.

12.     The term "concerning" means constituting, concerning, mentioning, supporting, discussing, referring to, reflecting, involving, pertaining to, connected with, relying upon, relating to, or in any way relevant to the indicated item, person or event.

13.     The connectives "and" and "or" shall be construed whether disjunctively or conjunctively as necessary to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

14.     The terms "refer" and "relate" mean constituting, comprising, evidencing, reflecting, respecting, discussing, referring to, stating, describing, recording, noting, considering, embodying, evaluating, analyzing, mentioning, or containing, or any other term synonymous with, or similar to, the foregoing terms.

15.     The use of the singular form of any word includes the plural and vice versa.

16.     If objection is made to a request herein, the defendant shall state the reason for such objection.

17.     In producing the documents requests, the defendant should segregate the documents by the requests set forth below.

18.     Defendants reserve the right to seek additional documents from the Plaintiff.

**<u>REQUEST FOR PRODUCTION</u>**

1.     Documents and communications concerning, referring to and/or referencing the loss, misplacement, or unavailability of CEO Doug Black's company-issued Android cellular phone during the Relevant Time Period (i.e. the phone that became lost or unavailable prior to May 24, 2025). This includes, but is not limited to, any internal reports, helpdesk or IT tickets, WebEx chats; instant messages, mail or text communications, memoranda, or notes reflecting when and how SiteOne first became aware that Doug Black's work phone was lost, and any actions considered or taken in response.

2.     Documents and communications concerning, referring to and/or referencing any efforts (or the absence of efforts) to recover or preserve the contents of Doug Black's lost company phone. This includes, but is not limited to: (a) any documents relating to attempts to back up, save, or archive data from Mr. Black's Android phone before or after it was reported lost, as well as any acknowledgments or admissions that no such preservation was achieved; (b) any communications with IT personnel, third-party service providers, or others about retrieving data (such as text messages, contacts, call logs, emails, or files) from the device; and (3) any records indicating whether the

phone's content was ever successfully backed up or imaged prior to or subsequent to its loss.

3.      Documents and communications concerning, referring to and/or referencing any attempts to locate, track, or recover Doug Black's missing company Android phone prior to June 10, 2025. This includes, but is not limited to, for example, any emails or correspondence with mobile carriers; use of "find my device", AirWatch or Knox, or similar services; inquiries to insurance or device-recovery services; internal discussions about locating the phone; or any decision-making documents regarding whether or not to undertake such efforts. If no such attempts were made, produce any documents or communications that discuss or explain the decision not to attempt to track or recover the phone.

4.      Documents and communications concerning, referring to and/or referencing any litigation hold notice(s) or preservation instructions directed to SiteOne's CIO and/or its IT department regarding the preservation of Custodians' Devices or the data on those Devices (including text message content). This includes, but is not limited to: any written hold notices; memoranda; or emails and communications from legal counsel (or others) to the CIO(s) or IT personnel that mention preserving mobile devices, phones, text messages, or other ESI on Custodians' devices (including, specifically, any hold notice(s) referencing Doug Black's Android phone or any other Custodian's device). If no such hold communications were ever sent to the CIO(s) or IT, produce any documents that reflect that fact or discuss the decision not to involve the CIO or IT in the litigation hold process.

5.    Documents and communications concerning, referring to and/or referencing former General Counsel Briley Brisindine's communication(s) to Doug Black concerning his Android phone (either before or after it was lost) and the need to preserve its data. This includes, but is not limited to: any written communication (e.g. email or letter) or internal memo wherein Brisindine informed Doug Black that the phone and its data were relevant to pending litigation and subject to preservation (purportedly done prior to January 2024). If this instruction was given orally, produce any notes, calendar entries, or emails referencing that conversation or its substance.

6.    Documents and communications concerning, referring to and/or referencing SiteOne's current General Counsel, Travis Jackson, informing Doug Black of a litigation hold on Mr. Black's iPad (or any cell phone or other electronic device) and the potential relevance of that device. This includes, but is not limited to: any hold notice, email, letter, or other record showing that prior to Doug Black's October 15, 2025 deposition, Travis Jackson communicated that Doug's iPad (or other electronic device) was subject to preservation. Include any acknowledgment of receipt or compliance by Doug, and any related discussions (for example, if Doug Black confirmed whether the iPad had relevant data or if any preservation steps were needed for it). If the communication was oral, provide any notes or follow-up emails that reference it.

