UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X    Docket No.: 2:23-cv-02084 (GRB)(SIL)
SITEONE LANDSCAPE SUPPLY, LLC,

                                      Plaintiff,

   -against-

NICHOLAS GIORDANO; DOMINICK CAROLEO;
VICTOR CAROLEO; NARROW WAY REALTY,
LTD.; NARROW WAY 2 LLC; THE GARDEN
DEP'T CORP.; GROUP 5 ASSOCIATES, LTD.;
3670 ROUTE 112 LLC; 9 4TH STREET LLC;
SCAPES SUPPLY, LLC; NEWAY
MANAGEMENT, LLC; and NEWAY TRUCKING,

                                        Defendants.
-----------------------------------------------------------X

## NOTICE OF RULE 30(b)(6) DEPOSITION

       PLEASE TAKE NOTICE that, pursuant to Rules 26, 30, and 30(b)(6) of the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Eastern District of New York, Defendants will take the deposition of Plaintiff SiteOne Landscape Supply LLC ("SiteOne" or the "Organization") through one or more persons designated by the Organization to testify on its behalf.

**DEPOSITION DETAILS:**

**Date:** January 28, 2026

**Time:** 10:00 a.m. ET

**Location:** Certilman Balin Adler & Hyman LLP, 90 Merrick Avenue, 9th Floor, East Meadow, New York 11554

**Method:** The deposition will be stenographically recorded and may also be videographically recorded pursuant to Federal Rule of Civil Procedure 30(b)(3)(A).

**Duration:** The deposition shall not exceed seven (7) hours of actual deposition time on the record, as provided in Federal Rule of Civil Procedure 30(d)(1), unless otherwise extended by agreement of the parties or order of the Court.

**TOPICS FOR EXAMINATION:**

Pursuant to Federal Rule of Civil Procedure 30(b)(6), SiteOne is required to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf. The designee(s) must testify about information known or reasonably available to the Organization regarding the following topics:

1. The identification and nature of all information that the Organization considers to be trade secrets or confidential information, including but not limited to: (a) customer lists, contact information, and customer relationship details; (b) pricing information, profit margins, and bidding strategies; (c) vendor lists, vendor pricing, and supplier relationships; (d) sales data, sales volume, and historical sales records; (e) financial information, including revenue, expenses, and profitability by location or customer; (f) business plans, marketing strategies, and expansion plans; (g) employee compensation and organizational information; (h) point-of-sale system data and reports; and (i) the specific measures taken to protect such information, including access controls, password protections, confidentiality agreements, training programs, and the identification of all persons who had authorized access to each category of information.

2. Defendants' alleged conversion of SiteOne's property, including but not limited to: (a) computers, including the desktop computer allegedly misappropriated by Giordano in January 2023, Rose Casper's computer, and any other missing computers; (b) physical documents removed from file cabinets in or around February 2023; (c) monitors and DVR recorders; (d) other equipment; (e) the value of each item of converted property; (f) the inventory, tracking, and chain of custody procedures for such property; (g) the business information, data, or records stored on or contained in each item of converted property; (h) the Organization's efforts to locate, recover, or replace the converted property; (i) the impact of the loss of such property on the Organization's business operations; and (j) the identification of all persons who had access to, custody of, or responsibility for such property.

3. The Organization's policies, procedures, and practices concerning non-competition, non-solicitation, and confidentiality agreements, including: (a) all restrictive covenant agreements entered into with Defendants or any of them; (b) the specific terms, scope, duration, and geographic limitations of such agreements; (c) the negotiation, execution, and consideration provided for such agreements; (d) the Organization's standard forms and practices for such agreements; (e) any modifications, waivers, or amendments to such agreements; (f) the Organization's policies and practices for enforcing such agreements; (g) prior enforcement actions taken by the Organization with respect to restrictive covenants; (h) the Organization's training and communication to employees regarding restrictive covenants; (i) any alleged breaches of such contractual obligations by Defendants, including the specific conduct alleged to violate each agreement; and (j) the damages or harm allegedly resulting from any such breaches.

