Troutman Pepper Locke LLP
Bank of America Plaza, 600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308

troutman.com

Re: *SiteOne Landscape Supply, LLC v. Giordano, et al.* (2:23-CV-02084)
Motion for Appointment of Special Master to Ensure Production of Relevant Documents from Defendants

Dear Judge Locke:

We, on SiteOne's behalf, regret to bring yet another discovery issue to the Court. However, documents only received by SiteOne on January 8 show that Defendants have been intentionally withholding key documents. Specifically, Defendants expressly told this Court and SiteOne—over and over again—that no relevant text messages existed among the Defendants. Those statements were not true. Defendants had highly relevant text messages in their possession and claimed to have reviewed them but represented that no such documents existed. Given this misrepresentation and other issues with Defendants' document searching and production, SiteOne asks that a special master highly experienced with electronic discovery be appointed to oversee Defendants' document production to ensure all relevant documents are produced to SiteOne.

**The Text Messages[1] and Why They Are So Important**

Just five days after SiteOne filed its Amended Complaint on July 7, 2023, Vic texted Don on July 12, 2023, saying: "**Nick wants to have a meeting right away with the three of us.**" Vic also texted Don that same day, stating: "Call me. Let[']s be in private." The next day, July 13, 2023, Vic and Don texted numerous times about Don helping Vic with the legal issues facing the property at which Defendants first tried to start their competing business.[2] Vic texted Don the name and contact information for a "legislator friend of mine," because, as Vic stated, "I want to start resolving the issues on these properties." When Don asked, "Why me[?]," Vic responded, "I don't know shit." Don then instructed Vic, "Call me" and "Calls only."

As of July 15, 2023, Don had not yet sent the email requested by Vic, because Vic texted Don at 8:30 a.m., saying, "I hope u wrote letter to…[t]he legislator guy." A little more than an hour later, an email was sent from Don's email account to the individual identified by Vic in his texts, outlining the legal troubles Defendants were having with the property.[3] The subject line of the email reads, "From: Vic Caroleo," but the email was signed by both Vic and Don. That same morning, Vic texted Don: "We need playlist from the past for the new. Send asap." Don responded less than 10 minutes later, sharing the Garden Dept. Apple music playlist with Vic.[4]

---

[1] The texts are in a report generated by a forensic software tool, Cellebrite. The report was created by a vendor hired by Defendants in July 2023 to extract texts from Don's iPhone. SiteOne received the Cellebrite report with the documents produced by NextPoint Law Group ("NLG"), which the Court ordered in September 2025. SiteOne did not receive the NLG documents until January 8, 2026. *See* Footnote 8 for further discussion of the NLG production.

[2] The Town of Brookhaven secured an injunction against Defendants stopping them from opening their business at that location (38 Yaphank Middle Island Road) based on Defendants' violations of several environmental laws.

[3] This email **was** produced by Defendants in discovery, so they plainly considered the topic relevant to the case.

[4] Recall that Garden Dept. was the name of the business Vic founded which Don took over and eventually sold to SiteOne in 2020. The file that was shared was an Apple Music playlist titled, "garden-dept." It appears Don was providing Vic with the old Garden Dept. music playlist to play at the site of their new competing business.

On July 16, 2023—two days after SiteOne filed the Summonses for its Amended Complaint—Don texted Vic, "Summons." Less than a minute later, Don texts Vic, "Just call me…from now on." Then, "Dad, stop texting me period." The next day, Don reiterates this message: "Dad do not text me…Ever…Only calls." Don then texted Vic on July 17, 2023, "I think smart. But doesn't know how to build a business." It is unclear who this message is in reference to, but later that same day Vic texted Don, "I hope Nick doesn't call Eddie and says that if you have any questions, call me on the papers and the envelope." Don responds, "He won't but I'll clue him in."[5]

These messages show that Nick and Vic were colluding with Don in July 2023 to set up and operate their competing business, despite Defendants' oft-repeated denials of Don's involvement. The messages also show that Defendants were trying desperately to avoid creating a record of their communications by keeping their communications to phone calls only.

**The Texts Were Intentionally Withheld**

Defendants previously produced a redacted version of the report containing the texts to SiteOne's counsel on March 19, 2025. The only content not redacted was the cover page; the remaining 96 pages of the report were replaced with a slip sheet that says, "REDACTED (PAGES 2-98)." (Ex. 1.) Defendants' counsel did not respond to the undersigned's requests to discuss the report and what was being omitted from production. (Ex. 2.) However, at the hearing on March 26, 2025, Defendants told the Court that the report did not contain any messages relevant to this case because, "**None of them had anything to do with landscape related issues.**" (Ex. 3.) With that representation in open Court, SiteOne did not pursue the issue further.

