CertilmanBalin
ATTORNEYS

Anthony W. Cummings
Partner
Direct Dial 516.296.7062
acummings@certilmanbalin.com

90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Phone: 516.296.7000 • Fax: 516.296.7111
www.certilmanbalin.com

Re:   SiteOne Landscape Supply, LLC v. Giordano et al.
      2:23-cv-02084 – Opposition to Motion for Appointment of Special Master

Dear Judge Locke,

This letter is submitted in opposition to Plaintiff's February 2, 2026 motion to Appoint a Special Master. DE [275]. Plaintiff's motion should be denied because it fails to meet the stringent legal requirements for appointing a special master under Federal Rule of Civil Procedure 53, which requires a showing of exceptional circumstances. Instead, Plaintiff has manufactured a controversy by deliberately misrepresenting text message exchanges- taking them out of chronological order and context-to create a false narrative of concealment where none exists. This transparently improper effort seeks only to impose unnecessary costs on Defendants and further delay resolution of this matter.

As detailed below: (1) every text message Plaintiff claims was "withheld" was either irrelevant personal communication between a father and son or was produced and mischaracterized by Plaintiff; (2) Defendants have complied in good faith with all discovery obligations and Court orders; (3) Plaintiff's cited case authority is inapposite and involves actual bad faith conduct absent here; and (4) Plaintiff's motion contradicts its own recent opposition to Defendants' discovery requests on grounds that discovery is complete.

Plaintiff claims Defendants failed to disclose highly relevant text messages, but the assertion is demonstrably false. The opening salvo in Plaintiff's motion concerns the setting up of a meeting. When Don said to his father "let's be in private," it was 12:09 p.m. and the exchange concerned retracting a deal. (Ex. A, pg. 21). When Vic said, "Nick wants to have a meeting," it was 5:51 p.m. - hours after the first quoted message - and that message had nothing to do with the earlier statement. (Ex. B, pg. 23). Not only did Plaintiff falsely present the sequence of these text communications, but they also deliberately presented them out of context. (Ex. B and Ex. A).

Plaintiff scoured some 96 pages of texting to cherry-pick and recast irrelevant statements as sinister and indicative of unlawfulness. The text messages concerning certain property located in Brookhaven - owned solely by Vic's entity and acquired before Don's termination - concerned justification for removing trees on the property and attempting to communicate that message to a relevant government representative by email after environmental concerns had been raised by the municipality. (Ex. C, Jul. 15, 2023 email).

Contrary to Plaintiff's characterization, nowhere in the exchange concerning the legislator does Don instruct Vic to "Call me" or say, "Calls only." (Ex. D, pgs. 26-31). Plaintiff's assertion that the Town of Brookhaven secured an injunction against Defendants stopping them from opening their business at that location is both speculative and deliberately misleading. The litigation primarily concerned alleged violations of the Town Code, the Pine



Barrens Act, and the Environmental Conservation Law in connection with clearing the property-not any non-compete violation. (Ex. C, Jul. 15, 2023 email).

Critically, Plaintiff has possessed this email for nearly two (2) years and already exercised its right to inquire about these very issues during two (2) separate depositions of both Don and Vic. If Plaintiff believed this evidence was significant (it is not), it had ample opportunity to pursue it through proper discovery channels. That a father would enlist his son's help in drafting an email communication cannot reasonably be deemed part of an unlawful scheme. (Ex. E, pgs. 41-44).

Just as with the foregoing attempts, Plaintiff seeks to equate a simple act - in this instance - a son sharing a *music playlist* with his father - as evidence of the son improperly competing in a business. This conclusion, like the others drawn by Plaintiff, is unfounded conjecture and devoid of any evidentiary support. Each purported example of allegedly relevant text messages used by Plaintiff to support its motion is, upon examination, a distortion of the true nature of the communication.

