# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
SITEONE LANDSCAPE SUPPLY, LLC,

                                PLAINTIFF,

   v.                      Civil Action No.
                             23-CV-02084-GRB-SIL

NICHOLAS GIORDANO, DOMINICK CAROLEO,
VICTOR CAROLEO, NARROW WAY REALTY, LTD.,
NARROW WAY 2 LLC, THE GARDENDEPT. CORP.,
GROUP 5 ASSOCIATES, LTD., 3670 ROUTE 112 LLC
and 94TH ST. LLC,

                               DEFENDANTS.
------------------------------------------------X

                    October 15, 2025

                    9:03 A.M.

          DEPOSITION of SITEONE LANDSCAPE

SUPPLY, LLC, by a Corporate Representative,

DOUGLAS BLACK, taken by the Defendants, pursuant

to an Order and to the Federal Rules of Civil

Procedure, held at the above time and date via

videoconference, before Vanessa Walker, a

Shorthand Reporter and a Notary Public of the

State of New York.


             LH REPORTING SERVICES, INC.
           Computer-Aided Transcription
           50 Glen Street, Suite 316
            Glen Cove, NY 11542

D. BLACK

A.    It's likely that it was Briley Brisendine but I'm not a hundred percent there.

Q.    Do you know if Mr. Gibbs asked you?

A.    I don't believe so.

Q.    Do you know if any attorney from SiteOne other than in-house legal counsel ever asked you for the location for the Android device or for the device itself?

A.    I don't believe so.

Q.    Do you recall where you were when you first learned that the phone was necessary or important for this litigation?

A.    No.

Q.    Were you in the office, do you know?

MR. GIBBS:  Objection.  Asked and answered.

Q.    So could you please briefly describe each and every step you took once you realized that the phone was necessary for this litigation as far as trying to locate it?

A.    Yes.  I talked to my assistant, Lynn, and we both searched my office in Roswell. And then I went home and I searched my home office, all the places that the phone would be.

32

D. BLACK

And then Lynn contacted Neville who works in our IT Department went to search places where he would've stored the phone and the three of us could not find the phone.

Q.    When you say that your assistant Lynn, is that Lynn Fracassi, F-R-A-C-A-S-S-I?

A.    Yes.

Q.    And Neville Ranglin, R-A-N-G-L-I-N?

A.    Yes.

Q.    Mr. Black, did you or anyone on behalf of SiteOne document any of your efforts or SiteOne's efforts to locate this phone?

A.    No.

Q.    Do you recall what year you first advised or informed anyone at SiteOne whether in-house counsel, outside counsel or someone else that the Android device was lost?

A.    No.

Q.    Do you know if you notified anyone prior to the year 2025?

A.    No.  I don't recall.

Q.    Since the May 27, 2025 letter that I showed you before from Mr. Gibbs regarding your phone, has the phone been located since that

33

D. BLACK

letter was sent?

A.    No.

Q.    As we sit here today, do you have any idea what happened to that Android device?

A.    I have no idea.

Q.    Now that device, was that your personal phone or was that a SiteOne issued cellular device?

A.    That was a SiteOne issued.  But again, I only have one phone so I use it for both personal and business.

Q.    And you presently have an iPhone for business; is that correct?

A.    Yes.

Q.    Is that the same iPhone that you've had since January 2024?

A.    Actually, no.  I recently upgraded and got a new iPhone.

Q.    Do you know if there was any problem transporting or porting over text messages to the old iPhone to your current iPhone?

A.    No.  There was no problem.

Q.    Your current iPhone, does it have an iCloud account?

D. BLACK

A.    I don't know for sure.

Q.    Your Android device, did that have a Google account associated with it?

A.    I do not know.

Q.    Do you know what a Google account is?

A.    No.

Q.    Did you take any personal efforts personally to try to track the last known location of that phone through its software?

A.    No.  I mean, we did with Verizon to try to retrieve the texts but they were unable to do that.

Q.    Are you aware that on an iPhone there's something called Find My iPhone?

A.    Oh, yes.

Q.    Are you aware that on an Android device such as the Samsung Galaxy that was lost that there's also a tracking feature?

