# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------x
SITEONE LANDSCAPE SUPPLY, LLC,

Plaintiff,

-against- 2:23-CV-02084

NICHOLAS GIORDANO, DOMINICK CAROLEO, VICTOR CAROLEO, NARROW WAY REALTY, LTD, NARROW WAY 2 LLC, THE GARDEN DEPT. CORP., GROUP 5 ASSOCIATES, LTD, 3670 ROUTE 112 LLC, 9 4th STREET LLC, SCAPES SUPPLY, LLC, NEWAY MANAGEMENT, LLC and NEWAY TRUCKING,

Defendants.
-------------------------------------------x

Held Remotely
via Zoom

July 10, 2025
9:05 a.m.

DEPOSITION of DAVID BLACK, a witness for the Plaintiff, taken by the Defendant, pursuant to Notice, held at the above time and place, taken before Julia M. Speros, a Shorthand Reporter and Notary Public of the State of New York.

LH REPORTING SERVICE, INC.
Computer-Aided Transcription
718-526-7100

APPEARANCES:

TROUTMAN PEPPER LOCKE LLP
Attorneys for Plaintiff
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308
(404)885-3000

BY: EVAN GIBBS, ESQ.
evan.gibbs@troutman.com

LAW OFFICES OF THOMAS A. BIZZARO, JR., P.C.
Attorneys for Defendants
7 High Street, Suite 300
Huntington, New York 11743
(631)380-3297

BY: THOMAS A. BIZZARO, ESQ.
tbizzaro@tab-law.com

Also Present:

Mr. Dominick Caroleo

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing, sealing and certification, and the same are, hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to by an officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the Court.

* * *

D. BLACK

A. Yes, sir, and laptops.

Q. Okay -- all right. Going down to Mr. Sausto:

"He has got one iPhone which he began using in January 2024. His text messages date back to March 11, 2025. Mr. Sausto's iPhone had a 30-day auto-delete feature for his text messages going for some period of time, which is the apparent reason for the limited scope of his text message data".

Do you see that?

A. Yes.

Q. When is the first time you were aware of what's stated in paragraph 10?

A. On this call.

Q. Today, right now?

A. Yes.

Q. So, are you aware of how SiteOne determined that Mr. Sausto had a 30-day auto-delete feature?

MR. GIBBS: And, Tom, just again for the record, I've told you, he has had no involvement with these individuals. We can stipulate to that. I mean, he has

D. BLACK

not been involved.

We've -- this has all been handled through our law firm and our vendors.

MR. BIZZARO: That's good.

Q. So, basically, Mr. Black, am I correct that a 30-day auto-delete feature means every 30 days it erases the text message data that is more than 30-days-old, correct?

A. I don't think it's every 30 days. I think, like, as the day rolls, it's a rolling constant 30-day window that you have.

Q. Correct. So, if Mr. Sausto was a custodian subject to a litigation hold, which he was, do you believe that having an auto-delete feature would defeat the purpose of the litigation hold letter, whether it was intentionally or unintentionally activated?

MR. GIBBS: Object to form. Calls for a legal conclusion, but you can answer.

MR. BIZZARO: I'll withdraw.

Q. In your opinion as the Chief Information Security Officer, do you believe that having a 30-day auto-delete feature on one

D. BLACK

of the custodian's phones runs afoul of the litigation hold letter?

MR. GIBBS: Same objection.

A. Yes.

Q. Same answer -- thank you. And do you think that Mr. Passaro, who got a SiteOne issued iPhone in February or March of '23 but only has text message data dating back to July 18th of '23, do you believe that that missing data between March and July 18th runs afoul of the litigation hold letter?

MR. GIBBS: Object to the form.

Q. In your opinion.

A. I mean, for that one, I would want to find out why. I mean, there is a chance he was out of the office -- surgery, other things -- cause [redacted], so I think about that. [redacted]. I would need to find out first.

Q. So, you didn't make any efforts to find this out prior to today cause you didn't know about this until today?

A. I just learned about it, yeah.

Q. Okay. Interesting.

D. BLACK

A. I mean, again, I just learned about this today, so --

Q. Wow. Thrown to the wolves, huh? Let's keep going.

So, do you think -- you think that this could constitute a violation of the litigation hold letter if it turns out that Mr. Passaro has no text data because he deleted it or --

MR. GIBBS: Objection.

Q. In your opinion -- please, let me stop so we can do away with Evan's objections.

MR. BIZZARO: You have a continuing objection. If I fail to say, "in your opinion", it's in your opinion.

Q. Do you understand that, Mr. Black?

A. Yes.

Q. So, in your opinion, if Mr. Passaro had an auto-delete feature or intentionally deleted emails between February and July -- or text messages between February and July 18th of 2023, would that run afoul of the litigation hold letter concerning him?

