# EXHIBIT 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

\- - -

SITEONE LANDSCAPE SUPPLY, LLC,

Plaintiff, Civil Action No.

v. 2:23-CV-2084(GRB)(SL)

NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; NARROW WAY REALTY, LTD.; NARROW WAY 2 LLC; THE GARDEN DEPARTMENT CORP.; GROUP 5 ASSOCIATES, LTD.; 3670 ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND NEWAY TRUCKING,

Defendants.

\- - -

April 24, 2025

\- - -

Videotaped deposition of VICTOR CAROLEO, conducted at Farrell Fritz, P.C., 400 RXR Plaza, Uniondale, New York, commencing at 10:00 a.m. EDT, on the above date.

Magna Legal Services
866-624-6221
www.MagnaLS.com

Marie Foley
RMR, CRR

and whom they represent.

MR. GIBBS: Good morning. This is Evan Gibbs here on behalf of the plaintiff SiteOne Landscape Supply, LLC with the Troutman Pepper Locke law firm.

MR. MULRY: Kevin Mulry from Farrell Fritz also for plaintiff.

MR. MULE: Michael Mule from Milman Labuda Law Group, PLLC on behalf of the defendants.

MR. BIZZARO: And Thomas A. Bizzaro, Junior, Law Offices of Thomas A. Bizzaro, Junior, P.C., for all the defendants as well.

THE VIDEOGRAPHER: Would the court reporter please swear in the witness.

THE STENOGRAPHER: If I could ask you to raise your right hand, please.

Do you swear or affirm the testimony you give will be the truth, the whole truth, and nothing but the

truth today?
THE WITNESS: Yes, I do.
THE STENOGRAPHER: Thank you.
- - -
VICTOR CAROLEO, the Witness herein, having been first duly sworn by a Notary Public in and of the State of New York, was examined and testified as follows:
EXAMINATION BY
MR. GIBBS:
Q. Mr. Caroleo, if you would, we'll kind of start the way we did last time, but if you could just start with providing me with your full name.
A. It's Victor Caroleo.
Q. Are you presently on any kind of medications or drugs that could affect your testimony today?
A. I don't think so. You know, I'm on -- I'm on some drugs, but I don't know that it would be affecting any of my testimony.
Q. And we spoke last time about the

A. No.
Q. And that's all the questions I have about that particular document.
You previously testified that you were represented initially in this case by Mr. Saul Zabell. Is that correct?
A. Correct.
Q. Do you remember approximately the date that you hired or retained Mr. Zabell?
A. No.
Q. Did Mr. Zabell ever tell you that you needed to preserve documents and communications for purposes of this case?
A. Not that I recall.
Q. Did you receive any instructions in writing from Mr. Zabell to not destroy any documents or communications relating to the case?
A. No.
Q. A little more specific question along the same lines.
Were you ever told by Mr. Zabell to save emails?

that, I did not know that.

MR. GIBBS: I'm going to mark as -- one second.

THE WITNESS: This is the water you got me?

MR. BIZZARO: Yes.

THE WITNESS: You drank out of it?

MR. BIZZARO: No.

THE WITNESS: There's quarter of an inch missing.

MR. GIBBS: I'm marking this document I'm showing you as Exhibit 4. We're continuing the numbering from the previous ex -- previous depositions. So this should be Exhibit 4.

(Exhibit 4, email thread 7/14/2023 (redacted), Bates Defendants_002223-225, was marked for identification, as of this date.)

THE WITNESS: Okay. So what is this stating --

MR. BIZZARO: Just read it.

Just take a look at it.
THE WITNESS: Read it?
MR. BIZZARO: Yeah.
MR. GIBBS: That's right.
THE WITNESS: And where is this coming from?
MR. GIBBS: Hold on just one second. I'll --
MR. BIZZARO: You just read. You don't ask him questions.
THE WITNESS: Okay.
MR. BIZZARO: If you have any questions, we can talk outside.
THE WITNESS: Okay.
So, now, what was your question?
MR. GIBBS: I actually haven't asked one yet. I just wanted you to look it over and then now I'll ask you some questions once you've had a chance to look at it.
BY MR. GIBBS:
Q. You mentioned that you remember receiving in February 2025 a communication from the Milman firm not to delete

documents or to preserve evidence. If looking at this email, is this the communication that you're referring to?

A. I would say yes.

Q. Do you recall any other communications from the Milman firm instructing you to preserve documents as part of this case?

A. I believe one of the attorneys called me up like a week later and says we know [redacted] Do you got this down? Do not delete anything.

Q. About a week after that particular email?

A. Maybe -- maybe it was like three weeks after this, just to remind me.

Q. Got it.

And I'm going to go back in time to your representation by the Rivkin Radler firm.

Do you recall that they previously represented you in this case?

A. Yes.

Q. Do you remember approximately when it was that you retained them to represent you?

A. I don't recall that.

Q. Did any attorney of the Rivkin firm ever tell you that you needed to preserve documents or communications for this lawsuit?

A. Not that I recall.

Q. Did you -- do you recall ever receiving a document from anybody at the Rivkin firm that was titled or referred to as a litigation hold document?

A. Not that I recall.

Q. You later became represented by the Milman Labuda firm. Is that right?

A. That's correct.

Q. Do you remember approximately what date they became your attorneys of record?

A. I don't recall.

Q. Other than the document that we marked as Exhibit 4 from February of 2025, do you recall receiving any prior

communications from the Milman firm instructing you to preserve documents and evidence for purposes of the case?

A. No.

Q. Since March 21st of 2023, has any other attorney, other than the ones we've talked about, Mr. Zabell, the attorneys at the Rivkin firm and the attorneys at the Milman firm, have any other attorneys ever instructed you to preserve documents as part of this case?

A. No.

Q. You testified in your last deposition on and off a Scapes Supply email account which is victor@scapesupply.com.

Is that right?

A. Yes.

Q. Do you know if a litigation hold was turned on for that particular email account?

A. I never opened that account. You know, I never went and read it, anything in it. I don't even know the passcode.

Q. So just to make sure the record is clear, you've never accessed that particular email account at all?

A. That's correct.

Q. Your victorcaroleo@aol.com email address, your personal account, do you know if a litigation hold was turned on for that particular account?

A. Not that I recall.

(Exhibit 3, email 15 Jul 2023 (redacted), Bates DonCaroleo_000456-457, was marked for identification, as of this date.)

BY MR. GIBBS:

Q. I'm handing you what was marked as Exhibit 3 at your prior deposition. If you would just take a minute to review that document, I just have a couple of questions about it.

A. Can you give me a summarize [sic] of what this is here, just a rough idea, somebody?

Q. This was an email, and I will put it in the record, it's an email dated

C E R T I F I C A T E

I, MARIE FOLEY, Registered Merit Reporter, Certified Realtime Reporter, and Notary Public for the State of New York, do hereby certify that prior to the commencement of the examination, VICTOR CAROLEO, was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

Marie Foley
COURT REPORTER
Registered Merit Reporter
Certified Realtime Reporter
Notary Public
Dated: May 4, 2025