# EXHIBIT 8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

\- - -

SITEONE LANDSCAPE SUPPLY, LLC,

Plaintiff, Civil Action No.

v. 2:23-CV-2084(GRB)(SL)

NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; NARROW WAY REALTY, LTD.; NARROW WAY 2 LLC; THE GARDEN DEPARTMENT CORP.; GROUP 5 ASSOCIATES, LTD.; 3670 ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND NEWAY TRUCKING,

Defendants.

\- - -

April 25, 2025

Videotaped deposition of NICHOLAS GIORDANO, conducted at Farrell Fritz, P.C., 400 RXR Plaza, Uniondale, New York, commencing at 10:00 a.m. EDT, on the above date.

Magna Legal Services
866-624-6221
www.MagnaLS.com

Marie Foley
RMR, CRR

whom they represent.

MR. GIBBS: I'm Evan Gibbs, and I represent the plaintiff SiteOne Landscape Supply LLC.

MR. MULRY: Kevin Mulry from Farrell Fritz also representing plaintiff.

MR. BIZZARO: Thomas A. Bizzaro, Junior, Law Offices of Thomas A. Bizzaro, Junior, P.C. for the defendants.

MR. LABUDA: Joseph Labuda, Milman Labuda law group for the defendants.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in the witness, and then counsel may proceed.

THE STENOGRAPHER: If I could ask you to raise your right hand, please.

Do you swear or affirm the testimony you give will be the truth, the whole truth, and nothing but the

truth today?

THE WITNESS: Yes.

THE STENOGRAPHER: Thank you.

- - -

NICHOLAS GIORDANO, the Witness herein, having been first duly sworn by a Notary Public in and of the State of New York, was examined and testified as follows:

EXAMINATION BY

MR. GIBBS:

Q. Good morning, Mr. Giordano.

A. Good morning. How are you?

Q. Doing well.

If you would, let's start with you just stating your full name for the record?

A. Nicholas Giordano.

Q. And are you presently on any kind of medications or drugs that could affect your testimony today?

A. No.

Q. I'll go over just a few ground rules just to make the deposition flow a

document.

Have you had a chance to review the document?

A. Yeah, yeah. I sent them this document, so I'm fully aware what this is.

Q. Can you tell me what this document is?

A. This is a receipt for an iPhone I bought.

Q. This was produced by your attorney in the case, and it sounds like you sent it to him; that's where it came from?

A. Yes.

Q. Why did you order a new iPhone on February 19th, 2023?

A. My old phone was in grave disrepair. The battery wasn't working properly. It wasn't charging. So it was just an outdated, old phone. So I decided to replace it with a newer model.

Q. What year did you buy your old phone?

A. I don't recall.

Q. Do you remember the model of the old phone?

A. I don't recall.

Q. Was your employment terminated by SiteOne on February 20th of 2023?

A. Yes.

Q. And is it just a coincidence that you ordered this phone on the day before you were terminated by SiteOne?

A. Yes.

MR. BIZZARO: Objection.

MR. LABUDA: Objection, but you can answer.

MR. BIZZARO: So, let him finish the question. Give us time to object, okay?

THE WITNESS: Okay.

MR. BIZZARO: More importantly because the court reporter can't take two people speaking at the same time.

BY MR. GIBBS:

Q. Before February 20th of 2023, did you know or suspect that you were going to be fired by SiteOne?

MR. BIZZARO: Objection.
You can answer.
A. No.
Q. The phone that corresponds to the receipt we've marked as Exhibit 1, did you purchase that phone with your personal funds or personal money?
A. Yes.
Q. Did you receive this phone on February 20th?
A. Yes.
Q. Did you receive it at the SiteOne Coram location which is at 3672 New York 112 in Coram, New York?
A. Yes.
Q. What time of day did you receive the phone?
A. I don't recall a hundred percent. I would say 9, 10 o'clock in the morning.
Q. When you got the new phone on February 20th, did you transfer any data from your old phone to your new phone?
A. Yes.

Q. How did you do that?
A. iCloud.
Q. What data did you transfer over? Was it everything you had stored?
A. No, just photos and contacts.
Q. Did your old phone, did it back up everything to iCloud?
A. I don't recall.
Q. The iCloud account that was linked to that phone, was it a personal iCloud account?
A. Yes.
Q. Is it tied to a particular email address?
A. Yes.
Q. What email address is that?
A. My personal email address which is ngiordano31@gmail.
Q. And is -- how far back does the data in your iCloud account currently go back?
MR. BIZZARO: Objection.
You could answer.
A. I don't know.

what we did.

