**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SITEONE LANDSCAPE SUPPLY, LLC,

Plaintiff,

v.

NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; NARROW WAY REALTY, LTD.; NARROW WAY 2 LLC; THE GARDEN DEPT. CORP.; GROUP 5 ASSOCIATES, LTD.; 3670 ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND NEWAY TRUCKING,

Defendants.

Civil Action No.: 2:23-CV-02084

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF SITEONE LANDSCAPE SUPPLY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS BASED ON DEFENDANTS' SPOLIATION OF EVIDENCE**

# TABLE OF CONTENTS

**INTRODUCTION** ..... 1

**STATEMENT OF FACTS AND PROCEDURAL HISTORY** ..... 2
- **I. Brief Summary of Underlying Facts** ..... 2
- **II. Defendants' Intentional and Extensive Destruction of Evidence** ..... 3
  - **A. Vic's Intentional Destruction of Highly Relevant Evidence** ..... 4
  - **B. Don's Intentional Destruction of Highly Relevant Evidence** ..... 5
  - **C. Nick's Intentional Destruction of Highly Relevant Evidence** ..... 8
- **III. Defendants' Destruction of Evidence Is Confirmed Forensically** ..... 9
- **IV. Defendants Make Other Extraordinary Efforts to Hide Evidence** ..... 10

**LEGAL STANDARD** ..... 11

**ARGUMENT** ..... 12
- **I. Defendants Had a Duty to Preserve Evidence** ..... 12
- **II. The Lost Messages Cannot Be Replaced Through Additional Discovery** ..... 12
- **III. Defendants Acted with the Intent to Deprive SiteOne of Evidence** ..... 13
  - **A. Vic Acted with Intent to Deprive** ..... 14
  - **B. Don Acted with Intent to Deprive** ..... 15
  - **C. Nick Acted with Intent to Deprive** ..... 18
- **IV. Defendants' Conduct Warrants the Most Severe Sanctions** ..... 19
- **V. SiteOne Has Been Highly Prejudiced by the Destruction of Evidence** ..... 23

**CONCLUSION** ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Sonotec US Inc.*,
2025 WL 2614993 (E.D.N.Y. Sept. 10, 2025) ........ *passim*

*Bursztein v. Best Buy Stores, L.P.*,
2021 WL 1961645 (S.D.N.Y. May 17, 2021) ........ 11, 23, 25

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
337 F.R.D. 47 (S.D.N.Y. 2020) ........ 24

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015) ........ 22

*Coney Island Auto Holdings, Corp. v. Parts Authority, LLC*,
231 A.D.3d 470 (1st Dep't 2024) ........ 22

*Experience Hendrix, L.L.C. v. Pitsicalis*,
2018 WL 6191039 (S.D.N.Y. Nov. 28, 2018) ........ 12, 18, 20, 23

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) ........ 13, 18, 20

*HMS Holdings Corp. v. Arendt*,
2015 WL 2403099 (Sup. Ct. Albany Cnty. May 19, 2015) ........ *passim*

*Hoffer v. Tellone*,
128 F.4th 433 (2d Cir. 2025) ........ 13, 20

*Karsch v. Blink Health Ltd.*,
2019 WL 2708125 (S.D.N.Y. June 20, 2019) ........ 24, 25

*Micron Tech., Inc. v. Rambus Inc.*,
917 F. Supp. 2d 300 (D. Del. 2013) ........ 20, 23

*Moody v. CSX Transp., Inc.*,
271 F. Supp. 3d 410 (W.D.N.Y. 2017) ........ *passim*

*O'Berry v. Turner*,
2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) ........ 21

*Oakley v. MSG Networks, Inc.*,
792 F. Supp. 3d 377 (S.D.N.Y. 2025) ........ *passim*

*Ottoson v. SMBC Leasing and Fin., Inc.*,
268 F. Supp. 3d 570 (S.D.N.Y. 2017) ........ 18, 19, 20, 23

*Ronen v. RedRoute, Inc.*,
2025 WL 2790808 (E.D.N.Y. June 16, 2025) ............................................................. *passim*

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ..........................................................................................20, 23

*Sekisui Am. Corp. v. Hart*,
945 F. Supp. 2d 494 (S.D.N.Y. 2013)..................................................................................21, 23

**Other Authorities**

Fed. R. Civ. P. 37 ............................................................................................................ *passim*

## INTRODUCTION

"[Y]ou've already told me that one of your clients destroyed evidence and the other one miraculously can't find it…You know, there's only so much destruction of evidence that the Court is going to tolerate…We can't regenerate [evidence] we don't -- don't have." [Judge Steven I. Locke, Feb. 10, 2025.]

"We are not on a level playing field anymore. Defendants apparently destroyed evidence that they should not have destroyed…Your client should not have destroyed evidence. Period." [Judge Steven I. Locke, Mar. 26, 2025.]

"Your client admitted deleting information from their phones." [Judge Steven I. Locke, May 18, 2026.]

"And your clients admitted to the spoliation." [Judge Steven I. Locke, Aug. 18, 2026.]

---

The Court is familiar with Defendants' intentional destruction of evidence. SiteOne has filed dozens of discovery motions and participated in numerous hearings regarding Defendants' knowing spoliation. The Court ordered multiple document retention depositions of the Defendants, and even a forensic review of the Defendants' personal phones to try and recover destroyed evidence—to no avail. It is forever lost. The Court has witnessed Defendants' shifting and inconsistent explanations about whether and to what extent evidence was destroyed. The Court has heard Defendants' explanations for their admitted spoliation: [redacted], compulsive habits, assumptions that evidence had been backed up when it had not.

SiteOne will not engage in histrionics given the record before the Court. The facts set forth below are a damning indictment of all three individual Defendants: Don, Vic, and Nick. On these facts, the most severe sanctions available under Federal Rule of Civil Procedure 37 are warranted

because the evidence overwhelmingly establishes Defendants' successful, coordinated intent to deprive SiteOne of critical evidence in this litigation.[1]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I. Brief Summary of Underlying Facts

The Court is no stranger to the facts of this case; this background is thus brief. SiteOne purchased a nursery and landscape supply business—formerly known as Garden Dept.—from Defendant Dominick Caroleo ("Don") in January 2020 for more than $30 million. [ECF 55 "(Am. Compl.") ¶ 24.] Instead of purchasing the land on which the legacy Garden Dept. locations sit, SiteOne entered into lease agreements with the property owners and landlords—various corporate entities owned and controlled by Don and his father, Defendant Victor Caroleo ("Vic"). [*E.g.*, Ex. 1[2], Lease Agreement for Coram, NY site.] Defendant Nicholas Giordano ("Nick") began working for Garden Dept. in the mid-2000s, eventually handling many aspects of daily operations. [Don Apr. 21, 2026 Dep. 29:24–30:7, 30:22–32:25, 36:16–37:25, 38:24–39:19.][3]

Don, Vic, and Nick became SiteOne employees post-acquisition to continue running the legacy Garden Dept. locations. Don had multiple non-compete and non-solicit restrictions. [*E.g.*, Don Apr. 21, 2026 Dep. 90:17–91:19, 152:22–153:9.] Vic was subject to a non-compete via the Coram lease agreement. [Ex. 1; Narrow Way Realty, Ltd. Apr. 13, 2026 Dep. 58:4–59:2.] Don and Vic left Garden Dept. in October 2022 [Don Apr. 21, 2026 Dep. 175:7–10; Vic Apr. 20, 2026 Dep. 141:25–142:13]; Nick was fired in February 2023. [Nick Apr. 25, 2025 Dep. 18:5–7.]

