**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SITEONE LANDSCAPE SUPPLY, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>NICHOLAS GIORDANO; DOMINICK CAROLEO; VICTOR CAROLEO; NARROW WAY REALTY, LTD.; NARROW WAY 2 LLC; THE GARDEN DEPT. CORP.; GROUP 5 ASSOCIATES, LTD.; 3670 ROUTE 112 LLC; 9 4TH ST. LLC; SCAPES SUPPLY, LLC; NEWAY MANAGEMENT, LLC; AND NEWAY TRUCKING,<br><br>*Defendants*. | Case No. 2:23-CV-02084-GRB-SIL |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

RELEVANT FACTUAL BACKGROUND ..... 1

A. Don ..... 1

B. Vic ..... 3

C. Nick ..... 4

D. The Forensic Examination ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. SITEONE FAILS TO ESTABLISH THE RULE 37(E) PREDICATES ..... 7

A. Rule 37(e) Does Not Apply to The Majority of Nick's Lost ESI ..... 8

B. Defendants Took Reasonable Steps To Preserve ESI. ..... 8

C. SiteOne Has Not Shown The ESI Cannot Be Restored Or Replaced ..... 11

II. SITEONE HAS NOT SHOWN A SPECIFIC INTENT TO DEPRIVE ..... 12

A. SiteOne's Intent Argument Rests On A Standard *Hoffer* Rejected ..... 13

B. Don Had No Intent to Deprive SiteOne of Evidence ..... 14

C. Nick Had No Intent to Deprive SiteOne of Evidence ..... 16

D. Vic Had No Intent to Deprive SiteOne of Evidence ..... 17

E. SiteOne Has Not Shown Any "Coordinated" Intent To Deprive ..... 18

III. SITEONE'S REQUEST FOR THE MOST SEVERE SANCTIONS IS INAPPROPRIATE UNDER THESE CIRCUMSTANCES ..... 19

A. Default Judgment Is Not Warranted ..... 19

B. A Non-Rebuttable Mandatory Adverse Inference Operates As A Default ..... 20

IV. SITEONE HAS NOT SHOWN PREJUDICE WARRANTING RULE 37(e)(1) MEASURES, AND ANY MEASURE MUST BE NARROWLY TAILORED ..... 21

A. SiteOne Has Not Identified Prejudice From Any Loss Rule 37(e) Reaches ..... 21

B. No Additional Measures Are Necessary ..... 23

C. A Fee Award Must Be Limited To Costs Caused By Lost ESI ..... 24

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

## Cases

*Capricorn Mgmt. Sys., Inc. v. Gov. Emps. Ins. Co.*,
2019 WL 5694256 (E.D.N.Y. July 22, 2019) ....................6, 8, 9, 10, 20

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
337 F.R.D. 47 (S.D.N.Y. 2020) ....................15, 24

*Coney Island Auto Holdings, Corp. v. Parts Authority, LLC*,
231 A.D.3d 470 (1st Dep't 2024) ....................14

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015)....................21

*Doe v. Black*,
2026 WL 1102540 (S.D.N.Y. Apr. 23, 2026)....................19

*Fuhs v. McLachlan Drilling Co.*,
2018 WL 5312760 (W.D. Pa. Oct. 26, 2018) ....................10

*Gerges v. LGA 2020 JV LLC*,
2025 WL 1272922 (E.D.N.Y. Feb. 28, 2025)....................6, 8, 22

*Hermann v. Unily Inc.*,
2026 WL 2982989 (S.D.N.Y. Oct. 5, 2026) ....................15

*Hice v. Lemon*,
2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021)....................19, 20

*HMS Holdings Corp. v. Arendt*,
2015 WL 2403099 ....................14

*Hoffer v. Tellone*,
128 F.4th 433 (2d Cir. 2025) ....................6, 7, 13, 14, 17, 18

*Karlyg v. City of New York*,
2024 WL 4333858 (E.D.N.Y. Sept. 28, 2024) ....................6

*Karsch v. Blink Health Ltd.*,
2019 WL 2708125 (S.D.N.Y. June 20, 2019) ....................16, 22

*Kleiman v. Wright*,
2020 WL 3451682 (S.D. Fla. June 24, 2020) ....................18

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ....................9, 13, 14, 15

*Micron Tech., Inc. v. Rambus Inc.*,
917 F. Supp. 2d 300 (D. Del. 2013)....................14

*O'Berry v. Turner*,
2016 WL 1700403 (M.D. Ga. Apr. 27, 2016) ....................21

*Oakley v. MSG Networks, Inc.*,
792 F. Supp. 3d 377 (S.D.N.Y. 2025)....................6

*Orellana v. Lopez*,
2026 WL 915309 (S.D.N.Y. Apr. 3, 2026)....................7

*Ronen v. RedRoute Inc.*,
2025 WL 2790808 (E.D.N.Y. June 16, 2025) ....................14

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ....................14, 20

*Sekisui Am. Corp. v. Hart*,
945 F. Supp. 2d 494 ....................14

*Shepherd v. Annucci*,
921 F.3d 89 (2d Cir. 2019)....................19

*Tarasewicz v. Royal Caribbean Cruises Ltd.*,
2016 WL 3944176 (S.D. Fla. Feb. 9, 2016) ....................11, 18

*Ungar v. City of New York*,
329 F.R.D. 8 (E.D.N.Y. 2018)....................13

*United States v. Medtronic, Inc.*,
830 F. Supp. 3d 49 (D.D.C. 2026)....................9

**Rules**

Fed. R. Civ. P. 72(b) ....................20

Rule 37(e)....................6, 7, 8, 9, 10, 11, 12, 21, 22, 24

Rule 37(e)(1) ....................21, 23, 24

Rule 37(e)(2) ....................7, 12, 13, 18, 19

**Statutes**

28 U.S.C. § 636(b)(1)(B) ....................20

28 U.S.C. § 636(c) ....................................................................................................................20

## PRELIMINARY STATEMENT

SiteOne's spoliation motion suggests the outcome is a foregone conclusion. Not so. While the Court has had occasion to address questions concerning the lost ESI of Defendants Dominick Caroleo ("Don"), Victor Caroleo ("Vic"), and Nicholas Giordano ("Nick"), in connection with various motions to compel, it has not found sanctionable spoliation. Defendants do not dispute that text messages were lost. Don's prior phone deleted messages under an automatic-deletion setting, Vic deletes messages after he reads them, and Nick deleted messages as a matter of habit until mid-April 2023. SiteOne presents these events as a single course of conduct. (Mot. 2-11.) They are not. They involve different people, circumstances, devices, and time periods. In any event, much of what was lost pre-dates the filing of SiteOne's lawsuit and before a duty to preserve attached. Once Defendants were on notice of potential litigation, they took reasonable steps to preserve their ESI. And none of them had an intent to deprive SiteOne of evidence. For these reasons, SiteOne's motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND

Defendants concede that messages were lost from the cell phones of Don, Vic, and Nick. But the history concerning the loss of ESI and the reasonable steps each of the Defendants took to preserve it stands in sharp contrast to the "damning indictment" of an alleged "coordinated" effort that SiteOne seeks to portray. (Mot. 1-2)

### A. Don

In July 2023, approximately four months after he was served with SiteOne's complaint—and with no order requiring it—Don engaged WeRecoverData ("WRD") to forensically extract data from his iPhone. (Dkt. No. 188 at 1; Pl. Ex. 14 at NXTPT0001412 (extraction on July 18, 2023).) Don "thought it would be a good idea to take a copy of the phone, God forbid the phone broke or was stolen." (Pl. Ex. 5 (Don 3/14/25 Tr.) 77:17-20.) WRD delivered a hard drive and

Cellebrite report (the "Report") to Don's counsel. (Dkt. No. 188 at 1; *see* Pl. Ex. 5 at 77:21-78:2.)

On May 2, 2024, the Court entered a scheduling order governing discovery. (Dkt. No. 123.) Approximately four months later, while the parties were negotiating production parameters for text messages, defendants' e-discovery vendor, NextPoint, uploaded the WRD hard drive for analysis. (Dkt. No. 188 at 1-2) NextPoint discovered that the WRD hard drive lacked the underlying extraction file and contained no human-readable data (data necessary to load and process the phone's full extraction), and that WRD had not retained the file. (*Id.*; Pl. Ex. 5 at 73:23-74:4, 75:7-13.) Counsel then collected Don's phone and re-extracted its data. (Dkt. No. 188 at 2.) A December 10, 2024 statistical summary indicated the extracted data spanned approximately the preceding 60 days. *Id.* Counsel then engaged a second vendor to perform an iCloud extraction on December 17, 2024, which also recovered minimal data. *Id.* As a result of this process, Don learned his phone had been set to delete messages automatically. On learning this, he disabled the setting. (*Id.*; Pl. Ex. 5 at 63:18-65:8 (auto-delete discovered "toward the end of 2024").) Significantly, Don did not manually delete messages with Nick, *id.* at 64:6-12, or any emails from his Gmail account. (Sheth Decl. Ex. 1 (3/14/25 Don Tr.) at 46:20-23.)

Before he learned that there was an auto-delete function set on his phone, Don replaced it in or around December 2024. (Pl. Ex. 5 at 33:22-34:7.) The screen had previously broke during a Yankees game and after continued use, the glass was cutting his thumb. (*Id.* at 34:11-19.) But Don did not simply discard the phone. He carried the broken phone "for a long time" awaiting the extraction which "took longer than [he] wanted." (Pl. Ex. 6 (Don 4/24/25 Tr.) at 22:20-24:11.)[1] Don believed the phone "was copied by … Nextpoint at the time." *Id.* When he purchased the

---

[1] SiteOne's assertion that Don traded in the phone "without informing his lawyers," Mot. 15, ignores his testimony that he could not recall one way or the other. (Pl. Ex. 6 at 22:20-234. 24:9-11 (testifying he "fel[t]" others knew he was replacing his phone, although it was "hard to remember" if he told his attorneys).)

new phone, he asked the Verizon technician "to copy [the] information from [his] old phone onto the new phone." (Pl. Ex. 5 at 35:6-8, 85:5-8.)

SiteOne also relies on the sequence in which the Report was produced. Mot. 7, 17. In any event, Defendants produced the WRD report to Plaintiff on March 19, 2025 with the message content redacted, and again on January 8, 2026 without redactions. (Mot. 7; Pl. Ex. 14.) The report contains messages between Don and Vic from July 10 through July 18, 2023, which SiteOne quotes in its motion. (Mot. 7; Pl. Ex. 14.)

**B. Vic[2]**

Vic is almost seventy, [redacted] (Sheth Decl. Ex. B (Vic 4/20/26 Tr.) at 17:10-11; *id.* Ex. C (Vic 3/13/25 Tr.) 41:19-42:15; *id.* Ex. D (Vic Medical Records).) His deletion practice is indiscriminate. He deletes e-mails "[b]asically every time I get" them, and then deletes them from the deleted folder, a practice he has followed "for years," well before the events leading up to this litigation. (Pl. Ex. 2 (Vic 3/13/25 Tr.) at 43:19-45:3.) He deletes his text messages with Don, including about family matters such as his grandson's baseball games and birthday parties." (*Id.* at 64:8-65:10.) He testified his texts with Nick are "business related," but consistent with his years-long practice, he has not saved them. Although he confirmed his belief that he deleted messages with Nick since October 2024, he recalled retaining ones exchanged the day before his deposition. (*Id.* at 67:7-68:11.) In April 2026, he testified that he still deletes texts and e-mails, "all of them in a short period of time," approximately within "[h]alf an hour" of receiving them.

[2] SiteOne also addresses e-mail accounts Vic identified at his 2026 deposition and the identification of entities under the Court's October 15, 2024 order. (Mot. 4 & n.6, 10-11.) Those matters do not involve lost ESI. An account that exists but was not identified, or an entity that was not listed, presents an issue of disclosure, not destruction.

(Pl. Ex. 4 (Vic 4/20/26 Tr.) 35:2-15.)[3] Vic deletes messages [redacted] (Sheth Decl. Ex. C (3/13/25 Vic Tr.) at 44:5-25.)

At some point, Vic purchased a new phone. Though he first testified that he believed this replacement occurred after suit was filed, he later clarified that he did not recall whether it was before or after the suit. (*Id.* at 35:5-15, 39:14-40:7.) When doing so, he instructed the Verizon employee to "make sure this is the same phone as I have now," but he did not confirm whether his old messages carried over. (*Id.* at 35:16-36:19.)

**C. Nick**

On February 19, 2023—approximately one month before SiteOne filed suit—Nick ordered a new personal phone because his old phone's battery was failing. (Pl. Ex. 8 (Nick 4/25/25 Tr.) 17:16-22, 19:5-9; Pl. Ex. 9 (Nick 3/31/26 Tr.) 165:11-16.) That same day, he requested a meeting with his supervisors to discuss the spring season. (Sheth Decl. Ex. E (Nick Tr. 4/25/25) at 30:2-8.) The new phone was delivered to SiteOne's Coram location the next morning. (Pl. Ex. 8 at 19:10-21; Pl. Ex. 9 at 165:9-10, 165:25-166:6). Nick factory-reset the old phone that morning, when he activated the new one. (Pl. Ex. 8 at 19:10-21, 27:11-28:8, 57:3-13; Pl. Ex. 9 at 165:5-166:6.) Later that day, SiteOne held a meeting with Nick, during which they terminated his employment. Nick turned over the old phone when asked at his termination meeting.[4] (Pl. Ex. 8 at 18:5-7, 28:14-17, 57:6-9; Pl. Ex. 9 at 165:20-24.) SiteOne's counsel has held the device since. (Mot. 8-9 n.11.) When Nick purchased the new phone, he did not know SiteOne was planning to

[3] Read in context, this testimony belies SiteOne's claim that Vic only stopped deleting "messages" "in the last few weeks" before his March 2025 deposition (Mot. 5), as the testimony concerned emails.