7.    Documents and communications concerning, referring to and/or referencing whether SiteOne or any Custodian took any preservation actions beyond issuing litigation-hold notices to preserve text message data from Custodians' Devices. This includes, but is not limited to: any documents reflecting additional steps such as

- 8 -

disabling auto-delete settings on phones, instructing Custodians to back up or screenshot text conversations, directing IT to perform phone data backups, collecting devices for imaging, requesting carriers to retain text records, or implementing any mobile device management policies to archive texts. If no such steps were taken other than sending hold notices, produce any documents where this is discussed or acknowledged (for instance, internal communications evaluating what preservation measures to take, or responses to Defendants' inquiries on this topic).

8.      Documents and communications concerning, referring to and/or referencing when and how SiteOne first became aware that Custodian Gerard Passaro's cellular phone (which he was using in 2022 and 2023) was lost, destroyed, wiped, or otherwise rendered unavailable. Responsive documents should include, but is not limited to any report or notice of the device's loss (e.g. an email from Passaro or IT indicating the phone was lost or wiped); records of any replacement device issued to Passaro (with dates); and any communications within SiteOne (including IT, HR, or legal) acknowledging the unavailability of Passaro's phone prior to Mr. Peattie's deposition in October 2025. Include any timeline or incident report documenting this loss, and any communications with Passaro about the circumstances under which the phone was lost or its data wiped.

9.      Documents and communications concerning, referring to and/or referencing when and how SiteOne became aware that Custodian Kevin Peattie's company-issued phone (which he was using in either 2022 or early 2023) was lost, destroyed, wiped, or otherwise rendered unavailable. This should include, but is not limited to: any notification from Peattie or others that the device was lost or reset; any IT

helpdesk tickets or emails regarding issues with Peattie's phone; records of issuing a new phone to Peattie (with date of replacement); and any internal communications acknowledging the loss of Peattie's original device prior to Mr. Peattie's October 2025 deposition. If Peattie's phone was intentionally wiped or reset (for instance, as part of a hardware upgrade or troubleshooting), produce any documentation of that event and any approvals or discussions surrounding it.

10. Documents and communications concerning, referring to and/or referencing efforts to preserve, back up, or collect text messages or other data from Gerard Passaro's and/or Kevin Peattie's company-issued phones that were lost or became unavailable. This includes, but is not limited to: any evidence that text message content, call logs, or other phone data were ever backed up to a server, saved to a cloud service, copied to another device, or otherwise preserved before or after those phones went missing. Provide any communications indicating that no such backups or collections occurred for one or both devices, as well as any analysis or discussion by SiteOne's IT or legal teams about retrieving or not retrieving the data from these phones.

11. Documents and communications concerning, referring to and/or referencing attempts (or decisions not to attempt) to recover text messages, call logs, or other data from Passaro's and Peattie's lost devices. This should include, but is not limited to: any inquiries made to mobile phone carriers about obtaining message content or logs; contacts with any forensic data recovery services about these devices; internal IT discussions on whether the phone's SIM card or cloud backups could be utilized; and any project or ticket initiated to try to retrieve data from the devices after they were reported

lost. If SiteOne made a deliberate decision not to pursue data recovery for these phones, produce any documents memorializing that decision or the rationale (e.g. internal emails or meeting notes where it was decided such efforts were not feasible or necessary).

12.     Documents and communications concerning, referring to and/or referencing any instance where a Custodian's Device was factory-reset, wiped, destroyed, lost, or otherwise rendered inaccessible <u>after</u> a litigation hold was in effect for that Custodian. This request encompasses <u>all</u> Custodians whose devices became unavailable post-litigation-hold. Responsive documents should include but not be limited to: lists or logs of device replacement incidents; internal emails or reports noting that a device was wiped or decommissioned on a certain date; and any communications involving IT, legal, or management regarding the preservation implications of such an event. For each such incident, provide documents sufficient to show the date it occurred, the Custodian and device involved, and the reason (e.g., device malfunction, routine upgrade, theft/loss, etc.).