4. Defendants' alleged theft of Plaintiff's computers, including: (a) Giordano's desktop computer that allegedly went missing in January 2023, including the circumstances of its disappearance, Giordano's statements that he "threw it away," and the Organization's investigation including the search of the dumpster; (b) Rose Casper's computer, including when it went missing, who discovered it missing, and prior incidents involving that computer (including the October 2022 incident involving alleged copying of data); (c) any other missing computers; (d) the business information, data, and systems each computer could access, including access to the point-of-sale system, customer databases, financial records, and other systems; (e) the specific categories and volume of confidential or proprietary information stored or accessible on such computers; (f) whether such computers were password-protected and who had passwords; (g) any remote access capabilities; (h) any forensic examination or investigation of the missing computers; (i) any backup or recovery of data from such computers; and (j) the competitive value and sensitivity of the information on such computers.

5. Defendants' alleged theft of physical documents from SiteOne file cabinets, including: (a) the specific file cabinet(s) from which documents were removed, including the top drawer of the sales-area file cabinet referenced in the Complaint; (b) the timing of the removal, including the discovery on February 21, 2023, the day after Giordano's termination; (c) the types of documents that were stored in such file cabinet(s), including bidding information, contract information, pricing information, customer contact information, project details, and contract expiration dates; (d) the specific customers and projects to which the missing documents related; (e) the time period covered by the missing documents; (f) the estimated volume of missing documents; (g) the identification of all persons who had access to such file cabinets; (h) any inventory, index, or record of the contents of such file cabinets; (i) the Organization's efforts to reconstruct or replace the missing documents; and (j) the competitive significance and confidential nature of the missing documents and how they could be used by a competitor.

6. Defendants' alleged theft of a monitor and DVR recorder which hosted Plaintiff's security camera system at Plaintiff's Coram, NY location, including: (a) the discovery that the DVR and monitor were missing during the week of February 27, 2023; (b) the location where the equipment was stored and who had access; (c) the capabilities and features of the security camera system, including the number of cameras, their locations, what they recorded, and retention periods; (d) the app allegedly installed on Defendants' phones that allowed remote monitoring and recording of the security cameras; (e) who installed the app, when it was installed, and whether it was authorized; (f) the Organization's investigation into whether Defendants continue to remotely access the camera system; (g) any footage or recordings that may have been accessed, downloaded, or deleted by Defendants; (h) the surveillance by SiteOne of the property located at 38 Yaphank Middle Island Road, Middle Island, New York, including the investigation conducted, surveillance reports, photographs, and findings; (i) the vendor who installed the security system and their communications with SiteOne; and (j) the Organization's efforts to secure the system and prevent unauthorized access.

7. Defendants' alleged unauthorized transfer of Verizon wireless phone numbers, including: (a) the phone numbers that were acquired by Plaintiff as part of the assets in the

3

purchase of Garden Department in January 2020; (b) the specific phone numbers that were allegedly transferred; (c) when and how such phone numbers were transferred; (d) who authorized or effected the transfer; (e) the circumstances under which the Organization learned of the transfer, including statements by Giordano in November 2022 about moving the Caroleo family's cell service; (f) the business use and significance of such phone numbers; (g) whether such phone numbers were used to contact or divert SiteOne customers; (h) the terms of the asset purchase agreement relating to such phone numbers; (i) any communications with Verizon regarding the transfer; and (j) the Organization's efforts to recover or prevent use of such phone numbers.

8. Defendants' alleged covert installation of an app on a smartphone that permitted them to receive SiteOne financial data, including: (a) the specific app that was installed on Don Caroleo's smartphone; (b) who installed the app, when it was installed, and whether it was authorized; (c) the specific financial data that was accessed or received through the app, including data from the Coram server; (d) the time period during which the app was active and transmitting data; (e) whether the app continued to transmit data after Caroleo's employment ended in October 2022; (f) how and when the Organization learned of the app's existence, including the March 9, 2023 information from the external IT vendor; (g) the IT vendor who provided the information and their relationship to Caroleo; (h) the Organization's investigation into the app and the data accessed; (i) any forensic analysis of the server or smartphone; and (j) the competitive significance and confidential nature of the data accessed through the app.