It should also be noted that this representation came after the Court ordered Defendants on October 15, 2024 to manually review all of their text messages for responsiveness, saying, "you're going to have to read them and pull out responsive stuff." (Ex. 4.) The "manual" review requirement was confirmed in the Court's order that day. (ECF 178.) Defendants later confirmed repeatedly that they were manually reviewing Defendants' available text messages. (ECF 181, etc.) There is thus no question that Defendants had possession of and claim to have read each of the withheld text messages and affirmatively decided to not produce them.

**The Other Material Problems with Defendants' Document Productions**

It is now entirely unclear what other highly relevant text messages and other documents Defendants withheld from production. For example, on January 28, 2025, Defendants told this Court: "150,000 text messages from Nick's phone were extracted and reviewed, including all text message exchanges between Nick and Don and between Nick and Vic during the relevant time." (ECF No. 188.) Almost none were produced. What text messages did Defendants choose not to produce from Nick's phone of the 150,000+ they gathered and reviewed?[6]

---

[5] Per the coversheet to the text messages, the hard drive of Don's phone—which contained these messages—was copied the next day, July 18, 2023. There are thus no text messages dated thereafter in the report.

[6] Further, Defendants stated on September 20, 2024 that they had been "manually reviewing" text messages and that no relevant ones had been found. (ECF 168.) However, the NLG production shows that Defendants did not pull the

Defendants' broader search for documents is equally concerning. The Court required Defendants to search for documents using the specific search terms negotiated by the parties during a break in the proceedings before the Court on October 15, 2024. (ECF 178.) Defendants applied those search terms, resulting in hits on more than 54,000 documents. However, Defendants then unilaterally applied a second set of search terms to further screen those documents (which was never authorized by the Court) using terms like "shoes" and "aquatic supplies." Of the 54,000+ documents that hit on the Court-ordered search terms, Defendants produced a mere **three** documents after applying their own additional search terms.

**The Appropriate Relief**

The withheld texts, coupled with Defendants' extensive history of efforts to avoid and delay producing documents and hiding bad facts,[7] show that Defendants simply cannot be trusted to have properly searched for and produced relevant documents.

In cases with similar facts, courts have appointed special masters pursuant to Rule 53 to supervise document review and production. For example, in *Sec. & Exch. Comm'n v. Yin*, No. 17-CV-972 (JPO), 2020 WL 6801915 (S.D.N.Y. Nov. 19, 2020), the Court appointed a special master (a third-party forensic and e-discovery expert) to recover relevant files and reconstruct the chain of events surrounding the original search and review of documents by the Defendants to protect the integrity of discovery and ensure a reliable evidentiary record. The defendant was required to pay all costs associated with the special master.[8] *See also Chevron Corporation v. Donziger*, 425 F.Supp.3d 297 (S.D.N.Y. 2019) (appointing a court-appointed neutral where defendant failed to make good faith efforts to produce documents and "unjustifiably" refused to comply with discovery obligations).

SiteOne therefore asks the Court to appoint a special master to: (1) collect and review the documents in Defendants' possession for relevance; (2) produce the relevant documents to SiteOne; and (3) prepare a report to the Court identifying what documents were withheld from production initially by Defendants. SiteOne asks that Defendants bear the cost of this process. Counsel for the parties met and conferred on January 27 but did not agree on these issues.[9]

J. Evan Gibbs III

---

text message data from the phones of Vic, Don, and Nick for searching until more than a month later—October 21 and 22, 2024—showing the September 20 statement to have been impossible.

[7] First, as one example, Defendants delayed communicating the destruction of their text messages for **months** after their counsel learned about it and continued to obfuscate the facts post-disclosure. As another example, Defendants refused to produce the NLG documents to SiteOne until SiteOne filed, on January 7, 2026 (ECF 271), a motion to compel compliance with the Court's September 17, 2025 Order which required them to be produced. And, as of the date of this filing, Defendants have **still** not submitted the hundreds of NLG documents they claim to be privileged to this Court for in camera review as mandated by the Court. (ECF 233.) It is thus highly possible the purportedly privileged documents reflect even further discovery abuses by Defendants.

[8] The special master fees were addressed in a separate opinion: *Sec. & Exch. Comm'n v. Yin*, No. 17-CV-972 (JPO), 2021 WL 2138541, at *1 (S.D.N.Y. May 26, 2021).

[9] The parties are continuing with merits depositions as ordered by the Court and are only delaying Defendants' individual depositions until this issue is resolved.