**The July 16, 2023 Exchange:** The exchange on July 16, 2023, only shows the individuals were having difficulty with messaging and began making telephone calls. A review of the messaging reveals that attempted messages were repeatedly recalled, indicative of a technical issue and nothing more. (Ex. F, pgs. 49-52). **The July 17, 2023 Quote:** Plaintiff erroneously assigns this quote to Don and similarly takes it out of context. Vic - the actual author of the message - was referring to another person, Michael Feinstein - a business referral - specifically a lawyer. (Ex. G, pgs. 53-58). The entire exchange concerns getting papers to a lawyer to be potentially retained. The reference to Nick is again taken out of context. (Ex. G, pg. 58). It merely refers to Nick having a discussion with someone and referring them to Vic for answers. In no way can these excerpts - deliberately taken out of context and cherry-picked by Plaintiff from thousands of pages of communications - be considered relevant or probative of collusion or the intentional failure to disclose highly relevant text messages by prior counsel, as asserted by Plaintiff's counsel. Plaintiff has not identified a single text message that should have been produced under the Court's orders and was not. Instead, Plaintiff asks this Court to infer misconduct from innocuous personal communications and technical messaging difficulties. Such speculation cannot support the appointment of a special master or warrant a duplicative and costly fishing expedition.

The text communications Plaintiff claims were intentionally withheld are irrelevant and do not pertain to landscape-related issues. Rather, they are private conversations between a father and son covering topics ranging from baseball tryouts for Don's son, car service appointments, dental appointments, fatherly advice, news events, household chores, requests for favors, and similar personal matters. These are precisely the types of communications that fall outside the scope of discoverable materials and that prior counsel properly excluded as irrelevant to this litigation. Plaintiff offers no evidence - because none exists - that these personal exchanges contain information probative of the claims or defenses in this case.

A proper reading of the text messages shows them to be irrelevant, as none had anything to do with landscape-related issues as properly represented by prior counsel and as



required by the Court's orders. DE [178]. Accordingly, nothing in the text messages that have been disclosed supports Plaintiff's conjecture that the messages from Nick's phone are anything other than as described by Defendants' prior counsel. DE [188].

Plaintiff's counsel makes numerous unverifiable accusations throughout its motion. For example, Plaintiff suggests that a September 20, 2024, representation by prior counsel (that they were manually reviewing emails and text messages) could not be true because the NLG production shows that text messages were not pulled until a month later. However, the Cellebrite Extraction report is dated July 2023, demonstrating that the data was extracted well before the September representation. DE [188]. Plaintiff's timeline argument thus collapses under scrutiny.

Plaintiff claims that Defendants unilaterally applied a second set of search terms to further screen documents after the Court's October 15, 2024 order. However, Plaintiff made no motion to compel nor brought this alleged occurrence to the Court's attention at any time during the intervening months - only now raising it opportunistically in support of its motion for a special master. This failure to timely object through proper channels belies any claim of urgency or prejudice and suggests that even Plaintiff does not believe its own allegations warrant serious concern.

Plaintiff's speculation and conveniently distorted presentation of text messages - taken out of context and chronological order - combined with its baseless and unverifiable conclusions, cannot transform prior counsel's good-faith responses into an alleged attempt by Defendants to avoid and delay production. Numerous documents have been produced proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1), and appropriate classifications of irrelevant material have been made, all consistent with the Court's requirements and orders. Defendants have complied with their discovery obligations, and Plaintiff has not demonstrated any actual gap in the production or any prejudice resulting from the exclusion of personal family communications.

There is no justification for the appointment of a special master and the rehashing of discovery that has already taken place. The authorities cited by Plaintiff are readily distinguishable. In *Chevron Corp. v. Donziger*, there was no good-faith effort to comply with discovery obligations and evidence of fraud on the court. In *Zubulake v. UBS Warburg LLC*, there were massive deletions of emails and undisclosed transfers of electronic data demonstrating spoliation. Here, by contrast, Plaintiff's counsel merely challenges the professional judgment of prior counsel regarding relevance determinations- determinations that were reasonable and consistent with the Court's orders. Disagreement over relevance classifications does not constitute the exceptional circumstances required under Rule 53.

Plaintiff has not demonstrated exceptional circumstances, has not shown any bad faith or spoliation, and has not identified any actual prejudice from the discovery conducted to date. For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to appoint a special master in its entirety.

8769266.1