MR. GIBBS:  Objection.  Assumes facts not in evidence.

Q.    Do you know if there is a tracking feature embedded in the software of a lost Android device that you can track its lost known

D. BLACK

the in-house search for the device?

A.   I know I went back and researched. Like I mentioned, Lynn and I both had gone back and searched our offices.  And that's the only thing.  And Neville has searched.

Q.   As the CEO of SiteOne Landscape Supply, do you have any oversight into data security?

A.   I am responsible for the company and data security is part of our company.

Q.   Do you believe that as a custodian in connection with this litigation having been issued a litigation hold letter that you were responsible for maintaining and preserving that Android device?

A.   I don't think the Android device has relevant content.  And as I mentioned, the texts that I would've sent for this case would've gone to three people and you have the texts for those three people.

Q.   I beg to differ.

A.   I'm not concerned that there's any relevant data that's missing.

Q.   So the answer is no to my question?

68

D. BLACK

A.    Can you repeat the question.

MR. BIZZARO, JR.:   Madam Reporter, can you read it back.

(Whereupon, the referred to question was read back by the Reporter.)

Q.    Yes or no?

A.    No.

Q.    And why is your answer no, can you explain?

A.    As I said, any relevant texts on this case would've been sent to three people. Briley Brisendine, our general counsel; Jerry Justice, our president; Joe Ketter, our HR.   I'm extremely confident those are the three.   I keep a tight circle for sensitive issues like this. And I don't use my texts for significant content.   My texts tend to be call me, call you back in five minutes, et cetera.

Q.    What do you mean when you're using the term relevant texts, in your opinion what is a relevant text in connection with this litigation?

A.    Relevant texts would be statements that are relevant to this case.

D. BLACK

wouldn't be surprised that there's not anything there because I don't use text a lot.

Q.   Do you recall, sitting here today, ever sending a text message directly to Don Caroleo?

A.   Directly to Don, I'm sure, yeah. I'm sure I did.

Q.   Do you know why that document wasn't produced?

A.   What's that?

Q.   Do you know why that document, that text message, wasn't produced?

A.   I would assume that's on Dominick's phone.

Q.   Correct, but are you aware that your phone was required to be searched for responsive text messages?

A.   For messages I sent to Don, no.

Q.   So correct me if I'm wrong, you believe there are text messages or at least one text message that you've sent to Don Caroleo since the year 2021; is that correct?

A.   Correct.

Q.   Do you believe that you sent any

D. BLACK

text messages to Dominick Caroleo in the year 2022 prior to his termination?

A.   I don't know.  I really don't know.

Q.   And correct me if I'm wrong, we do not have access to any text message that you might've sent to Dominick Caroleo or any text message even related to Dominick Caroleo that predates January 25th of 2024; is that correct?

A.   You.  Would have that on his phone. I would believe.

Q.   So the answer is that's correct, we don't have that information regardless of what I may or may not have on my client's phone?

MR. GIBBS:  Objection.  Asked and answered.

A.   No.  The answer is you would have the texts on his phone that I would've sent to him.

Q.   Going down.  It says "reporting policy violations.  SiteOne is committed to enforcing this policy as it applies to all forms of record."  Do you agree with that?

A.   Yes.

Q.   Are you personally committed to

116

D. BLACK

other electronic PDA or tablet or device other than you?

A.    I don't know.

Q.    Who would know that information?

A.    Likely David Bannister or David Black.

Q.    Earlier you testified that you, I believe you testified that in addition to checking your office with Lynn Fracassi, you checked your home office, correct?

A.    That's correct.

Q.    Did you check any other rooms or room of your home other than your home office?

A.    I did.

Q.    What rooms did you check?

A.    I checked my room, our closet, our dressers and my closet. And I checked also the, we have, my wife Joanne and the kids have work areas in the laundry room so I checked the laundry room as well.

Q.    Did you ever have any conversations with your wife about the lost phone?

A.    Yes.

Q.    Did you speak with her about when

134

D. BLACK

C E R T I F I C A T E

STATE OF NEW YORK        )
                         :   SS.:
COUNTY OF KINGS          )

I, VANESSA WALKER, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of October, 2025.

                              _____
                              Vanessa Walker