A. Yeah -- for that question, yes.

Q. That's all I needed, man.

So, let's go down -- and Mr. Sausto, same question:

Is the 30-day auto-delete feature -- in your opinion, does that run afoul of the litigation hold letter?

A. Yes.

Q. Are you aware that in this litigation SiteOne made applications against my clients saying that we intentionally destroyed evidence -- electronic evidence; are you aware of that?

A. Yes, I didn't know -- I mean, I was told that there was difficulty finding text messages on your side.

Q. Okay. Were you ever told that Dom Caroleo had an auto-delete feature on his iPhone?

A. No.

Q. Were you ever told that Nick Giordano had a lapse or a gap in text message data on his iPhone?

A. I don't think so.

Q. Okay. Were you ever told that Vic

D. BLACK

Caroleo, another defendant in this case, deletes all his text messages and has no text message data?

A. Yes, I was told that.

Q. Were you told that the Troutman firm and SiteOne's attorneys made applications against my clients for sanctions and things of that nature alleging that we destroyed evidence whether intentionally or unintentionally; are you aware of that?

A. Yes.

Q. But you're not aware of any of the same stuff going on in your own house?

A. Well, I just learned about all this in the last couple of weeks, so --

Q. Do you think that in and of itself is a problem; that the Chief Information Security Officer is only learning about this case and these issues two weeks before his deposition before he's thrown to me?

MR. GIBBS: Object to the form of the question.

MR. BIZZARO: Let me say it again cause I want to say it again. I'll take

D. BLACK

out the "thrown to me".

Q. Do you think, in your opinion as the CISO of a public company, that it's a concern that you are only learning about these data issues on SiteOne's side a couple of weeks before this deposition?

A. I mean, based on what I have done in my position when it comes to these cases in the past, this -- I wouldn't expect it to be different.

Q. Yeah, well let me ask you this:

Why do you think you're here today if you don't know anything about the missing text messages?

A. Because I know more than anyone else that might've known because we don't track text messages.

Q. But you don't know anything about text messages admittedly, correct?

MR. GIBBS: Object to the form.

A. I know we don't collect them. We don't do anything with them. We don't have any tools for them.

Q. Okay. So, earlier you testified --

D. BLACK

At this point, from my perspective, we have discussed how litigation holds are handled within SiteOne, who's in charge of litigation holds, how the litigation holds are distributed, and to whom, what types of data SiteOne is able to place a litigation hold on. Mr. Black testified that it's really limited to emails and not to text messages.

Mr. Black has testified about the company's inability to remotely gather text messages or collect text messages from employee phones. He has testified about the company's inability to place -- or preserve text messages for purposes of a litigation or for any other purpose.

He has testified that he wasn't involved personally with the text messages in this case with the collection of those messages and that no one at the company was because, as we've explained to counsel previously and on

A C K N O W L E D G M E N T

STATE OF NEW YORK)

:ss

COUNTY OF )

I, David Black, hereby certify that I have read the transcript of my testimony taken under oath on July 10, 2025; that the transcript is a true, complete and correct record of what was asked, answered and said during this deposition, and that the answers on the record as given by me are true and correct.

__________________________

DAVID BLACK

Signed and subscribed to
before me this _________day
of ________________, 2025.

_____________________________
Notary Public

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| BLACK | MR. BIZZARO | 5-173 |

E X H I B I T S

| DEFENDANT'S | DESCRIPTION | PAGE |
|---|---|---|
| A | Letter 5/27/25 | 103 |

* Attorney Thomas Bizzaro from the Law Offices of Thomas A. Bizzaro, Jr. P.C. has retained all exhibits.

CERTIFICATION

I, JULIA M. SPEROS, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of July, 2025.

Julia M. Speros

ERRATA SHEET
LH REPORTING SERVICE, INC.

CASE NAME: SITEONE LANDSCAPE SUPPLY, LLC v. NICHOLAS GIORDANO, DOMINICK CAROLEO, VICTOR CAROLEO, NARROW WAY REALTY, LTD, NARROW WAY 2 LLC, THE GARDEN DEPT. CORP., GROUP 5 ASSOCIATES, LTD, 3670 ROUTE 112 LLC, 9 4th STREET LLC, SCAPES SUPPLY, LLC, NEWAY MANAGEMENT, LLC and NEWAY TRUCKING
DATE OF DEPOSITION: July 10, 2025
WITNESS NAME: DAVID BLACK

PAGE/LINE(S) CHANGE REASON

----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------
----/------/-------------------------/----------

______________________
DAVID BLACK

Subscribed and sworn to
before me, this day
of , 2025.

NOTARY PUBLIC