Q. Did you -- I guess what -- what actions did you take to have the phone switched over? Did you just have to call Verizon?

A. Yeah, just have to call them and they just make a new account.

Q. Prior to you switching over your phone to a personal Verizon account, had -- was your phone service being paid by SiteOne?

A. Yes.

Q. And prior to SiteOne, was it paid for by Garden Department?

A. Yes.

Q. After you transferred your phone in October of 2022, did SiteOne pay some or all of a portion of your cell phone bill?

A. No.

Q. I don't think I asked you this question, but the phone that you had prior to February 20th, so your old phone, was that an iPhone?

A. Yes.
Q. And still talking about the old phone, did you use it for work and personal?
A. Yes.
Q. On the old phone, did you ever exchange any text messages with Don Caroleo?
A. Yes.
Q. And same question with respect to Vic Caroleo?
A. Yes.
Q. Did you also use the old phone for emails?
A. Yes.
Q. And was that personal emails and SiteOne emails?
A. Well, personal, yes. SiteOne, no. But Garden Department, yes. I don't know what you consider those to be.
Q. Did you email with Don on that particular phone, the old phone?
A. Yes.
Q. And Vic as well?

A. Not often Vic, but yes.
Q. I know this seems like a silly question, but just to make sure we have it in the record, I'm assuming you used the old phone for phone calls as well?
A. Yes.
Q. And did you call Don on that phone?
A. Yes.
Q. And Vic?
A. Yes.
Q. Do you recall your old phone -- do you remember who actually purchased that phone?
A. I don't recall.
Q. There was a --
MR. GIBBS: Well, let me rephrase.
Q. My understanding is there was a meeting with you on February 20th during which your employment was terminated by SiteOne.
Is that right?
A. Yes.

Q. Do you remember who was present during that meeting?
A. Anthony Catalano, Greg Thistle, and Joe Ketter.
Q. Those are the only three?
A. And myself, yeah, that's it.
Q. Did you access your old phone at all during that particular meeting?
A. No.
Q. Did you delete any data from the old phone either during or prior to that meeting?
A. Prior to the meeting, yes.
MR. BIZZARO: Objection.
BY MR. GIBBS:
Q. Tell me about that. What -- what data did you delete off of the old phone, I guess, on February 20th of 2023?
MR. BIZZARO: Objection.
You can answer.
A. So, I wiped the phone. The fight -- the phone was, like I said in previous statement, in disrepair. The battery was not working properly, which it

wouldn't fully charged, didn't charge properly. So I wiped the phone to get rid of it.
Q. When you say you wiped it, tell me more about that. What -- what steps did you take to wipe it?
A. The factory reset.
Q. When you had the meeting with Joe, Greg, and Anthony, did you have any expectation that they would require you to turn over your old phone?
A. No.
Q. During that meeting on February 20th, did you, in fact, give them the old phone?
A. Yes.
MR. BIZZARO: Objection.
You can answer.
BY MR. GIBBS:
Q. Did you discuss the old phone at all and discuss who owned it? Was there any discussion about the phone during the meeting?
A. No.

Q. Do you recall who it was that asked for the phone?
A. No.
Q. What was the PIN code to your old phone?
MR. BIZZARO: Objection.
At what time period?
BY MR. GIBBS:
Q. I guess the time period when you reset the phone. I guess, so around February 20th of 2023.
A. I don't recall the PIN number.
Q. Did you ever deactivate service on the old phone?
A. Yes, when -- when the new phone was activated, I think it automatically takes service off.
Q. Do you remember when you were told that you would have the meeting on February 20th?
MR. BIZZARO: Objection to form.
You can answer.
A. Two weeks or so prior. It kept getting pushed around.

that predated April of 2023?
MR. BIZZARO: Objection.
What -- well, over my -- objection to form.
Do you understand the question?
THE WITNESS: No, not necessarily.
MR. BIZZARO: You mean -- when you mean -- can I -- you want to step out -- step outside? Because I think I can help. I don't want to give him --
MR. GIBBS: That's okay. I can kind of build -- I can kind of build into the question.
BY MR. GIBBS:
Q. Based on your earlier testimony, you said you text at least fairly frequently on a daily basis. Is that right?
A. Yes.
Q. Do you -- does having 17 text messages over a six-month period, does that sound like the number of texts that