---

[1] We anticipate that Defendants will also file a motion for sanctions. The parties' motions could not be more different, as we will further demonstrate in our forthcoming opposition brief. The Court has repeatedly stated that Defendants have spoliated evidence.

[2] All exhibits referenced herein refer to the exhibits attached to the Declaration of John ("Evan") S. Gibbs III, dated October 8, 2026, filed contemporaneously herewith.

[3] Vic's March 13, 2025, April 24, 2025, and April 20, 2026 deposition transcripts are attached as Exs. 2, 3 and 4, respectively; Don's March 14, 2025, April 24, 2025, and April 21, 2026 deposition transcripts are attached as Exs. 5, 6 and 7, respectively; Nick's April 25, 2025 and March 31, 2026 deposition transcripts are attached as Exs. 8 and 9, respectively; and Narrow Way Realty Ltd.'s deposition transcript is attached as Ex. 10.

SiteOne's allegations and the core facts of this case most relevant to this Motion are:

- SiteOne alleges that immediately after Don and Vic left SiteOne, they began working with Nick to open a nursery business a few miles from the legacy Garden Dept.'s Coram location to compete directly with SiteOne. [Am. Compl. ¶¶ 44, 51, 69–75, 85, 108–118.] It is undisputed that Vic and Nick were working together to start the new business while Nick was still a SiteOne employee, and that Nick was fired for his duplicity. [Vic Apr. 20, 2026 Dep. 188:21–189:24; Nick Mar. 31, 2026 Dep. 137:8–144:7, 148:12–21, 157:23–162:2.]

- SiteOne alleges that on his way out the door, Nick—in concert with Don and Vic—stole SiteOne's trade secrets, computers, physical files, and security camera equipment to help Defendants' new business and harm SiteOne. [Am. Compl. ¶¶ 2(a)–(i).] Don denies having been involved in the planning, opening, or operation of the new business, Scapes Supply, until his last non-compete expired in January 2025. SiteOne, however, alleges that Don financed the new competing business and directly assisted Vic and Nick with its opening and operation. [Am. Compl. ¶¶ 58–60, 75–78, 108–118, 196–199, 246–248.] SiteOne alleges that the three individual Defendants used various corporate entities they owned to funnel money among themselves[4] and destroyed critical communications to hide Don's involvement. [Am. Compl. ¶¶ 4, 114–121, 155, 169, 183, 201, 211, 221, 248, 255.]

- This conduct violated Defendants' contractual obligations and gave rise to numerous causes of action under federal and state law. [Am. Compl. ¶¶ 125–256.]

It is undisputed that Don financed in 2022 the purchase of two sites for the operation of their competing business: the Middle Island Road property and the Horseblock Road property. [Vic Apr. 20, 2026 Dep. 172:3–8; 282:13–284:2; 298:5–299:7; Don Apr. 21, 2026 Dep. 199:10–202:21; 300:11–20; Ex. 11, fund transfers from Don.] Defendants otherwise continue to deny Don's involvement prior to January 2025. A key issue is thus to what further extent Don was involved with Scapes Supply. Messages among the Defendants are thus **critical** to this case.

## II. Defendants' Intentional and Extensive Destruction of Evidence

Defendants' destruction of evidence started before this case was even filed and continued well into this litigation despite their obligations and clear warnings from this Court.

---

[4] This did not end when the Amended Complaint was filed. For example, in another action involving Don and Vic, Don testified that he paid the law firm defending them "using funds from Victor's company, Scapes Supply." *See Victor Caroleo, et al. v. Johnson & Martin, P.A.* (Sup. Ct. New York Cnty. Index No. 614429/2026), NYSCEF No. 6 at ¶ 64 (Don admitting he paid the firm's invoices with checks from Scapes Supply).

**A. Vic's Intentional Destruction of Highly Relevant Evidence**

Vic's intentional spoliation is flagrant. He testified on April 20, 2026—more than three years into this case and after having been deposed twice in 2025 about his destruction of evidence—that he was **still** deleting all of his messages: "I delete all of them in a short period of time," confirming that he deletes them within "half an hour." [Vic Apr. 20, 2026 Dep. 35:2–15.][5] He also disclosed for the first time in his 2026 deposition that he has three additional email accounts he actively uses that were not previously disclosed in discovery despite discovery requests seeking identification of same. [*Compare* Vic Apr. 20, 2026 Dep. 302:19–303:18[6] *with* Ex. 12, Vic's Am. Ans. To Pl.'s Interrog's at No. 8.] Those additional accounts were not searched for discovery in this case.

Vic further testified that **after** this lawsuit was filed, his phone "broke somewhere along the line" and it was replaced.[7] [Vic Mar. 13, 2025 Dep. 35:5–15.] He couldn't recall how his phone broke but guessed he "got water in it." [*Id.* 36:7–13.] He never checked whether his old messages transferred to his new phone: "I was just interested that I had my apps." [*Id.* 35:16–36:6.] Vic didn't know if he kept his old phone: "[A]gain with the [redacted] I'm going to say I traded it in, but I don't recall." [*Id.* 36:14–19.]

Vic also double deletes messages. He described this as his "common practice": "Basically every time I get [an email] it gets deleted, and the reason for that is I'm having this [redacted] and it—I get overwhelmed when I have a lot of emails to go through. So I—once I go through them, I delete them." [*Id.* 43:19–44:11.] He confirmed he "double deletes" his emails by

[5] He confirmed at his April 24, 2025 deposition that he had been instructed by at least February 2025 of his obligation to preserve evidence for this case. [Vic Apr. 24, 2025 Dep. 19:23–20:18.] But he couldn't recall when he first received a litigation hold notice from the many, many attorneys who have represented him at different junctures of this case. [*Id.* 14:9–21; 19:23–20:18; 20:20–21:15; 21:23–22:5.]

[6] The accounts are: victorcaroleo@gmail.com, victorsinfo@gmail.com, and vicdepot@aol.com. [*Id.*]

[7] After conferring with his attorneys in the middle of the deposition, Vic waffled on his earlier testimony by saying he couldn't recall when the phone broke or whether it was before or after the litigation began. [Vic Mar. 13, 2025 Dep. 39:9–40:7.]

deleting them from the "deleted" folder, making them unrecoverable. [*Id.* 44:12–45:3.] He blames this on [redacted] claiming that deleting messages was "[redacted]." [*Id.*]

He confirmed he deleted relevant messages with Don: "Yes, I'm sure [I deleted messages] 'cause that's my practice." [*Id.* 65:2–10.] When asked why he was certain he did not retain a copy of a specific email involving Vic, Don, and the original competing Middle Island Road property shown to him during the deposition, he answered: "'Cause I would have deleted it, so I—I don't remember." [*Id.* 80:11–25.] He confirmed he had not saved any messages with Nick and that he'd deleted messages between them; he couldn't estimate how many or recall when the last deletion occurred. [*Id.* 67:13–68:11.] He stated in his March 2025 deposition that he only stopped deleting messages "in the last few weeks," estimating "maybe in the last four weeks" before his deposition. [*Id.* 59:14–20.] This continued through 2026. [Vic Apr. 20, 2026 Dep. 35:2–15.] Vic's counsel did not disclose his spoliation until two years into the case on January 8, 2025, saying this:

> [A]ll we can say is that Vic is a septuagenarian gentleman, with compulsive tendencies, who is set in his ways. It appears Vic's normal routine is to compulsively and indiscriminately delete texts after they are read.