[4] SiteOne's claim that this reset occurred "minutes before" the termination meeting is unsupported by the record. Mot. 8. Nick factory reset the device in the morning before he knew of the termination, and attended the meeting in the "early afternoon." (Pl. Ex. 8 at 57:10-13; Pl. Ex. 9 at 165:20-166:3.)

fire him. (Pl. Ex. 8 at 18:23-19:4.) In 2025, Nick testified that he used iCloud to transfer his "photos and contacts," but in a subsequent deposition clarified that he believed "[w]hatever was on the phone" transferred, but could not confirm if that included "old texts." (Pl. Ex. 9 at 166:7-22.)

Nick's practice, for his "entire life," had been to "read, reply, and delete" messages. (Pl. Ex. 8 at 33:20-34:17, 35:8-13.) This applies to "everything," including customer messages and his messages with Don and Vic. *Id.* At the "beginning of the lawsuit," Nick did not text with Vic much because Scapes Supply was barely operating, but their texting frequency has since increased to "two to three times" per day because "the business is growing." (Pl. Ex. 8 at 46:6-23.) In mid-April 2023, Nick was advised of his preservation obligations and ceased his read, reply, and delete policy. *Id.* at 35:14-37:2. He has not wiped or reset his phone since then. (*Id.* at 34:18-35:7.)

In January 2025, Defendants ran analytics on Nick's phone that showed over 150,000 messages dating back to 2020. (Dkt. No. 188 at 4.) Counsel manually reviewed those messages for responsiveness. (*Id.* at n.8) A bar chart depicting the monthly data for those messages between October 2022 and October 2024 showed that Nick's phone holds comparatively little message data prior to April 2023, consistent with Nick's change in practice. (Dkt. No. 198 at 1-2 (quoting Defendants' January 15, 2025 letter); Dkt. No. 200 at 2 & n.3.)

**D. The Forensic Examination**

Following motion practice concerning ESI on Don's, Vic's, and Nick's cell phones, the Court ordered that the phones be forensically examined and directed the parties to provide a protocol for the review of any resulting extracted messages. (Dkt. Nos. 190, 203.) Under the agreed-to forensic protocol (the "Protocol"), production was limited to communications identified as "concerning landscape-related issues." (Dkt. No. 205-1, Definitions & ¶ 5(iii).) The parties also agreed to a time limitation for responsive texts: (1) from October 19, 2022 to April 5, 2023

for Nick-Vic texts; and (2) October 19, 2022 to January 14, 2025 for Don texts with either Vic or Nick. (Sheth Decl. Ex. F (5.14.25 Email).) Nick's, Don's, and Vic's phones were extracted by Epiq, the data was loaded to Relativity, and thereafter reviewed for responsiveness and produced. The Protocol also contained a mechanism through which SiteOne could challenge Defendants' decision to withhold documents from production—whether for privilege or relevance. (Dkt. No.205-1 ¶ 5(viii).) SiteOne did not move to compel any documents withheld during this examination. SiteOne now claims that the forensic review confirmed that Nick continued to delete messages after April 2023. This is completely unsupported as it is not based on any metadata report from Epiq showing as much, but rather rank speculation based solely on the absence of messages between Nick and Vic. (Mot. 9, 12-13, 18-19.)

## <u>LEGAL STANDARD</u>

Rule 37(e) applies "[i]f electronically stored information [("ESI")] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" Fed. R. Civ. P. 37(e). These are threshold predicates. *See Hoffer v. Tellone*, 128 F.4th 433, 439-40 (2d Cir. 2025); *Karlyg v. City of New York*, 2024 WL 4333858, *3 (E.D.N.Y. Sept. 28, 2024).

*First*, Rule 37(e) "does not apply when information is lost before a duty to preserve arises." *Gerges v. LGA 2020 JV LLC*, 2025 WL 1272922, *2 (E.D.N.Y. Feb. 28, 2025). In assessing this question, courts should take care not to be "blinded . . . by hindsight arising from familiarity with an action as it is actually filed." Advisory Committee Note on 2015 Amendment ("2015 Note"). *Second*, the Rule requires "reasonable steps"— "not …. perfection." *Oakley v. MSG Networks, Inc.*, 792 F. Supp. 3d 377, 385 (S.D.N.Y. 2025). In that regard, "[c]ourts should 'be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts.'" *Karlyg v. City of New York*, 2024 WL 4333858, *5 (E.D.N.Y. Sept. 28, 2024) (Citing 2015 Note); *see also*

*Capricorn Mgmt. Sys., Inc. v. Gov. Emps. Ins. Co.*, 2019 WL 5694256, *10 (E.D.N.Y. July 22, 2019) (Locke, J.), *report and recommendation adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020). *Third*, the information in question must be lost—i.e., not recoverable. *Orellana v. Lopez*, 2026 WL 915309, at *3 (S.D.N.Y. Apr. 3, 2026).

Only if those predicates are met, may the court fashion an appropriate remedy under subsection (e)(1) or (e)(2) of the Rule. Subsection (e)(1) permits a court, "upon finding prejudice to another party from loss of the information, … order measures no greater than necessary to cure the prejudice." A finding of prejudice under this subsection "necessarily includes an evaluation of the information's importance in the litigation." 2015 Note. Subsection (e)(2) permits the court to impose severe sanctions in the form of a presumption that the lost information was unfavorable, an adverse inference to the jury that it may or must presume so, or dismissal of the action or entry of a default judgment. Sanctions under Rule 37(e)(2) may be imposed "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Hoffer*, 128 F.4th at 438. "[A]cting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2)." *Id.* The movant must establish intent to deprive by a preponderance of the evidence. *Id.* at 440. Critically, the standard is "both stringent and specific," and contemplates "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Id.* And even where intent is found, "[c]ourts should exercise caution" in imposing (e)(2) measures, because "[t]he remedy should fit the wrong." 2015 Note.