13.     Documents and communications concerning, referring to and/or referencing any disposition or replacement of Custodians' Devices that occurred <u>after</u> litigation holds were issued to those Custodians. This includes, but is not limited to: records of any old devices being collected and disposed of (or wiped/recycled) when new devices were issued, as well as internal communications or approvals for doing so. Include any company policies or guidelines followed for device replacements during litigation, and any deviations or discussions about whether to retain old devices. If

SiteOne engaged third-party vendors for device refreshes, provide any correspondence with such vendors about retaining or destroying the data on the replaced devices.

14.     Documents and communications concerning, referring to and/or referencing SiteOne's efforts (or lack thereof) to take reasonable steps to prevent the loss or destruction of text-message data from Custodians' devices during the Relevant Time Period. This includes, but is not limited to: documents and communications related to SiteOne's efforts to safeguard mobile device messages, such as implementing any mobile device management (MDM) policies; issuing written instructions to employees about preserving texts; enabling automatic backups for mobile content; or auditing compliance with hold directives on phones. Conversely, if SiteOne identified any gaps or failures in preserving text data (e.g., recognizing belatedly that auto-delete was on, or that devices were wiped without backup), produce documents discussing these issues. Include any internal assessments, meeting minutes, or email discussions about whether SiteOne's preservation of text messages was adequate or fell short.

15.     Documents and communications concerning, referring to and/or referencing whether SiteOne maintained an inventory or record of Custodian devices and their disposition (particularly when devices were replaced, reset, lost, or retired). For example, provide any asset tracking logs, spreadsheets, databases, or device management records that detail each Custodian's company-issued devices (phone or otherwise) and note what happened to those devices (returned, wiped, lost, etc.) and when. If multiple systems or records exist (e.g., IT asset management systems, mobile carrier records, etc.), provide documents from each that reflect device status changes for

the Custodians. If SiteOne had no such tracking mechanism for device preservation, produce any communications or admissions so stating (such as an email or letter indicating that SiteOne cannot account for what became of certain devices).

16.    Documents and communications concerning, referring to and/or referencing  SiteOne's practices (or lack of practice) of collecting or imaging Custodians' mobile devices prior to replacement, loss, or reset. In particular, produce any documents that show whether SiteOne ever took forensic images or full backups of any Custodian's phone or tablet <u>before </u>it was wiped, replaced, lost, or otherwise became inaccessible. This includes, but is not limited to, any policies or directives about imaging devices when employees receive new devices; any records of data transfers or backups done during device swaps; and communications involving IT or legal about whether to image a device in anticipation of potential data loss. If SiteOne did not collect or image devices in such situations, provide any document reflecting acknowledgment of that fact or explaining why not (for example, an internal email stating that "we did not image X's phone before giving him a new one").

17.    Documents and communications concerning, referring to and/or referencing when and which of SiteOne's attorneys (at Troutman Pepper or otherwise) became aware that CEO Doug Black's company-issued Android phone was lost or missing. This includes, but is not limited to, any communications <u>prior to</u> March 26, 2025 in which SiteOne's outside counsel (e.g., Evan Gibbs, Esq. of Troutman Pepper) or in-house legal team discuss or acknowledge that Doug Black's phone had been lost. Responsive documents may include, but is not limited to, internal emails among

Troutman Pepper attorneys referencing the lost device, emails or letters from SiteOne to its counsel reporting the loss, or any notes from conversations or meetings (for example, an agenda item in a litigation strategy meeting about the status of devices). If a specific date or event marked when counsel learned of the phone's loss (for instance, a call or an email thread), produce documents pinpointing that time.

18.    Documents and communications concerning, referring to and/or referencing former SiteOne CIO/Head of IT Sean Kramer's knowledge or awareness of the litigation hold(s) and the loss of Doug Black's phone, including documents showing that Sean Kramer was not aware of this device loss until after January 1, 2025. This should include, but is not limited to, any communications where Kramer is first informed of the phone's disappearance (for example, an email or memo to Kramer in early 2025 notifying him of the issue), as well as any earlier communications (in 2024) involving IT personnel or others that conspicuously exclude Kramer while discussing Doug Black's lost phone. If Sean Kramer had no knowledge until 2025, produce any statements or testimony by Kramer so indicating (e.g., an affidavit or deposition excerpt, if applicable, or notes from an interview with Kramer confirming the date he learned of the loss).