9. Defendants' alleged directions to SiteOne employees to prepare a new location for a competing business, including: (a) the property located at 38 Yaphank Middle Island Road, Middle Island, New York; (b) when Defendants purchased or acquired an interest in this property; (c) all SiteOne employees who were directed to or did work at the competing location; (d) the specific work performed by SiteOne employees at the competing location; (e) whether such work was performed during SiteOne business hours or using SiteOne time; (f) whether SiteOne vendors, customers, or resources were used in connection with the competing location; (g) the ethics hotline reports received regarding this activity, including the January 24, 2023 report and January 25, 2023 report; (h) the private investigation conducted by the Organization, including surveillance, photographs, and findings; (i) any instances of alleged pilferage or misuse of SiteOne resources in connection with the competing location; and (j) the identification of all persons with knowledge of Defendants' directions to employees or of employee activity at the competing location.

10. Defendants' alleged solicitation of SiteOne employees, including: (a) all employees who left SiteOne's employment to work for Defendants' competing business, including Martin Rojas, Antonio Rios Garcia, Jorge Suarez-Flores, Juan Suarez-Flores, Dale Nash, David Gomez, Jose Rubi, and any others; (b) when each employee left SiteOne and when they began working for the competing business; (c) the specific statements, conduct, and methods used by Defendants to solicit employees; (d) Giordano's comments and insinuations to legacy Garden Department employees that he would not remain with SiteOne for very long after Don Caroleo's departure; (e) statements by Defendants to employees about their plans to open a competing business; (f) any offers of employment made to SiteOne employees by Defendants; (g) whether employees were solicited before or after Defendants' employment with SiteOne ended; (h) conversations between

Defendants and specific employees, including asking employees whether they would "follow" Defendants; (i) negative statements made by Defendants about SiteOne to employees; and (j) the roles and responsibilities of employees who left and the impact of their departure on SiteOne's operations.

11. Defendants' alleged opening and operation of a directly competing business to SiteOne, including: (a) the competing business known as "Scapes Supply" or any other name; (b) the business location at 38 Yaphank Middle Island Road, Middle Island, New York, and any other locations; (c) when the business was planned, formed, and opened, including the reported opening date of March 15, 2023; (d) the corporate structure and ownership of the competing business, including the role of entities such as Narrow Way Realty, Ltd., Narrow Way 2 LLC, The Garden Dept. Corp., Group 5 Associates, Ltd., 3670 Route 112 LLC, 9 4th St. LLC, and any others; (e) the products and services offered by the competing business; (f) the use of former SiteOne employees in the competing business; (g) the use of information, documents, data, customer lists, pricing, or other materials taken from SiteOne; (h) customer solicitation, including contacts made by Giordano within an hour of his termination on February 20, 2023; (i) the use of rented trucks and vans in the competing business; (j) any relationship between Don Caroleo and the competing business, including whether the business was put in a family member's name to circumvent non-compete restrictions; (k) communications, planning, or coordination between Defendants regarding the competing business while they were employed by SiteOne; and (l) the competitive impact on SiteOne, including lost customers, employees, and business opportunities.

12. The asset acquisition of Garden Department by SiteOne in January 2020, including: (a) all aspects of the transaction structure, purchase price, and payment terms; (b) the assets acquired, including locations (Coram, Dix Hills, Speonk), inventory, customer lists, phone numbers, goodwill, and other assets; (c) the due diligence conducted by SiteOne; (d) representations and warranties made by the seller, including Don Caroleo; (e) any earnout, consulting, or other post-closing payment arrangements; (f) employment agreements or offers made to Don Caroleo, Nicholas Giordano, and other Garden Department employees in connection with the acquisition; (g) restrictive covenants, non-compete agreements, non-solicitation agreements, or confidentiality agreements entered into in connection with the acquisition; (h) the integration of Garden Department employees, systems, customers, and operations into SiteOne; (i) Don Caroleo's role and responsibilities at SiteOne following the acquisition; (j) the termination of Don Caroleo's employment in October 2022, including the circumstances and reasons; (k) any disputes, issues, or concerns relating to the acquisition or integration; and (l) SiteOne's acquisition of Garden Department from Don Caroleo and the terms and integration of that acquisition.