you would have sent and received during that period of time?
A. No.
Q. Do you know how far back the earliest text message on your current phone goes?
A. No, I don't.
Q. After April of 2023, did you delete any text messages between yourself and Don Caroleo?
MR. BIZZARO: Objection.
You can answer.
A. I don't recall.
Q. And what about Vic Caroleo, did you delete any text messages predating April 2023 with Vic Caroleo?
MR. BIZZARO: Same objection.
A. I don't recall.
Q. Do you have a practice of deleting text messages?
A. Yes.
MR. BIZZARO: Objection.
BY MR. GIBBS:
Q. How long have you had that

particular, we'll call it a habit?
A. My entire life.
Q. And tell me about that. What text messages do you delete?
MR. BIZZARO: Objection.
You can answer.
A. I get tremendous amount of email -- text messages from customers. So my habit is to read, reply, and delete when I'm satisfied with, you know, whatever the answer is.
Q. And does that apply to personal message as well -- personal messages as well, or is it just business communications?
A. It's everything.
Q. Have you or anyone on your behalf ever wiped your current phone or reset it to factory settings since you purchased it?
A. Can you repeat the question?
Q. Sure.
Have you or anyone on your behalf ever wiped your current phone or

reset it to factory settings since you purchased it?
A. No.
Q. Does your current phone back up to your iCloud account?
A. Yes.
Q. Your practice, you mentioned, of deleting text messages once you acted on them, did that apply to Don Caroleo?
A. Yes.
Q. And Vic Caroleo?
A. Yes.
Q. Was there a point in time when you stopped deleting text messages as a matter of course?
A. Not until about mid-April 2023, when I was told by my current -- I'm sorry, my former lawyer, Saul Zabell, that we were on a litigation hold and I could no longer delete anything on my phone.
Q. Do you recall if that was a verbal instruction, or was it a written document or email that you received from Mr. Zabell?

A. It was a verbal instruction at his office.

Q. Was anyone else present when he gave you that instruction?

A. No.

Q. Is your testimony that beginning as of that date with that meeting with Mr. Zabell, that's when you stopped deleting text messages?

MR. BIZZARO: Objection to form.

THE WITNESS: Am I supposed to answer that?

MR. BIZZARO: Yeah, you could answer.

THE WITNESS: Okay.

A. Could you repeat the question? I'm sorry.

Q. Sure.

Is it your testimony that as of that date that you had the meeting with Mr. Zabell and he gave you that instruction, as of that date, is that when you stopped deleting text messages as a matter of routine course?

A. Yes.

Q. Your attorneys have represented in the case that your phone has text messages that go back to November of 2020.

I'm curious if they're -- if your messages go back to November 2020, but you routinely deleted messages, do you have an explanation as to why there are almost no texts between October 2022 and April of 2023?

A. Can you rephrase that question?

Q. Sure.

I'll start with your attorneys have represented to us in the case that your -- the text message data on your phone contains text messages that go back to November of 2020.

Do you have any reason to doubt that that's accurate?

MR. LABUDA: Objection, but -- in terms of the characterization, but you can answer.

A. No.

Q. Do you have any idea how many

tell me how -- how often was frequently?
A. I'm not sure how to answer that question, but, you know, a couple a day, I guess.
Q. From the beginning of this lawsuit to now, just in general, how frequently would you say that you text with Vic Caroleo?
A. Two or three times a day.
Q. And has that been pretty consistent since the filing of the lawsuit?
A. No, it's more often now. At the beginning of the lawsuit, it wasn't much.
Q. Is there any reason why there are more texts recently than as opposed to further back?
MR. BIZZARO: Objection.
With Vic?
MR. GIBBS: With Vic, yes.
A. 'Cause the business is growing, so I have more questions for him.
Q. After Don was -- I guess initially he was placed on leave with

A. Yes.
Q. Was your intention to dispose of that phone?
A. Yes.
Q. At the time that you were asked by SiteOne to turn over that phone, did you turn it over?
A. Yes.
Q. Was -- had that phone been factory reset by you earlier in the morning when you activated your new phone?
A. Yes.
Q. Do you recall if when you turned in that phone to SiteOne whether there was a passcode on that phone?
A. I don't believe there was.
Q. If you had factory reset a pass -- the phone, would you have put a passcode on a phone that you were going to dispose of?
A. No.
MR. GIBBS: Object to form.
MR. BIZZARO: No further questions.

C E R T I F I C A T E

I, MARIE FOLEY, Registered Merit Reporter, Certified Realtime Reporter, and Notary Public for the State of New York, do hereby certify that prior to the commencement of the examination, NICHOLAS GIORDANO, was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

Marie Foley
COURT REPORTER
Registered Merit Reporter
Certified Realtime Reporter
Notary Public
Dated: May 5th, 2025