[ECF 188 p. 3.] It is thus undisputed that Vic intentionally destroyed critical evidence. Your Honor noted: "You see how the Court could find that troubling from a litigation perspective." [Feb. 10, 2025 Hrg. Trans. 7:14–15.]

### B. Don's Intentional Destruction of Highly Relevant Evidence

The apple didn't fall far from the tree. In December 2024 Don, like his father, traded in his phone, giving the old one to Verizon. [Don Mar. 14, 2025 Dep. 31:23–34:16.] Don said he traded in the old phone after the screen broke at a Yankee game. [*Id.*] But, when the Court asked Don's attorney why the phone was given to Verizon "after litigation started," Don's attorney claimed—contrary to Don—that Don traded in the phone because "it was time for an upgrade." [Feb. 10, 2025 Hrg. Trans. 26:16.] While Don couldn't "remember what [he] was thinking at that point," he

claims to have told Verizon to transfer all of the data to his new phone.[8] [Don Mar. 14, 2025 Dep. 34:20–35:8; 83:15–84:13.] Your Honor said this about Don giving his phone to Verizon:

> So it's up to him when he can get rid of the evidence and not the Court. That's what you're telling me because that's what I'm hearing…[Don] felt he had done an adequate job without notice to the Court or his adversary that he was getting rid of a phone with potentially relevant information on it. I don't see any other conclusion to draw. And what you're telling me is not comforting.

[Feb. 10, 2025 Hrg. Trans. 27:10–19.]

But whether the data transferred to Don's new phone or whether Don handed the phone over to Verizon seems largely irrelevant because Don's prior phone was set to a 30-day auto-delete. [Don Mar. 14, 2025 Dep. 63:18–65:25.] Don's attorneys confirmed on January 15, 2025 that Don's new phone was set to auto-delete all messages on a rolling 60-day basis. [ECF 184-2.] And, despite the case having been filed almost two years earlier, Don testified in March 2025 that his new phone had not yet been searched for messages, and that no one had made a copy of the data on his current phone which had a 60-day auto-delete. [Don Mar. 14, 2025 Dep. 28:22–30:19.]

Making matters worse, Don's attorneys hid the only surviving messages between Don and Vic **for years**. Specifically, Don engaged a third party, WeRecoverData ("WRD"), in July 2023 to collect data from his phone "to preserve messages." [ECF 184-2 p. 3.] He claims that WRD made a full copy of his old phone, but that WRD later destroyed that copy because it "exceeded their retention, you know, policy." [Don Mar. 14, 2025 Dep. 69:6–15; 73:22–75:13; 77:21–78:10;

---

[8] When asked whether he told his lawyers he was getting a new phone, Don answered: "It's hard to remember if I told my attorneys or if I told the Verizon—I think I was just telling the Verizon guy that I needed my data and everything to be ported over to the new phone that I have." [Don Apr. 24, 2025 Dep. 22:15–23:3.] But he seemed to think he had a conversation with one of his attorneys, "saying that I was going to now get a new phone because I was carrying a phone that was broken for a long time, and now that the phone was copied by, I think, it was Nextpoint at the time, you know, I thought it would be okay to get a new device." [*Id.* 23:12–24:11.]

ECF 184-2 p. 3.] Don's attorneys received a hard drive from WRD which was supposed to contain the message data extracted from Don's old phone, but it did not.[9] [ECF 184-2 p. 3.]

Instead, Don's attorneys disclosed that a "Cellebrite summary report" generated by WRD (the "Report") was on the WRD hard drive containing messages pulled from Don's phone in July 2023.[10] [*Id.*] The Report was first provided to SiteOne on March 19, 2025, but all content in the 96-page Report was redacted. [ECF 275 p. 2; Ex. 13.] After ordering Defendants to manually review all of Defendants' messages, Defendants' counsel told Your Honor a few days later at the March 26, 2025 hearing that the Report **did not** contain any relevant messages because, "None of [the messages] had anything to do with landscape-related issues." [ECF 275 pp. 2–3; ECF 275-3.]

But the Report was later produced on January 8, 2026, and the Report proved Defendants' representations about the Report to be misleading to the point of being outright misrepresentations. The unredacted Report, attached as Ex. 14, contains messages between Don and Vic between July 10, 2023 and July 18, 2023, a critical time period because Defendants were setting up and in the early stages of operating their competing business. The messages show, among other things, a concerted effort to avoid creating documentary evidence of Don's involvement. For example:

- Vic texted Don, saying: "Nick wants to have a meeting right away with the three of us" and stating: "Call me. Let[']s be in private." [Ex. 14 at NXTPT0001432–34.]

- The next day, Vic and Don texted numerous times about Don helping Vic with the legal issues facing the Middle Island Road property. Don was asked to handle these issues because, in Vic's own words, "I don't know shit." Don then instructed Vic, "Call me" and "Calls only." [*Id.* at NXTPT0001436–40; NXTPT0001448.]

- Don told Vic, "Dad stop texting me period." The next day, Don reiterated this message: "Dad do not text me…Ever…Only calls." Don then texted Vic on July 17, 2023, possibly referring to Nick and saying, "I think smart. But doesn't know how to build a business." [*Id.* at NXTPT0001462–63, NXTPT0001468.]

---

[9] In September 2024, Defendants' counsel supplied the hard drive to its e-discovery consultant, Nextpoint Law Group ("NLG"), who advised that the "underlying raw UFDR file was not provided by [WRD]" [ECF 184-2 p. 3] and that it contained "no human-readable data." [ECF 188 p. 2.]

[10] It remains unknown what WRD was instructed to collect from the phone or what to include in the Report; no communication with WRD on these topics has been produced.

There is no evidence as to whether the Report contains all messages between Don and Vic during these eight days, and it includes very few messages Don exchanged with anyone besides Vic. For example, the Report contained no text messages between Don and Nick even though Don confirmed that he was texting with Nick during the relevant periods of this case. [Don Mar. 14, 2025 Dep. pp. 62–63.] The Report is thus no substitute for the original phone Don disposed of, and it does not provide an alternative source for the Defendants' spoliated messages and data.

This all confirms that Don intentionally destroyed evidence by: 1) trading in his old phone to Verizon prior to it being imaged or searched by his attorneys, and 2) having the auto-delete feature turned on for his old and new phones for almost two years after the filing of this lawsuit. Don's testimony and the Report make clear Don was in fact communicating about the competing business in 2023 with Vic and Nick, but he intentionally deprived SiteOne of that evidence.