## ARGUMENT

### I. SITEONE FAILS TO ESTABLISH THE RULE 37(E) PREDICATES

SiteOne has not proven that Rule 37(e) applies. The vast majority of Nick's lost ESI occurred before his duty to preserve attached. Defendants took reasonable steps to preserve ESI. And any relevant, lost ESI is recoverable through Nick's preserved text messages.

**A. Rule 37(e) Does Not Apply to The Majority of Nick's Lost ESI**

Rule 37(e) does not apply before the duty to preserve attaches. *Gerges*, 2025 WL 1272922, at *2. SiteOne concedes that the duty to preserve arose "no later than March 21, 2023, the date SiteOne served Defendants." (Mot. 12.) That concession disposes of the event SiteOne features most prominently: Nick's factory-reset of his prior phone. *See supra* Background at 4. That occurred 25 days before SiteOne filed this action and 29 days before service. SiteOne's claim that the reset occurred "minutes before" his termination meeting (Mot. 8) is unsupported and irrelevant. Nick reset the phone in the morning and the meeting was in the afternoon. (Pl. Ex. 8 at 57:10-13; Pl. Ex. 9 (Nick 3/31/26 Tr.) 165:20-166:3.) Either way, it pre-dates his duty to preserve and falls outside the scope of Rule 37(e). Moreover, Nick ordered the replacement because the old phone's battery was failing, did not suspect he would be fired, and handed the reset device to SiteOne at the meeting. *Supra* Background at 4. Thus, there is no basis to infer that the duty attached before the complaint was served. For the same reasons, any deletions resulting from Nick's read-and-delete practice before that date are also outside the Rule's reach. (*See* Pl. Ex. 8 at 33:20–34:17.) As such, the only ESI loss SiteOne can credibly complain of is limited to the three-week period between service of the complaint in late March and mid-April 2023, when Nick's then-counsel instructed him that he "could no longer delete anything" and Nick stopped. (*Id.* at 35:14-37:2.) SiteOne does not identify any relevant ESI lost during those weeks.

**B. Defendants Took Reasonable Steps To Preserve ESI.**

Rule 37(e) requires *reasonable* steps, not perfection, and the inquiry is sensitive to the party's sophistication. *See Capricorn Mgmt. Sys., Inc.*, 2019 WL 5694256, at *10 ("a small,

family-owned and operated business … should not be held to the same standards as a large corporation"). SiteOne's collective treatment obscures the distinctions among the three defendants.

***Don:*** Don sought a forensic image of his phone *ten months* before discovery even commenced, and without any court order requiring such imaging. *See supra* Background at 1. He retained WRD who forensically extracted the phone, provided a hard drive of its data, and a Report detailing the contents of the phone. *Id.* at 2. Three months into discovery, when collection parameters were being negotiated, counsel provided this data to NextPoint, who discovered that WRD had not retained the underlying extraction file. *Id.* Don provided the phone to counsel and within weeks, the phone was re-extracted twice (including through an attempted iCloud recovery), with minimal results. That is how Don learned of the auto-delete setting, which he promptly reversed. *Id.* Believing that his phone "was copied" by NextPoint already, Don traded it in at Verizon and asked that his data be transferred to his new phone. *Id*. Rule 37(e) tests whether the steps taken were reasonable for this party, not whether a different step would have avoided the loss. The record shows that Don's steps were not just reasonable, they were diligent.

SiteOne's reliance (Mot. 13-16) on *Moody v. CSX Transportation, Inc.* does not warrant a contrary result. 271 F. Supp. 3d 410 (W.D.N.Y. 2017). There, an employee uploaded event-recorder data, after which no one "attempted to access or review the data at any time … [for] four years following the incident," during which time the source laptop was destroyed. *Id.* at 422-27. In contrast, Don engaged a forensics team to extract the phone's data. After learning the data was not readable, counsel moved with alacrity, undertaking *two* separate recovery efforts. Don's (and his counsel's) mistaken assumption that the phone was adequately preserved in the interim does not negate the reasonableness of his preservation steps. *See Lokai Holdings LLC v. Twin Tiger*

*USA LLC*, 2018 WL 1512055, *11 (S.D.N.Y. Mar. 12, 2018) (reasonable for defendants to have assumed archiving was in place once contract had been signed); *see also United States v. Medtronic, Inc.*, 830 F. Supp. 3d 49, 67 (D.D.C. 2026) (unforeseen circumstances such as a failed data migration resulting in loss of ESI do not negate reasonableness). Nor does the auto-delete function warrant a different result: Don disabled this function as soon as he learned it was in place. (Dkt. No. 188 at 2;Pl. Ex. 5 at 64:13-65:8; *see also Fuhs v. McLachlan Drilling Co.*, 2018 WL 5312760, *18-9 (W.D. Pa. Oct. 26, 2018) (reasonable steps found where plaintiff disabled auto-delete feature once identified and preserved data thereafter).

***Nick:*** By all accounts, Nick has complied with his duty to preserve (save for 2-3 weeks after service of the complaint before he knew about his preservation duty).[5] Since then, he has not wiped or reset his phone, which backs up to iCloud. (Pl. Ex. 8 at 34:18-35:7.) Though he previously read, replied to, and deleted texts after receiving them, he ceased that practice in April 2023. (*Id.* at 35:14-37:2.) The marked increase in preserved message volume after that time corroborates that change. (Dkt. No. 200 at 2 & n.3; *see also* Sheth Decl. Ex. G, (Nick Text Bar Chart.)) Abandoning this long-standing deletion process after he was advised of his preservation obligations reflects that Nick took reasonable steps from that point forward. *See e.g. Fuhs*, 2018 WL 5312760, at *18-9 (reasonable steps found after auto-delete function was disabled and data preserved thereafter).

***Vic:*** The reasonableness of Vic's efforts must be evaluated in the context of [redacted] and with "sensitiv[ity] to [his] sophistication with regard to litigation," *Capricorn Mgmt. Sys.*, 2019 WL 5694256, at *10. Vic spent most of his career operating a small, family-owned

[5] As described *supra* at 7-8, Nick's February 20, 2023 factory reset of his prior phone and pre-litigation deletion habits fall outside the ambit of Rule 37(e).

business. He had not previously been involved in major civil litigation. [redacted]. *See supra* Background at 4. [redacted], large volumes of messages leave him "overwhelmed" [redacted] *See supra* Background at 3. Given these extenuating circumstances, Vic's conduct was not beyond the pale. *See Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2016 WL 3944176, *6 (S.D. Fla. Feb. 9, 2016) (no bad faith or fraud despite inconsistent statements given documented cognitive impairment and memory loss; though it "d[id] not explain every inconsistent statement," it undermined claim they were the product of deliberate scheme), *adopted*, 2016 WL 3944178 (S.D. Fla. Mar. 17, 2016).