19.    Documents and communications concerning, referring to and/or referencing relevant text-message data that existied on Doug Black's company-issued phone at the time it was lost or became unavailable. Responsive materials may include, for example, mobile phone billing records or logs indicating text message exchanges by Doug Black during the Relevant Time Period (with date, time, and recipient details), any available screenshots or transcripts of text conversations involving Doug Black that were

saved elsewhere, or communications involving Doug Black referencing that he conducted relevant business communications via text.

20.    Documents and communications concerning, referring to and/or referencing relevant text-message data that existed on Gerard Passaro's lost or misplaced phone that he was using prior to receiving a SiteOne-issued iPhone as testified to by Mr. Passaro at his deposition during the Relevant Time Period. This may include phone records showing Passaro's text message activity (dates and recipient phone numbers) in 2022–2023, any surviving text messages involving Passaro that were obtained from other sources (such as messages Passaro sent to other Custodians which are preserved on the recipient's device or in backups), or any documents indicating that Passaro used text messaging for work-related communications.

21.    Documents and communications concerning, referring to and/or referencing relevant text-message data that existed on Kevin Peattie's company-issued phone at the time it was lost, misplaced, or factory-reset during the Relevant Time Period. Similar to the above, this may include Kevin Peattie's mobile service provider records showing texting activity, any text messages involving Peattie recovered from other Custodians or sources, and any documentation of Peattie conducting business via text. If any partial data from Peattie's phone was preserved (for example, if some texts were backed up to a company system prior to the phone's loss), produce those records.

22.    Documents and communications concerning, referring to and referencing any internal company-messaging application – including, but not limited to, WebEx - that SiteOne maintains or maintained, which was accessible on Custodians' company-issued

phones or computers (or other electronic devices) during the Relevant Time Period. If SiteOne used an enterprise messaging platform (for example, WebEx, AirWatch, Knox, Microsoft Teams, Slack, WhatsApp, or any proprietary app) for internal communications among employees, provide documents sufficient to identify the platform and its usage policies. Include any policy documents or user guidelines for such messaging, any lists of users, and any data retention settings or practices for the application (especially as it pertains to mobile device access). Additionally, produce any communications indicating whether such internal messaging data was preserved or collected for this litigation (for instance, if certain relevant conversations took place in a WebEx or Teams or Slack channel instead of via SMS, were those retained?). If no such internal messaging system existed on mobile devices, please confirm that in writing.

23.     Documents and communications concerning, referring to and/or referencing any auto-delete, auto-erase, or other automated data deletion features that were enabled on Custodians' company-issued phones or devices during the Relevant Time Period. This includes any evidence that one or more Custodians had settings activated that automatically deleted text messages (or other communications) after a set period. Responsive documents should encompass: mobile device management (MDM) policies or configurations that show default retention settings for text messages (if SiteOne's IT enforced any), any instructions or training to employees about enabling or disabling such features, any Custodian-specific communications (e.g., an employee asking IT how to adjust auto-delete settings), and any forensic findings or admission that certain phones were set to auto-delete messages. If specific Custodians (other than Alex

Trama) are known to have used auto-delete features, identify those individuals and produce documents evidencing the time frame and effect of such settings. If SiteOne was unaware of these auto-deletion settings until a later time (such as during device inspections or depositions), produce any documents reflecting the moment of that discovery

24.    Documents and communications concerning, referring to and/or referencing any copy, backup, or forensic image made of any Custodian's Device prior to its loss, replacement, or becoming unavailable. Your production should include, without limitation:

- Any records of forensic collection efforts (e.g., engagement letters or reports from any e-discovery or forensic vendors hired to image phones or tablets, chain-of-custody forms, data collection logs, or confirmation emails that a device was successfully imaged).

- Communications (internal or with third-party experts) about making backups or clones of specific devices such as Doug Black's phone, Gerard Passaro's phone, Kevin Peattie's phone, or any other Custodian's Device that was later lost or wiped. For example, if at any point an IT staff member or vendor attempted to create a backup of Doug Black's Android phone (or retrieve its data from a cloud service) before it was lost, produce the related communications and results.