13. SiteOne company-issued devices and equipment provided to Defendants, including: (a) all laptops, cell phones, tablets, and other electronic devices issued to Don Caroleo, Vic Caroleo, and Nicholas Giordano; (b) when such devices were issued and collected; (c) the data, applications, and access such devices contained; (d) the circumstances of collection on February 20, 2023, including Giordano's alleged attempt to disable his phone; (e) any forensic examination of such devices; (f) deletion or destruction of data on such devices; and (g) the Organization's policies regarding company devices and data security.

14. The Organization's investigation into Defendants' conduct, including: (a) when the Organization first learned of or suspected Defendants' alleged misconduct; (b) ethics hotline reports received, including reports from Phil Sausto and Gerard Passaro; (c) the private investigation conducted, including the investigator retained, dates of surveillance, locations observed, photographs and video taken, and findings; (d) interviews conducted with employees, customers, vendors, or other witnesses; (e) document review and analysis; (f) forensic examinations of computers, phones, servers, or other systems; (g) communications with vendors, including the security camera vendor and IT vendors; (h) the investigation timeline and key findings; and (i) persons involved in or responsible for the investigation.

15. Customer contacts and solicitation by Defendants, including: (a) all customers contacted by Defendants after their employment with SiteOne ended; (b) customers who reported being contacted by Defendants, including reports received within an hour of Giordano's termination on February 20, 2023; (c) the content of Defendants' communications with customers; (d) customers who moved their business from SiteOne to Defendants' competing business; (e) customer lists, contact information, and relationship details that Defendants had access to during their employment; (f) the competitive significance of specific customers; (g) pending bids, quotes, or proposals to customers at the time of Defendants' departure; and (h) the Organization's efforts to retain customers.

16. Don Caroleo's statements about his plans to compete, including: (a) statements to Brian Kersnowski and others that he purchased land near SiteOne's Coram location and planned to open a nursery; (b) statements that he could put the business in his sister's name to avoid non-compete restrictions; (c) statements that Garden Department and Bissett Nursery employees would follow him; (d) the timing of such statements in relation to the end of his employment in October 2022; (e) statements about his attitudes toward SiteOne; (f) any other statements evidencing intent to compete; and (g) the identity of all persons who heard such statements or have knowledge of Caroleo's plans.

17. Nicholas Giordano's conduct and statements prior to termination, including: (a) his relationship with Don Caroleo; (b) his statements to coworkers that he might not remain with SiteOne long after Caroleo's departure; (c) his statements asking coworkers whether they would "follow him"; (d) negative statements about SiteOne; (e) his refusal to sign the equity grant agreement containing a non-compete in October 2022; (f) his reasons for refusing to sign; (g) meetings with management regarding the equity grant agreement; (h) his presence at the Coram location after hours in the weeks before his termination; (i) suspicious conduct or unusual behavior; and (j) performance issues or concerns.

18. The termination of Nicholas Giordano on February 20, 2023, including: (a) the decision to terminate him; (b) who was present at the termination meeting; (c) what Giordano was told during the meeting; (d) Giordano's responses and statements; (e) the collection of his SiteOne cell phone and laptop; (f) his conduct when returning the phone, including allegations he

"frantically worked to disable it"; (g) the termination letter provided; (h) any severance, final pay, or other post-termination matters; and (i) subsequent contact with Giordano.

19. Deleted data from Nick Giordano's company-issued iPhone, including: (a) the discovery on February 21, 2023 that customer contact information and business notes had been deleted; (b) who had access to the phone; (c) Giordano's knowledge of the phone's passcode; (d) where the phone was located overnight; (e) the specific information that was deleted; (f) the business value of the deleted information; (g) any effort to recover the deleted data; and (h) any investigation into who deleted the data.

20. The point-of-sale system and business data accessible to Defendants, including: (a) the Garden Department point-of-sale system; (b) the data contained in or accessible through the system, including sales records, customer information, pricing, inventory, and financial data; (c) how far back the system's data extended; (d) who had access to the system and what level of access; (e) what reports, exports, or copies could be generated from the system; (f) whether Defendants accessed, copied, or exported data from the system; (g) security measures and access controls; and (h) audit logs or records of system access.