### C. Nick's Intentional Destruction of Highly Relevant Evidence

Nick has an extensive history of dishonesty and trying to destroy and hide evidence. **First**, SiteOne fired Nick because he was working with Vic and Don to open a competing business while working for SiteOne. [Nick Mar. 31, 2026 Dep. 132:4–132:17, 139:2–139:25, 148:9–148:21, 150:7–151:8, *et al.*; Vic Apr. 20, 2026 Dep. 188:21–189:24.] **Second**, immediately after he was fired, it came to light that Nick had stolen: 1) the contents of a filing cabinet; 2) a computer containing extensive SiteOne data; and 3) the recording device for the SiteOne security camera system. [Am. Compl. ¶¶ 62–66, 94–97, 101–102.] **Third**, the same day he was fired by SiteOne (minutes before the meeting during which he was fired, no less), he erased all data on his then-phone, including all messages—including those he'd had with Don and Vic.[11] [Nick Apr. 25, 2025 Dep. 25:7–26:2, 27:11–29:13.]

---

[11] Nick purchased a new phone ***the day before*** he was fired by SiteOne and activated it immediately before the meeting during which he was fired. [Nick Apr. 25, 2025 Dep. 17:16–18:11, 57:10–13.] Nick called this timing a coincidence. [Nick Mar. 31, 2026 Dep. 165:5–19.] He transferred only photos and contacts to the new device, then performed a

It is against this backdrop that Nick's spoliation must be viewed. Like Vic, Nick admitted to the intentional, systematic deletion of text messages before and after this case was filed: "My habit is to read, reply, and delete." [*Id.* 33:20–34:17.] This practice applied to messages with Don and Vic. [*Id.* 35:8–13.] This case was filed on March 17, 2023, but Nick admitted he did not stop systematically deleting all his messages until "about mid-April 2023." [*Id.* 35:14–36:3; 36:20–37:2.] This means that Nick intentionally destroyed all messages between him, Don, and Vic (and all others relevant to this litigation) predating some unidentified day in "mid-April 2023."

And that is not all. Nick's testimony remains contrary to what Nick's lawyers have represented about Nick's message data on his current phone. Defendants' counsel represented that Nick's current phone contains 157,404 messages dating back to November 4, 2020. [ECF 184.] But, as set forth above, Nick testified unequivocally in two separate depositions that he only transferred photos and contacts from his old phone to his new phone. [Nick Apr. 25, 2025 Dep. 19:22–20:9; 27:17–28:8; Nick Mar. 31, 2026 Dep. 166:7–22.] How then, are there apparently tens of thousands of text messages dating back to November 2020 on the new phone? Nick's testimony and his lawyers' representations cannot be reconciled.

## III. Defendants' Destruction of Evidence Is Confirmed Forensically

The Court ordered that the phones belonging to Vic, Don, and Nick be forensically analyzed to determine whether there were any messages that existed among them from October 22, 2022 to the present relating to this case or its facts. [ECF 190; 203; Apr. 11, 2025 Elec. Order.] Consistent with Defendants' admitted spoliation, a handful of messages between Nick and Don were produced in June 2025, all post-dating the critical time periods of 2022 through mid-2023.

"factory reset" on the old phone. [Nick Apr. 25, 2025 Dep. 19:22–20:9; 27:17–28:8.] Nick turned the old phone in to SiteOne employees during the termination meeting and it has been held since then by SiteOne's counsel's firm.

Further, Nick and Vic both testified that they regularly exchange messages, both before and after the filing of this case—after all, they claim to be running a sophisticated business together which generates more than $10 million in annual revenue. Nick estimated he texts with Vic "[t]wo or three times a day" since the lawsuit was filed; Vic confirmed they regularly exchange messages. [Nick Apr. 25, 2025 Dep. 46:6–10; Vic Mar. 13, 2025 Dep. 65:16–18.] But not a single message was produced between Nick and Vic via the Court-ordered forensic review of their phones.

## IV. Defendants Make Other Extraordinary Efforts to Hide Evidence

Defendants have hidden, concealed, and evaded the truth at every turn, forcing SiteOne to file **dozens** of motions over the past three years to receive basic discovery. To wit, Defendants were ordered on October 15, 2024 to disclose "all entities in which Don, Vic and Nick have or had an interest, the dates they had those interests, the nature of the interest, [ ], and an explanation of each entity's business." [ECF 178.] Defendants, however, never identified Oneway Road LLC,[12] an entity Don owns and which was used to conceal his purchase of the Horseblock Road property in 2022, which he bought to "set my business up again." [Don Apr. 21, 2026 Dep. 274:21–275:15, 299:17–300:13; Ex. 16.] Contemporaneous messages between Don and his bankers at the time show Don funneling personal money through Oneway Road LLC which then transferred those funds to Horseblock Road LLC[13]—owned and controlled by Vic—which is the entity that purchased the Horseblock Road property. [Exs. 16, 19–20.] An email from Don to one of his bankers expressly confirms that the Horseblock Road property was "my [] purchase." [Ex. 21.]

Despite this evidence, Don's attorneys told this Court in 2024 that "the Horseblock Road property is not a subject of the claims or defenses in this action" [ECF 167 p. 3], even though Don

[12] *See* Ex. 15.

[13] Horseblock Road LLC and Oneway Road LLC were formed the same day. *See* Department of State, Division of Corporations Entity Information for Horseblock Road LLC and Oneway Road LLC, Exs. 17 and 18, respectively.

expressly bought the property for the competing business which moved to that location. Don's testimony and messages with his bankers are impossible to square with his lawyers' comments.

## LEGAL STANDARD

Fed. R. Civ. P. 37(e) governs sanctions for the failure to preserve evidence. Rule 37(e) provides that if ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve it, and it cannot be replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume the lost information was unfavorable; (B) instruct the jury that it may or must presume the information was unfavorable; or (C) dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e).

To invoke either subsection (e)(1) or (e)(2), the Court must determine whether: (1) the lost information was ESI; (2) the party had a duty to preserve the ESI; (3) the ESI should have been preserved; (4) the ESI was lost because the party failed to take reasonable steps to preserve it; and (5) the ESI can be restored or replaced through additional discovery. *See Bursztein v. Best Buy Stores, L.P.*, 2021 WL 1961645, at *4 (S.D.N.Y. May 17, 2021). To decide appropriate sanctions, the Court must engage in a three-part inquiry. **First**, the court must determine that Rule 37(e) applies. *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 383 (S.D.N.Y. 2025). **Second**, the court must determine whether "there has been prejudice to another party from loss of the information, in which case the [c]ourt may order measures no greater than necessary to cure the prejudice." *Id.* (citations omitted). **Third**, the court must consider, "regardless of prejudice to any other party," whether "the destroying party acted with the intent to deprive another party of the information's use in the litigation, in which event a court may consider whether to impose the most

severe sanctions of dismissal or an adverse-inference instruction." *Id*. (citations omitted). SiteOne satisfies each element.