**C. SiteOne Has Not Shown The ESI Cannot Be Restored Or Replaced**

Rule 37(e) applies only if lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." 2015 Note. Here, SiteOne's motion concerns communications among Don, Vic, and Nick. Those are the documents SiteOne claims are "critical to this case" (Mot. 3) and were the focus of the forensic examination. (Dkt. No. 205-1 ¶ 5 & n.1.) Each message resided on at least two devices, and a message deleted from one is not lost if it remains on the other. Thus, for Rule 37(e) to apply, SiteOne must show that a given text was lost on both devices for a given period. It does not.

Nick's current phone is the principal replacement source. Nick stopped deleting messages in mid-April 2023, (Pl. Ex. 8 at 35:14-37:2), preserving his data (and messages with Don and Vic going forward). His current phone backs up to iCloud, *id.* at 35:5-7, and it contains approximately 150,000 messages dating from November 4, 2020. (Mot. 9 (citing Dkt. No. 184); Dkt. No. 188 at 4.) Counsel manually reviewed those messages and produced responsive documents before any

forensic examination was ordered. S*ee* (Dkt. No. 191 (Feb. 10, 2025 Hr'g Tr.) at 20:17-21:8; Dkt. No. 188 at 2 n.8, 4). In May 2025, under the Protocol, Epiq imaged that device (as well as Don and Vic's), extracting "all (active and deleted)" messages among the three, which were subject to review and production. (Dkt. No. 205-1 ¶¶ 2-5.) As a result, SiteOne cannot satisfy the irretrievability requirement as it relates to texts after Defendants were notified of their duty to preserve merely by showing that Vic or Don deleted their own copies.

SiteOne nevertheless insists that this forensic review "shows" Nick continued to delete messages throughout the lawsuit because "not a single message was produced between Nick and Vic" during that process. (Mot. 10.) But production under the Protocol—which SiteOne agreed-to—was limited to those "concerning landscape-related issues." (Dkt. No. 205-1, Definitions & ¶ 5(iii).) And SiteOne agreed to a time limitation of texts between Nick and Vic from October 2022 (before the preservation duty attached) through April 2023 (a period where Nick confirmed his texts with Vic "wasn't much"). (Sheth Decl. Ex. F; Pl. Ex. 8 (Nick Tr.) at 46:6-15.) The lack of responsive documents under a relevance and time-limited protocol is not evidence of destruction. In any event, the Protocol provided a mechanism through which SiteOne could challenge withheld documents—whether for privilege or relevance. SiteOne did not avail itself of that procedure. Because SiteOne has not specifically identified what messages "cannot be restored or replaced" from any device or period, Rule 37(e) does not apply.

## II. SITEONE HAS NOT SHOWN A SPECIFIC INTENT TO DEPRIVE

SiteOne seeks the most severe sanctions—default judgment, a mandatory adverse-inference instruction, and an order barring rebuttal—which are available only "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); (*see* Mot. 19-20.) SiteOne has not proven the requisite intent for any of the Defendants. Instead, it relies on a fictional standard that treats a failure to preserve as an intent

to deprive and attributes a single "coordinated intent" to three people whose conduct differs in every relevant respect. *See infra* Part II.E at 18. That is not the law. When considered individually or collectively, the record does not support an (e)(2) finding as to Don, Nick, or Vic.

### A. SiteOne's Intent Argument Rests On A Standard *Hoffer* Rejected

In *Hoffer*, the Second Circuit explicitly held that "[a] party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2)." 128 F.4th at 438. The standard is "stringent and specific": it requires "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Id.* at 440. Evidence that a party failed to stop deleting, or knew that he should have, goes to the reasonable-steps predicate, not intent. *See e.g. Lokai* 2018 WL 1512055 *11 (examining "routine document retention/destruction" under the reasonable-step predicate).

SiteOne collapses that distinction. It argues that "habitual or automatic deletion is … the conduct that warrants sanctions." (Mot. 14.) That is not the law. If it were, every party that failed to take reasonable steps—and parties that took reasonable, but unsuccessful steps—would be exposed to (e)(2) measures, vitiating the Rule's separation of curative measures under (e)(1) from the severe sanctions under (e)(2). That is precisely why *Hoffer* clarified that negligence, "or even gross[] negligence … does not logically support" an inference that the lost evidence was unfavorable. *Hoffer*, 128 F.4th at 438 (citing 2015 Note).

SiteOne's reliance on *Adler v. Sonotec US Inc.*—for the proposition that a "party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient" to establish intent—is erroneous. 2025 WL 2614993 (E.D.N.Y. Sept. 10, 2025). *Adler* adopted that framework from a pre-*Hoffer* decision. *Id.* at *8 (citing *Ungar v. City of New York*, 329 F.R.D. 8 (E.D.N.Y. 2018), which treated as irrelevant the distinction between "affirmatively" destroying and "passively allowing" ESI to be lost to show intent to deprive). To the extent it treats a knowing

failure to preserve as sufficient, it cannot be reconciled with *Hoffer*'s contrary holding. 128 F.4th at 438. *Adler* is nonetheless distinguishable. Though the court observed that passive deletion "can be argued" to suffice, its intent finding was based on evidence that two witnesses "actively deleted text messages concerning Plaintiff" after the duty arose, and its rejection, as "implausible" and "incomprehensible," of defendants' explanation that their text "reactions" to missing messages was a written expression of their reaction to something said on a phone call. *Adler*, 2025 WL 2614993 at *4, 8. *Adler* separately concluded that another defendant's "affirmative act of backing-up and exporting texts" appeared to be "a reasonable effort to preserve evidence." *Id.* at *7. Don stands much closer to that defendant than to the two witnesses in *Adler* who were sanctioned.[6]

**B. Don Had No Intent to Deprive SiteOne of Evidence**

Don's actions reflect his lack of the requisite intent. In July 2023, 10 months before discovery commenced, he had WRD forensically extract his phone because he "thought it would be a good … God forbid the phone broke or was stolen." *See supra* Background at 1. In the fall of 2024, his counsel undertook *two* data recovery efforts with *two* forensic vendors to retrieve the phone's data. *Id* at 1-2. And Don continued using a broken phone until the screen degraded to the point his thumb started to get "cut from the glass." (Pl. Ex. 5 at 34:11-19.) Then—believing his phone had been twice recovered and that "people were aware" he was trading it in—Don went to Verizon to obtain a new phone and asked that his data be transferred.[7] These are not the actions

[6] SiteOne's remaining authorities do not apply the governing standard. The Second Circuit has disavowed *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023). *Hoffer*, 128 F.4th at 438 ("any such implication" in *Rossbach* that negligence is sufficient was "mistaken"). Similarly, *Ottoson*'s statement that a party who "did not intentionally take any steps to preserve" ESI satisfies the intent requirement is no longer the law. *Id. HMS Holdings Corp. v. Arendt,* 2015 WL 2403099, and *Coney Island Auto Holdings, Corp. v. Parts Authority, LLC*, 231 A.D.3d 470, apply New York spoliation law, while *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, and *Micron Tech.*, *Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, predate the 2015 amendment. None apply. Finally, *Ronen v. RedRoute Inc.*, 2025 WL 2790808 involved parties who "inexplicably lost possession of their old phones without first confirming that their text messages were preserved." (Mot. 17.) That is not what happened here. Don took affirmative action to preserve his phone. *See supra* Background at 1.