- Any inventory or index of preserved device images, if one exists, listing which devices (by Custodian and device identifier) were imaged or backed up, when, and where those images are stored.

- Chain-of-custody documentation for any device data collected. If any devices were sent to forensic specialists (e.g., a phone sent to a data recovery lab), include shipping records or custodian transfer forms showing the handling of the device.

- If no forensic image or full backup was ever made of one or more lost devices (as may be indicated by SiteOne's admissions), provide any documents that reflect this fact – for instance, an email from counsel or IT acknowledging "we have no backup of X's phone," or a report from a forensic consultant stating that imaging was not done.

25.    Documents and communications concerning, referring to and/or referencing all AirWatch, Samsung Knox, or comparable MDM audit logs for Doug Black's Android phone (Device ID: DB24360) from October 1, 2024 through the present, including:

- Device connection/power-on events after the reported "loss";

- Records of any remote wipes, resets, or MDM policy enforcements.

- Logs showing which administrator, account, or system user triggered such actions; and

- Audit exports showing device status changes, sync attempts, or de-registrations.

26.    Documents and communications concerning, referring to and/or referencing (or consent to a subpoena to Verizon Wireless for) all call-detail and text-message metadata (not content) for Doug Black's phone (ESN/IMEI linked to DB24360)

from January 1, 2023 – February 28, 2024, including call logs, SMS/MMS metadata, SIM or IMEI reassignments, and any service suspension/reactivation records.

27.     Documents and communications concerning, referring to and/or referencing (or make available for forensic imaging):

- Doug Black's personal iPad;

- Doug Black's current iPhone, which may contain synced or migrated content from his lost Android; and

- Kevin Peattie's SiteOne-issued and personal cellular devices.

Include any forensic reports, extraction logs, or analysis notes, and identify any person who decided against imaging with supporting rationale.

28.     Documents and communications concerning, referring to and/or referencing all WebEx, Teams, email, and text communications by CISO David Black and Sean Kramer between May 22, 2025 and the present, including any mention of Doug Black's lost Android phone, litigation-hold issues, or preservation topics. Include Verizon call metadata for David Black's company or personal devices during this period.

29.     Documents and communications concerning, referring to and/or referencing all emails, texts, instant messages, or other communications by SiteOne buyers, procurement agents, or managers referencing any of the named Defendants with vendors from January 1, 2023 to the present, including communications with external suppliers.

30.     Documents and communications concerning, referring to and/or referencing all records showing cross-device synchronization or backup relationships between Doug Black's Android, iPad, and iPhone, including iCloud/Google account associations, AirWatch and/or Knox or MDM pairing logs, and data-migration records.

31.     Documents and communications concerning, referring to and/or referencing any messaging or collaboration application - whether SiteOne-approved or third party - installed, accessed, or used on any Custodian device during the Relevant Time Period.

32.     Documents and communications concerning, referring to and/or referencing any policy, rule or practice relating to employee use or retention of company cell phones after separation from employment.

33.     Documents and communications concerning, referring to and/or referencing Scapes Supply. Responsive materials shall include:

- Installation logs, user access logs, and data-retention or deletion settings for each platform (including but not limited to WebEx, Microsoft Teams, Slack, WhatsApp, Signal, Telegram, or iMessage);

- All chat transcripts, message exports, or conversation records containing business-related communications;

- Any SiteOne policy, directive, or acknowledgment governing employee use of third-party messaging apps for company business;

- Any communications with IT or counsel concerning collection, preservation, or deletion of chat data from these apps; and

- Confirmation whether SiteOne or its vendors collected or archived messaging data from these platforms in response to any litigation hold.

If no responsive records exist, produce documents sufficient to show that such messaging applications were not used or were uninstalled from Custodians' devices during the Relevant Time Period.

PLEASE TAKE FURTHER NOTICE that Defendants reserve their right to supplement and/or amend this notice.

Dated: Huntington, New York
        October 28, 2025

LAW OFFICES OF THOMAS A. BIZZARO, JR., P.C.

By: _____

Thomas A. Bizzaro, Jr., Esq.
*Attorneys for Defendants*
23 Green Street, Suite 309
Huntington, New York 11743
(631) 380-3297
tbizzaro@tab-law.com

cc:    All Counsel via ECF