21. Property and equipment observed at 38 Yaphank Middle Island Road, including: (a) contractors and vendors observed at the site; (b) SiteOne employees observed working at the site; (c) equipment, vehicles, or materials observed at the site; (d) customers or customer vehicles observed at the site; (e) the extent of preparation and construction at the site; (f) signage or business identification at the site; (g) when business operations appeared to begin; and (h) the proximity to SiteOne's Coram location.

22. Damages suffered by the Organization as a result of Defendants' alleged conduct, including: (a) lost customers and revenue; (b) the value of converted property; (c) costs to investigate Defendants' conduct; (d) costs to replace missing equipment, computers, and documents; (e) costs to secure systems and prevent further unauthorized access; (f) lost employee productivity and costs to hire and train replacement employees; (g) harm to competitive position; (h) costs of litigation; and (i) any other economic harm or losses.

23. The relationship between Don Caroleo, Victor Caroleo, and the defendant entities, including: (a) the ownership and control of Narrow Way Realty, Ltd., Narrow Way 2 LLC, The Garden Dept. Corp., Group 5 Associates, Ltd., 3670 Route 112 LLC, and 9 4th St. LLC; (b) the role of each entity; (c) which entity or entities own or lease the property at 38 Yaphank Middle Island Road; (d) which entity or entities operate the competing business; (e) the relationship between the entities; and (f) any alter ego or piercing-the-corporate-veil issues.

24. Victor Caroleo's role and involvement, including: (a) his relationship to Don Caroleo; (b) his involvement in the competing business; (c) his ownership or interest in any of the defendant

entities; (d) his involvement in the purchase of the property at 38 Yaphank Middle Island Road; (e) any communications or interactions with SiteOne employees; and (f) any other relevant conduct or involvement.

25. The Organization's efforts to mitigate damages and prevent further harm, including: (a) steps taken to secure confidential information and systems; (b) customer retention efforts; (c) employee retention efforts; (d) changes to security, access controls, or policies; (e) communications with customers, employees, or vendors; (f) efforts to recover converted property; and (g) efforts to prevent ongoing unauthorized access or competitive harm.

**OBLIGATIONS OF THE ORGANIZATION:**

SiteOne must designate one or more persons to testify on its behalf regarding the topics listed above. Each designee must be prepared to testify about matters known or reasonably available to the Organization, even if the designee lacks personal knowledge of the matters. The Organization has a duty to prepare its designee(s) so that they may give complete, knowledgeable, and binding answers on behalf of the Organization. See Fed. R. Civ. P. 30(b)(6).

SiteOne must make a good faith effort to designate persons who are knowledgeable about the topics identified in this notice and must prepare those persons to fully and unevasively answer questions about those topics. The Organization may designate different persons to testify about different topics, but each designee must be identified to the deposing party at the outset of the deposition.

**DOCUMENT PRODUCTION:**

Pursuant to Federal Rule of Civil Procedure 30(b)(2), SiteOne must produce at the deposition the following documents and things:

1. All documents referenced in, relied upon, or used to prepare the designee(s) for the deposition.
2. All documents responsive to the topics for examination identified above.
3. All documents previously identified in SiteOne's initial disclosures, interrogatory responses, or document production in this matter.
4. Organizational charts, corporate documents, and governance materials showing the SiteOne's structure and management.

**CONFERENCE REQUIREMENT:**

Counsel for the parties are encouraged to confer regarding any objections or concerns about this notice, the topics identified, or the requested documents, in accordance with the meet-and-confer obligations under Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37.3 for the Eastern District of New York.

**OBJECTIONS AND MODIFICATIONS:**

Any objections to the time, place, manner, or topics of this deposition must be served in writing within fourteen (14) days of service of this notice, pursuant to Federal Rule of Civil Procedure 30(b)(6). If no timely objection is made, SiteOne must appear for the deposition as noticed or seek a protective order from the Court.

Dated: Huntington, New York
January 13, 2026

LAW OFFICES OF THOMAS A. BIZZARO, JR., P.C.

By: _____
Thomas A. Bizzaro, Jr., Esq.
*Attorneys for Defendants*
23 Green Street, Suite 309
Huntington, New York 11731
(631) 380-3297
tbizzaro@tab-law.com

cc: All Counsel via PACER and Email

9