## ARGUMENT

### I. Defendants Had a Duty to Preserve Evidence

A party's duty to preserve evidence arises when litigation is reasonably anticipated. Fed. R. Civ. P. 37(e); *Oakley*, 792 F. Supp. 3d at 384. Even assuming Defendants did not anticipate litigation before this action was filed, their duty to preserve the messages at issue arose no later than March 21, 2023, the date SiteOne served Defendants; on and after this date, Defendants were obligated to take affirmative, reasonable steps to preserve all relevant evidence. *Experience Hendrix, L.L.C. v. Pitsicalis*, 2018 WL 6191039, at *7 (S.D.N.Y. Nov. 28, 2018) (finding defendants had been on notice of their duty to preserve potentially relevant evidence "since at least the time at which plaintiffs initiated this action and served defendants."). Defendants intentionally violated their duty to preserve critical evidence.

### II. The Lost Messages Cannot Be Replaced Through Additional Discovery

Defendants admit that the destroyed text messages are irretrievable, and this was confirmed by a Court-ordered forensic review of their messaging data. [*Supra* pp. 4–10.] As to Don, the two phones he used before and during this litigation both had either a 30- or 60-day auto-delete, erasing all messages even before he turned his old phone in to Verizon. [*Supra* p. 6.] While the WRD Report shows messages between Don and Vic over an eight-day period in July 2023, it seems this is a narrow subset of messages. [*Supra* pp. 7–8.] In any event, the Report only spans limited dates and contains no message between Don and Nick or Nick and Vic. Don confirmed there is no other source from which his messages can be recovered. [Don Mar. 14, 2025 Dep. 86:10–23.]

Vic confirmed that since this lawsuit was filed, he has: 1) never backed up his phone; 2) never had a third party back up his phone; 3) made no efforts to recover his deleted messages; and

4) is not aware of any alternative sources for retrieving deleted texts. [*Supra* pp. 4–5.] Similarly, Nick factory reset his old phone the day of his termination and did not transfer any messages. [*Supra* pp. 8–9.] Nick also testified that he deleted all messages as they came in on his new phone until well after this litigation was filed, and the Court-ordered forensic review shows that Nick continued deleting messages throughout this lawsuit despite his testimony that he stopped deleting messages in mid-April 2023. [*Supra* pp. 9–10.] There is no dispute that Don, Vic, and Nick's messages were destroyed and cannot be restored or replaced. This element is satisfied.

## III. Defendants Acted with the Intent to Deprive SiteOne of Evidence

Rule 37(e)(2) authorizes adverse inference instructions, and default judgment, *inter alia*, when the court finds, by a preponderance of the evidence, that the spoliating party acted with the intent to deprive another party of the information's use in the litigation. *Hoffer v. Tellone*, 128 F.4th 433, 435 (2d Cir. 2025). Intent may be inferred from circumstantial evidence, including the timing and nature of the spoliation. *Id.* at 440 (intent "frequently depends upon circumstantial evidence");[14] *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017). Courts have also found intent to deprive where "the alleged chronology of events was highly improbable and [the party's] story was filled with inconsistencies." *Oakley*, 792 F. Supp. 3d at 393 (finding the intent where "the alleged chronology of events was highly improbable and [the party's] story was filled with inconsistencies," imposing an adverse inference) (citation omitted). Courts have also inferred intent where the spoliating party's explanation was that "each one of them happened to have a habit of routinely deleting text messages." *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *4 (N.D. Cal. Oct. 7, 2016).

[14] *Hoffer*'s result is distinguishable because the evidence was insufficient to establish an intent to deprive of the evidence, it wasn't clear if the evidence ever existed, and spoliation was undermined by witness testimony. *Id.* at 436.

In *Ronen v. RedRoute, Inc.*, 2025 WL 2790808, at *5–7 (E.D.N.Y. June 16, 2025), the court found intent where the defendants replaced their phones in the middle of litigation without confirming their messages were preserved and offered an explanation that was "improbable at best and deceptive at worst," imposing an adverse inference and awarding attorneys' fees. In *Adler v. Sonotec US Inc.*, 2025 WL 2614993, at *8–9 (E.D.N.Y. Sept. 10, 2025), the court imposed an adverse inference for the deletion of messages. In *Adler*, two witnesses kept their phones set to a 30-day auto-delete, one obtained a new phone without confirming the data transferred, and both also affirmatively deleted messages. *Id.* at *7–8. The court discounted their explanation, finding it "implausible" and contrary to "common knowledge," reiterating that once litigation is foreseeable a party "must suspend its routine document retention/destruction," finding an intent to deprive; the court explained that a "party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive.'" *Id.* at *4, *6, *8. The court imposed an adverse inference instruction and awarded fees and costs. *Id.* at *9.

Recent E.D.N.Y. decisions thus make clear that habitual or automatic deletion is not a defense, it is the conduct that warrants sanctions. Defendants' conduct here—Don's 30- and 60-day auto-delete settings and phone trade-in, and Vic's and Nick's systematic manual deletions—is materially worse than the conduct sanctioned in *Adler*.

**A. Vic Acted with Intent to Deprive**

Vic confirmed under oath he has been permanently deleting his messages before and throughout this litigation, and that he traded in his phone apparently after this litigation began, and cannot account for the old device. [*Supra* pp. 4–5.] Vic has therefore intentionally deprived SiteOne of this evidence. It is clear there were messages between Don and Vic related to at least one competing property (although Defendants' attorneys hid these messages for **years**, *supra* pp. 6–8). Applying the *Moody* factors, the harshest sanctions are appropriate as to Vic. **First**, messages

between the Defendants during the relevant period are plainly material to SiteOne's claims. **Second**, Vic engaged in affirmative acts causing the evidence to be lost as he systematically deleted his messages. **Third**, Vic had a duty to preserve this evidence beginning on March 21, 2023, when he was personally served, through the present. **Fourth**, Vic's proffered explanation—that he is a "septuagenarian gentleman, with compulsive tendencies, who is set in his ways" [ECF 188]—cannot credibly be explained as anything but bad faith. A "compulsive" habit of destruction is not a defense; it is an admission. *See HMS Holdings Corp. v. Arendt*, 2015 WL 2403099, at *14 (Sup. Ct. Albany Cnty. May 19, 2015) (rejecting as "unconvincing" the "highly unusual practice of routinely deleting incoming and outgoing text messages" to keep the phone "clean and free of building up with messages and texts" and imposing a mandatory presumption that "[t]he trier of fact should be permitted to draw the strongest possible adverse inference" from the defendants' "bad faith and intentional destruction"). Vic's conduct—continuous deleting and trading in his phone during the case—warrant the severest of sanctions. *See Moody*, 271 F. Supp. 3d at 432-33.

Defendants attempt to rely on Vic's [redacted] to excuse his actions. Vic testified that he deleted messages because he has [redacted] and "get[s] overwhelmed" when he has a lot of them. [Vic Mar. 13, 2025 Dep. 44:5–45:3.] Yet Defendants' entire case rests on the idea that Vic extensively worked hand-in-hand with Nick to prepare, open, and operate a sophisticated, competing business without any help from Don. Defendants cannot have it both ways. Vic's continuous deletion of messages after the commencement of this action is bad faith and there is no reasonable explanation other than an intent to deprive.