[7] SiteOne's claim (Mot. 15, 17) that the December 2024 trade in demonstrates the requisite intent because Don did so "without telling his lawyers," "mirror[ing] *Ronen*, is wrong. Don testified that he could not recall whether he told

of a party determined to deprive his adversary of evidence. *See Hoffer*, 128 F.4th at 442 (cover-up theory was "undercut" by testimony that would have been "surprising" had there been such an effort). Rather, they reflect a good faith attempt to preserve.

SiteOne contends that Don's automatic-deletion setting "independently establish[es] intent." (Mot. 17.) Not so. Once Don learned of the setting, he disabled it. (Dkt. No. 188 at 2.) SiteOne offers no evidence that Don knew of the setting before late 2024, much less that he enabled or kept it to hide messages from SiteOne. The existence of an unknown auto-delete function on Don's device does not establish intent. *Hermann v. Unily Inc.*, 2026 WL 2982989, *12 (S.D.N.Y. Oct. 5, 2026) (loss primarily "due to auto-delete procedures" not "affirmative steps taken by Defendant … militates against a finding of an intent to deprive"); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 67 (S.D.N.Y. 2020) (no intent where co-president's emails were deleted by an employee conducting a routine purge of emails and company failed to create an adequate copy of the emails). To the extent that the "evidence is capable of more than one interpretation," the "Court [should] not make a finding of intent … [on] … suspicion alone." *Lokai*, 2018 WL 1512055, at *16.

SiteOne theorizes that the July 2023 messages preserved in WRD's Report between Don and Vic evidence an intent to deprive. (Mot. 7, 17.) Specifically, SiteOne highlights messages from Don telling Vic "Calls only" and, days later, "Dad do not text me," "Ever," as evidence of "a concerted effort to avoid creating documentary evidence of Don's involvement" in the competing business (*Id.*) But SiteOne cherry-picks the texts to suit its narrative. Read in context, it is clear Don insisted on calls because he could not "understand a damn thing [Vic was] writing" and his

---

his lawyers, not that he did not. *See supra* at 2 n.1. And unlike in *Ronen*, Don gave his old phone to his attorneys to be searched "a little bit before [he] got a new phone." *Id.* And when he turned in the phone, he asked Verizon to transfer its data, notwithstanding his belief it was already copied. *Id.*

"eye can't read this." (Sheth Decl. Ex. B (4/20/26 Vic Tr.) 237:21-238:9; Pl. Ex. 14 at NXTPT0001448, NXTPT0001464.) At deposition, Vic attributed confusion in the texts and Don's request for a call to his own writing, testifying that he does not "know how to write" and has "poor grammar." (Sheth Decl. Ex. B (4/20/26 Vic Tr.) at 237:21-238:9.) And when pointedly asked whether he and Don had ever discussed not putting things in writing because the SiteOne litigation was ongoing, Vic answered in the negative. (*Id.* 238:10-17.) In any event, the messages do not support an (e)(2) finding: they were not lost and, when read in their proper context, they reflect Don and Vic's preference for communicating verbally. (*See* Pl. Ex. 2 at 59:21-24 (Vic generally would "rather call people" over text).)

### C. Nick Had No Intent to Deprive SiteOne of Evidence

SiteOne's intent case against Nick prominently features the February 20, 2023 factory reset. (Mot. 18.) That is a nonstarter: the reset occurred before the duty to preserve attached. Nevertheless, "[a]n inference concerning intent based almost entirely on the timing of the destruction of [evidence]" is insufficient. *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *22 (S.D.N.Y. June 20, 2019). And Nick's testimony shows a contrary intent: he ordered the replacement phone the day before because the old phone's battery was failing and reset the old one when the new one came in. *See supra* Background at 4. He then promptly turned over the phone to SiteOne upon his termination. *Id.*

The balance of SiteOne's theory as to Nick's intent—his practice to "read, reply, and delete" (Mot. 18-19)—is similarly unavailing. As with his phone reset, this conduct largely predated the attachment of his duty to preserve. Even if considered, this was a lifelong practice that applied to "everything," including customer and personal messages. (Pl. Ex. 8 at 33:20-34:17.) And it stopped less than a month after the lawsuit was filed when Nick learned of his duty. (*Id.* at 35:14-37:2.) Nick's conduct reflects nothing more than an indiscriminate, habitual practice.

Before the duty attached, Nick was free to engage in it. That he stopped this practice as soon as he learned of his preservation duty only underscores the lack of any intent to deprive SiteOne of evidence.

To salvage its intent argument SiteOne pivots, claiming that there has been a "shifting narrative" (Mot. 19) regarding the number of preserved texts on Nick's phone, reflecting bad faith. That is not true. Counsel consistently disclosed that over 150,000 messages were preserved from Nick's phone dating back to November 2020. SiteOne nevertheless complains that only "17 [messages] from one of the most relevant periods" were preserved. (*Id.*) But these figures are counted conversations, each of which may contain numerous individual messages. (Dkt. No. 200 at 2 n.3.) Regardless, that the vast majority of Nick's preserved messages post-date April 2023 simply confirms Nick's prior practice. *See supra* Background at 5. SiteOne then anchors its bad faith argument with the assertion that he must have continued to delete messages during the pendency of the lawsuit because no responsive texts were produced. (Mot. 19). That argument is not based on any forensic finding and is pure conjecture.

**D. Vic Had No Intent to Deprive SiteOne of Evidence**

Defendants do not seek to minimize Vic's conduct. He testified that he deleted texts with Don and with Nick after this action was filed and after he received a written preservation instruction in February 2025. *See supra* Background at 6. The (e)(2) question, however, is not whether Vic deleted messages he should have kept. It is whether he did so for the purpose of depriving SiteOne of evidence. *Hoffer*, 128 F.4th 433, 436 (2d Cir. 2025).