**B. Don Acted with Intent to Deprive**

Don traded in his old phone almost two years into this litigation, effectively destroying the device without informing his lawyers, SiteOne, or the Court. Defendants claim this was unintentional, as Don "took affirmative steps to preserve the messages." [ECF 184-2.] The *Moody*

court addressed **precisely** this type of conduct. There, plaintiff was injured in a railway accident. *Moody*, 271 F. Supp. 3d at 414. An individual employed by the defendant, Lewandowski, was responsible for preserving the recorder on the train that injured the plaintiff. *Id*. at 422. The defendants claimed Lewandowski uploaded the event recorder data; once uploaded, Lewandowski would transmit the data to defendants' central data vault. *Id*. However, he failed to include the .DAT file in this data transfer. *Id*. at 423. No one attempted to access or review the data at any time in the four years following the incident. *Id*. at 426-27. During this time, Lewandowski's laptop crashed. *Id*. at 423. As here, defendants in *Moody* claimed they identified the relevant data, but it was not in readable format, and that they destroyed or recycled Lewandowski's laptop "without ever confirming that the data had been preserved in another repository." *Id.* at 431. The *Moody* court found that "[defendants'] failure to make any effort over the course of four years to confirm that the data was properly preserved in the Vault undercuts the reasonableness and credibility of their asserted belief that the material was still accessible." *Id*.

The *Moody* court further stated that "[e]ven if defendants' explanation for the loss of the data were credited, their failure to access the files uploaded to the Vault for the four-year period before 2010 conflicted with their duties under the Federal Rules of Civil Procedure" and "a party's failure to maintain electronic data in an accessible format may constitute sanctionable conduct." *Id.* at 427–28. As the court explained:

> Just as it would be unreasonable for a party preserving a paper file to copy it blindly, put it in a drawer without ever looking at it, and then destroy the original, so too was it unreasonable for defendants to upload the event recorder data to the Vault and not even look at the files to confirm that the appropriate data had been uploaded and was accessible. This failure is especially remarkable in view of the important and irreplaceable nature of the data at issue.

*Id.* at 428–29. The parallel to Don's conduct is exact. Defendants purportedly copied Don's old phone's data to a hard drive, "briefly reviewed" it, "put it in the file for later, if needed" [ECF 188], and then destroyed the original device [*supra* pp. 5–6]—without ever confirming that the

data was readable or accessible. Had Defendants' counsel even "briefly reviewed" WRD's Report in any meaningful way early on, they would have seen that Don's old phone had **not** been backed up and that the limited scope of messages in WRD's Report was no replacement for a backup.[15]

Don's auto-delete settings independently establish intent. Once the duty to preserve attached, Don was obligated to suspend routine destruction, yet he left 30- and 60-day auto-delete functions running for nearly two years. [*Supra* p. 6.] *Adler*, 2025 WL 2614993, at *4, *7–8 (finding intent to deprive where witnesses kept 30-day auto-delete settings in place after the duty to preserve arose). And his mid-litigation trade-in of his phone, without confirming that its messages were preserved, mirrors the conduct sanctioned in *Ronen*, 2025 WL 2790808, at *6–7 (finding intent where defendants "purchased new phones and inexplicably lost possession of their old phones without first confirming that their text messages were preserved").

The concealment of highly relevant evidence further supports an inference of intent. Defendants' counsel produced the Report to SiteOne fully redacted on March 19, 2025 with **zero** message content. [Ex. 13.] It was only when SiteOne obtained an unredacted copy via Court order in January 2026 that relevant text messages between Don and Vic were produced concerning a competing property and other issues related to the competing business. [Ex. 14.] The relevance is unquestionable: These messages **directly discuss an email Defendants did produce** relating to one of the competing properties. Defendants thus cannot claim they didn't know these messages in the Report between Don and Vic were relevant.[16] This is the very essence of bad faith.

---

[15] For example, the "Contents" section of the Report identifies only 39 total chats, and those are mostly messages between Vic and Don between July 10 and July 18, 2023. [Ex. 13.] The limited nature of the content in the Report thus only **confirms the destruction of highly relevant evidence**. If Don's counsel had "briefly reviewed" the Report early in the case as they say they did, the necessity to back up Don's old phone early on and turn off his auto-delete function would have been evident long before Don unilaterally turned the phone in to Verizon, losing all of his message data.

[16] *Compare* Ex. 22, an email discussing the Middle Island Road property, *with* Ex. 14 at NXTPT0001436–40, messages between Vic and Don concerning that very email and the contents thereof.

Courts routinely find adverse inferences are warranted in these situations. For example, in *Ottoson v. SMBC Leasing and Fin., Inc.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017), the defendants provided the court with sufficient evidence demonstrating that the plaintiff communicated with a witness via email, failed to take reasonable steps to preserve such communications, and/or failed to produce these communications in violation of her discovery obligations. *Id.* at 582. The court explained there were logical inferences to be drawn from these facts, including that plaintiff:

> (a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession but has failed to produce them…[any] of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e).

*Id*. (collecting cases); *First Fin. Sec., Inc.*, 2016 WL 5870218, at *3–4 (inferring that the defendant's agents "created incriminating text messages, realized the text messages would be discoverable, and, by deleting the text messages, acted improperly upon their shared intent to keep incriminating facts out of evidence" where the alternative explanation by defendant's agents that "each one of them happened to have a habit of routinely deleting text messages, and each of them was ignorant of the fact that [defendant] might be sued" was unlikely and remedying the spoliation by giving an adverse-inference jury instruction and fees); *Experience Hendrix*, 2018 WL 6191039, at *10–11 (finding no lesser sanction than the combination of adverse inference instruction and order directing prompt recompense of costs would adequately remedy plaintiffs' injury for defendant's spoliation).

### C. Nick Acted with Intent to Deprive

Nick wiped all messages on his old phone the day he was fired. [*Supra* pp. 8–9.] Nick admitted to the regular deletion of text messages after that, confirming that he deleted all messages as they came in on his new phone until well after this litigation was filed. [*Supra* p. 9.] The Court-ordered forensic review shows that Nick continued deleting messages between himself and Don

and Vic throughout this lawsuit despite his testimony that he stopped deleting messages in mid-April 2023. [*Supra* pp. 9–10.] Nick's self-described habit to "read, reply, and delete" is precisely the "highly unusual practice of routinely deleting incoming and outgoing text messages" that the court rejected in *HMS Holdings*, 2015 WL 2403099, at *14. This is not random data loss—it is intentional, targeted destruction of the most critical evidence in this case.

Applying the *Moody* factors, 271 F. Supp. 3d at 431: **First**, the missing messages from Nick's phone are critical to SiteOne's claims. **Second**, Nick engaged in affirmative acts causing the evidence to be lost; like Vic, he continually deleted messages with Vic and Don after he had an obligation to preserve all such evidence. [*Supra* pp. 9–10.] **Third**, he knew of his duty to preserve evidence by "mid-April 2023" when his attorney advised him of that duty. [*Supra* p. 9.] **Fourth**, his proffered explanations is not credible and evidences bad faith—Defendants first claimed all relevant messages were on his phone, then admitted there were only 17 from one of the most relevant periods (pre-March 2023), and then the Court-ordered review confirmed he continued deleting messages with Don and Vic. [*Supra* pp. 9–10.] This shifting narrative is itself evidence of bad faith. *See also Ottoson*, 268 F. Supp. 3d at 584 (adverse inference warranted where evidence established additional communications likely existed and were not produced).