The record does not support such a finding. *Hoffer* distinguishes between "the intent to perform an act that destroys ESI" and "the intent to actually deprive another party of evidence." 128 F.4th at 440. Similar to Nick, Vic had a habit of indiscriminately deleting his texts and e-mails—about work or even his grandson's baseball game—shortly after they were received. *See*

*supra* Background at 3. Whatever else may be said of it, that practice falls on the first side of the *Hoffer* line, belying specific intent to deprive. That Vic continued this practice after instructed to preserve shows, at most, that he acted "knowingly"—which "will not suffice." *Hoffer*, 128 F.4th at 438.[8] [redacted] *See, e.g.*, *Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2016 WL 3944176, *6 (declining to find bad faith where a party suffered from memory loss); *see also Kleiman v. Wright*, 2020 WL 3451682, *18 (S.D. Fla. June 24, 2020) (similar).[9]

**E. SiteOne Has Not Shown Any "Coordinated" Intent To Deprive**

SiteOne asks the Court to find a "successful, coordinated intent" among the three individuals and to impose fees on "Defendants" jointly and severally. (Mot. 2, 20.) That is not what Rule 37(e)(2) requires. It demands a finding that *each* "party acted with the intent to deprive." SiteOne has failed to establish that. It offers no evidence of any agreement among Don, Vic, and Nick to destroy anything and it points to no communication among them about deleting messages or disposing of devices. To the contrary, the evidence shows that Don, Vic, and Nick lost ESI for reasons unique to them and as described *supra* Part II.B did not have an intent to deprive SiteOne of evidence. Combining courses of conduct for three different defendants cannot supply the specific intent that is missing as to each. *Hoffer*, 128 F.4th at 442 (affirming denial of relief absent evidence the City "or any of the individual defendants" had requisite intent).[10]

---

[8] As Vic testified that he received no preservation instruction from his first two sets of counsel before February 2025, (Pl. Ex. 3 at 14:13-21, 20:20-22:13), he could not have acted knowingly while his deletion practice persisted during that period.

[9] SiteOne's attempt to attribute mal intent to Vic for replacing his cell phone similarly fails, as: (1) he could not recall whether that occurred before or after the lawsuit commenced; and (2) he asked Verizon to transfer his data, conduct inconsistent with someone trying to rid himself of its contents.

[10] SiteOne makes no attempt whatsoever to make any showing as to lost ESI or intent with regard to the nine entity Defendants against which it also seeks relief. *See infra* Part II.B.

SiteOne has not shown by a preponderance of the evidence that any Defendant acted with the intent to deprive it of information in this litigation. None of the measures enumerated in Rule 37(e)(2) is available.

## III. SITEONE'S REQUEST FOR THE MOST SEVERE SANCTIONS IS INAPPROPRIATE UNDER THESE CIRCUMSTANCES

SiteOne is not entitled to the severe sanctions it seeks because, as described *supra* Part II, it has failed to demonstrate that any of the Defendants formed the requisite intent to deprive SiteOne of information in this litigation. *See* Fed. R. Civ. P. 37(e)(2) (predicating severe sanctions on showing of intent to deprive). Even if SiteOne were able to prove intent to deprive, the sanctions it seeks are not warranted.

### A. Default Judgment Is Not Warranted

SiteOne seeks the most severe sanction: a default judgment against Don, Vic, and Nick. (Mot. 19-20, 25.) But "[t]he remedy should fit the wrong," and severe measures "should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." 2015 Note; *see also infra* Part IV (discussing lack of prejudice to SiteOne). "[T]erminating sanctions 'require[ ] a district court to at least consider lesser remedial measures before imposing that sanction.'" *Doe v. Black,* 2026 WL 1102540, *31 (S.D.N.Y. Apr. 23, 2026) (citing *Shepherd v. Annucci*, 921 F.3d 89, 97-98 (2d Cir. 2019) (collecting cases)); *Hice v. Lemon*, 2021 WL 6053812, *6 (E.D.N.Y. Nov. 17, 2021) (Locke, J.) ("court should impose the least harsh sanction that can provide an adequate remedy," not lead with the most severe one) (citation omitted), *report and recommendation adopted*, 2021 WL 6052440 (E.D.N.Y. Dec. 21, 2021). SiteOne does not attempt to show why lesser measures (if any are needed) would be inadequate. Indeed, it proposed lesser measures as its alternative relief.

*Hice* and *Capricorn* are instructive. In *Hice*, the Court declined to dismiss a plaintiff's claim even though he deleted "entire text message threads" and "his Twitter account" to destroy evidence "undermin[ing]" his claims because "a sanction less than dismissal … [was] sufficient to address [the] conduct." *Id.* at *6. Likewise, no sanctions at all befell a litigant who intentionally lost "the e-mails of 12 … custodians" and "joke[d] … about throwing out and burning computer backup tapes" where, like here, the movant "offer[ed] little more than speculation and conjecture" about what was lost. *Capricorn*, 2019 WL 5694256, at *10-12. None of Nick, Vic, or Don's conduct rises to the level of the evidence that was destroyed in *Hice*. *See supra* Background. The Court should come to a similar conclusion here.[11][12]

**B. A Non-Rebuttable Mandatory Adverse Inference Operates As A Default**

In the alternative to a default judgment, SiteOne seeks a mandatory, non-rebuttable adverse inference. Specifically, that the jury be instructed "as a matter of law" that Defendants destroyed evidence intentionally and "must presume" the lost evidence "would have supported SiteOne's claims," together with an order "precluding Defendants from offering evidence to rebut that specific presumption." (Mot. 20.) SiteOne requests that any such order also bar "testimony that those messages did not concern Don's involvement in the planning, formation, financing, or operation of Scapes Supply." (Mot. 22.)

A measure of that severity would have to be shown to fit the wrong, and SiteOne does not attempt that showing. SiteOne's requested instruction would effectively decide the central merits

---

[11] SiteOne's authorities do not militate the contrary. *Moody* found case-dispositive sanctions inappropriate even for "stunning" destruction of evidence. 271 F. Supp. 3d at 432. *Rossbach* rested on a finding that the plaintiff intentionally withheld the correct passcode to one phone, 81 F.4th at 135, evincing a specific intent far beyond what occurred here. A default judgment is not the appropriate fit here.