## IV. Defendants' Conduct Warrants the Most Severe Sanctions

The evidence is overwhelming, and there is no excuse for Defendants' intentional and continued destruction of evidence. Nothing explains or justifies their spoliation. Their inconsistent, shifting explanations only highlight Defendants' dishonesty (apparently even with their own attorneys). Their conduct illustrates bad faith in every sense of the phrase. On the record before the Court, Defendants are deserving of the most severe sanctions available.

SiteOne asks this Court for the following relief pursuant to Rule 37(e)(2): (1) a finding that Defendants intentionally spoliated evidence in the form of text messages; (2) a default judgment

against Defendants Don, Vic and Nick[17]; (3) in the event the Court finds a default judgment is not warranted, an adverse jury instruction, specifically that the jury be instructed as a matter of law that Defendants engaged in the intentional and willful destruction of evidence, the extent of each Defendant's proven spoliation, and that they **must** presume that the evidence spoliated by each Defendant was relevant to this action and unfavorable to the Defendants, and would have supported SiteOne's claims against the Defendants, together with an order precluding Defendants from offering evidence to rebut that specific presumption; and (4) an award of the attorneys' fees and costs SiteOne reasonably incurred: (i) to discover the spoliation, including related motion practice; (ii) to review evidence related to the spoliation; and (iii) to obtain the Court's order, awarded jointly and severally against all Defendants. In the alternative, and at a minimum, the jury should be instructed that it may presume that the lost information was unfavorable to Defendants, and SiteOne should be awarded fees and costs as described.

The caselaw unequivocally supports these sanctions. *HMS Holdings*, 2015 WL 2403099, at *16; *Ottoson*, 268 F. Supp. 3d at 582 (stating that failing to "intentionally take any steps to preserve [ESI]. . . satisfies the requisite level of intent required by [Rule 37(e)"]); *Oakley*, 792 F. Supp. 3d at 393; *Moody*, 271 F. Supp. 3d at 432; *Experience Hendrix*, 2018 WL 6191039, at *10. Defendants ask the Court to accept that both Vic and Nick happened to have a "habit of routinely deleting text messages." *First Fin. Sec., Inc.*, 2016 WL 5870218, at *3–4 (inferring bad faith).

---

[17] Defendants' egregious conduct may even rise to the level of a default. *See e.g.*, *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139–40 (2d Cir. 2023) (affirming dismissal of plaintiff's remaining claims with prejudice pursuant to FRCP 37(e) where the district court found that plaintiff spoliated evidence by "depriving [defendant] of access to electronically stored information on her iPhones…[s]pecifically, she refused to provide the correct passcode to her iPhone 5 and disposed of her iPhone X during the litigation."). In *Rossbach*, the Second Circuit further explained that even if the district court "were to have credited [plaintiff's] testimony about the misfortunes that befell her iPhones," the "culpable state of mind" for a spoliation claim "need not be intentional or willful, and may be found where the spoliation occurred due to negligence." *Id*. While *Hoffer* clarified that the standard for sanctions under Rule 37(e)(2) is, in fact, *intent* and not mere negligence, 128 F.4th at 435, the Second Circuit in *Rossbach* explicitly stated that the district court did not credit plaintiff's testimony, and instead found that plaintiff intentionally withheld her correct passcode. 81 F.4th at 140; *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 325–28 (D. Del. 2013) (finding a dispositive sanction necessary and explaining that any lesser sanction would be inappropriate).

Rule 37(e)(2)(B) expressly authorizes the Court to instruct the jury that it "may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(B). The distinction matters. A permissive instruction leaves the jury free to decline the inference; a mandatory instruction directs it. Where, as here, the record establishes intentional, bad-faith destruction, courts have issued the stronger instruction. In *O'Berry v. Turner*, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016), the court found that the defendants' "irresponsible and shiftless behavior can only lead to one conclusion"—intent to deprive—and ordered that the jury be instructed "that it **must** presume that the lost information…was unfavorable" to the spoliating defendants. The conduct in *O'Berry*—failing to safeguard a printed copy of driver logs that went missing after an office move—pales in comparison to Defendants' deliberate, repeated, and admitted deletion of messages here. *Id.* New York's state courts likewise impose a mandatory presumption where, as here, the spoliation is "willful and deliberate." *HMS Holdings*, 2015 WL 2403099, at *16.

SiteOne recognizes that some courts in this Circuit, including *Oakley*, *Ronen*, and *Adler*, have issued permissive "may presume" instructions. *See Ronen*, 2025 WL 2790808, at *7; *Adler*, 2025 WL 2614993, at *9. But those decisions mark the floor, not the ceiling. Rule 37(e)(2)(B) leaves the choice to the Court, and "[t]he harshness of the instruction should be determined based on the nature of the spoliating party's conduct—the more egregious the conduct, the more harsh the instruction." *HMS Holdings*, 2015 WL 2403099, at *16. Here, three Defendants destroyed evidence through multiple methods over multiple years, gave shifting and contradictory testimony about it, and concealed the only surviving messages behind full redactions. That conduct is far more egregious than the conduct at issue in *Oakley*, *Ronen*, or *Adler*, and it warrants a mandatory instruction. Should the Court disagree, a permissive instruction is certainly warranted.

Where there is an "intent to deprive," courts may presume that the lost information was unfavorable to the party. Fed. R. Civ. P. 37(e)(2)(A); *see also Sekisui Am. Corp. v. Hart*, 945 F.

Supp. 2d 494, 508–10 (S.D.N.Y. 2013) (granting adverse inference instruction where ESI of key players was intentionally deleted after the duty to preserve attached, because "[w]hen evidence is destroyed intentionally, such destruction is sufficient evidence from which to conclude that the missing evidence was unfavorable to that party"). Courts also tailor the instruction to fit the misconduct. In *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, the court instructed the jury that it could infer that destroyed social-media content and text messages reflected discriminatory animus, and precluded the spoliating defendants "from offering evidence to rebut that specific inference," reasoning that this approach gave the movant "the most powerful inference the jury could draw from the spoliated evidence, without rebuttal, thereby serving the remedial, punitive, and deterrent purposes of sanctions." 138 F. Supp. 3d 352, 393 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019). SiteOne requests the same targeted, non-rebuttable relief here: Defendants should be precluded from offering evidence or argument to rebut the presumption that their destroyed text messages were unfavorable to them, including testimony that those messages did not concern Don's involvement in the planning, formation, financing, or operation of Scapes Supply. As in *Tartikov*, Defendants would remain free to contest the merits with other evidence; they simply could not profit from their own destruction by testifying about what the messages they destroyed did or did not say.