[12] Because a default judgment would dispose of SiteOne's claims, absent consent under 28 U.S.C. § 636(c) any such relief would be the subject of a report and recommendation to the District Judge. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *see also* Individual Motion Practices of Magistrate Judge Steven I. Locke § 4(B) (E.D.N.Y. July 13, 2023)("Dispositive motions, such as motions to dismiss and motions for summary judgment, must be made to the presiding District Judge[.]").

question rather than cure any loss. SiteOne identifies "[a] key issue" in the case as "to what further extent Don was involved with Scapes Supply." (Mot. 3.) A mandatory presumption on that subject, combined with a bar on testimony addressing it, would leave the jury nothing to decide. Perhaps that is why, as SiteOne concedes (Mot. 21), all of the in-circuit authority it relies on granted permissive, not mandatory adverse inferences, including where it concerned ESI loss far worse than the record now before the Court. *See also Adler*, *2025* WL 2614993 *9 (finding only a permissive jury instruction appropriate). SiteOne's out-of-circuit authorities do not bridge the gap. Each either pre-dates *Hoffer* or was decided on the pre-*Hoffer* negligence standard, not intent to deprive. *See Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015) (predating 2015 amendment of Rule 37(e) and citing *Residential Funding*'s negligence standard (explicitly disavowed by *Hoffer*) to impose a mandatory adverse inference and a rebuttal bar); *O'Berry v. Turner*, 2016 WL 1700403, *4 (M.D. Ga. Apr. 27, 2016) (inferring intent to deprive from conduct "beyond the result of mere negligence," reasoning irreconcilable with *Hoffer*'s holding that negligent, grossly negligent, or knowing won't suffice).

Finally, Plaintiff appears to seek relief against "all Defendants," (Mot. 20, 25) yet identifies no ESI that any entity Defendant possessed or controlled, no preservation step any entity failed to take, and no intent attributable to any entity. Rule 37(e) measures run against "the party" that failed to take reasonable steps. Because Plaintiff fails to identify any sanctionable conduct by a specific entity, no measure may be imposed on them.

## IV. SITEONE HAS NOT SHOWN PREJUDICE WARRANTING RULE 37(E)(1) MEASURES, AND ANY MEASURE MUST BE NARROWLY TAILORED

### A. SiteOne Has Not Identified Prejudice From Any Loss Rule 37(e) Reaches

Absent an intent finding, SiteOne cannot obtain relief under subsection (e)(2) and must prove entitlement to alternative relief under subsection (e)(1). But (e)(1) permits the Court to order

sanctions only "upon finding prejudice to another party from loss of the information," and only those sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). When the lost information appears "unimportant" or "the abundance of preserved information may appear sufficient to meet the needs of all parties," it may be reasonable to require the party seeking curative measures to show prejudice. 2015 Note. This is such a case. SiteOne's prejudice showing consists of a general description of what the lost messages "likely contained," is directed largely at a period that precedes SiteOne's own duty to preserve evidence, and there remains ample evidence in the record relating to Plaintiff's claims. (*See* Mot. 23-24.)

By SiteOne's own admission, any lost ESI was likely "unimportant." SiteOne's counsel confirmed as much when he represented to the Court: "[w]e don't expect" Defendants to exchange "smoking gun sort of bad messages," and "a lot of this we believe is going to be in-person meetings [and] phone calls." ((Dkt. No. 180 10/15/24 Tr.) 38:4-13.) SiteOne now asserts that the messages "likely contained communications bearing directly on the central disputed issues in this case," including the "competing properties and business." (Mot. 23-24) This assertion is untethered to any evidence warranting that inference and it simply describes the subject matter of the case, not the content of any lost communication. As such, SiteOne is unable to proffer "plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, *21 (S.D.N.Y. June 20, 2019) (no modification added). At a minimum, any prejudice finding should be confined to the specific Defendant, communication channel, and period as to which SiteOne has made a concrete showing.

Beyond its speculative assertions of what may have been lost, much of the prejudice SiteOne asserts also flows from losses that Rule 37(e) does not reach. A loss outside the Rule cannot supply the prejudice that justifies measures under it. *See Gerges*, 2025 WL 1272922, at

*2. SiteOne admits that the duty to preserve arose "no later than March 21, 2023,"—the date of service. (Mot. 12.) As such, Nick's February 2023 reset and any deletion under Nick's or Vic's practices before service cannot form the basis of SiteOne's alleged prejudice.

The record belies any claim of prejudice. Each individual Defendant has been deposed at least twice. (Pl. Exs. 2-9.) Counsel reviewed over 150,000 of Nick's messages and produced responsive ones. Don, Vic, and Nick's cell phones were forensically examined and responsive texts (according to a SiteOne approved Protocol) were produced. SiteOne has the July 2023 Don-Vic messages on which its motion relies, (Pl. Ex. 14), and the messages preserved on Nick's device. *See supra* Background at 5-6. SiteOne cannot establish prejudice in the face of this ample record.[13]

**B. No Additional Measures Are Necessary**

If the Court finds prejudice as to a specific Defendant and period (there is none), any measure must be "no greater than necessary to cure" it. Fed. R. Civ. P. 37(e)(1). But many of the curative measures that Rule 37(e)(1) contemplates have already been provided (i.e., document retention depositions and forensic extractions of each phone). (*See* Dkt. Nos. 190, 203-4, 205-1 ¶¶ 2-3, 5). SiteOne does not explain what prejudice remains after that discovery, or why further measures are needed to cure it. No additional measures are needed here.

SiteOne requests that it is entitled to Rule 37(e)(1) relief in the form of an order permitting it to present "evidence concerning Defendants' spoliation" at trial, which "the jury should be permitted to consider in evaluating credibility and making its decision." (Mot. 25.) Though this type of sanction is available under subsection (e)(1), it is not appropriate if it has "the effect of

[13] Merely by way of example, SiteOne claims that Don violated his non-compete (he did not) by financing two of the at-issue properties in 2022. It already has made that argument using deposition testimony, wire confirmations, and e-mails. (Mot. 3, 10.)

measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive." 2015 Note. That is precisely what SiteOne's proposed alternative relief would do.

Additionally, SiteOne's request is not limited to any Defendant, period, or purpose. An instruction that the jury may weigh "spoliation" in "making its decision" would risk operating as an adverse inference—as to all Defendants, indivisibly—a result not permitted under subdivision (e)(2).

**C. A Fee Award Must Be Limited To Costs Caused By Lost ESI**

SiteOne's request for fees must be tied to costs caused by spoliation. *Charlestown Cap. Advisors, LLC*, 337 F.R.D. at 67-68. As such, any award must be apportioned to the Defendant whose conduct caused the cost. Joint and several liability presupposes the "coordinated" conduct SiteOne has not shown, *see supra* Part II.E, and the Rule's predicates turn on what "a party" failed to do. Fed. R. Civ. P. 37(e). Accordingly, the Court should deny SiteOne's request for relief under Rule 37(e)(1).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny SiteOne's motion for sanctions in its entirety.

October 15, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

Manisha M. Sheth
Joanna E. Menillo
295 Fifth Avenue, 9th Floor
New York, NY 10016
Phone: 212-849-7000
manishasheth@quinnemanuel.com
joannamenillo@quinnemanuel.com

*Attorneys for Defendants*