Nor can Defendants avoid these sanctions by arguing that sufficient other evidence remains available. The First Department rejected precisely that argument in *Coney Island Auto Holdings, Corp. v. Parts Authority, LLC*, affirming an adverse inference over the spoliator's contention that, "given the totality of the evidence available," the movant "did not suffer any prejudice," because the deleted emails "would have been relevant" and had been "deliberately hard deleted." 231 A.D.3d 470, 471 (1st Dep't 2024). Under Rule 37(e)(2), moreover, a finding of intent to deprive itself supports an inference of prejudice, and no separate showing is required. *Adler*, 2025 WL

2614993, at *8; *see also Sekisui*, 945 F. Supp. 2d at 509–10 (spoliator could not rebut presumption of prejudice even though it had recovered thousands of emails). The handful of messages between Don and Vic in the WRD Report, spanning only a brief window in July 2023, is no substitute for years of destroyed communications among all three Defendants. [*Supra* pp. 7–8.]

The evidence is overwhelming. Defendants' intent to deprive entitles SiteOne to the most severe sanctions under Rule 37(e)(2), up to and including default judgment. *See e.g.*, *Rossbach*, 81 F.4th at 139–40; *Micron Tech.*, 917 F. Supp. 2d at 326–28. In the event the Court determines default judgment is not warranted, SiteOne is entitled to adverse inference instructions and fees. *Moody*, 271 F. Supp. 3d at 431; *Oakley*, 792 F. Supp. 3d at 393; *Ottoson*, 268 F. Supp. 3d at 582; *Experience Hendrix*, 2018 WL 6191039, at *10–11; *HMS Holdings*, 2015 WL 2403099, at *16; *Adler*, 2025 WL 2614993, at *9; *Ronen*, 2025 WL 2790808, at *7.

## V. SiteOne Has Been Highly Prejudiced by the Destruction of Evidence

Even if this Court were to find that the heightened intent standard of Rule 37(e)(2) is not satisfied, SiteOne is entitled to curative measures under Rule 37(e)(1), as SiteOne has been severely prejudiced by the loss of Defendants' messages. The destroyed messages likely contained communications bearing directly on the central disputed issues in this case, including Defendants' conspiracy to open a competing business, their solicitation of SiteOne's customers and employees, and their violations of the non-competition and non-solicitation provisions of the Asset Purchase Agreement. SiteOne has been deprived of the ability to use this evidence to prove its claims.

SiteOne cannot prove what was in those messages because Defendants destroyed them. That is the definition of prejudice. *See Bursztein*, 2021 WL 1961645, at *8–9 (finding prejudice where the missing ESI was the primary evidence plaintiff would otherwise rely on; permitting plaintiff to present evidence at trial regarding spoliation and whether the ESI ever existed; also granting monetary sanctions for time and resources spent because of defendants' dilatory conduct).

*Karsch v. Blink Health Ltd.*, 2019 WL 2708125 (S.D.N.Y. June 20, 2019) is instructive. There, the court held that a party seeking sanctions is not obligated to establish the existence of a "smoking gun" communication; it is sufficient that the evidence suggests the spoliated ESI could support the movant's case. *Id.* at *21. The court explained that defendants came forward with

> plausible, concrete suggestions as to what [the destroyed] evidence might have been…[while] plaintiff – the only party with actual **knowledge** as to what was in those emails – [came] forward with nothing but legal argument, premised almost entirely on defendants' inability to prove that which plaintiff's misconduct [ ] prevented the [c]ourt from determining with any certainty.

*Id.* (internal citations omitted). SiteOne has come forward with plausible, concrete evidence of what the destroyed messages likely contained—communications about the competing properties and business, as well as the conspiracy to steal SiteOne's business, all of which Defendants went to great lengths to conceal. Defendants only offer shifting narratives and implausible excuses.

SiteOne is also entitled to its fees and costs, even if this Court finds sanctions appropriate pursuant to Rule 37(e)(1). "In addition to any other sanctions…a court has the discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020). In *Charlestown*, the court permitted the movant to recover fees incurred after the spoliation "in pursuit of [the spoliated] emails and/or information about [those] emails, and in pursuing th[e] sanctions motion," as well as added discovery costs "to the extent [the movant] can show they resulted from the spoliation"—and it did so even without a finding of intent. *Id.* at 67–68. *Ronen* likewise awarded "reasonable attorney's fees and costs incurred in pursuing the spoliated evidence and th[e] motion for sanctions" alongside an adverse inference. 2025 WL 2790808, at *7 (finding sanctions warranted under Rule 37(e)(2)); *see also Oakley*, 792 F. Supp. 3d at 389 (awarding fees and costs expended in prosecuting the spoliation motion and in pursuing discovery related to the spoliation motion, including related subpoenas and depositions).

Consistent with these decisions, SiteOne requests its attorneys' fees and costs reasonably incurred by virtue of Defendants' evidence destruction. Because Defendants acted in concert to destroy evidence, the award should be imposed jointly and severally against all Defendants.

Accordingly, SiteOne is at least entitled to sanctions under Rule 37(e)(1), including presentation of evidence concerning Defendants' spoliation, which the jury should be permitted to consider in evaluating credibility and making its decision, as well as attorneys' fees and costs. *See e.g.*, *Karsch*, 2019 WL 2708125, at *26–27 (awarding sanctions pursuant to Rule 37(e)(1)); *Bursztein*, 2021 WL 1961645, at *9 (holding plaintiff would be permitted to present evidence at trial about the spoliation and whether it existed in the first place, along with monetary sanctions).

## **CONCLUSION**

SiteOne asks the Court to grant this Motion for Sanctions as follows:

1. Under Rule 37(e)(2), enter default judgment as to Defendants on SiteOne's claims;

2. If the Court finds default judgment is not warranted, then, under Rule 37(e)(2), the Court should impose an adverse inference, ordering that the jury be instructed that Defendants engaged in the intentional and willful destruction of evidence, the extent of each Defendant's proven spoliation, and that they **must** presume that the evidence spoliated by each Defendant was relevant and unfavorable to the Defendants, and would have supported SiteOne's claims, together with an order precluding Defendants from offering evidence to rebut that presumption;

3. If the Court finds sanctions under Rule 37(e)(2) not warranted, then, pursuant to Rule 37(e)(1), order that SiteOne has the ability to present evidence at trial concerning Defendants' spoliation, which the jury should be permitted to consider as to credibility and making its decision;

4. Award SiteOne its attorneys' fees and costs incurred to discover the spoliation, review evidence related to the spoliation, and related motion practice; and

5. Grant such other and further relief as this Court deems just and proper.

Dated: October 8, 2026

TROUTMAN PEPPER LOCKE LLP

By: ______________________________
John S. Gibbs III (*pro hac vice*)
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308
Phone: (404) 885-3000
email: evan.gibbs@troutman.com

Daniel E. Gorman
Paris L. Kent
875 Third Avenue
New York, New York 10022
Phone: (212) 704-6000
email: daniel.gorman@troutman.com
email: paris.kent@troutman.com

Matthew H. Adler (*pro hac vice*)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103
Phone: (215) 981-4802
email: matt.adler@troutman.com

FARRELL FRITZ, P.C.

Kevin P. Mulry
400 RXR Plaza
Uniondale, New York 11556
Phone: (516) 227-0620
kmulry@farrellfritz.com

*Attorneys for Plaintiff*
*SiteOne Landscape Supply, LLC*